IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:14-CV-954

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNIVERSITY OF NORTH CAROLINA et al., <br><br> Defendants. | MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY PROCEEDINGS |

## INTRODUCTION

The University of North Carolina at Chapel Hill (the "University") and other Defendants respectfully submit this Memorandum in Support of Defendants' Motion to Stay Proceedings. A stay of these proceedings is warranted because of the recent decision by the Supreme Court of the United States to grant review in *Fisher v. University of Texas at Austin*, No. 14-981 ("*Fisher II*").

The primary issue before the Supreme Court in *Fisher II*—whether the Fifth Circuit properly concluded that the University of Texas at Austin's ("UT-Austin") use of racial preferences in its undergraduate admissions program complies with the Supreme Court's precedents—is the central issue in this case brought by Plaintiff Students for Fair Admissions, Inc. challenging the University's undergraduate admissions policy. Critical questions in *Fisher II* will be whether UT-Austin's admission policy is narrowly tailored to achieve the educational benefits of diversity, what evidence UT-Austin must present to

1

prove that proposition, and how a court must apply strict scrutiny to evaluate whether UT-Austin has met its burden. Because *Fisher II* presents the Supreme Court with an opportunity to clarify further the law governing how public universities may consider race in the admissions process, it is certain to affect the standards that govern this litigation.

Plaintiffs here seek declaratory and injunctive relief and challenge the current operation of University's admissions program. By any assessment, *Fisher II* will provide dispositive guidance on the legal standards that will control this Court's evaluation of Plaintiff's claims and, more immediately, the decisions the parties make in devising their respective strategies and then assembling and acquiring evidence—fact and expert evidence alike— to advance those strategies to prosecute and defend against Plaintiff's allegations. The potential benefit Plaintiff may obtain from a decision in this case prior to the Supreme Court's decision in *Fisher II* is outweighed by the practical ramifications and benefit to both the parties and the Court that a stay will afford. Accordingly, the Court should grant Defendants' Motion to Stay.

## STATEMENT OF FACTS

### I. PLAINTIFF'S COMPLAINT

Students for Fair Admissions, Inc. challenges the University's undergraduate admissions policies under 42 U.S.C. §§ 1981, 1983, and § 2000d and the Fourteenth Amendment to the U.S. Constitution. According to the Complaint, one of Plaintiff's members (identified only as "Applicant"), who is not named in or a party to this lawsuit, applied for but was denied admission to the University's 2014 entering class. (Compl. ¶¶

13-20.) Plaintiff alleges that the University's undergraduate admissions process violates the Fourteenth Amendment and federal civil rights laws for at least two reasons: (1) although the University claims to use an applicant's race and ethnicity only as one of many factors within its holistic system, Plaintiff contends that statistical and other evidence establishes that race is a "dominant factor" in admissions decisions; and (2) the University is using race in admissions decisions when race-neutral alternatives exist that, if adopted, would allow the University to achieve the desired diversity in its student body. (*Id.* ¶¶ 5, 17, 65-66, 119-20, 125, 140-41, 145.)

Plaintiff's Complaint is replete with references to the Supreme Court's higher education admissions decisions in recent years, including *Grutter v. Bollinger*, 539 U.S. 306 (2003) and *Fisher v. University of Texas at Austin*, 133 S. Ct. 2411 (2003) ("*Fisher I*"). (*See*, *e.g.*, Compl. ¶¶ 2, 4, 7, 147, 181, 185-186, 188-196.) Indeed, Plaintiff devotes an entire section of its Complaint to the "Governing Law," going to great lengths to recite and quote extended passages from *Grutter* and *Fisher I*, among other decisions, on the contours and requirements of strict scrutiny and narrow tailoring. (*Id.* ¶¶ 174-195.) At one point—again quoting *Fisher I*—Plaintiff strives to underscore that "strict scrutiny imposes on the university the ultimate burden of demonstrating, before turning to racial classifications, that available, workable race-neutral alternatives do not suffice." (*Id.* ¶ 195.) There is no question, in short, that the Supreme Court's admissions precedents provide the foundation for Plaintiff's Complaint.

In answering the Complaint, Defendants denied Plaintiff's allegations and underscored their confidence that the University's undergraduate admissions policy,

3

which permits race and ethnicity to be considered as one among many factors as part of a holistic review of each applicant, reflects careful adherence to the legal direction provided to date by the Supreme Court.  (Doc. 30.)  In light of the Supreme Court's decision to grant review in *Fisher II*, however, that framework may soon be altered.  At the very least, very significant additional direction is certain to be forthcoming from the Supreme Court in *Fisher II*.

