UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:14-CV-954

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNIVERSITY OF NORTH CAROLINA, et al., | ) ) ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION TO INTERVENE**

**I.   NATURE OF THE MATTER BEFORE THE COURT**

A group of four minorities who currently attend the University of North Carolina at Chapel Hill and five minority high school students who intend to apply to the University of North Carolina at Chapel Hill ("Movants") have filed a Motion to Intervene ("Motion") in this matter under Federal Rule of Civil Procedure 24(a) as of right. In the alternative, they seek permissive intervention under Federal Rule of Civil Procedure 24(b). For the reasons set forth below, the Motion should be denied and Movants instead should be allowed to participate as *amici curiae*.

**II.   INTRODUCTION AND SUMMARY OF THE ARGUMENT**

The use of racial preferences at the University of North Carolina at Chapel Hill and other top universities is an issue of national importance. Plaintiff thus has no desire to

foreclose Movants from weighing in on the relevant legal issues in this case and believes the Court should exercise its discretion to allow Movants to participate in this case as *amici curiae*. Doing so would allow Movants to be heard on the legal and policy issues they wish to raise without impairing the parties' ability to conduct discovery in an expeditious fashion.

Intervention, however, is not justified. Intervention as of right is not warranted for several reasons. *First*, Movants do not have a protectable legal interest in the continued use of racial preferences. Unlike Plaintiff's members, whose equal-protection and Title VI rights are jeopardized by the discriminatory policies of Defendants ("UNC-Chapel Hill"), Movants would not suffer a cognizable injury if UNC-Chapel Hill discontinued the use of racial preferences, either voluntarily or in compliance with an order from this Court. The Supreme Court has made clear that there is no legal right to preference on the basis of race. *See Schuette v. Coal. to Defend Affirmative Action, Integration & Immigrant Rights & Fight for Equal. by Any Means Necessary (BAMN)*, 134 S. Ct. 1623 (2014). *Second*, UNC-Chapel Hill will adequately represent any conceivable interest Movants might possess. UNC-Chapel Hill and Movants share the same ultimate goal—the rejection of Plaintiff's challenge—and UNC-Chapel Hill is vigorously defending this challenge to its admissions system. *Third*, Movants' failure to seek intervention for more than seven months after the Complaint was filed and more than three months after UNC-Chapel Hill filed its Answer has prejudiced the parties. If intervention is granted, the parties will not be able to complete

discovery in the timeframe the Court established; indeed the discovery schedule would need to be extended, likely by several months.

Permissive intervention should be denied for these same reasons. The Court enjoys broad discretion under Rule 24(b) to assess whether permissive intervention is appropriate under the circumstances of this case. Given Movants' lack of a protectable interest, UNC-Chapel Hill's willingness to vigorously defend its admissions system, and the discovery complexities that Movants would introduce, the Court should exercise its discretion to deny permissive intervention and allow Movants instead to participate as *amici curiae*. That is what the district courts did in both *Fisher v. University of Texas at Austin* and *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College* when confronted with similar intervention motions. Following that course allowed the district court in *Fisher* to efficiently manage a complex case while allowing students similarly situated to Movants to share their views on legal issues relevant to the case. The district court in *Harvard College* adopted that same approach after concluding that similarly situated Harvard students and future applicants had no protectable interest. *See Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, --- F. Supp. 3d ---, No. 14-14176, 2015 WL 3683230 (D. Mass. June 15, 2015) (Doc. 52) (copy attached as **Exhibit A**). The Court should follow the lead of those courts by denying the Motion and affording Movants status as *amici curiae*.

### III. ARGUMENT

#### A. Movants Are Not Entitled To Intervention As Of Right

"Applicants to intervene as of right must meet all four of the following requirements: (1) the application to intervene must be timely; (2) the applicant must have an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation." *Hous. Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). Because Movants must meet all four of these requirements, the failure to satisfy any one of them dooms their request to intervene as of right. *See id.* Here, Movants cannot meet any of the preconditions to intervention as of right.

