IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:14-CV-954

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNIVERSITY OF NORTH CAROLINA et al., <br><br> Defendants. | DEFENDANTS' RESPONSE TO MOTION TO INTERVENE |

## INTRODUCTION

Five high school students who have expressed an intent to apply to the University of North Carolina at Chapel Hill (the "University"), together with four current University students, seek to intervene as parties to this case in defense of the University's admissions program "to ensure that the UNC-Chapel Hill educational experience continues to be enhanced by a diverse student body." (Dkt. 40 at 4) The University values the perspectives and experiences of these movants, appreciates their desire to defend the University's admissions policy, and welcomes their participation in the case in some capacity. The movants' chosen vehicle to participate in the case, however, raises concerns about the case management challenges certain to arise if these movants (along

with other potential intervenors who may seek intervention in the future)[1] are granted full party status.

The University stands behind its admissions process and is ready and able to vigorously defend its constitutionality. Accordingly, movants' interests are adequately represented and the standards for intervention as of right are not met. Moreover, although the Court has the discretion to grant permissive intervention, allowing these movants and other interested parties to be involved in the case *as parties* would significantly complicate the litigation, particularly with respect to the conduct of discovery and management of privacy issues. Thus, if the Court is inclined to grant permissive intervention, the University respectfully requests that movants' participation in the case be subject to reasonable limitations for the efficient conduct of the case.

In the parallel case filed by Plaintiff against Harvard, potential intervenors also represented by the Lawyers' Committee for Civil Rights Under Law were denied the opportunity to intervene. The court there determined that their perspectives could be heard more properly through their participation as amicus curiae. Here as well, allowing participation in that manner would allow for the movants' views to be heard without unduly complicating or delaying the case.

---

[1] These movants are not the only students and potential students who may assert an interest in the litigation. Indeed, counsel for Defendants understands that another organization is considering a motion to intervene in this case on behalf of a different group of potential intervenors. It might be difficult to justify inclusion of one group of students over another, but the potential complications from multiple intervenors (and their various lawyers) are substantial.

# ARGUMENT

## I. Movants Should Not Be Granted Intervention As Of Right, Because Their Interests Are Adequately Represented By Defendants.

Federal Rule of Civil Procedure 24(a)(2), providing for intervention as of right, states that:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

The Fourth Circuit has interpreted Rule 24(a)(2) to provide for intervention only if three conditions are met. *Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991). First, the proposed intervenors must prove an interest in the subject matter of the litigation. *Id.* at 260-61; *United States v. North Carolina*, No. 1:13CV861, 2014 WL 494911, at *2 (M.D.N.C. Feb. 6, 2014). Second, the proposed intervenors must show that the protection of their interests would be impaired because of the litigation. *Teague*, 931 F.2d at 261; *North Carolina*, 2014 WL 494911, at *2. Finally, the proposed intervenors must demonstrate that their interests are not being adequately represented by the existing Defendants. *Teague*, 931 F.2d at 261; *North Carolina*, 2014 WL 494911, at *2. Although the Fourth Circuit construes the standard for intervention liberally, the proposed intervenors still must meet every element of the test. *See Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986); *see also Stuart v. Huff,* No. 1:11-CV-804, 2011 WL 6740400, at *1 (M.D.N.C. Dec. 22, 2011) *aff'd*, 706 F.3d 345 (4th Cir. 2013) (same).

3

Here, the movants cannot demonstrate that their interests are not being adequately represented by the University and its counsel. "When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented. . . ." *Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214, 216 (4th Cir. 1976). In the present litigation, adequacy is presumed, because movants and the existing Defendants have precisely the same goal: a determination that the University's admissions process complies with the Fourteenth Amendment and other federal law. Both movants and the University share a commitment to diversity in admission and support the University's current admissions policy. *Cf. Stuart*, 2011 WL 6740400, at *3 (denying intervention and finding adequacy of representation where both proposed intervenors and State sought to uphold abortion law).

Moreover, the Fourth Circuit has held that movants "must mount a strong showing of inadequacy," where the party is a governmental agency. *Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013). "To hold otherwise," the Fourth Circuit has emphasized, "would place a severe and unnecessary burden on government agencies as they seek to fulfill their basic duty of representing the people in matters of public litigation." *Id.* Here, the University is a state agency, *Huang v. Bd. of Governors of the Univ. of N.C.*, 902 F.2d 1134, 1139 (4th Cir. 1990), and the University Defendants are represented by the North Carolina Department of Justice, another state agency, as lead counsel. Given the governmental status of the University, any showing of inadequacy must be strong.

