EXHIBIT 2

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

2008 JUL 25 PM 2: 11

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY

| | | |
|---|---|---|
| ABIGAIL NOEL FISHER; and RACHEL MULTER MICHALEWICZ | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 1:08-cv-00263-SS |
| STATE OF TEXAS; UNIVERSITY OF TEXAS AT AUSTIN, MARK G. YUDOF, CHANCELLOR OF THE UNIVERSITY OF TEXAS SYSTEM IN HIS OFFICIAL CAPACITY;  DAVID B. PRYOR, EXECUTIVE VICE CHANCELLOR FOR ACADEMIC AFFAIRS IN HIS OFFICIAL CAPACITY; BARRY D. BURGDORF, VICE CHANCELLOR AND GENERAL COUNSEL IN HIS OFFICIAL CAPACITY; WILLIAM POWERS, JR., PRESIDENT OF THE UNIVERSITY OF TEXAS AT AUSTIN IN HIS OFFICIAL CAPACITY; BOARD OF REGENTS OF THE TEXAS STATE UNIVERSITY SYSTEM; JOHN W. BARNHILL, JR. H. SCOTT CAVEN, JR., JAMES R. HUFFINES, JANIECE LONGORIA, COLLEEN MCHUGH, ROBERT B. ROWLING, JAMES D. DANNENBAUM, PAUL FOSTER, PRINTICE L. GARY, AS MEMBERS OF THE BOARD OF REGENTS IN THEIR OFFICIAL CAPACITIES; BURCE WALKER, VICE PROVOST AND DIRECTOR OF UNDERGRADUCATE ADMISSIONS IN HIS OFFICIAL CAPACITY, | § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |
| Defendants. | § § | |

## MOTION TO INTERVENE AS DEFENDANTS AND MEMORANDUM IN SUPPORT

COME NOW, Movants and Proposed Intervenors Sarah Cortez, Lawrence Longoria, Jr.,[1]

Nathan Bunch and Longhorn League of United Latin American Citizens ("Longhorn LULAC,"

---

[1] Movants Sarah Cortez and Lawrence Longoria, Jr., seek to intervene through their Next Friends, Elizabeth Cortez and Lawrence Longoria, respectively.

1

herein) (collectively, "Movants"), and hereby move to intervene in this case for the purpose of defending the right of Latino students, both present and future, to access higher educational opportunities in a diverse setting at the University of Texas at Austin ("UT Austin" or "the University") through its present admissions plan.  Movants seek intervention as of right or, alternatively, by permission under FED. R. CIV. P. 24(a) and FED. R. CIV. P. 24(b), respectively, and in support state the following:

## FACTS

On April 17, 2008, Plaintiffs Abigail Fisher and Rachel Michalewicz filed their Amended Complaint alleging that they were qualified for admission to UT Austin but were denied admission based on their Anglo race.  *See* Pls.' Am. Compl.  Plaintiffs seek a permanent injunction enjoining Defendants' limited use of race in its undergraduate admissions plan and a declaration that Plaintiffs' right to equal protection of the law under the Fourteenth Amendment and their right to be free from discrimination in programs receiving federal assistance under Title VI of the Civil Rights Act of 1964 were violated. *Id.*

The crux of Plaintiffs' argument is that "under-qualified" Latino and African American students are being admitted into UT Austin in lieu of "qualified" Anglo students, and consequently, UT Austin should scale back its admissions of Latino and African American students.  Plaintiffs urge that UT Austin's use of race in its undergraduate admissions plan is unnecessary because the University, among other considerations, "already takes into account the socio-economic status of the applicant's family, whether the applicant lives in a single-parent home, [and] the language spoken at home . . . ."  Pls.' Mem. Supp. Mot. for Prelim. Inj. at 15. Additionally, Plaintiffs allege that UT Austin has already achieved a "critical mass" of Latino and African American students through the Top Ten Percent Plan ("TTPP"), using the term

2

"critical mass" to refer to the *combined* populations of African-American and Latino students without distinguishing the unique challenges each community faces. Am. Tr. Prelim. Inj. Hr'g at 47. In sum, Plaintiffs seek to diminish the limited access of Latino and African American students to UT Austin and deny underrepresented minority students the benefits of a critical mass of Latino and African American students at UT Austin. Accordingly, the presence and voices of Latino students and organizations—who will be directly affected by the outcome of this lawsuit— as intervenors cannot be understated.

