IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:14-CV-954

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNIVERSITY OF NORTH CAROLINA et al., <br><br> Defendants. | REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STAY PROCEEDINGS <br><br> ORAL ARGUMENT REQUESTED |

Throughout its Opposition to Defendants' Motion to Stay Proceedings, Plaintiff Students for Fair Admissions contends that there is no need for the parties to wait before undertaking expansive, costly, and intrusive discovery largely because the Supreme Court's decision in "*Fisher II* is unlikely to materially impact even part of this case." (Mem. in Opposition ("Opp.") at 2.) This position strains credulity.

The Supreme Court takes cases not just to resolve disputes between two parties but to decide important legal questions of national significance and provide essential guidance to the lower courts. What the Court says (and does not say) in *Fisher II* about the strict scrutiny and narrow tailoring mandates applicable to race-conscious admissions practices; how the Court analyzes the Fifth Circuit's application of those standards; and any other guidance the Court chooses to provide will have a controlling and dispositive effect on this litigation. Even Plaintiff's President has recognized the import of *Fisher II*

in recent public comments about the direct impact that he hopes *Fisher II* will have on the use of race in higher education admissions—and on this very litigation.

Additionally, the University does not request an open-ended, indefinite stay. Waiting less than a year to receive controlling direction from the Supreme Court that could prevent costly re-litigation is an appropriate use of this Court's well-established discretion.

On balance, the equities weigh strongly in favor of a stay.

## I. PLAINTIFF'S POSITION THAT THAT *FISHER II* WILL HAVE NO EFFECT ON THIS LITIGATION IS UNTENABLE

Plaintiff does not dispute that its Complaint is replete with references to the Supreme Court's higher education admissions decisions in recent years. (*See*, *e.g.*, Defs' Mem. of Law in Supp. of Mot. to Stay Proceedings ("Memo") at 3 (citing Compl. ¶¶ 2, 4, 7, 147, 181, 185-186, 188-196).) Those precedents provide the entire legal underpinning of this litigation, establishing the burden each party must satisfy, what evidence they must present, and what this Court must ultimately decide.

*Fisher I* provides apt illustration. There, the Supreme Court held that the Fifth Circuit erred in affording deference to UT-Austin's assessment that its race-conscious admissions policy was narrowly tailored. *Fisher v. Univ. of Tex. at Austin*, 133 S. Ct. 2411, 2420-21 (2013). UT-Austin, the Supreme Court stressed, was required to "make a showing"—with concrete evidence and not merely "'assurances of good intention'"— that "its plan is narrowly tailored" to achieve the permitted benefits of student-body

2

Case 1:14-cv-00954-LCB-JLW   Document 55   Filed 08/07/15   Page 2 of 10

diversity, where race or ethnicity are but one of a range of "'qualifications and characteristics'" considered in the admissions process. *Id.* at 2421 (citations omitted).

On remand, the Fifth Circuit took all of its cues from *Fisher I*. The Fifth Circuit emphasized that the Supreme Court in *Fisher I,* despite remanding for a more rigorous narrow tailoring analysis, reaffirmed its prior conclusion in *Grutter v. Bollinger*, 539 U.S. 306 (2003), that universities have a compelling interest in achieving the educational benefits of diversity. *Fisher v. Univ. of Tex. at Austin*, 758 F.3d 633, 642 (5th Cir. 2014), *cert. granted*, 1355 S. Ct. 2888 (2015). The Fifth Circuit therefore focused its attention on the narrow tailoring inquiry, ultimately concluding that UT-Austin had carried its burden under the standards articulated in *Fisher I* and previously in *Grutter* and *Gratz v. Bollinger*, 123 S. Ct. 2411 (2003).

*Fisher II* reflects the next evolution of this developing legal landscape. The Supreme Court granted review to determine whether the Fifth Circuit's analysis "can be sustained under this Court's decisions interpreting the Equal Protection Clause of the Fourteenth Amendment, including *Fisher* [*I*]." (Memo at 5 (quoting the question presented in *Fisher II*).)

There is an air of unreality to Plaintiff's position that *Fisher II* is relevant only at the fringes and that the proper approach here is to barrel ahead with blinders on as to what comes forth from the Supreme Court next spring or early summer. This position also defies the economic realities of litigation of this magnitude, in which the parties face very substantial discovery and other legal costs in circumstances where the legal ground may shift in important ways. Do-overs make little sense for anyone here, including the

3

Court.  The proper course is to stay the matter and await further guidance from *Fisher II* on how a university must satisfy a test of strict scrutiny in proving that its use of race-conscious admissions practices is narrowly tailored to achieve a compelling interest.

