# UNITED STATES DISTRICT COURT FOR
# THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, et al., <br><br> Defendants. | Civil Action No. 1:14-cv-954-LCB-JLW |

## CONSOLIDATED REPLY IN SUPPORT OF MOTION TO INTERVENE

Proposed Intervenors hereby submit this consolidated[1] reply brief in further support of their Motion to Intervene.

### A. Proposed Intervenors Seek Limited Intervention

A significant portion of the submissions made by Plaintiff Students for Fair Admissions, Inc. ("Plaintiff" or "SFA") and Defendants University of North Carolina at Chapel Hill, et al. ("Defendants" or "UNC-Chapel Hill") is devoted to their suggestion that permitting intervention will interfere with the orderly resolution of this matter. This is not accurate. Proposed Intervenors' participation will not have a significant impact on the time or resources it will take to litigate this case.

Proposed Intervenors do not seek to participate as full parties in this litigation, primarily because they do not seek to engage in the majority of the discovery that the

---

[1] Pursuant to the Court's August 3, 2015 Order (ECF No. 54), this brief addresses the responses of both Plaintiff and Defendants.

parties plan to conduct. Proposed Intervenors only seek to gather and present evidence on two issues: (1) evidence regarding the history of segregation and discrimination at UNC-Chapel Hill and in North Carolina and (2) evidence regarding the effect of UNC-Chapel Hill's existing, and Plaintiff's proposed, admissions processes on the critical mass of diverse students at UNC-Chapel Hill. Fact and expert evidence on these topics is important to establish the validity of UNC-Chapel Hill's admissions policy, but the University's institutional incentives weigh against its presenting such evidence.

Proposed Intervenors will not participate in discovery on other issues that the parties have identified, such as the application process at UNC-Chapel Hill, applications to UNC-Chapel Hill, the operation of the admissions office, or Plaintiff's status as a "bona fide" organization. Rather than seeking a role identical to the existing parties, Proposed Intervenors seek limited participation to protect specific evidentiary interests.

Proposed Intervenors' participation in other contexts of the litigation, such as participating in briefing and the submission of fact and expert declarations, will have an even smaller impact on the case. In fact, the parties do not object to Proposed Intervenors' participation in these aspects of the litigation. *See* Defs.' Resp. to Mot. to Intervene ("Defs.' Resp.") at 10 (ECF No. 51); *see also* Pl.'s Mem. in Opp'n to Mot. to Intervene ("Pl.'s Opp'n") at 15 (ECF No. 50).

### B. The *Harvard* Decision Does Not Provide Helpful Guidance

Both parties rely heavily on the decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, No. 14-14176, 2015 WL 3683230 (D. Mass.

2

June 15, 2015) ("*Harvard*") denying potential and current Harvard students' motion to intervene. The *Harvard* decision is distinguishable for several reasons.[2]

First, Proposed Intervenors are making a much more limited request for intervention. Unlike the *Harvard* intervenors' request to participate in every aspect of the case as full parties, Proposed Intervenors here only seek to be able to submit evidence, participate in motions practice, and conduct targeted discovery. While the *Harvard* court denied full-party status, it allowed most of what the Proposed Intervenors request in this case. *Harvard*, 2015 WL 3683230, at *11 (allowing students to submit declarations, file substantive briefs, and participate in arguments). The additional request to participate in targeted, specific discovery on a narrow set of issues is critical to Proposed Intervenors being able to protect their interests and will not significantly alter the course of the litigation as compared to the effect of the types of participation allowed in *Harvard*.

Second, Proposed Intervenors have clearer and more specifically defined interests in seeking intervention. In contrast to the *Harvard* intervenors, Proposed Intervenors have identified that their own Title VI rights may be violated if the Court does not have the benefit of the evidence Proposed Intervenors seek to adduce and present. Harvard has not had UNC's history of Title VI violations, which makes it more likely that future applicants' Title VI rights will be implicated by the resolution of this litigation than in the *Harvard* litigation. The *Harvard* intervenors defined their interest generally because they

---

[2] Notably, the decision is currently on appeal to the First Circuit. Notice of Appeal, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, No. 1:14-cv-14176-ADB (D. Mass. July 13, 2015), ECF No. 60.

were attempting to justify broad participation in every aspect of the litigation, whereas the Proposed Intervenors have identified how their specific interests will diverge from UNC-Chapel Hill's interests, and have limited their request for participation accordingly.