## II.     STATUS OF LITIGATION

Plaintiff filed its Complaint on November 17, 2014.  (Doc. 1.)  After agreeing with Plaintiff to a stipulation that narrowed the causes of actions and defendants within the case (Doc. 29), Defendants answered the Complaint on March 24, 2015.  On May 4, 2015, the parties submitted competing Rule 26(f) Reports to the Court.  Following the Initial Pretrial Conference, on May 14, 2015, Magistrate Judge Webster issued an order adopting Defendants' Rule 26(f) Report with a single modification.  (Doc. 32, 33, 34.)  Pursuant to that order, the parties must conclude discovery by February 15, 2016 and submit dispositive motions on March 31, 2016.  (Doc. 34.)  Discovery is currently underway, with the parties having exchanged initial interrogatories and document requests.

It is clear from the parties' discovery requests and related discussions that both sides—as the Court would expect in litigation of this importance—are approaching discovery and the development of evidence with great care and attention to the precise requirements of the legal framework set forth in *Grutter* and *Fisher I*, among other decisions, and informed by Justice Powell's separate opinion in *Regents of the Univ. of*

*Cal. v. Bakke*, 438 U.S. 265, 305 (1978). That framework is now sure to be refined in light of the Supreme Court's decision once again to revisit the constitutional precepts governing higher education admissions.

## III. THE SUPREME COURT'S GRANT OF REVIEW IN *FISHER II*

On June 29, 2015, the Supreme Court granted Abigail Fisher's petition for a writ of certiorari. In doing so, the Court agreed to consider for the second time in as many years whether UT-Austin's undergraduate admissions program—specifically, the program in place to fill seats in the incoming class not filled as a result of the Texas law admitting any applicants who graduated in the top 10% of their high school class—is narrowly tailored and otherwise complies with recent precedents on affirmative action in higher education. Without modification, the Court granted review on the question presented by Ms. Fisher in her petition:

> Whether the Fifth Circuit's re-endorsement of the University of Texas at Austin's use of racial preferences in undergraduate admissions decisions can be sustained under this Court's decisions interpreting the Equal Protection Clause of the Fourteenth Amendment, including *Fisher v. University of Texas at Austin*, 133 S. Ct. 2411 (2013).

The issues before the Court in *Fisher II*, as explained more fully below, are at the epicenter of the challenge Plaintiff has leveled here at the University's admission policy. Indeed, there is no question that the present litigation against the University is part of a broader effort, as Plaintiff makes clear in its Complaint—filed by the same counsel who represent Ms. Fisher—to persuade the Supreme Court to change the legal standards governing considerations of race and ethnicity in higher education admissions. (*See*, *e.g.*, Compl. ¶¶ 216-218, 221-223.)

5

Case 1:14-cv-00954-LCB-JLW   Document 47   Filed 07/06/15   Page 5 of 13

**ARGUMENT**

The Supreme Court has "long recognized that courts have inherent power to stay proceedings and 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Stone v. I.N.S.*, 514 U.S. 386, 411 (1995) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In exercising its authority to grant a discretionary stay, the court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254.

The Fourth Circuit has made clear that a district court may exercise its discretion to stay a civil matter pending a Supreme Court decision that could control the outcome. *See Hickey v. Baxter*, 833 F.2d 1005, 1005 (4th Cir. 1987) (unpublished table decision) ("We find that the district court acted within its discretion in staying proceedings while awaiting guidance from the Supreme Court in a case that could decide relevant issues."). Consistent with this principle, district courts within this Circuit have exercised this discretion in staying cases when a forthcoming higher court decision is poised to resolve a central issue in the pending litigation. *See Harris v. Rainey*, No. 5:13-cv-00077-MFU, 2014 WL 1292803, at *2 (W.D. Va. Mar. 31, 2014) (granting motion to stay until the Fourth Circuit ruled in a separate matter); *Norville v. Anne Arundel Cnty. Bd. of Educ.*, No. CIV.A. MJG-99-764, 1999 WL 1267696, at *6 (D. Md. Nov. 23, 1999) ("Given the issues identified for decision, the Supreme Court's decision will control the Board's Eleventh Amendment immunity argument in the instant case. Accordingly, this Court will stay all proceedings against the Board pending the Supreme Court's decision."); *Stoddard v. Wyeth*, No. 4:08-cv-00173-H (E.D.N.C., Jan. 11, 2011) (granting motion to

stay proceedings to promote judicial efficiency and noting that the Supreme Court's pending decision would likely have a direct impact on the litigation).