##### 1. Movants lack a "significantly protectable interest" in this action.

Although Rule 24 does not specify what type of interest a party must have to intervene as a matter of right, the Supreme Court has recognized that "'[w]hat is obviously meant ... is a significantly protectable interest.'" *Donaldson v. United States,* 400 U.S. 517, 531 (1971). Thus, "a general interest in the subject matter of pending litigation does not constitute a protectable interest within the meaning of Rule 24(a)(2). To be protectable, the putative intervenor's claim must bear a close relationship to the dispute between the existing litigants and therefore must be direct, rather than remote or contingent." *Dairy*

*Maid Dairy, Inc. v. United States*, 147 F.R.D. 109, 111 (E.D. Va. 1993) (citing 3B *Moore's Federal Practice* ¶ 24.07[2]).

Movants lack a "significantly protectable interest" in this action and hence are unable to show that denial of intervention threatens to impair their rights. As a preliminary matter, Movant's interest is not at all direct; it "is indirect, as it is derivative of [the university's] right to consider race in its admissions process." *Students for Fair Admissions, Inc.*, 2015 WL 3683230 at *6. More importantly, the Supreme Court recently made clear that Movants have *no* protectable interest—let alone a significantly protectable interest—in the continued use of racial preferences at UNC-Chapel Hill or anywhere else. *See Schuette v. Coal. to Defend Affirmative Action, Integration & Immigrant Rights & Fight for Equal. by Any Means Necessary (BAMN)*, 134 S. Ct. 1623 (2014). The *Schuette* plaintiffs, who included "prospective applicants to Michigan public universities," filed suit claiming that a ballot initiative banning the use of racial preferences in admissions violated their legal rights. *Id.* at 1629-30. The Court disagreed. While use of racial preferences in admissions is presumptively unconstitutional and thus subject to strict scrutiny, a university's decision to refrain from using or to discontinue use of such racial preferences is *never* illegal. *See id.* at 1629-36. As the Court explained, a university's decision to shift from a race-based admissions system to a race-neutral admissions system does not cause any potential applicant "specific injury of the kind" needed to create a protectable legal interest. *Id.* at 1636. The Equal Protection Clause could never "forbid" a university "from banning a practice that the Clause barely—and only provisionally—permits." *Id.* at 1639

5

(Scalia, J., concurring in the judgment). Indeed, even the dissent in *Schuette* (which objected to the particular way in which Michigan pursued the change) agreed that a university is perfectly free to eliminate racial preferences in admissions without offending the Constitution. *See id*. at 1652-53, 1669-70 (Sotomayor, J., dissenting).

*Schuette* thus is fatal to Movants' assertion of a significantly protectable legal interest. Movants claim to have an interest "in having their applications considered under a holistic admissions process that includes appropriate consideration of race and thus complies with Title VI and the Constitution." Memorandum of Law in Support of Proposed Defendant-Intervenors' Motion to Intervene ("Memo") at 8. By reaffirming that racial preferences are presumptively unconstitutional and holding that a university's decision to discontinue use of racial preferences is *never* illegal, *Schuette* makes plain that Movants would lack any legal interest in objecting even if UNC-Chapel Hill voluntarily decided to discontinue racial preferences. *See Schuette*, 134 S. Ct. at 1629-36; *see also Students for Fair Admissions, Inc.*, 2015 WL 3683230 at *6 (recognizing that Harvard students and applicants "have no constitutional right to have their race considered by Harvard") (internal quotation omitted).

Movants' legal rights are no greater because that same question arises here in the context of a lawsuit seeking to compel UNC-Chapel Hill to discontinue racial preferences in admissions. Whether UNC-Chapel Hill's challenged conduct is ended voluntarily or by court order, the end result would be a race-neutral admissions system at UNC-Chapel Hill that would in no way disparage the rights of any applicant for undergraduate admission,

6

including Movants. *See id.* ("Plaintiff's interest in preventing Harvard from considering race in its admissions decisions is qualitatively different from the proposed-intervenors' interest in supporting Harvard's admissions policies. The former gives rise to a constitutional claim, while the latter does not.").