Movants' contention that this high standard should not apply simply because the University is defending the constitutionality of a duly-enacted program rather than a

4

statute is unavailing. As with *Stuart* and the other cases in which this high burden has been applied, this case is a "public law litigation that may affect great numbers of citizens." *See Stuart*, 706 F.3d at 351. The University has the responsibility, by statute, of serving the public interest, as it is "dedicated to the service of North Carolina and its people," N.C.G.S. § 116-1(b); thus, the public representation rationale for a high standard is squarely applicable.

In any event, the movants can neither overcome the presumption of adequacy nor make any showing of inadequacy as required for intervention as of right. To rebut the presumption of adequacy, movants ordinarily must show "adversity of interest, collusion, or nonfeasance." *Westinghouse*, 542 F.2d at 216.

Movants do not claim collusion or nonfeasance. They contend only that there is adversity of interest, but such adversity does not exist based on differences of opinion related to strategy where Defendants share the movants' ultimate goal. The movants maintain that there is a divergence of interests because they would develop record evidence and highlight particular factors that they speculate the University might not choose to focus on, such as a history of discrimination against minorities and current campus climate issues. (Dkt. 40 at 14-15)

Movants' assertions about Defendants' strategy choices are premature at this stage of the litigation.[2] Regardless, differences "over how to approach the conduct of the

---

[2] Movants' attempt to rely on the Rule 26(f) report's list of subjects about which the parties anticipate taking discovery is misplaced. Not only is that document an early effort to distill topics for discovery in the case, but the subjects about which Defendants may seek discovery
*(cont'd)*

5

litigation," including which evidence to develop and present, do not demonstrate inadequacy of representation. *Stuart*, 706 F.3d at 353-54; *see also Perry v. Prop. 8 Official Proponents,* 587 F.3d 947, 954 (9th Cir. 2009)*; Saldano v. Roach,* 363 F.3d 545, 555 (5th Cir. 2004); *Chiglo v. City of Preston,* 104 F.3d 185, 188 (8th Cir. 1997). As the Court recognized in *Stuart*:

> It is not unusual for those who agree in principle to dispute the particulars. To have such unremarkable divergences of view sow the seeds for intervention as of right risks generating endless squabbles at every juncture over how best to proceed. There is much to be said, frankly, for simplifying rather than complicating the litigation process.

*Stuart*, 706 F.3d at 354.

The movants also contend that the University could reverse course on their defense of the admissions program due to political influences. (Dkt. 40 at 17) This claim however is pure speculation and, in any event, any such possibility does not support movants' intervention now. Despite movants' allegations about political changes in the UNC System, Defendants have demonstrated, through their negotiation of the dismissal of certain claims by stipulation, Dkt.29, the filing of a detailed and thorough answer, Dkt. 30, the retention of a national law firm to assist with the litigation, and otherwise, that they are committed to forcefully defending the University's admissions program. The Harvard court addressed a similar contention by the proposed intervenors in that case and

---

*(cont'd from previous page)*
of Plaintiff would not necessarily overlap with the subjects for which Defendants will seek to present their own evidence. For example, there is no reason Defendants would seek discovery from Plaintiff – a non-profit organization representing a rejected applicant – about historical discrimination at the University or the campus climate.

rejected it, noting that if the remote possibility Harvard decided to settle or fails to appeal an adverse ruling, the movants could renew their intervention request at that time. (Ex. 1, *Students for Fair Admissions v. President and Fellows of Harvard*, No. 14-cv-14176-ADB (D. Mass) ("Harvard lawsuit"), Order, Dkt. 52 at 16)

Movants further assert that their interest in the litigation is more specific than that of the University. Notably, the Fourth Circuit has squarely rejected the argument in support of intervention that, as the class of beneficiaries protected by a law, the interests in defending it are "stronger" and more "specific" than the state's general interest. *Stuart*, 706 F.3d at 353.