Although UT Austin seeks to diversify all aspects of its university, such a focus ignores the true need for an admissions policy aimed at increasing the number and diversity of underrepresented groups, specifically Latino and African American students. As one of the State's two premier flagship universities, it is important for UT Austin to address the underrepresentation of Latino and African American students, secure for them access to a more prosperous future, and develop them into future leaders. Former State Demographer of Texas Dr. Steven Murdock has warned that if existing gaps between Anglos and minorities in educational attainment levels and household income persist, Texas will:

> have a population that not only will be poorer, less well educated, and more in need of numerous forms of state services that its present population but also less able to support such services. It is likely to be less competitive in the increasingly international labor and other markets. [However] if socioeconomic differentials between demographic groups were to be reduced through increased education and other means, Texas' population growth could be a source of increased private and public sector resource. Coupled with such growth would be increased competitiveness and a population whose diversity may create a competitive advantage relative to that of other states in competing in international markets.[2]

The importance of preparing an inclusive and racially diverse student body in higher education was also recognized by the Supreme Court in *Grutter v. Bollinger* when it stated that

---

[2] *See* Steve H. Murdock, *The Texas Challenge in the Twenty-First Century: Implications of Population Change for the Future of Texas* (December 2002), available at http://txsdc.utsa.edu/download/pdf/TxChall2002.pdf.

"[e]ffective participation by members of all racial and ethnic groups in the civic life of our Nation is essential if the dream of one Nation, indivisible, is to be realized."  539 U.S. 306, 331 (2003).  The Court went on to note the link between a diversified educated workforce and the civic participation of our citizenry, stating: "We have repeatedly acknowledged the overriding importance of preparing students for work and citizenship, describing education as pivotal to 'sustaining our political and cultural heritage' with a fundamental role in maintaining the fabric of society."  *Id.* (quoting *Plyler v. Doe,* 457 U.S. 202, 221 (1982)).  The Supreme Court also acknowledged the paramount contributions of diversity identified in a number of amicus briefs filed with the Court, including the amicus filed by retired military officers and civilians in which the Court recognized that "[t]o fulfill its mission, the military 'must be selective in admissions for training and education for the officer corps, *and* it must train and educate a highly qualified, racially diverse officer corps in a racially diverse setting.'"  *Grutter*, 539 U.S. at 331 (citing Brief for Julius W. Becton, Jr. *et al.* as *Amici Curiae* 29 (emphasis in original)).  Despite UT Austin's good intentions to defend its broader vision of diversity, the significance of a *racially* and *ethnically* diversified student body is at the core of the "diversity" needs recognized by the Supreme Court.

The current admissions and enrollment figures at UT Austin, for example, demonstrate the importance of Latino Movants' participation in this case as intervenors.  In the year 2006-07, Latino students comprised over 46 percent of the 4.5 million students in Texas public schools, compared to only 38 percent of the 3.8 million students in 1997-98.[3]  Since its inception in 1997, the TTPP has the opened doors to UT Austin for Latino students.  Nevertheless, Latino students comprised only 19 percent of the freshman student body admitted into UT Austin in 2007-08;

---

[3] *See* Texas Education Agency ("TEA") 2006-07 Academic Excellence Indicator System ("AEIS") Reports, available at http://www.tea.state.tx.us/perfreport/aeis/2007/state.html; http://www.tea.state.tx.us/perfreport/aeis/98/state.html, Section II at 1 (Ethnic Distribution).

4

meanwhile, Anglo students comprised 53 percent of the freshman student body at the University in 2007-08, but only 36.7 percent of the students in the Texas public schools.[4]

Furthermore, although UT Austin has noted its interest in diversity, it is not likely to marshal evidence before the Court demonstrating the perceived negative campus environment for Latino students as a result of low diversity levels. UT Austin, as a public institution, must take into consideration a number of varied interests including alumni, community and political interests. These interests are likely to divert UT Austin's strategy to defend the need for increased diversity of Latino students on campus. Latino Movants urge the Court to grant their intervention so they may defend their personal stake in this case.

## DESCRIPTION OF MOVANTS

Movant and Proposed Intervenor Sarah Cortez is Latina and will be enrolled as a senior in the fall of 2008 at a public high school located in Bexar County, Texas. *See* Decl. of Sarah Cortez, Ex. 1. Movant Cortez is presently ranked in the top ten percent of her class, but is not guaranteed to be in the top ten percent in the final rankings for UT Austin admission purposes determined at the end of the 2008-09 school year. *Id.* She will be the first child in her immediate family to attend a four-year college. *Id.* Movant Cortez desires to attend UT Austin and plans to apply for admission to UT Austin during the upcoming school year. *Id.* Movant Cortez desires to learn alongside a diverse group of students at UT Austin, including a critical mass of Latino students so she does not feel like a spokesperson for her ethnicity. *Id.*

Movant and Proposed Intervenor Lawrence Longoria, Jr., is Latino and will be enrolled as a junior in the fall of 2008 at a Texas public high school located in Bell County, Texas. *See*

---

[4] *See* UT Austin Office of Admissions, *Implementation and Results of the Texas Automatic Admissions Law at The University of Texas at Austin: Demographic Analysis of Entering Freshmen Fall 2007*, available at http://www.utexas.edu/student/admissions/research/ HB588-Report10.pdf; *see supra n.3* for 2006-07 Anglo student enrollment in Texas public schools.