Even Plaintiff's own President has recognized the strong connection between *Fisher* and this litigation.  In public comments, he has explained that he sees *Fisher* and both the University of North Carolina at Chapel Hill and Harvard lawsuits as parts of a broader integrated litigation strategy:

> When we filed [*Fisher*], we didn't ask the Court to [end the use of race and ethnicity in higher education], because we felt that it would take a couple of cases to develop our theories and find the right set of facts to do it.  But if we win again at the Supreme Court, we think the hurdle that they articulated the first time in 2013, that hurdle will be raised, it will be more fully fleshed out, and at least for the next two or three years while the Harvard lawsuit is being pursued and the UNC lawsuit is being pursued, it will be harder for universities to use race and ethnicity [.]

Houston Chinese Alliance, *Edward Blum Speaks About The Legal Battle Against Harvard University*, *YouTube* (Apr. 26, 2015), https://www.youtube.com/watch?v=VVVuhD0KelQ; *see also* Tamar Lewin & Richard Perez-Pena, *Colleges Brace for Uncertainty as Court Reviews Race in Admissions*, N.Y. TIMES, July 1, 2015, at A14 ("'Like most Americans, I hope this case presents the court the opportunity to end racial classifications in higher education, in total,' said Edward Blum, the president of the Project on Fair Representation, which provided counsel to Ms. Fisher. . . . 'But if the court just continues to narrow the use of race, we would see that as a great victory, too.'" (citation omitted)).

4

In the end, there is little question that in light of the Supreme Court's decision to grant review in *Fisher II*, the current operative legal framework may soon be altered. At the very least, significant additional direction is certain to be forthcoming from the Supreme Court. The Court would be on rock solid ground exercising its discretion to stay this case pending that decision.

## II. PLAINTIFF OVERSTATES BOTH THE LEGAL SIGNIFICANCE OF POTENTIAL HARM TO ITS MEMBERS AS WELL AS THE POTENTIAL HARM ITSELF

Plaintiff also misfires in suggesting that any potential prejudice to its members is the determinative factor that should weigh in the Court's discretionary judgment. To the contrary, and as Plaintiff's own cases demonstrate, prejudice to the non-moving party is just one factor that a court must consider. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (in exercising its authority to grant a discretionary stay, a court "must weigh competing interests and maintain an even balance"). Moreover, Plaintiff overstates the potential harm from a stay.

### A. Plaintiff Misstates The Legal Principles That Guide Whether A Court Should Grant A Stay.

Plaintiff incorrectly asserts that the factors the Court must consider "are not co-equal factors" and that prejudice to the non-moving party is the most important factor. (Opp. at 4.) In doing so, Plaintiff relies on the Supreme Court's statement that the suppliant for a stay "'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.'" *Id.* (citing *Landis*, 299 U.S. at 255). That proposition,

5

Case 1:14-cv-00954-LCB-JLW   Document 55   Filed 08/07/15   Page 5 of 10

however, establishes only that the moving party carries the burden of demonstrating that competing harms weigh in favor of a stay. *See Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983) (quoting *Landis*, 299 U.S. at 254-55). Moreover, Plaintiff ignores that the Supreme Court also clarified that "[c]onsiderations such as these, however, are counsels of moderation rather than limitations upon power." *Landis*, 299 U.S. at 255.

Plaintiff also argues that "a stay 'is rarely appropriate' when the parallel litigation 'will not dispose of the entire case.'" (Opp. at 3.) But the case that Plaintiff cites for this proposition, *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1 (D.D.C. 2001), is factually inapposite. In *Chavous*, the district court stated that "a stay of discovery pending determination of *a motion to dismiss* is rarely appropriate when the pending motion will not dispose of the entire case." *Id.* at 3 (internal quotation marks omitted) (emphasis added).