Third, Proposed Intervenors' interests in being admitted to UNC-Chapel Hill are different from the interests of applicants to Harvard. As the state's publicly-funded, flagship institution, UNC-Chapel Hill is unique for North Carolina residents, guaranteeing a top-tier education for a fraction of the price of a private institution such as Harvard. Moreover, UNC-Chapel Hill's alumni network within North Carolina is unparalleled and an important path to economic and political success in the state.[3] In contrast, the *Harvard* court was persuaded that the movants in that case were indistinguishable from "any other minority student in America, or indeed, the world."[4] *Harvard*, 2015 WL 3683230, at *6.

The *Harvard* decision does not provide useful guidance in answering the question of whether intervention is proper in this case. Despite the surface similarities – current and future students seeking to intervene in a case challenging a university's race-conscious admissions policy – the differences in the basis for and the extent of the proposed intervention as well as the unique circumstances presented by a public

---

[3] UNC General Alumni Assn, About the GAA, www.alumni.unc.edu/about-the-gaa/

[4] Similarly, Proposed Intervenors are being represented by the North Carolina Justice Center (NCJC), which has a specific interest in the availability of a UNC-Chapel Hill education to all qualified applicants. NCJC is a nonprofit, legal advocacy organization whose mission is to secure social justice for disadvantaged families and communities, including the expansion of educational access for low-income North Carolinians.

4

university located in a state with a long history of discrimination against minorities make this motion quite different. Thus, the Court must engage in an analysis that is specific to the circumstances presented here.

### C. UNC-Chapel Hill Does Not Adequately Represent Proposed Intervenors' Interests Because it Will Not Introduce Relevant Evidence Justifying UNC-Chapel Hill's Consideration of Race

The parties argue that UNC-Chapel Hill will adequately represent the Proposed Intervenors' interests, but it is clear that UNC-Chapel Hill will not introduce all of the relevant, persuasive evidence to support its admissions policy. Despite the fact that Proposed Intervenors and UNC-Chapel Hill will both argue that Plaintiff's arguments lack merit, there are certain areas where they will present very different defenses of and reasons for race-conscious admissions policies.

As a preliminary matter, Proposed Intervenors note that the "government adequacy" and "same objective" presumptions should not be applied in this case for the reasons set forth in their Motion. Mem. of Law in Supp. of Proposed Def.-Intervenors' Mot. to Intervene ("Mem. in Supp.") at 14-19 (ECF No. 40). However, if either presumption is applied, it can be overcome by a showing of "adversity of interest" or a "strong showing of inadequacy." *Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013). The parties argue that Proposed Intervenors cannot make these showings because UNC-Chapel Hill's unwillingness to present important, relevant evidence is merely a "litigation strategy." *See* Pl.'s Opp'n at 9-10; Defs.' Resp. at 5-6. This assertion betrays a fundamental misunderstanding of Proposed Intervenors' contentions.

5

First, the evidence Proposed Intervenors seek to develop and present in the case will remain undiscovered by UNC-Chapel Hill not for strategic reasons, but because of considerations that are unrelated to the litigation and unrelated to the interests of current and potential students. Evidence regarding the long history of segregation and discrimination in North Carolina and at the University, as well as evidence that a critical mass of diverse students has not yet been created on campus, is central to demonstrating the particularized need for the University to consider race as part of its admissions process. There is no litigation-based reason to exclude such evidence from the record, but UNC-Chapel Hill faces strong incentives not to adduce and present the evidence because it could create Title VI liability in the future and backlash and criticism in the present. *See* Mem. in Supp. at 14-16.