Indeed, district courts within this Circuit have *sua sponte* stayed proceedings because of a pending Supreme Court decision. *See McGee v. Cole*, No. 3:13-cv-24068 (S.D.W.Va., Sept. 16, 2014) ("Because of the overlap in the issues present in that case and the one before this Court, the Court *sua sponte* orders that the instant case be stayed pending a decision from the Supreme Court."); *Collins v. Hodges*, 2:01-2343-RBH (D.S.C., June 28, 2006) (*sua sponte* staying the case because "[i]nasmuch the decision by the South Carolina Supreme Court in *Cannon* may have some import regarding the issues in the within case, the Court finds it appropriate to stay the case").

Other courts around the country have similarly recognized that a court is empowered to "properly exercise its staying power when a higher court is close to settling an important issue of law bearing on the action." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012); *see also Carter v. U.S.*, No. 1:06-cv-225, 2007 WL 2439500, at *3 (D. Vt. Aug. 23, 2007) ("It is common practice in this Circuit to postpone the final disposition of a case pending an upcoming decision in the United States Supreme Court."); *Colby v. Publix Super Mkts., Inc.*, No. 2:11-cv-590-RDP, 2012 WL 2357745, at *3 (N.D. Ala. June 15, 2012) (staying action where the "Supreme Court's decision in [*First Am. Fin. Corp. v.*] *Edwards* may affect the outcome of this matter"); *Cardenas v. AmeriCredit Fin. Servs. Inc.*, No. 09-cv-4978, 2011 WL 846070, at *3 (N.D. Cal. Mar. 8, 2011) (staying litigation pending the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*).

I. **AWAITING A DECISION IN *FISHER II* WILL PROMOTE JUDICIAL ECONOMY AND AVOID HARDSHIP TO THE PARTIES AND THE COURT ITSELF.**

   A. ***Fisher II* Is Certain To Provide Essential Guidance And Clarity On The Standards That Will Control The Resolution Of Plaintiff's Claims In This Litigation.**

A stay of the proceedings will conserve judicial resources as the issues front and center in *Fisher II* are the same issues certain to dominate this litigation, as evidenced by the allegations in the Complaint and Plaintiff's initial discovery requests. Among other issues, the Supreme Court is likely to provide some degree of guidance, if not dispositive direction, on at least the following issues:

- The legal and evidentiary requirements of the narrow tailoring test announced in *Grutter* and reinforced in *Fisher I*.

- The requirements of the obligation imposed upon universities, as part of the narrow tailoring test, to examine race-neutral alternatives before permitting consideration of race in admission decisions.

- The facts and evidence pertinent to establishing how an admissions program is being implemented in practice.

- The evidence required to establish the educational benefits sought to be achieved through a race-conscious admission program designed to yield or increase student body diversity.

- The definition and contours of what constitutes a "critical mass" of diversity.

Granting a stay to await guidance from the Supreme Court to resolve issues directly relevant to the case at hand is a proper use of the Court's inherent power to stay proceedings. *See Hickey*, 833 F.2d at 1005 (affirming district court's stay of proceedings in light of pending Supreme Court decision); *Fisher-Borne v. Smith*, No. 1:12-cv-589-

WO-JEP (M.D.N.C., June 2, 2014) (staying proceedings pending the Fourth Circuit's decision in a separate case in part because any decision issued by the district court "would need to be re-evaluated in light of the decision ultimately issued [by the Fourth Circuit], which would cause inefficiency and uncertainty in the near term"); *Norville*, 1999 WL 1267696, at *6 (granting stay because pending Supreme Court decision would address argument at issue within the litigation).

Staying these proceedings until *Fisher II* is decided would avoid the waste of judicial resources that would result from the Court evaluating and deciding dispositive motions under what is certain to be a refined—if not changed—legal framework.

### B. A Stay Will Avoid Hardship To Both Parties Caused By Duplicative Discovery and Briefing.

A stay of proceedings will conserve not only the resources of this Court, but also those of the parties. Although the University is confident that its admissions policies comply with the law, the decision in *Fisher II* is certain to provide controlling direction in this litigation. If the Supreme Court in any way alters the legal standards governing the use of race in university admissions, the University would have to review and evaluate its admissions process to determine whether it comports with those new standards. If the University, as a result of that determination, modifies or refines its existing policies, the discovery Plaintiff seeks relating to the University's *current* policies and practices may be largely irrelevant or, at the very least, incomplete.

Even if the Supreme Court somehow does not modify the main attributes of the legal framework, it is difficult to conceive of an outcome in *Fisher II* that will not

9

directly and significantly influence the ways in which the parties approach their respective burdens—both from an evidentiary and strategic perspective—and assemble their respective positions.