Finally, although whether Rule 24(a)(2) requires Movants to have Article III standing to intervene as of right remains an open question, *see Diamond v. Charles*, 476 U.S. 54, 69 (1986), "in the ordinary case, an applicant who satisfies the 'interest' requirement of the intervention rule is almost always going to have a sufficient stake in the controversy to satisfy Article III as well." *Cotter v. Massachusetts Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31, 33 (1st Cir. 2000).[1] Movants clearly lack Article III standing given that they could not sue UNC-Chapel Hill for discontinuing the use of racial preferences in admissions. That alone is a powerful signal that intervention as of right should be denied. But Movants' lack of injury provides an additional reason to deny intervention as of right, because standing certainly would be required to continue the case in the event UNC-Chapel Hill declined to appeal an adverse judgment or settled the case. *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) ("[S]tanding 'must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance.'") (quoting *Arizonans for Official English v. Arizona,* 520 U.S. 43, 64

---

[1] In an unpublished opinion, the Fourth Circuit has stated that a movant seeking intervention as of right "must have standing to assert his claim in a separate action." *Patterson v. Shumate*, 912 F.2d 463 (4th Cir. 1990) (table), 1990 WL 122240, at *2.

7

(1997)). That Movants would lack appellate standing further counsels against granting intervention as of right.

### 2. UNC-Chapel Hill adequately represents Movants' interests.

Even assuming that Movants have a significantly protectable interest in the continued use of racial preferences, UNC-Chapel Hill will adequately represent that interest. As the Fourth Circuit has explained, "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented." *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Reichhold, Inc.*, No. 1:06CV939, 2008 WL 90186 (M.D.N.C. Jan. 8, 2008) (same). Movants may overcome this presumption only by demonstrating "adversity of interest, collusion, or nonfeasance." *Westinghouse Elec.*, 542 F.2d at 216.

The presumption applies here. Movants' ultimate objective in intervening is the rejection of SFFA's claim and the continued use of racial preferences in undergraduate admissions at UNC-Chapel Hill. *See* Memo at 6 (highlighting Movants' interest in a "comprehensive defense of UNC-Chapel-Hill's consideration of race in admissions"); *id.* at 9-10 (explaining that Movants seek to intervene to "defend[] a program that enhances their fair chance for admission to UNC-Chapel Hill" and "ensur[es] that future applications

are considered under a holistic process that includes the lawful consideration of race"). UNC-Chapel Hill, of course, shares that ultimate objective.

Movants cannot overcome the presumption. They do not even suggest collusion or nonfeasance. Rather, they claim to have adversity of interest because they disagree with certain aspects of UNC-Chapel Hill's admissions system, including legacy preferences, early action admissions, and reliance on standardized tests. *See id*. at 17-18. Movants, however, have not sought intervention to challenge these policies—nor could they. Moreover, Movants' interest in exposing the allegedly disparate impact of UNC-Chapel Hill's use of legacy preferences, early action admissions, and standardized tests "is already represented in this case, if not by [the university], then by SFFA." *Students for Fair Admissions, Inc.*, 2015 WL 3683230 at *9; *see* Compl. ¶¶ 5, 87-98, 134-45 (highlighting the effect of standardized testing, legacy preferences, and early action admissions on racial diversity at UNC-Chapel Hill).

However they dress up their argument, Movants seek intervention to defend UNC-Chapel Hill's use of race in admissions decisions. Any policy dispute between Movants and UNC-Chapel Hill is beyond the scope of this case. At most, Movants might offer additional arguments, Memo at 12, for why, in their view, it is important to retain racial preferences in undergraduate admissions, *i.e.*, the ultimate objective they and UNC-Chapel Hill share. But that is not a basis for intervention as of right, *see Stuart v. Huff*, 706 F.3d 345, 353 (4th Cir. 2013) ("[D]isagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy."); *United States v. N.*

9

Case 1:14-cv-00954-LCB-JLW   Document 50   Filed 07/21/15   Page 9 of 19

*Carolina*, No. 1:13CV861, 2014 WL 494911, at *3 (M.D.N.C. Feb. 6, 2014) (same); *Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004) ("It is not sufficient that the party seeking intervention merely disagrees with the litigation strategy or objectives of the party representing its interests."), especially "[g]iven the relative weakness of [Movants'] purported interests," *Students for Fair Admissions, Inc.*, 2015 WL 3683230 at *10. It was precisely these types of arguments that resulted in the denial of intervention in *Fisher* and in *Harvard College*. *See* Order at 2, *Fisher v. Univ. of Texas at Austin*, No. A-08-CA-263-SS, (W.D. Tex. Aug. 11, 2008) (Doc. 83) (copy attached as **Exhibit B** hereto) ("Specifically, the Court finds movants' interests adequately represented by the existing parties, specifically the defendants, in this litigation. The Court also finds denial of the motions to intervene to be in the best interest of an efficient resolution of this case."); *Students for Fair Admissions, Inc.*, 2015 WL 3683230 at *10 ("[T]he Court notes that any unique arguments [Movants] wish to advance can be submitted via *amicus* briefs and [supporting] personal declarations."). If there was adequacy of representation in *Fisher* and *Harvard College*, there is adequacy of representation here.