The motion to intervene here follows similar motions in other cases involving challenges to the consideration of race in the admission process. Courts considering those motions in recent cases have rejected the arguments being made by intervenors here. In the Harvard lawsuit, the court rejected the proposed intervenors' similar arguments and determined that their interests were adequately represented by Harvard. *See* Ex. 1, Harvard lawsuit, Order, Dkt. 52, at 15-20. Likewise, in the *Fisher* case, the district court denied motions to intervene where the potential intervenors argued that they would present evidence on issues the defendants might not raise. *See* Ex. 2, *Fisher v. Univ. of Texas at Austin*, No. 08-cv-263 (W.D. Tex.) ("*Fisher* lawsuit"), Cortez Mot. to Intervene, Dkt. 72 at 19 (noting that the defendants might "be hesitant to advance any relevant arguments advocating affirmative action as a remedial step that would expose their own history of past discrimination or to address ongoing problems with race relations on the campus"); Ex. 3, *Fisher* lawsuit, Stanton Mot. to Intervene, Dkt. No. 63

7

Case 1:14-cv-00954-LCB-JLW Document 51 Filed 07/22/15 Page 7 of 13

at 18 ("Proposed Intervenors may present evidence regarding … areas of concern that Defendants may be reluctant, if not unwilling to raise," including "the disparate impact on African-American applicants of other admissions criteria used by UT" and "existing and past racial tensions and discrimination experienced by African-American students at UT[.]")., Ex. 4, *Fisher* lawsuit, Order, Dkt. No. 83 (denying motions to intervene). So, too, here: Defendants' representation is adequate and intervention as of right should be denied.

## II. Intervention Could Delay The Case And Heighten Already Difficult Privacy Issues; Thus, If The Court Were To Grant Permissive Intervention, It Should Reasonably Limit Participation In The Case.

Under Federal Rule 24(b), a district court may grant permissive intervention when the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). District courts are "vested with substantial discretion to deny permissive intervention where inappropriate." *Shaw v. Hunt*, 154 F.3d 161, 168 (4th Cir. 1998). In exercising this discretion, district courts are required to consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see also North Carolina*, 2014 WL 494911, at *5 (denying permissive intervention where participation of the intervenors would "consume additional and unnecessary judicial resources, further complicate the discovery process, potentially unduly delay the adjudication of the case on the merits, and generate little, if any, corresponding benefit to the existing parties").

In *Stuart*, the Court of Appeals affirmed the district court's denial of a motion to intervene. 706 F.3d at 355. The district court had denied permissive intervention
8

Case 1:14-cv-00954-LCB-JLW   Document 51   Filed 07/22/15   Page 8 of 13

because (1) "[a]dding three groups of intervenors would necessarily complicate the discovery process and consume additional resources of the court and the parties"; (2) intervention would "likely result in undue delay in an adjudication on the merits"; and (3) there was no countervailing benefit, because the existing defendants were pursuing the same ultimate objectives as the proposed intervenors. *Id.*

The same reasoning should control here. Adding two groups of intervenors (students and potential applicants) would pose significant case management challenges and privacy concerns. At Defendants' request, the Court placed this case on the Middle District's exceptional case management track and allowed nine months total of fact and expert discovery. (Dkt. 34 & 33) The parties have each served written discovery and have otherwise been moving forward in accordance with the schedule. If movants are permitted to participate in discovery, it could add to the parties' discovery burdens, complicate the discovery process (by adding multiple layers of coordination challenges), and cause unnecessary delays. Furthermore, Plaintiffs have requested access to highly personal and sensitive materials, including applications for admission that are protected under the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, and North Carolina law, N.C.G.S. § 132-1.1(f). Allowing other students and potential applicants to access these materials elevates the privacy intrusion and, for potential applicants, poses the possibility of an unfair advantage in the admissions process.

If the Court nonetheless decides to grant permissive intervention, it has full discretion to impose limitations on the intervenors' participation. *See e.g.*, Wright & Miller at al., 7C Fed. Prac. & Proc. Civ. § 1922 (3d ed.) ("Since the trial court has full

9

Case 1:14-cv-00954-LCB-JLW   Document 51   Filed 07/22/15   Page 9 of 13

discretion to grant or deny an application for permissive intervention under Rule 24(b), it may if it chooses impose conditions on its grant of the application. There are many reported instances in which conditions of this kind have been imposed."); *Backus v. S. Carolina*, No. 3:11-CV-03120-HFF, 2012 WL 406860, at *3 (D.S.C. Feb. 8, 2012) (conditioning a grant of permissive intervention on the condition that the intervenor comply with the existing scheduling order). If the Court were to grant permissive intervention, therefore, Defendants respectfully request that the Court limit the participation of intervenors to briefing on dispositive motions and the submission of declarations and order that movants not have access to any confidential information that may be produced in discovery between the parties.