5

Decl. of Lawrence Longoria, Ex. 2. Movant Longoria has not been ranked at this time but, overall, he has performed well in his courses under the Distinguished Achievement Program. *Id.* When Movant Longoria attends college, he will be the third child in his immediate family to attend a four-year college, following two older siblings who attended Notre Dame University and UT Austin, respectively. *Id.* Movant Longoria desires to attend UT Austin and plans to apply for admission to UT Austin during his senior year of high school in 2009-10. *Id.* Movant Longoria has experienced the effects of being isolated as one of only a few Latino students in his advanced classes. *Id.* Movant Longoria desires to learn alongside a diverse group of students at UT Austin, including Latino students so he does not feel isolated or like a spokesperson for his Latino ethnicity. *Id.*

Movant and Proposed Intervenor Nathan Bunch is Latino and enrolled as a junior at UT Austin. *See* Decl. of Nathan Bunch, Ex. 3. Movant Bunch attended a public high school in San Antonio, Bexar County, Texas and was admitted into UT Austin outside of the Top Ten Percent in the fall of 2006. *Id.* Movant Bunch is involved in a number of organizations and activities that address racial and ethnic diversity issues on the UT Austin campus. *Id.* Included among his activities, he serves as Co-Director of Campus Fusion, a group focused on promoting diversity events at the University. *Id.* Movant Bunch has experienced the benefits of the increasing diversity, including the increased presence of Latino students, on the campus. *Id.* Movant Bunch believes that if the consideration of Latino students' race and resulting life experiences is halted by this Court and the Latino and African American student populations decline, the benefits of an increasing racially diverse student body will diminish. *Id.*

Movant and proposed Intervenor Longhorn LULAC is a UT Austin student organization whose purpose is to advance the economic condition, educational attainment, political influence,

6

health and civil rights of the Latino population. *See* Decl. of Miriam Arellano, Ex. 4. Movant Longhorn LULAC includes current UT Austin Latina/o students. *Id.* The organization desires to retain UT Austin's current admissions policy because it helps facilitate the recruitment and admission of Latino students who, in turn, improve the quality of Longhorn LULAC's membership. *Id.* Members of Movant Longhorn LULAC are also interested in learning alongside a critical mass of Latino students and in furthering the diversity of UT Austin through both the TTPP and UT Austin's undergraduate admissions program for students not admitted through the TTPP. *Id.*

## ARGUMENT

Movants respectfully request that this Court grant them intervention in this case due to Plaintiffs' request for injunctive and declaratory relief, which will effectively eliminate the consideration of Latino students' ethnicity by UT Austin's Office of Admissions. Plaintiffs' complaint raises serious questions of law and fact that are vital to Movants' interests both as individuals and as Latino organizations. Notably, the interests of Movants Cortez and Longoria as prospective UT Austin students include the opportunity to attend UT Austin and to reap the educational benefits of learning alongside a critical mass of Latino students. The interests of Movants Nathan Bunch and Longhorn LULAC, either as present Latino students enrolled in UT Austin or as Latino student organizations located at UT Austin, include the right to attend a university in which a critical mass of Latino students exists and to further the diversity of Latino students at UT Austin. Movants' presentation of evidence and argument will assist the Court in rendering its decision on a complete record regarding the substantial interests at stake in this case. Therefore, as further explained below, Movants respectfully urge the Court to grant their intervention either as a matter of right or by permission.

7

## I.   MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT

Upon timely application, anyone shall be permitted to intervene in an action when:

(2) the applicant claims an interest relating to the property or transaction that is the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest, unless the applicant's interest is represented adequately by existing parties.

FED. R. CIV. P. 24(a)(2).  *See also Devlin v. Scardelletti*, 536 U.S. 1, 12 (2002).  As the Fifth

Circuit stated in *United States v. Allegheny-Ludlum Indus., Inc.*, Rule 24(a) was designed to be

flexible, focusing "on the particular facts and circumstances surrounding each application [for

intervention]" and "measured by a practical rather than technical yardstick." 517 F.2d 826, 841

(5th Cir. 1975), *cert. denied*, 425 U.S. 944 (1976).  Under Rule 24(a)(2), proposed intervenors

much satisfy each of the following requirements:

(1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit."

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984)

(quoting *Int'l Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978)).

On the facts set out above, and for the reasons that follow, Movants fully meet the test for

intervention as a matter of right under Rule 24(a)(2).