In advancing this position, Plaintiff fails to mention—much less distinguish—the Fourth Circuit's decision to grant a stay while awaiting the Supreme Court's guidance. *See Hickey v. Baxter*, 833 F.2d 1005, 1005 (4th Cir. 1987) (unpublished table decision) ("We find that the district court acted within its discretion in staying proceedings while awaiting guidance from the Supreme Court in a case that could decide relevant issues."); *see also Landis*, 299 U.S. at 256 ("True, a decision in the cause then pending in [another jurisdiction] may not settle every question of fact and law in suits by other companies, but in all likelihood it will settle many and simplify them all."); *Stoddard v. Wyeth*, No. 4:08-cv-00173-H (E.D.N.C., Jan. 11, 2011) (granting motion to stay proceedings to

promote judicial efficiency and noting that the Supreme Court's pending decision would likely have a direct impact on the litigation).

### B. Plaintiff Overstates The Potential Harm A Stay Would Inflict.

In addition to overstating the weight that the Court must afford to any harm to the non-moving party, Plaintiff overstates the purported harm that might result from a stay. Instead, Plaintiff provides only general allegations of harm to its members' equal-protection rights and asserts that "SFFA members who will be applying for transfer admission in the 2016-2017 cycle" will be "especially" harmed. (Opp. at 6.) Contrary to what Plaintiffs assert, Defendants do not seek an open-ended, indefinite stay, but rather a stay to await a decision by the Supreme Court that, as explained, will provide essential and controlling direction to the Court and parties here. Granting a stay will allow the parties to litigate this case—and the Court to decide these issues—once and in the most efficient manner under fresh and controlling guidance from the Supreme Court. These considerations outweigh any allegations of generalized harm.

The risk of any purported harm to potential transfer applicants is also exaggerated because Plaintiff overestimates how quickly this litigation will proceed—even without any extensions to the existing schedule. Indeed, opening dispositive motions are not due until March 31, 2016. Even if the Court were to rule very quickly on the motions *and* issue judgment in Plaintiff's favor, the University would already be well into its regular admissions cycle for 2016-2017. If this case were to proceed to trial or if either party were to appeal—which is likely—any purported harm to Plaintiff's members becomes even more remote.

7

## III.   A STAY PROMOTES JUDICIAL EFFICIENCY

Plaintiff contends that the University has provided only "vague generalities" (*Id.* at 13) about how the Supreme Court's decision in *Fisher II* will influence fact and expert discovery.  Not so.  (*See*, *e.g.*, Memo at 8-11.)  And Plaintiff cannot explain why judicial efficiency would not be served by a stay other than to assert that it will not be.  (*See* Opp. at 12.)  But perhaps the most telling illustration of the untenable nature of Plaintiff's position is the assertion that because the Local Rules expressly contemplate submissions of supplemental authority, no stay is needed.  (*Id.* at 14-15.)

## **CONCLUSION**

For these reasons as well as those discussed in Defendants' Memorandum of Law, the Court should grant a stay of this litigation.

The University also respectfully requests the opportunity to present oral argument on this Motion.

Respectfully submitted,

| | |
|---|---|
| /s/ Michael Scudder | ROY COOPER |
| Michael Scudder | Attorney General |
| Skadden, Arps, Slate, | |
|    Meagher & Flom, LLP | /s/ Stephanie Brennan |
| 155 North Wacker Drive | Stephanie Brennan |
| Chicago, IL 60606-1720 | Special Deputy Attorney General |
| (312) 407-0877 | NC State Bar No. 35955 |
| E: michael.scudder@skadden.com | E: sbrennan@ncdoj.gov |
| | |
| /s/ Lisa Gilford | /s/ Matthew Tulchin |
| Lisa Gilford | Matthew Tulchin |
| Skadden, Arps, Slate, | Assistant Attorney General |
|    Meagher & Flom, LLP | NC State Bar No. 43921 |
| 300 South Grand Ave. | E: mtulchin@ncdoj.gov |
| Suite 3400 | NC Department of Justice |
| Los Angeles, CA 90071 | Post Office Box 629 |
| (213) 687-5130 | Raleigh, NC 27602-0629 |
| E: lisa.gilford@skadden.com | T: (919) 716-6920 |
| *Attorneys for Defendants* | F: (919) 716-6764 |
| | *Attorneys for Defendants* |

# CERTIFICATE OF SERVICE

I hereby certify that, on August 7, 2015, I electronically filed the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STAY PROCEEDINGS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CME/ECF users in the case.

This 7th day of August, 2015.

/s/ Michael Scudder
Michael Scudder
Skadden, Arps, Slate,
   Meagher & Flom, LLP
155 North Wacker Drive
Chicago, IL 60606-1720
(312) 407-0877
E: michael.scudder@skadden.com

*Attorney for Defendants*