Notably, UNC Chapel-Hill does not state in its response that it will gather the evidence that Proposed Intervenors have identified as important to its defense, nor does it describe any reason such evidence is not relevant. Indeed, UNC-Chapel Hill entirely avoids any mention of evidence of historical and current discrimination on campus, as well as the potential disparate impact on minorities and corresponding Title VI liability that might occur should the admissions process be changed. Its understandable reluctance to broach these subjects supports Proposed Intervenors' contention that UNC-Chapel Hill will not raise them in this litigation. Should this Court, at Plaintiff's behest, eliminate or limit UNC-Chapel Hill's consideration of race while permitting it to keep other aspects of

its admissions process, UNC-Chapel Hill may be subject to Title VI liability.[5] This divergence of interests overcomes any presumption of adequacy of representation.

Second, the parties erroneously suggest that Proposed Intervenors must establish that their interests are entirely adverse to UNC-Chapel Hill's interests. To the contrary, an intervenor need only show that its interests "diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests[.]" *United States v. Terr. of Virgin Islands*, 748 F.3d 514, 519-20 (3d Cir. 2014); *see also Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 314 (D.C. Cir. 2015) ("Recognizing that doubtful friends may provide dubious representation, we have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors.") (internal quotation marks and citation omitted). Proposed Intervenors are interested in ensuring that *all* relevant evidence is in the record – even evidence that is disagreeable to Defendants.

The scope of this divergence of interests defines the scope of Proposed Intervenors' proposed participation. It is only where Defendants and Proposed Intervenors' interests diverge that Proposed Intervenors seek to participate. Proposed Intervenors will fill the gaps left because of UNC-Chapel Hill's different, and institutionally constrained, bases for defending its admissions policy.

---

[5] The potential follow-on litigation that may result from these proceedings is another reason that justifies granting, at a minimum, permissive intervention in order to "prevent piecemeal litigation." *Cappachione v. Charlotte-Mecklenburg Bd. of Educ.*, 179 F.R.D. 505, 509 (W.D.N.C. 1998).

Rather than addressing Proposed Intervenors' specific arguments, UNC-Chapel Hill generally asserts that it will vigorously defend its admissions policy. This bare assertion is insufficient given UNC-Chapel Hill's failure to rebut the argument that the vigor of its defense will be tempered by institutional conflicts. Of course, UNC-Chapel Hill's statements of its current intentions do not alleviate uncertainty about what positions it will take throughout the lengthy litigation. *See Virgin Islands*, 748 F.3d at 521 ("[I]t is not realistic to assume that the [government's] programs will remain static or unaffected by unanticipated policy shifts.").

### D. Proposed Intervenors Have a Significant Protectable Interest

While UNC-Chapel Hill appears to concede that Proposed Intervenors have a "significant protectable interest" sufficient to justify intervention, Plaintiff continues to argue that they do not. Plaintiff's explanations for its position are legally and factually flawed.

Plaintiff first bases its argument on the assertion that Proposed Intervenors "would lack any legal interest in objecting even if UNC-Chapel Hill voluntarily decided to discontinue racial preferences." Pl.'s Opp'n at 6. Even assuming Plaintiff is correct, the point is irrelevant. The intervention rule makes clear that the "interest" requirement should be evaluated practically, not legally. Fed. R. Civ. P. 24 Advisory Committee's note ("[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."); *see also Natural Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d

8

1341, 1345 (10th Cir. 1978) (noting that Rule 24 "refers to impairment as a practical matter" and thus "the court is not limited to consequences of a strictly legal nature"). Moreover, a person can have a protectable interest in the continuation of a policy, regardless of whether that person has the right to sue over the policy. *See, e.g., N.A.A.C.P., Inc. v. Duplin Cnty., N.C.*, No. 7:88-CV-00005-FL, 2012 WL 360018, at *3 (E.D.N.C. Feb. 2, 2012) ("[I]t is not necessary for an intervenor to have a right to bring suit independently.").