These points are not abstract. Take, for example, the narrow tailoring test. What the Supreme Court says (and does not say) in *Fisher II* about the precise contours and mandates of that requirement may modify existing law, in ways big or small. The guidance provided by the Supreme Court will directly affect the facts and evidence, including expert evidence, the University must marshal to demonstrate that it is permissibly considering race and ethnicity in admissions decisions and further whether any race-neutral alternative is available to yield the same desired critical mass of diversity on the Chapel Hill campus.

All of this work is presently occurring at significant expense. Litigating a case like this is expensive—the discovery phase especially so. The University must produce very substantial amounts of documents that require significant time and effort to assemble and prepare for production. Some of the documents and information being sought in discovery also implicate serious individual privacy considerations—an issue that will consume considerable time and expense by the parties (and almost certainly the Court) to address and properly manage.

Granting a stay would allow the parties to know with clarity the legal standards and burden they must meet and would eliminate the significant risk that, once *Fisher II* is decided, the Court will be forced to call a false start and send the parties all or part of the way back to the starting line on discovery matters—all at significant time and expense.

10

Granting Defendants' Motion to Stay would all but eliminate the possibility that the original burden and expense endured by the parties would be for naught.

## II.  A STAY WOULD NOT UNDULY PREJUDICE PLAINTIFF.

If there is a possibility that the stay could be detrimental to another party, then the movant must justify it by "clear and convincing circumstances outweighing" such possible harm. *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). Although Defendants acknowledge that Plaintiff may view a stay as detrimental given the interest the alleged "Applicant" purportedly has expressed to transfer to the University in the event Plaintiff prevails in the litigation (Compl. ¶ 20), this prejudice is minimal and outweighed by the substantial benefits that a stay would achieve for all parties and the Court.

Defendants do not seek an open-ended, indefinite stay, but rather a stay to await a decision by the Supreme Court that, as explained, will provide essential and indeed controlling direction to the Court and parties here. While it is undeniable that a decision in *Fisher II* cannot reasonably be expected before June 2016—near the end of the Court's next Term—it is equally true that this case is in its early stages and of significant complexity.

Unlike other circumstances where a case is in the midst of discovery or on the eve of trial, a stay now would not impose additional harm upon Plaintiff. Indeed, under the current scheduling order, dispositive motions are due March 31, 2016. Because the Supreme Court has already granted review in *Fisher II*, the decision can be expected by or before the end of June 2016. Therefore, it is likely that by the time dispositive motion

11

briefing is complete and this Court is ready to issue a decision, *Fisher II* could be decided and the parties sent back to redo or supplement their discovery efforts or to recraft their summary judgment briefing. Consequently, the stay will not delay the litigation any more than if the parties reached a full and final resolution and *then* had to effectively re-do discovery and dispositive motion briefing as a result of a June 2016 *Fisher II* decision.

In these circumstances, the judicial efficiencies achieved and hardships that all parties would avoid as a result of a stay are clear and convincing circumstances that outweigh any potential harm to Plaintiff.

## CONCLUSION

For these reasons, the Court should grant Defendants' Motion to Stay Proceedings.

Respectfully submitted,

| | |
|---|---|
| /s/ Michael Scudder | ROY COOPER |
| Michael Scudder | Attorney General |
| Skadden, Arps, Slate, | |
|    Meagher & Flom, LLP | /s/ Stephanie Brennan |
| 155 North Wacker Drive | Stephanie Brennan |
| Chicago, IL 60606-1720 | Special Deputy Attorney General |
| (312) 407-0877 | NC State Bar No. 35955 |
| E: michael.scudder@skadden.com | E: sbrennan@ncdoj.gov |
| | |
| /s/ Lisa Gilford | /s/ Matthew Tulchin |
| Lisa Gilford | Matthew Tulchin |
| Skadden, Arps, Slate, | Assistant Attorney General |
|    Meagher & Flom, LLP | NC State Bar No. 43921 |
| 300 South Grand Ave. | E: mtulchin@ncdoj.gov |
| Suite 3400 | NC Department of Justice |
| Los Angeles, CA 90071 | Post Office Box 629 |
| (213) 687-5130 | Raleigh, NC 27602-0629 |
| E: lisa.gilford@skadden.com | T: (919) 716-6920 |
| *Attorneys for Defendants* | F: (919) 716-6764 |
| | *Attorneys for Defendants* |

# CERTIFICATE OF SERVICE

I hereby certify that, on July 6, 2015, I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STAY PROCEEDINGS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CME/ECF users in the case.

This 6th day of July, 2015.

/s/ Michael Scudder
Michael Scudder
Skadden, Arps, Slate,
   Meagher & Flom, LLP
155 North Wacker Drive
Chicago, IL 60606-1720
(312) 407-0877
E: michael.scudder@skadden.com

*Attorney for Defendants*