In fact, this is exactly the type of intervention application of which a district court should be especially wary; "piling on parties" can "result in delay as parties and court expend resources trying to overcome the centrifugal forces springing from intervention, and prejudice will take the form not only of the extra cost but also of an increased risk of error." *Mass. School of Law at Andover, Inc. v. United States*, 118 F.3d 776, 782 (D.C. Cir. 1997). A district court that grants party status to those who "only marginally satisfy the

10

standing requirements" and are not "truly aggrieved" will be "repeatedly required to respond to vague hypotheticals and speculation rather than concrete and actual harms." *Ind. Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 825 n.75 (S.D. Ind. 2006).

Finally, Movants' suggestion that UNC-Chapel Hill is not sufficiently motivated or not politically inclined to defend the use of racial preferences in admissions, *see* Memo at 14-15, 16-17, is untenable. As Movants acknowledge, "'where the party who shares the intervenor's objective is a government agency, the intervenor has the burden of making a strong showing of inadequacy.'" Memo at 16 (quoting *Stuart v. Huff*, 706 F.3d 345, 350 (4th Cir. 2013)).[2]

Moreover, UNC-Chapel Hill, which is represented jointly here by the North Carolina Department of Justice and a major international law firm, has made clear from the outset of this case and throughout that it will vigorously defend its admissions system. *See Asian Students Allege Entrance Discrimination At UNC, Harvard*, ABC11 Eyewitness News (Nov. 17, 2014) ("UNC issued a statement on the lawsuit Monday from Rick White,

---

[2] Although Movants suggest that this heightened burden applies only where the government agency is called upon to defend a *statute* it administers, *see* Memo at 16-17, Movants cite no case from anywhere in this Circuit to support this limiting proposition. Nor does *Stuart* itself support such a limitation. If anything, *Stuart* confirms that the heightened burden applies *anytime* a would-be intervenor is aligned with a governmental agency, because one of the federal appellate decisions *Stuart* relies on in endorsing this heightened burden involved a case like this one, where the proposed intervenor was aligned with governmental agencies defending their conduct against alleged violations of federal law. *See Stuart*, 706 F.3d at 350 ("find[ing] persuasive" and adopting the heightened burden applied by several sister circuits) (citing, among other cases, *Wade v. Goldschmidt,* 673 F.2d 182, 186 n.7 (7th Cir. 1982)).

Associate Vice Chancellor for Communications and Public Affairs: 'The University stands by its current undergraduate admissions policy and process. … [T]he University continues to affirm the educational benefits diversity brings to students, as well as the importance of preparing students for a diverse society and assuring a pool of strong state leaders by admitting undergraduates from every background.'"), *available* at http://abc11.com/education/asian-students-allege-entrance-discrimination-at-unc-harvard/398639/; Answer at 3 ("It is expressly denied that Defendants unlawfully discriminate in any aspect of UNC-Chapel Hill undergraduate admissions[.]"); *see also* Ans. ¶¶ 7, 20, 198, 205, 215. Furthermore, UNC-Chapel Hill has championed the fact that it employs racial preferences in undergraduate admissions, emphasizing its repeated affirmations that using race in admissions is "essential" to its mission. *See* Brief of *Amicus Curiae* University of North Carolina at Chapel Hill Supporting Respondents at 9, *Fisher v. University of Texas at Austin*, No. 11-345 (U.S. filed Aug. 9, 2012). There is no basis to suppose that UNC-Chapel Hill is going to suddenly and voluntarily abandon a practice it deems essential to its institutional mission. And, given their lack of standing, Movants would have no recourse even if UNC-Chapel Hill did.