### III. As the Court Determined In The Harvard Case, These Movants Can Meaningfully Participate In The Case As Amici Curiae.

Where, as here, proposed intervenors' interests are aligned with an existing party but they nonetheless may possess helpful information and views, courts may deny intervention and instead allow the third parties to appear in the litigation as amicus curiae. *Cf. Stuart*, 706 F.3d at 355 ("Appellants retain the ability to present their views in support of the Act by seeking leave to file amicus briefs."); *North Carolina*, 2014 WL 494911, at *5 (denying intervention but recognizing that the proposed intervenors offered a "useful perspective and expertise" and stating that they were free to seek leave to file an amicus brief to raise a "unique contention" or additional argument). As the *Stuart* court explained:

> While a would-be intervenor may prefer party status to that of friend-of-court, the fact remains that amici often make useful

10

> contributions to litigation. The availability of such alternative avenues of expression reinforces our disinclination to drive district courts into multi-cornered lawsuits by indiscriminately granting would-be intervenors party status and all the privileges pertaining thereto.

*Id.*

In the parallel litigation brought by Plaintiff against Harvard, a group of current Harvard students and potential applicants, who were similarly represented by the Lawyers' Committee for Civil Rights Under Law, moved to intervene in defense of Harvard's admissions policy. In a detailed opinion, the court denied the motion to intervene as of right, denied permissive intervention, and noted that the potential intervenors could participate in the case as amici curiae. (Ex. 1, *Harvard* lawsuit, Dkt. 52 at 1-23) Likewise, in the *Fisher* case, the court determined that potential intervenors could participate in the case as amicus curiae. (Ex. 4, *Fisher* lawsuit, Order, Dkt. 83 at 2)

In short, allowing the movants to participate as amicus curiae would permit them to provide the Court with their views—which the University welcomes—but without the complexity of allowing them the rights of parties.

## **CONCLUSION**

For all of these reasons, Defendants respectfully request that the Court deny the motion to intervene and instead grant the movants' leave to participate in the case as amici curiae.

11

Respectfully submitted this 22nd day of July, 2015.

| | |
|---|---|
| /s/ Michael Scudder | ROY COOPER |
| Michael Scudder | Attorney General |
| Skadden, Arps, Slate, Meagher & Flom, LLP | |
| 155 North Wacker Drive | /s/ Stephanie Brennan |
| Chicago, IL 60606-1720 | Stephanie Brennan |
| (312) 407-0877 | Special Deputy Attorney General |
| E: michael.scudder@skadden.com | NC State Bar No. 35955 |
| | E: sbrennan@ncdoj.gov |
| /s/ Lisa Gilford | /s/ Matthew Tulchin |
| Lisa Gilford | Matthew Tulchin |
| Skadden, Arps, Slate, Meagher & Flom, LLP | Assistant Attorney General |
| 300 South Grand Ave. | NC State Bar No. 43921 |
| Suite 3400 | E: mtulchin@ncdoj.gov |
| Los Angeles, CA 90071 | NC Department of Justice |
| (213) 687-5130 | Post Office Box 629 |
| E: lisa.gilford@skadden.com | Raleigh, NC 27602-0629 |
| *Attorneys for Defendants* | T: (919) 716-6920 |
| | F: (919) 716-6764 |
| | *Attorneys for Defendants* |

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2015, I electronically filed the foregoing DEFENDANTS' RESPONSE TO MOTION TO INTERVENE with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CME/ECF users.

This, the 22nd day of July, 2015.

/s/ Stephanie A. Brennan
Stephanie A. Brennan
Special Deputy Attorney General
NC Department of Justice
Post Office Box 629
Raleigh, NC 27602-0629
T: (919) 716-6920
F: (919) 716-6764

*Attorney for Defendants*