### A.   Movants' Motion to Intervene is Timely

In determining whether a motion for intervention is timely filed, the Fifth Circuit requires

courts to consider "(1) the length of time applicants knew or should have known of their interest

in the case; (2) prejudice to existing parties caused by applicants' delay; (3) prejudice to

applicants if their motion is denied; and (4) any unusual circumstances." *Ruiz v. Estelle*, 161

F.3d 814, 827 (5th Cir. 1998) (citing *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

The length of time from which timeliness is defined is broad and is not considered to be exact or precisely measureable.  *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977) (quoting *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)).  Timeliness is favored when a motion is filed prior to entry of judgment "as most . . . case law rejecting petitions for intervention as untimely concern motions filed after" a judgment is rendered. *Edwards v. City of Houston*, 78 F.3d 983, 1001 (5th Cir. 1996).  In this case, Plaintiffs filed their Amended Complaint just over three months ago on April 17, 2008, and Defendants filed their answer on May 15, 2008.  *See* Pls.' Am. Comp.; *see also* Defs.' Answer.  The Court only recently entered its Scheduling Order and Movants intend to abide by those deadlines.   In addition, Plaintiffs recently filed a Motion for Leave to File Second Amended Complaint on July 14, 2008.  (Dkt. No. 61).

Furthermore, during the hearing on the motion for preliminary injunction, it became clear to Movants that Defendant UT Austin intends to focus its efforts in this case on its interest of enrolling a broad spectrum of diversity interests not limited to racial and ethnic groups. Although such an interest is not to be ignored, that interest takes away from the underlying interest Movants seek to assert, namely, the admission of a critical mass of Latino students to prevent Movants from feeling isolated and like spokespersons for their race and denying them the benefits of a diverse learning environment.  This motion comes less than two months after that hearing and, therefore, is timely.

Regarding prejudice to existing parties, the Fifth Circuit has emphasized that the prejudice to be concerned with is the prejudice created by "the intervenor's delay in seeking to intervene after it learns of its interest" and not the prejudice to existing parties created if

intervention is allowed. *Ford v. City of Hunstville*, 242 F.3d 235, 240 (5th Cir. 2001) (quoting *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 (5th Cir. 1992)); *Stallworth*, 558 F.2d at 265. Unlike *Hopwood v. Texas*, this intervention does not come at the tail end of the discovery period. *Cf. Hopwood v. Texas*, 21 F.3d 603 (5th Cir. 1994). Movants have not delayed their intervention and file this motion within weeks of learning that Plaintiffs did not appeal this Court's denial of Plaintiffs' Motion for Preliminary Injunction. Therefore, neither Plaintiffs nor Defendants are prejudiced with this filing.

On the other hand, in the event this Court denies their intervention, the existing prejudice against Movants would be very harmful. In *Stallworth,* the Fifth Circuit noted that the concern over the prejudice against proposed intervenors denied intervention "arose out of a concern that a [Rule 24] section (a) intervenor 'may be seriously harmed if he is not permitted to intervene.'" *Stallworth*, 558 F.2d at 266 (quoting *McDonald*, 430 F.2d at 1073). As discussed earlier and further below (*see infra* § I(B)), Movants, as Latino students and student organizations, have a direct stake in the outcome of this case. In Plaintiffs' complaint, they single out Latinos as one of two protected classes for which they intend to reduce admissions. In the event the Court enjoins the current admissions program, Movants Cortez and Longoria may be denied admission into UT Austin, enrollment of Latino students will likely decline, and the benefits of a critical mass of Latino students will be denied to all Movants, both prospective and current Latino students at UT Austin. If this Court denies Movants' intervention, Movants will be relegated to the sidelines in a case in which their interests will be left to the whim of other players. There can be no greater prejudice than denying Movants the opportunity to present their case and protect the interest of Latino students' present and future access to UT Austin.

10

A court may also consider unusual circumstances such as when: "a would-be intervenor who had failed to apply for intervention promptly after he became aware of his interest in the case could advance a convincing justification for his tardiness . . . this would militate in favor of a finding that his petition was timely." *Stallworth*, 558 F.2d at 266.  Should this Court determine that Movants' application is not timely, Movants respectfully urge this Court to consider the unusual circumstances surrounding Plaintiffs' Motion for Preliminary Injunction.

As this Court is well aware, admissions cases typically persist for a protracted period of time from the date of filing through the final trial on the merits.  In this case, Plaintiffs did not initially move for a preliminary injunction until filing their First Amended Complaint on or about April 17, 2008.  The Court held a hearing on May 19, 2008.  During argument, Plaintiffs not only contended that UT Austin's use of race was not narrowly tailored because it failed to consider other race-neutral alternatives (which is consistent with their pleadings), but also argued, for the first time, that the combined presence of Latino and African American students under the TTPP satisfied UT Austin's interest in diversity for those communities.  *Cf.* Plfs.' First Am. Comp. at 32 ¶145 ("To the extent that UT Austin articulates an interest in promoting 'student body diversity,' Plaintiffs do not challenge that interest.").  Following the Court's denial of the request for a preliminary injunction on May 29, 2008, Plaintiffs then had thirty days to appeal the denial of the injunction but failed to do so.  Now, within weeks following the appeal deadline and within two months of Plaintiffs' expanded attack on the admission of Latino students, Movants seek intervention to protect their personal interest in this case.