Plaintiff also suggests that *Schuette v. Coalition to Defend Affirmative Action, Integration & Immigrant Rights & Fight for Equality by Any Means Necessary (BAMN) et al.*, 134 S. Ct. 1623 (2014), demonstrates that Proposed Intervenors have no significant interest. Pl.'s Opp'n at 5-6.[6] *Schuette* did not address intervention at all, much less clarify what "protectable interest" justifies intervention. Moreover, Justice Kennedy specifically disavowed that the opinion in any way posited on "the constitutionality, or the merits, of race-conscious admissions policies in higher education." 134 S. Ct. at 1630 (Kennedy, J.). Thus, there is nothing in *Schuette* that supports Plaintiff's proposition that *Schuette* "made clear" that Proposed Intervenors "have *no* protectable interest – let alone a significantly protectable interest" in this litigation. Pl.'s Opp'n at 5.

---

[6] Plaintiff additionally argues that a "significant protectable interest" must be a "direct" interest. Pl.'s Opp'n at 5 (citing *Harvard*, 2015 WL 3683230, at *6). The *Harvard* opinion cited no authority for that determination other than to note that the proposed intervenors in that case acknowledged that their interests were "indirect." *Harvard*, 2015 WL 3683230, at *6. Proposed Intervenors make no such concession here.

9

Plaintiff next argues that Proposed Intervenors "clearly lack Article III standing," which, according to Plaintiff, is a "powerful signal that intervention as of right should be denied." Pl.'s Opp'n at 7. As Plaintiff concedes, however, the Fourth Circuit has not held that defendant-intervenors must demonstrate Article III standing to intervene as of right. *See Duplin Cnty.*, 2012 WL 360018, at *3 n.3 & *4 n.4 ("[T]here is no binding precedent on this court that dictates an intervenor as of right must have standing to intervene.").[7] Nevertheless, Proposed Intervenors *do* have Article III standing; indeed, Proposed Intervenors have precisely the same interest as Plaintiff in a policy that maximizes their chances of admission to UNC-Chapel Hill. Should Plaintiff prevail, Proposed Intervenors could suffer the same injury that Plaintiff claims to be suffering right now – being denied admission to UNC-Chapel Hill. It is immaterial for Article III purposes whether Proposed Intervenors share with Plaintiff the same statutory cause of action to enforce that interest.

Proposed Intervenors' protectable interest and standing is illustrated by *Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014), a case that was studiously left unaddressed by both Plaintiff and Defendants. The student intervenors in *Brumfield* sought to defend the validity of a state voucher program and the Fifth Circuit found that a "prospective interference with educational opportunities" was sufficient to establish an interest for purposes of intervention. *Id.* at 343. It also found the interest sufficient to establish

---

[7] Moreover, the Fourth Circuit has explicitly recognized that "a party who lacks standing can nonetheless take part in a case as a permissive intervenor." *Shaw v. Hunt*, 154 F.3d 161, 165 (4th Cir. 1998) (citing *S.E.C. v. United States Realty & Improvement Co.*, 310 U.S. 434, 459 (1940)).

standing (as required in the Fifth Circuit). *Id.* at 344 (citing *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464-65 (5th Cir. 1984)). Similarly here, Proposed Intervenors have an interest in the continuation of the consideration of race as part of UNC-Chapel Hill's admissions process, even if they would not have a cause of action to require the University to adopt such an admissions policy.

> **E.** **Proposed Intervenors' Motion is Timely and Their Intervention Would Not Prejudice the Existing Parties**

Plaintiff argues that Proposed Intervenors' motion is untimely, asserting that Proposed Intervenors did not act with "reasonable dispatch" and that the existing parties would be prejudiced should Proposed Intervenors be permitted to intervene. Pl.'s Opp'n at 12-14 (citing *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 9 (1st Cir. 2009)). Plaintiff is wrong on both counts, having failed to consider the status of this litigation and the limited nature of Proposed Intervenors' request.