### 3. Movants' application is untimely.

Although this action was filed on November 18, 2014, Movants delayed seeking intervention until June 30, 2015—more than seven months later. Movants claim they could have not sought intervention earlier because UNC-Chapel Hill did not identify the "list of areas and subjects on which they plan to conduct discovery," until they submitted their

12

Rule 26(f) Report on May 4, 2015. Memo at 6. But UNC-Chapel Hill made its position regarding this lawsuit publicly known from the outset, and certainly no later than when it filed its Answer on March 24, 2015—more than three months before Movants sought intervention. Much shorter delays have resulted in findings of untimeliness. *See, e.g.*, *NAACP v. New York*, 413 U.S. 345, 367 (1973) (motion to intervene filed 17 days after "the date [movants] allegedly were first informed of the pendency of the action" was deemed "untimely"). Movants were obligated "to proceed with reasonable dispatch to protect [their] interests." *R & G Mortgage Corp. v. Fed. Home Loan Mortgage Corp.*, 584 F.3d 1, 9 (1st Cir. 2009); *Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) (citation omitted) ("[T]imeliness is a 'cardinal consideration' of whether to permit intervention."). They failed to do so.

More fundamentally, the existing parties will be "prejudiced by the failure of would-be intervenors to act in a timely fashion." *Fiandaca v. Cunningham*, 827 F.2d 825, 834 (1st Cir. 1987) (citation and quotations omitted). Between March 24, 2015 and May 4, 2015, the parties worked diligently to produce a discovery schedule that would lead to as expeditious a resolution as possible of this complex case. Although the parties were unable to agree on the length of discovery, the Court placed the case on the "exceptional" case-management track and ordered a discovery period of 9 months. This discovery period will need to be revisited and expanded if Movants are permitted to intervene. Movants claim they will accept the established schedule. *See* Memo at 6. But they have made clear that they plan to participate extensively in discovery. Though they try to downplay the extent

to which their participation will complicate discovery, it is apparent that Movants intend to participate extensively in discovery by propounding written interrogatories, taking multiple depositions, and submitting expert testimony. *Id.* (stating that Movants intend to present "expert testimony" and fact discovery that they believe will not "significantly increase[]" the "number of depositions and the mount of written discovery"). As a result, the established discovery schedule likely would need to be expanded by at least several months if Movants are granted intervention to allow for extra time to review, conduct additional fact discovery (if necessary), rebut additional expert reports, and depose those additional experts. *See Students for Fair Admissions, Inc.*, 2015 WL 3683230 at *12 ("[T]he addition of [several] additional parties propounding discovery, presenting expert testimony, cross-examining witnesses, and participating in all other aspects of the adversary process would inevitably slow and unduly complicate the progress of this litigation."). That is reason enough to deny the request.

### B. Movants Should Be Allowed To Participate As *Amici Curiae* Instead Of Being Granted Permissive Intervention.

"The discretion afforded to the district court under Rule 24, substantial in any event, is even broader when the issue is one of permissive intervention." *Puerto Rico Tel. Co. v. San Juan Cable, LLC*, 298 F.R.D. 28, 30 (D.P.R. 2014). Indeed, "[i]f there is no right to intervene under Rule 24(a), it is wholly discretionary with the court whether to allow

14

intervention under Rule 24(b)." *Grogan v. American Brands, Inc.*, 70 F.R.D. 579, 584 (M.D.N.C. 1976) (internal quotations omitted).

Permissive intervention should be denied here because, as explained above, the parties will be prejudiced by Movants' participation in discovery. *See Hill v. Western Elec. Co., Inc.*, 672 F.2d 381, 386 (4th Cir. 1982) (internal quotations omitted) (noting that, when considering a motion for permissive intervention, the "most important consideration (in passing on an application for intervention) is whether the delay has prejudiced the other parties"); *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 260 (M.D.N.C. 1988) ("Notwithstanding the existence of common questions of law or fact, a request to intervene may be denied when granting the motion would unduly expand the litigation.").