Considering each of the factors above, Movants' intervention is timely because:  (1) Movants promptly filed their Motion to Intervene; (2) the existing parties will not be prejudiced if the Court permits intervention at this juncture;  (3) Movants will be greatly harmed if their

11

motion is denied because they will not be able to protect their interests before the Court; and (4) unusual circumstances surrounding Plaintiffs' Motion for Preliminary Injunction warrant a finding that Movants' Motion is timely.

### B.    Movants Seek to Vindicate a Protectable Interest

Movants also satisfy the requirements under Rule 24(a)(2), because they have a protectable interest in the subject matter of the litigation that will be impaired by an adverse decision.  The protected interest does not have "to be of a legal nature identical to that of the claims asserted in the main action" and "[a]ll that is required by the terms of the rule is an interest in . . . [the] rights that are at issue, provided the other elements of intervention are present." *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970).  Ultimately, "the interest 'test' is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Ross v. Marshall*, 426 F.3d 745, 757 (5th Cir. 2005).

Courts have routinely granted intervention to parties seeking to protect their interests in race-conscious programs from which they benefit or to advance arguments in discrimination and higher education lawsuits.  *See, e.g., Edwards*, 78 F.3d at 1006 (allowing associations representing certain members of a city's police department to intervene, for purposes of appeal, regarding a consent decree involving the city and African American and Latino police officers); *United States v. LULAC*, 793 F.2d 636 (5th Cir. 1986) (granting permissive intervention by organizations representing African American and Latino children in a desegregation and educational access case because the intervenors raised common questions of law and fact); *Black Fire Fighters Ass'n. v. City of Dallas*, 19 F.3d 992, 994 (5th Cir. 1994) (affirming the district court decision allowing a fire fighters' association to intervene in opposition to a settlement

proposal between the city and the African American firefighters' association in an employment discrimination action); *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) (allowing African American and Latino students to intervene against challenges to a university's race-conscious admissions policy); *Day v. Sebelius*, 227 F.R.D. 668, 670 (10th Cir. 2005) (permitting students and Latino organizations to defend against challenges to legislation that makes undocumented immigrants in Kansas eligible for in-state college tuition rates).

Movants have a strong and legally cognizable interest in this action. They are prospective and present Latino college students who have a direct stake in an admissions program that sustains and expands access for Latino students into UT Austin. *See* Exs. 1-3. Movants' interest in the admissions process includes, but is not confined to, a consideration of the influence of race and ethnicity on a student's life experience as a factor for determining his or her admissions qualifications. Movants also have an interest in an admissions policy that values the viewpoints that students of diverse racial and ethnic backgrounds bring to UT Austin's educational milieu. *See* Exs. 1-4 (fully incorporated by reference). In addition, an increase in the number of Latino perspectives in both academic and non-academic settings on campus would result in a more hospitable, less isolated experience for Movants at UT Austin. *Id.*

Movants also have an interest in expanding the number of Latino graduate students, faculty and administrators, an interest that hinges directly on Latino students' access as undergraduates at UT Austin. The disparity between Latino representation in Texas as a whole and at the UT graduate and faculty level is far wider than the already significant gap at the undergraduate level. For example, in the fall of 2007, Latino students comprised only 8.3 percent of UT Austin's graduate school students, compared to Anglo students who comprised 53 percent

13

of that population.[5]   Regarding faculty, Latinos comprised only 5.8 percent of all faculty members in 2007 compared to Anglos who represented 81.6 percent.[6]

Movants' interests are real and at risk of being lost in this case.  These interests diverge from the broader diversity interest that UT Austin pursues.  Therefore, Movants ask this Court to allow them to intervene and protect those interests.

### C.   Movants' Interests Would Be Impaired If Intervention Were Denied

Movants are "so situated that the disposition of the action may as a practical matter impair or impede [their] ability to protect [their] interest." FED. R. CIV. P. 24(a)(2).  The advisory committee notes to Rule 24(a) are instructive: "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." FED. R. CIV. P. 24 advisory committee's note to 1966 Amendments. To demonstrate "impairment," a prospective intervenor "must show only that impairment of its substantial legal interest is possible if intervention is denied." *Grutter*, 188 F.3d at 399 (citing *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997)).  This burden is minimal. *Id.*

There is little doubt that the University's preclusion from considering race as a factor in admission will impair access to UT Austin for Latino students, including Movants, to some degree.  A sizeable decline in Latino student enrollment may likely follow such preclusion, both as a direct result of an injunction enjoining the use of race and as an indirect result from the perception of the University by the public.  After the Fifth Circuit rendered its decision in *Hopwood*, enrollment of qualified Latino students suffered a sharp decline at UT Austin.  Latinos comprised 14.3 percent of UT Austin's freshman enrollments in 1995 before the *Hopwood*

---

[5] *See The University of Texas at Austin Statistic Handbook: 2007-2008*, available at:  http://www.utexas.edu/ academic/oir/statistical_handbook/07-08/pdf/0708students.pdf.

[6] *Id.*, available at http://www.utexas.edu/academic/oir/statistical_handbook/07-08/pdf/0708facultystaff.pdf.