Proposed Intervenors' motion to intervene is timely given the procedural history of this case. *See Brown v. Eckerd Drugs, Inc.*, 564 F. Supp. 1440, 1444 (W.D.N.C. 1983) ("The critical issue with respect to timeliness is whether the motion was made as soon as it was clear that the interests of the [proposed intervenors] would not be served by the [existing parties]."). It is immaterial that some courts have found shorter "delays" untimely, since the analysis considers the progress of the case rather than the mere amount of time that has elapsed since the complaint was filed. *See Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001), *rev'd on other grounds, Devlin v. Scardelletti*, 536 U.S. 1 (2002) ("The purpose of the [time] requirement is to prevent a tardy intervenor

from derailing a lawsuit within sight of the [case's] terminal.") (quoting *United States v. South Bend Cmty. Sch. Corp.*, 710 F.2d 394, 396 (7th Cir. 1983)).

When considering the timeliness of Proposed Intervenors' Motion in relation to the procedural status of the case, it is important to recognize that the Motion was filed at the time of Plaintiff's deadline to add additional parties and weeks before Defendants' (the side on which Proposed Intervenors seek to join) deadline to add additional parties. In addition, discovery has just begun and is not set to close until Feb. 15, 2016. Order of May 14, 2015 (ECF No. 34); *see United States ex. rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 412 n.9 (W.D. Pa. 2006) (finding motion to intervene timely when motion was made two months before deadline to add new parties, "case [was] still in its initial stages, there [were] no filings beyond the initial pleadings and the motions *sub judice*, and discovery [was] not scheduled to conclude" for three more months).

Similarly, permitting the limited intervention sought by Proposed Intervenors would cause no prejudice to the parties. As detailed above, Proposed Intervenors seek to introduce evidence related to only two specific topics. They will not affect the discovery process related to the other issues in this litigation. Accordingly, there is no basis for Plaintiff's assertion that Proposed Intervenors' participation will add "at least several months" to the current discovery schedule. Pl.'s Opp'n at 14. To the contrary, because the majority of discovery is outside of Proposed Intervenors' interests, there will be ample

12

time to complete all discovery within the current schedule and without increasing the burden on the existing parties.[8]

### F. Alternatively, the Court Should Grant Permissive Intervention Instead of *Amici Curiae* Status

To the extent that this Court finds that Proposed Intervenors are not entitled to intervene as of right, it should grant permissive intervention. Courts have granted permissive intervention in cases where there is a divergence of interest, but that divergence does not rise to the level of adversity, *see, e.g.*, *Pa. Nat. Mut. Cas. Ins. Co. v. Perlberg*, 268 F.R.D. 218, 226 (D. Md. 2010) (granting permissive intervention where intervenors sought identical result but interests were not identical), and in cases where the intervenors would ensure "a complete and full development and presentation of the facts and issues in this case," *Alexander v. Hall*, 64 F.R.D. 152, 158 (D.S.C. 1974).

The primary argument made by the parties against permissive intervention is that they will be prejudiced by Proposed Intervenors' participation in discovery. Pl.'s Opp'n at 15; Defs.' Resp. at 9. The limited additional discovery requested by Proposed Intervenors will not prejudice the existing parties. *See, e.g.*, *United States v. Marsten*

---

[8] The fact that all Proposed Intervenors are represented by a single team of lawyers supports a finding that their limited participation in discovery can be accommodated within the existing schedule. To the extent that UNC-Chapel Hill suggests that additional unnamed parties may seek to intervene at some point, Defs.' Resp. at 2 n.1, this court should not refuse intervention based on speculation regarding possible future intervenors. *See, e.g.*, *Estate of Siemen v. Huron Med. Ctr., et al.*, No. 11-11249-BC, 2012 WL 909820, at *6 (E.D. Mich. Mar. 16, 2012) ("Because only Dr. Butki has sought intervention, it would be imprudent to consider the effect intervention of a number of unnamed parties with different interests and circumstances would have on the litigation."); *see also Cappachione*, 179 F.R.D. at 509-10 (rejecting Defendants' "slippery slope" argument that there would be no logical reason to bar any other set of parents from intervening).