Moreover, denying permissive intervention will not harm Movants because they have no protectable interest at stake in this litigation and UNC-Chapel Hill will adequately protect any conceivable interest they do have. *See* 6 James Wm. Moore et al., *Moore's Federal Practice* ¶ 24.10[2][d] (2000) ("Courts are understandably reluctant to grant permissive intervention to an applicant where interests are already fully represented by one of the existing parties."). In short, "[i]ntervention of the type which is sought in this action would serve no useful purpose, would cause unnecessary delay and time expenditure, and would thus unduly prejudice the adjudication for all concerned." *Grogan v. American Brands, Inc.*, 70 F.R.D. 579, 584 (M.D.N.C. 1976) (internal quotations omitted). Because movants would only "muddy the waters unnecessarily," the Court should deny permissive intervention. *Id.*; *see also Students for Fair Admissions, Inc.*, 2015 WL 3683230 at *12

15

("[T]he Court has declined to permit discretionary intervention precisely because the addition of fourteen additional parties propounding discovery, presenting expert testimony, cross-examining witnesses, and participating in all other aspects of the adversary process would inevitably slow and unduly complicate the progress of this litigation.").

Indeed, even where "there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." *Grogan v. American Brands, Inc.*, 70 F.R.D. 579, 584 (M.D.N.C. 1976) (internal quotations omitted); *see also Hopwood v. State*, No. CIV. A-92-CA-563-SS, 1994 WL 242362, at *2 (W.D. Tex. Jan. 20, 1994) (citations omitted) ("[T]he existence of a common question of law or fact will not automatically entitle a movant to intervene."). The court still retains "the discretion to determine the fairest and most efficient method of handling the lawsuit." *Hopwood v. State*, No. CIV. A-92-CA-563-SS, 1994 WL 242362, at *2 (W.D. Tex. Jan. 20, 1994) (citations omitted); *see also id*. at *1 (denying intervention in part because "as a practical matter, the prospective intervenors and the Defendants have the same ultimate objective in this lawsuit—the preservation of the admissions policy and procedure currently used by the law school").

Here, the fairest and most efficient path forward is to allow Movants to participate as *amici curiae*. Movants are chiefly concerned with matters of law and policy; at bottom, they wish to advocate in support of UNC-Chapel Hill's policy of considering race as a factor in undergraduate admissions decisions and to share with the Court their views and perspectives on this policy. *See generally* Movants' Memo & Exhibits 1.1 to 1.9. That is

precisely the kind of presentation that can be shared through participation as *amici curiae*. *See Stuart v. Huff*, 706 F.3d 345, 355 (4th Cir. 2013) ("While a would-be intervenor may prefer party status to that of friend-of-court, the fact remains that amici often make useful contributions to litigation. The availability of such alternative avenues of expression reinforces our disinclination to drive district courts into multi-cornered lawsuits by indiscriminately granting would-be intervenors party status and all the privileges pertaining thereto."); *see also* Order at 2, *Fisher v. Univ. of Texas at Austin*, No. A-08-CA-263-SS (W.D. Tex. Aug. 11, 2008) (Doc. 83) ("[A]t the conclusion of the trial on the merits in this case, each group of proposed interveners will be permitted to file an *amicus* brief no more than twenty (20) pages in length."); *Students for Fair Admissions, Inc.*, 2015 WL 3683230 at *11 ("The Court finds that *amicus* status will be sufficient for the Students to present their views and arguments in this case.").

## IV. CONCLUSION

For all of these reasons, Plaintiff respectfully requests that the Court deny the Movants' Motion to Intervene.

Respectfully submitted this 21st day of July, 2015.

/s/ Alan M. Ruley
Alan M. Ruley, N.C. State Bar No. 16407
/s/ Andrew A. Freeman
Andrew A. Freeman, N.C. State Bar No. 41248
Bell, Davis & Pitt, P.A.
Post Office Box 21029
Winston-Salem, N.C. 27120-1029
Telephone: 336/722-3700
Facsimile: 336/722-8153
Email: aruley@belldavispitt.com

Email: afreeman@belldavispitt.com
Attorneys for Plaintiff
STUDENTS FOR FAIR ADMISSIONS, INC.


Thomas R. McCarthy
William S. Consovoy
J. Michael Connolly
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Boulevard
Suite 700
Arlington, Virginia 22201
(703) 243-9423
will@consovoymccarthy.com
tom@consovoymccarthy.com
mike@consovoymccarthy.com
Attorneys (admitted *pro hac vice*) for Plaintiff
STUDENTS FOR FAIR ADMISSIONS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2015, I filed a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties through the Court's CM/ECF system.

/s/ Alan M. Ruley
Alan M. Ruley, N.C. State Bar No. 16407