14

decision.[7]  However, Latino enrollment decreased to 12.6 percent in the first post-*Hopwood* class of 1997.[8]  Movants have a direct interest in preventing such history from repeating itself.

Plaintiffs seek to strip away the narrowly tailored use of race by UT Austin and close the doors of higher education to countless future Latino students.  The disposition of this case in favor of Plaintiffs would affect the conditions under which Movants Cortez's and Longoria's applications are weighed for admissions at UT Austin, including the limited use of race when necessary to ensure a critical mass of Latino students are admitted outside of the TTPP.  A favorable decision for Plaintiffs would also affect the Latino membership of Longhorn LULAC, and it would, in effect, deny the benefits of a critical mass of Latinos to Movants who are both present and future students at UT Austin.

Movants should not be required to wait until the conclusion of the litigation to decide whether their interests require intervention.  Federal courts have recognized that those seeking intervention would face a "practical disadvantage" in asserting their rights once a court has acted.  *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989).  The Fifth Circuit has recognized that the prospective intervenor's interest may be practically "impaired by the stare decisis effect" of a court's rulings in subsequent proceedings.  *Sierra Club v. Espy*, 18 F.3d at 1207; *see also Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 829 (5th Cir. 1967) ("stare decisis may now...supply that practical disadvantage which warrants intervention of right); *Martin v. Travelers Indem. Co.*, 450 F.2d 542, 554 (5th Cir. 1971) ("stare decisis . . . would loom large" in any attempt by prospective intervenors "to achieve a favorable resolution of the coverage issue" on their own); *Black Fire Fighters Ass'n*, 19 F.3d at 994 (5th Cir. 1994) (to the

---

[7] *See* Catherine L. Horn & Stella M. Flores, *Percent Plans in College Admissions: A Comparative Analysis of Three States' Experiences*, 49 tbl.28 (2003), available at http://www.civilrightsproject.ucla.edu/research/affirmativeaction/tristate.pdf.

[8] *See* Danielle Holley & Delia Spencer, *The Texas Ten Percent Plan*, 34 HARV. C.R.-C.L. L. REV. 245, 259 tbl.1 (1999).

15

extent that a lawsuit involves common legal issues, potential adverse effects on the prospective intervenors favor intervention).   Therefore, Movants respectfully request that the Court grant their intervention at the earliest time possible in order to protect their direct and substantial interests.

### D.     The Existing Defendants Will Not Adequately Represent Movants' Interests

The burden under this prong is "satisfied if Movant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).   The Fifth Circuit has recognized that intervenors may demonstrate inadequate representation if the intervenors advocate a "position contrary to the interest" of the parties.   *Ford*, 242 F.3d at 240-41.   Furthermore, "[i]nadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public."   3B JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 24.07[4] (2d ed. 1995).   Intervention is warranted when proposed intervenors "occup[y] a different position and [have] different interests" than the defendant.   *Sierra Club v. Fed. Emergency Mgmt. Agency*, No. H-07-0608, 2008 U.S. Dist. LEXIS 47405, at *18-19 (S.D. Tex. June 11, 2008).   Likewise, in cases involving a public entity defendant, the applicant must demonstrate that its interest is in fact different from that of the State and that the State will not fully represent the applicant's interest.   *Hopwood,* 21 F.3d at 605.

Courts have frequently recognized that governmental representation of private, non-governmental intervenors may be inadequate.   For example, in *Dimond v. District of Columbia*, the court held that because the government was responsible for representing a broad range of public interests rather than the more narrow interests of intervenors, the "application for

16

intervention…falls squarely within the relatively large class of cases in this circuit recognizing the inadequacy of governmental representation of the interests of private parties in certain circumstances." 792 F.2d 179, 192 (D.C. Cir. 1986); *see also Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 331 (1980) (granting individual aggrieved party's motion to intervene in order to protect their personal interests, which may at times be in conflict with those of the EEOC); *see also, e.g., Natural Res. Def. Council v. Costle*, 561 F.2d 904, 910-911 (D.C. Cir. 1977) (government does not adequately represent private organizations because intervenors' interests are different).  Finally, the burden is on those opposing the intervention to show that representation of Movants will be sufficient.  *See* 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1909 (3d ed. 2007).

In this case, the different interests between Movants and Defendants, coupled with the competing interests that UT Austin must address, evidence the need for Movants to participate in this case. Defendants' ability to fully advance legal arguments for their race-conscious admissions policy faces legitimate constraints, including fiscal, academic and administrative concerns.  In addition to these competing interests, Defendants also face external pressures from those who may have ideological objections to considering race as a factor in admissions programs.  This includes some members of the Texas Legislature, which exercises significant budgetary control over the University. Defendants may also face pressure from a broader constituency – residents of Texas and other parts of the country – that has been divided on the issue of affirmative action for decades.[9]

---

[9] *See, e.g.,* Pew Research Center, *Trends in Political Values and Core Attitudes:* 1987-2007, available at http://people-press.org/ reports/pdf/312.pdf (among Anglo American college graduates, forty-two percent did not "favor affirmative action programs to help…minorities get better jobs and education.").