13

*Apts. Inc.*, 175 F.R.D. 265, 268 (E.D. Mich. 1997) ("Although some additional discovery may need to be taken, this alone is insufficient to establish prejudice."); *Diagnostic Devices, Inc. v. Taidoc Tech. Corp.*, 257 F.R.D. 96, 100 (W.D.N.C. 2009) (permitting intervention under Rule 24(b) when request was for limited participation). To the extent that the parties suggest that they would be prejudiced by Proposed Intervenors' access to actual applications submitted to UNC-Chapel Hill, Defs.' Resp. at 9, Proposed Intervenors are not seeking such discovery and do not need to be served with it.[9] Thus, no party will be prejudiced by permitting Proposed Intervenors' limited participation in discovery (and no party objects to Proposed Intervenors' participation in substantive briefing and the submission of declarations).

     Finally, the parties' insistence that *amicus curiae* status is sufficient to protect Proposed Intervenors' interests is incorrect. Plaintiff once again misapprehends Proposed Intervenors' request when it asserts that they "are chiefly concerned with . . . shar[ing] with the Court their views and perspectives." Pl.'s Opp'n at 16. To the contrary, Proposed Intervenors are concerned with presenting evidence, and *amicus* status does not generally allow a party to submit evidence. As the Supreme Court has explained, "an amicus—with the exception of the right to file a brief—might be unable adequately to present all the

---

[9] Moreover, Proposed Intervenors have reviewed and would accept the terms of the Confidentiality and Protective Order that currently governs this case, which would prevent students and potential applicants from viewing highly personal and sensitive information. *See* Agreed Confidentiality & Protective Order (ECF No. 49).

14

relevant data to the court." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. AFL-CIO, Local 283 v. Scofield*, 382 U.S. 205, 216 (1965*)*.

This Court has ample discretion to permit intervention, and then to ensure, either at the outset or through the course of the litigation, that Proposed Intervenors' participation in no way impedes the resolution of this case. *See Linkous v. Am. Alt. Ins. Corp.*, No. 7:11-CV-278, 2011 WL 4894233, at *3 (W.D. Va. Oct. 13, 2011) ("If the Court later determines that State Farm's presence in the instant litigation is hindering, rather than helping, the efficient administration of justice, it reserves the right to limit the extent of State Farm's intervention accordingly.").

### G.     Conclusion

For the above-stated reasons and the reasons set forth in Proposed Intervenors' opening brief, the Court should grant the Motion to Intervene. To address any concerns raised by the parties regarding any negative effect occasioned by the participation of Proposed Intervenors, the Court may limit intervention to the scope outlined above, allowing Proposed Intervenors to protect their interests while causing no prejudice to the existing parties and permitting this case to proceed in a timely fashion.

Dated: August 7, 2015                    Respectfully submitted,

                                                          /s/ Reed N. Colfax
                                                          Reed N. Colfax*
                                                          Glenn Schlactus*
                                                          Sasha Samberg-Champion*
                                                          Laura Gaztambide-Arandes*
                                                          RELMAN, DANE & COLFAX PLLC
                                                          1225 19th Street NW, Suite 600

Washington, DC 20036
rcolfax@relmanlaw.com
gschlactus@relmanlaw.com
ssamberg-champion@relmanlaw.com
larandes@relmanlaw.com
Tel: (202) 728-1888

/s/ Jack Holtzman
Jack Holtzman, N.C. Bar No. 13548
Christine Bischoff, N.C. Bar No. 41792
NORTH CAROLINA JUSTICE CENTER
224 South Dawson Street
Raleigh, NC 27601
jack@ncjustice.org
christine@ncjustice.org
Tel: (919) 856-2165

/s/ Jon M. Greenbaum
Jon M. Greenbaum*
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1401 New York Avenue NW, Suite 400
Washington, DC 20005
jgreenbaum@lawyerscommittee.org
Tel: (202) 662-8600

ATTORNEYS FOR PROPOSED
DEFENDANT-INTERVENORS

* *Special Appearance*

16

## CERTIFICATE OF SERVICE

In accordance with Local Rule 5.3(b)(2), I hereby certify that this document filed through the CM-ECF system on August 7, 2015 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Reed N. Colfax<br>
Reed N. Colfax