Additionally, at a time when UT Austin acknowledges that it has become less dependent on state funding, the University, so as not to offend its donors, may not feel inclined to defend as robustly as would Movants, the more controversial aspects of its admissions policies.[10]  Indeed, longtime donors have recently expressed dissatisfaction with the TTPP by discontinuing their funding to UT's endowment, and can act similarly in dissention of the University's affirmative action policy.[11]   The proposed intervenors' private interests are viewed by some of the aforementioned constituencies as controversial – and therefore politically risky – policy interests. *Cf. Day*, 227 F.R.D. at 670.

Aside from such pressures, Movants and UT Defendants may have different objectives. Defendants seek to defend a particular admissions policy and cultivate a diverse student body to prepare a generation of leaders. Movants certainly support that mission in a general sense. However, in advocating those objectives, UT Defendants have often advanced policy options that are at odds with Movants' more focused goal of sustaining and extending access to the University for Latino students.  Defendant William Powers, UT Austin president, has on several occasions made public statements seeking to cap the TTPP, a policy that, in part, seeks to expand minority access to the University.  For example, Defendant Powers has said:

> "[All the 'TTPPers'] don't match well or perfectly with the colleges and programs we have. Our music school, architecture, art, geosciences have to look

---

[10] *See* Robert Kleeman, *Powers Says UT Needs More State Funding*, THE DAILY TEXAN, March 20, 2007, available at http://media.www.dailytexanonline.com/media/storage/paper410/news/2007/03/20/TopStories/Powers.Says.Ut.Needs.More.State.Funding-2781826.shtml.

[11] For example, in 2007, Cathy Bryce, superintendent of Highland Park Independent School District ("HPISD"), whose student population is 95 percent Anglo, testified on the TTPP before the Texas House of Representatives Committee on Higher Education. Bryce said HPISD parents, who are UT alumni and long-standing donors to UT's endowment, have switched those funds to the endowments of the universities attended by their children. Bryce and many of the parent-donors blame the TTPP for their children's admission denials by UT Austin and thus enrolled in other universities. *See* Web Broadcast of the Texas House of Representatives Committee on Higher Education hearing (February, 17, 2007), available at http://www.house.state.tx.us/committees/broadcasts.php?session=80&committeeCode=290; *see also* TEA's AEIS, 2006-07 District Profile for HPISD, available at http://www.tea.state.tx.us/cgi/sas/broker.

for criteria that sometimes aren't met by the 'top ten percent,' especially in the performance areas like music and architecture. Geosciences, which is a very strong school, does not get interest out of the 'top ten percent' students. We need to have space to fill those classes as well."[12]

Although these positions articulated by Defendant Powers are well within his discretion, they signal the adverse interests between Movants and Defendants by detracting attention away from the need to increase the racial and ethnic diversity of Latino and African American students and to effectuate the benefits of such diversity on the campus of UT Austin.

Furthermore, Movants request the right to intervene, because they would bear the greatest costs under a favorable ruling for Plaintiffs. Unlike UT Defendants, Movants' lives will be *personally* impacted by the outcome of this case. An unfavorable decision would certainly upset some of Defendants' stated objectives but would also alleviate some of the aforementioned political pressures. Movants should not be required to entrust their interests to Defendants who are under no duty to weigh Movants' concerns, much less proceed with Movants' arguments. Even assuming Defendants' best intentions regarding their current admissions policy, they may be hesitant to advance any relevant arguments advocating affirmative action as a remedial step that would expose their own history of past discrimination or to address ongoing problems with race relations on the campus. Defendants' potential failure to advance such arguments is adequate to satisfy Movants' minimal burden that Defendants representation "may be" inadequate. *Trbovich*, 404 U.S. at 538 n.10.

Through their complaint, Plaintiffs seek to unravel the limited progress made by UT Austin in admitting a critical mass of Latino students under both the TTPP and their admissions program for non-TTPP students. Plaintiffs also seek to re-define the definition of a "critical mass" of Latino students at UT Austin by combining the African American and Latino student

---

[12] *See* Web Broadcast of Texas House of Representatives Committee on Higher Education hearing (March 18, 2008), available at http://www.house.state.tx.us/committees/ broadcasts.php?session=80&committeeCode=290.

populations. Movants' focused evidence and strategy on the critical mass issue will assist the Court in rendering a decision in accordance with the precedent established by the United States Supreme Court and based on a full record by all parties, including Movants who have distinctive interests at stake in this case.

As explained above, the interests of Movants are too varied from the interests of Defendants and too vital for them to be denied an active role as intervenors. *See Martin v. Travelers Indem. Co.*, 450 F.2d at 554 (the Fifth Circuit affirmed the trial court's decision to grant appellee's motion to intervene). For these reasons, Movants seek to participate in this case as intervenors and respectfully request that the Court grant them intervention as a matter of right.

## II.   MOVANTS ARE ENTITLED TO PERMISSIVE INTERVENTION

Should the Court determine that Movants are not entitled to intervene as a matter of right, Movants urge the Court to exercise its discretion and allow them to intervene under FED. R. CIV. P. Rule 24(b). Rule 24(b) governs permissive intervention and provides, in relevant part:

> On timely application, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact. . . (3) In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Similar to the burden under Rule 24(a), permissive intervention is to be granted liberally. *See* 7C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1904 (3d ed. 2007). "Permissive intervention 'is wholly discretionary with the court . . . even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied.'" *New Orleans Pub. Serv.*, 732 F.2d at 470-471 (5th Cir. 1984) (quoting 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1913 (2d ed. 1986)). The Fifth Circuit has recognized that permissive intervention

may be granted in the court's discretion if: (1) the motion is timely; (2) an applicant's claim or defense has a question of law or fact in common with the existing action; and (3) intervention will not delay or prejudice the adjudication of the rights of the original parties. *Howse v. S/V "Canada Goose I"*, 641 F.2d 317, 320 n.4 (5th Cir. 1981); *see also LULAC*, 793 F.2d at 644 ("[a]lthough the court erred in granting intervention as of right, it might have granted permissive intervention under Rule 24(b) because the intervenors raise common questions of law and fact").

To begin, Movants' motion is timely. *See* Part 1-A, *supra*. Second, Movants' defenses will share substantial questions of law and fact with the main action. Movants seek to achieve a critical mass of underrepresented minority groups, particularly Latinos, through UT Austin's limited use of race as one of many admission factors. Similar to the defenses already raised in the main action, Movants also seek to prove that UT Austin has a compelling interest in attaining a diverse student body and has implemented a narrowly tailored admissions plan to achieve that interest.

Third, as discussed above, intervention will not create delay or prejudice to the parties. *See* Part 1-A *supra*. Intervenors intend to abide by the Scheduling Order recently entered by this Court. Unlike the *Hopwood* intervention, adding Movants as defendant-intervenors at this juncture in the lawsuit will not needlessly increase cost, delay disposition of the litigation, or prejudice the existing parties. *Cf. Hopwood v. Texas, 1994 U.S. Dist. LEXIS 21546* (W.D. Tex. 1994).

Importantly, Movants' participation in this lawsuit will offer evidence from the perspective of Latino students, the fastest growing and largest minority group in the Texas public school system, who have a direct stake in the outcome of this case. At a minimum, Movants ask the Court to exercise its discretion and grant them permissive intervention.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court grant their motion to intervene.

DATED:  July 24, 2008                                    Respectfully Submitted,

                                                         **MEXICAN AMERICAN LEGAL DEFENSE AND
                                                         EDUCATIONAL FUND, INC. (MALDEF)**

                                                         David G. Hinojosa   /S/   *Lesa McCollom*
                                                         David G. Hinojosa          *TX State Bar*
                                                         Texas State Bar No. 24010689 *13431975*
                                                         Nina Perales                *signed by*
                                                         State Bar No. 24005046      *permission*
                                                         Diego Bernal
                                                         State Bar No. 24048350
                                                         110 Broadway, Suite 300
                                                         San Antonio, TX 78205
                                                         Tel. (210) 224-5476
                                                         Fax (210) 224-5382

                                                         Attorneys for Movants

### Certificate of Conference

I certify that I conferred with counsel for Plaintiffs and counsel for Defendants.  Plaintiffs have not decided whether they oppose this motion. Defendants are unopposed.

                                                         David G. Hinojosa /S/
                                                         David G. Hinojosa

22

**Certificate of Service**

I certify that on July 25, 2008, I hand-filed a copy of this filing with the Clerk of Court

and in accordance with FED. R. CIV. P. 5 to the following:

Greg Abbott, Attorney General of Texas
Kent C. Sullivan, First Asst Atty General
David S. Morales, Deputy Attorney General
James C. Ho, Solicitor General
Robert B. O'Keefe, Chief, Gen. Lit. Div.
Ryan Clinton, Assistant Solicitor General
Mishell B. Kneeland
Marina Grayson
General Litigation Division
P.O. Box 12548, Capitol Station
Austin TX 78711-2548
512.475.4099
512.320.0667 Fax

*Attorney for Defendants*

Bert W. Rein
David C. Rybicki
Thomas R. McCarty
Wiley Rein LLP
1776 K Street, NW
Washington DC 20006
202.719.7000
202.719.7049 Fax

*Attorney for Plaintiffs*

Paul M. Terrill
The Terrill Firm, PC
810 West 10th Street
Austin TX 78701
512.474.9100
512.474.9888 Fax

*Attorney for Plaintiffs*

David G. Hinojosa /S/
David G. Hinojosa

23