IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


| | | |
|---|---|---|
| STUDENTS FOR FAIR ADMISSIONS INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:14-cv-954 |
| UNIVERSITY OF NORTH CAROLINA; UNIVERSITY OF NORTH CAROLINA BOARD OF GOVERNORS; JOHN C. FENNEBRESQUE, W. LOUIS BISSETTE, JR., JOAN TEMPLETON PERRY, ROGER AIKEN, HANNAH D. GAGE, ANN B.GOODNIGHT, H. FRANK FRAINGER, PETER D. HANS, THOMAS J. HARRELSON, HENRY W. HINTON, JAMES L. HOLMES, JR., RODNEY E. HOOD, W. MARTY KOTIS, III, G. LEROY LAIL, SCOTT LAMPE, STEVEN B. LONG, JOAN G. MACNEILL, MARY ANN MAXWELL, W. EDWIN MCMAHAN, W.G. CHAMPION MITCHELL, HARI H. MATH, ANNA SPANGLER NELSON, ALEX PARKER, R. DOYLE PARRISH, THERENCE O. PICKETT, DAVID M. POWERS, ROBERT S. RIPPY, HARRY LEO SMITH, JR., J. CRAIG SOUZA, GEORGE A. SYWASSINK, RICHARD F. TAYLOR, RAIFORD TRASK, III, PHILLIP D. WALKER, LAURA I. WILEY, as members of the Board of Governors in their official capacities; THOMAS W. ROSS, President of the University of North Carolina in his Official Capacity; UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL; CAROL L. FOLT, Chancellor of the University of North Carolina at Chapel Hill in her official Capacity; UNIVERSITY OF NORTH CAROLINA BOARD OF | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

TRUSTEES; W. LOWRY CAUDILL,       )
ALSTON GARDNER, SALLIE SHUPING-)
RUSSELL, JEFFERSON W. BROWN,      )
PHILLIP L. CLAY, HAYWOOD D.       )
COCHRANE, DONALD WILLIAMS         )
CURTIS, CHARLES G. DUCKETT,       )
PETER T. GRAUER, KELLY            )
MATTHEWS HOPKINS, STEVEN          )
LERNER, DWIGHT D. STONE,          )
ANDREW HENRY POWELL, as members )
of the Board of Trustees in their Official )
Capacity; JAMES W. DEAN JR., Executive )
Vice Chancellor and Provost in his Official )
Capacity; STEPHEN M. FARMER,      )
Vice Provost, Enrollment, and     )
Undergraduate Admissions in his Official )
Capacity,                         )
                                  )
            Defendants.           )

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff, Students for Fair Admissions, Inc. ("SFFA"), initiated this action against

Defendants, the University of North Carolina and members of its board of governors, the

University of North Carolina at Chapel Hill and members of its board of trustees and various

school officials (collectively "UNC-Chapel Hill"),[1] alleging that the use of race in UNC-Chapel

Hill's admissions process violates the United States Constitution and federal civil rights law.

(ECF No. 1 at 2.) Before the Court is a Motion to Intervene in Defense of UNC-Chapel Hill's

Admissions Policy. (ECF No. 39.) For the reasons that follow, the Court grants permissive

intervention with conditions as outlined in this Opinion and Order.

---

[1] The parties agreed to a Joint Stipulation of Voluntary Dismissal as to all claims involving UNC-Chapel Hill Board of Trustees. (ECF No. 29 ¶¶ 1, 2.)

## I.  BACKGROUND

SFFA filed its Complaint on November 17, 2014 and describes itself as "a coalition of prospective applicants and applicants to higher education institutions who were denied admission to higher education institutions, their parents," and others who support SFFA's mission of "eliminating racial discrimination in higher education admissions."[2]  (ECF No. 1 ¶ 11.)   SFFA alleges that UNC-Chapel Hill's admissions policy violates the Fourteenth Amendment of the United States Constitution and Title VI of the Federal Civil Rights Act of 1964 because: (1) the policy "does not merely use race as a 'plus' factor in admissions decisions" but rather as a "dominant factor"; and (2) the policy uses racial preferences when there are available race-neutral alternatives capable of achieving diversity.  (*Id.* ¶¶ 198–99, 205.) SFFA seeks a declaratory judgment that UNC-Chapel Hill's admissions policy and "any use of race or ethnicity in the educational setting" violates the Fourteenth Amendment and Title VI.  (*Id.* at 64.)

On March 24, 2015, UNC-Chapel Hill filed its Answer denying that its admissions policy violates the Fourteenth Amendment or Title VI and asserting various affirmative defenses.  (ECF No. 30 ¶¶ 198–99, 205; *id.* at 114–15.)  On May 4, 2015, the parties submitted their Rule 26(f) reports, and the Court on May 13, 2015 issued a Scheduling Order.  (ECF Nos. 32, 33, 34.)  Approximately six weeks later, on June 30, 2015, Proposed Intervenors filed the instant motion to intervene.  (ECF No. 39 at 3.)  The parties moved to stay the case on September 30, 2015 and the Court entered an Order on October 1, 2015, staying the

---

[2] SFFA contends that it has one member who was denied admission to UNC-Chapel Hill's 2014 entering class.  (ECF No. 1 ¶ 13.)

proceedings pending the Supreme Court's decision in *Fisher v. University of Texas at Austin*, 136

S. Ct. 2198 (2016). (ECF Nos. 64, 65.) *Fisher* was decided on June 23, 2016, and the stay was

lifted on August 1, 2016. (ECF No. 69 at 2; *see* ECF No. 72 at 1.)

## II.    MOTION TO INTERVENE

Proposed Intervenors describe themselves as four minority students who currently

attend UNC-Chapel Hill and five high-achieving minority high school students who intend to

apply for admission to UNC-Chapel Hill.[3] (ECF No. 40 at 1.) With the exception of one

student, all of the students who intend to apply to UNC-Chapel Hill are North Carolina

residents currently enrolled in North Carolina high schools. (*Id.*) In their motion, Proposed

Intervenors assert that they seek to ensure that "a full evidentiary record is created regarding[]

UNC-Chapel Hill's consideration of race and ethnicity as part of its holistic review of

applicant's files" in its admissions process. (ECF No. 39 at 1–2.) They further seek to ensure

that any changes to UNC-Chapel Hill's admissions process resulting from this litigation

complies with their rights under the Constitution and Title VI. (*Id.* at 2.)

Proposed Intervenors do not seek to intervene as full parties in this litigation; rather,

they seek to submit evidence related to two issues: (1) "the history of segregation and

discrimination at UNC-Chapel Hill and in North Carolina" and (2) "the effect of UNC-Chapel

Hill's existing, and [SFFA's] proposed, admissions processes on the critical mass of diverse

students at UNC-Chapel Hill." (ECF No. 56 at 2.) Proposed Intervenors believe evidence

on these issues is important to the case and that UNC-Chapel Hill has signaled, through its

---

[3] Because the high school applicant intervenors are minors, their claims are brought by their parents on their behalf.

Rule 26(f) report, that it may not present such evidence itself.  (ECF No. 40 at 6.)  Proposed

Intervenors seek intervention as of right under Rule 24(a) of the Federal Rules of Civil

Procedure or, in the alternative, permissive intervention under Rule 24(b).  (ECF No. 39 at 1–

2.)  SFFA and UNC oppose intervention and argue that Proposed Intervenors should be

allowed to participate as *amicus curiae.*  (ECF Nos. 50, 51.)

## III.    INTERVENTION UNDER RULE 24

Rule 24 of the Federal Rules of Civil Procedure provides two avenues for intervention:

intervention as of right pursuant to Rule 24(a)(2), and permissive intervention pursuant to

Rule 24(b).  Fed R. Civ. P. 24(a)(2), (b).  If intervention as of right is not warranted, a court

may still allow an applicant to intervene permissively under Rule 24(b).  *Id.*  While both avenues

of intervention are reviewed by appellate courts for abuse of discretion, the Court's discretion

in deciding whether to grant a motion to intervene as of right "is somewhat more constrained."

*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7–8 (1st Cir. 2009); *see Stuart v.

Huff*, 706 F.3d 345, 349 (4th Cir. 2013).  The Fourth Circuit has long held that "liberal

intervention is desirable to dispose of as much of a controversy involving as many apparently

concerned persons as is compatible with efficiency and due process."  *Feller v. Brock*, 802 F.2d

722, 729 (4th Cir. 1986) (quotation omitted); *see also Friend v. REMAC Am., Inc.*, No. 3:12-CV-

17, 2014 WL 2440438, at *1 (N.D. W. Va. May 30, 2014) (analyzing motion to intervene "in

the context of the Fourth Circuit's policy favoring 'liberal intervention' and preventing the

'problem of absent interested parties'" (quoting *Feller*, 802 F.3d at 729)).

## A. Intervention as of Right

A movant seeking to intervene as a matter of right must meet a four-part test before the court can allow intervention. *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). A proposed intervenor must establish that: (1) the application to intervene is timely; (2) the proposed intervenor has an interest in the subject matter of the underlying action; (3) "the denial of the motion to intervene would 'impair or impede' the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation." *Id.* If the movant fails to satisfy any one of the requirements, then intervention as of right is defeated. *See id.* at 839 (noting that all four of the requirements must be satisfied before intervention as of right is allowed).

## B. Permissive Intervention

Rule 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Whether to allow permissive intervention is within the sound discretion of the district court. *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003). Further, when permissive intervention is allowed, the court "may specify the conditions on which it will allow the applicant to become a party." 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1913, at 493–95 (3d ed. 2007).

In addition, Federal Rule of Civil Procedure 24(b)(3) requires that the court "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). However, "findings on those factors are not determinative of or sufficient to decide a permissive intervention motion." *McHenry v. Comm'r*, 677 F.3d 214,

222 (4th Cir. 2012). A court may grant or deny permissive intervention irrespective of what it concludes in its discussion of delay and prejudice. *Id.*

## IV.   ANALYSIS

As stated earlier, Proposed Intervenors have sought intervention as of right or, in the alternative, permissive intervention. Because the Court concludes that it will exercise its discretion to grant Proposed Intervenors permissive intervention under Rule 24(b), it need not address whether Proposed Intervenors are entitled to intervention as of right. *See Carcaño v. McCrory*, 315 F.R.D. 176, 178 (M.D.N.C. 2016); *Capacchione v. Charlotte-Mecklenburg Bd. of Educ.*, 179 F.R.D. 505, 510 (W.D.N.C. 1998).

Neither SFFA nor UNC-Chapel Hill challenges Proposed Intervenors' assertion that their defense of UNC-Chapel Hill's admissions process shares common questions of law and fact with the current action. Thus, this Court need only examine whether Proposed Intervenors' motion was timely and whether granting permissive intervention would cause undue delay or prejudice to UNC-Chapel Hill or SFFA.

### A. Timeliness of Motion to Intervene

A movant seeking permissive intervention must satisfy the threshold requirement of having timely moved to intervene. *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014). "The purpose of the [timeliness] requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001) (quoting *United States v. South Bend Cmty. Sch. Corp.*, 710 F.2d 394, 396 (7th Cir. 1983)), *rev'd on other grounds, Devlin v. Scardelletti*, 536 U.S. 1 (2002). To determine whether a motion is timely, a district court must assess three factors: (1) "how far the suit has progressed"; (2) "the prejudice

that delay might cause other parties"; and (3) "the reason for the tardiness in moving to intervene." *Id.* at 203. "Each of these factors must be appraised in light of the posture of the case at the time the motion is made." *R & G Mortg. Corp.*, 584 F.3d at 7. The Fourth Circuit has emphasized that a district court has wide discretion in determining timeliness. *Alt*, 758 F.3d at 591.

Here, the relevant factors weigh in support of finding Proposed Intervenors' motion timely. First, the case had not progressed beyond its early stages when Proposed Intervenors sought to intervene. Though Proposed Intervenors filed their motion on June 30, 2015, approximately seven months after SFFA filed its Complaint and three months after UNC-Chapel Hill filed its Answer, the Court adopted UNC-Chapel Hill's Rule 26(f) report, beginning discovery in the case, only six weeks before Proposed Intervenors' motion was filed. (*See* ECF Nos. 30, 34, 39.) The filing of the motion occurred one day before SFFA's deadline to join additional parties or amend pleadings and also preceded UNC-Chapel Hill's deadline on these issues. (ECF No. 33 at 5; ECF No. 34.) Further, the discovery deadline does not expire until December 1, 2017,[4] providing adequate time for the discovery proposed by Intervenors to occur. The only other event that had taken place in the case at the time the motion to intervene was filed was the filing of the joint stipulation voluntarily dismissing certain defendants. (*See* ECF Nos. 29.)

---

[4] The Court issued a new discovery Scheduling Order on August 1, 2016. Under this Order, "[a]ll discovery (fact and expert) shall be completed by December 1, 2017." (ECF No. 72 at 1.) The Order requires that fact discovery be completed by June 30, 2017, and expert discovery be completed by December 1, 2017. (*Id.*)

Second, the Court considers the prejudice any resulting delay may cause the other parties. Prejudice related to the issue of timeliness is to "be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994). Approximately a week after Proposed Intervenors filed their motion to intervene, UNC-Chapel Hill moved to stay the case pending the outcome of *Fisher v. University of Texas at Austin*, to which SFFA later consented.[5] (ECF Nos. 46, 64.) The case was stayed until August 1, 2016. (*See* ECF No. 72 at 2.) In light of this sequence of events, and the early stage of the proceedings at the time the motion was filed, neither SFFA nor UNC-Chapel Hill is able to demonstrate prejudice or delay related to the timing of the motion to intervene. Moreover, since the motion to intervene was filed, the parties themselves have sought and obtained new discovery deadlines. (ECF No. 69 at 2–3.)

As to the third factor, *i.e.*, why the motion was tardy, the Proposed Intervenors contend that it was only after UNC-Chapel Hill filed, and the Court adopted, UNC-Chapel Hill's Rule 26(f) report, which set forth areas of intended discovery, that they realized that their interests would not be fully represented in the litigation. (ECF No. 40 at 6.) Proposed Intervenors further contend that intervention was necessary for a comprehensive defense of UNC-Chapel Hill's consideration of race in the admissions process and to ensure that the admissions process resulting from this litigation complies with Proposed Intervenors' rights under the Constitution and Title VI. *Id.*; *see Sierra Club*, 18 F.3d at 1206 ("[The appropriate] gauge of

---

[5] The parties agreed to a partial stay in the proceedings on the condition that UNC-Chapel Hill produce certain documents by December 2015. (ECF No. 64 at 2.)

promptness is the speed with which the would-be intervenor acted when it became aware that

its interests would no longer be protected by the original parties."). The explanation offered

by Proposed Intervenors for their delay in seeking intervention is reasonable.

The Court concludes that Proposed Intervenors' motion to intervene was timely.

## B. Undue delay or prejudice to UNC-Chapel Hill or SFFA

SFFA and UNC-Chapel Hill raise the following concerns related to undue delay and

prejudice: (1) intervention would require an extension of discovery deadlines; (2) intervention

could add to the parties' discovery burdens and complicate the discovery process; and (3)

intervention would pose privacy concerns because SFFA has requested access to highly

personal and sensitive materials, such as student applications for admission. (ECF No. 50 at

2–3; ECF No. 51 at 8–9.)

Proposed Intervenors respond that they seek only limited intervention to conduct

discovery and present evidence on two issues: (1) "the history of segregation and

discrimination at UNC-Chapel Hill and in North Carolina," and (2) "the effect of UNC-

Chapel Hill's existing, and [SFFA's] proposed, admissions processes on the critical mass of

diverse students at UNC-Chapel Hill." (ECF No. 56 at 2.) Of the discovery they intend to

conduct, much of Proposed Intervenors' evidence will take the form of declarations and

expert testimony, rather than depositions and written discovery, (*see* ECF No. 40 at 6), and the

discovery deadline is approximately eleven months away. Proposed Intervenors also state that

they will complete their targeted discovery without disrupting the discovery schedule or

resolution of this case. (*See* ECF No. 40 at 6; ECF No. 56 at 12–13.) The Court is not

persuaded by SFFA and UNC-Chapel Hill's articulated concerns that intervention would

unnecessarily prolong or complicate the discovery process.[6]  While the entrance of an

additional party may complicate and even prolong a case, little evidence is presented here that

it will do so, as the case is still in its early stages.  *See Grp. Health Inc. v. Blue Cross Ass'n*, 587 F.

Supp. 887, 892 (S.D.N.Y. 1984).  Nor is the Court persuaded at this time that intervention

would pose privacy concerns, particularly as it relates to Proposed Intervenors' access to

student applications.  Proposed Intervenors have stated that they do not seek discovery on

such information and will not need to be served with it.  (ECF No. 56 at 14.)  Thus, even if

intervention by Proposed Intervenors may potentially add some degree of complication to the

discovery process, this Court believes that such inconvenience is a small price to pay when

issues of this magnitude are before the Court.  Moreover, each of the concerns expressed by

the parties can be addressed by placing conditions on Proposed Intervenors' participation to

ensure efficiency and due process.

SFFA argues that "denying permissive intervention will not harm Movants because

they have no protectable interest at stake in this litigation and UNC-Chapel Hill will adequately

protect any conceivable interest they do have."  (ECF No. 50 at 15.)  However, while such

factors must be considered by the Court when considering a grant of intervention as of right,

they are neither required, nor dispositive of whether the Court, in its discretion, should grant

permissive intervention.  In determining whether to allow permissive intervention, courts may

---

[6] UNC-Chapel Hill raises case management concerns if Proposed Intervenors are allowed intervention, suggesting that other groups likewise may seek intervention and that "[i]t might be difficult to justify inclusion of one group of students over another, but the potential complications from multiple intervenors (and their various lawyers) are substantial." (ECF No. 51 at 2 n.1.)  No other groups have sought intervention.  Further, any such group would have to satisfy the requirements to support intervention.  Thus, the Court is not persuaded that UNC-Chapel Hill's concern is likely to occur.

consider whether such intervention will "contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977); *see L.S. ex rel. Ron S. v. Cansler*, No. 5:11–CV–354–FL, 2011 WL 6030075, at *2 (E.D.N.C. Dec. 5, 2011). Proposed Intervenors contend that evidence of "segregation and discrimination in North Carolina and at the University, as well as evidence that a critical mass of diverse students has not yet been created on campus, is central to demonstrating the particularized need for the University to consider race as part of its admissions process." (ECF No. 56 at 6.) Neither SFFA nor UNC-Chapel Hill argue that the specific evidence Proposed Intervenors seek to introduce will not contribute to the development of the factual and legal issues in this case. Thus, the Court finds that Proposed Intervenors' participation in this case may significantly contribute to a full development of the legal and factual issues and ensure that all competing legal arguments are presented.

SFFA and UNC-Chapel Hill rely on the case, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, also brought by SFFA, in which the court denied intervention but allowed the proposed intervenors to participate as *amicus curiae*. 308 F.R.D. 39, 53 (D. Mass. 2015). As in that case, SFFA and UNC-Chapel Hill urge the Court to allow Proposed Intervenors to participate in this case as *amicus curiae*, claiming that such participation would be adequate. (ECF No. 50 at 1–2, 16; ECF No. 51 at 10.) However, the factual circumstances of the two cases are distinguishable. Unlike in *Harvard College*, where the proposed intervenors sought to participate as full-fledged parties to the action, 308 F.R.D. at 50, Proposed Intervenors here seek only limited participation in this action, (ECF No. 56 at 3). Further,

UNC-Chapel Hill, as a public institution, subject to state funding and regulations, is distinguishable from Harvard, a private institution. Over 80% of UNC-Chapel Hill's entering freshman class must come from North Carolina,[7] a state which has its own history of discrimination and segregation. Further, all of the applicant intervenors, except for one, are from North Carolina. (*See* ECF No. 40 at 2.) Thus, applicant intervenors seeking admission to UNC-Chapel Hill, their state's flagship public institution, are differently situated from those students seeking admission to Harvard, *see Harvard College*, 308 F.R.D. at 47 (explaining that "there is little that distinguishes the proposed intervenors currently before the Court from any other minority student in America, or indeed, the world, who may potentially be affected by Harvard's consideration or non-consideration of race and ethnicity in its admissions decisions"). For these reasons, the Court is not persuaded by SFFA and UNC-Chapel Hill's reliance on *Harvard College* to support their argument that allowing movants to "weigh-in" through participation as *amicus curiae* is adequate, especially where the result of this litigation will have a direct and significant impact on North Carolinians' access to UNC-Chapel Hill. *See* Wright, Miller & Kane, *supra*, § 1913, at 497 ("The exercise of discretion by a particular judge, responding to all the circumstances of a particular case, is not likely to be of much help to another judge faced with a different case.").

## V. CONCLUSION

The Court concludes that Proposed Intervenors should be allowed permissive intervention under Rule 24(b). Their motion was timely filed, they assert claims and defenses

---

[7] *See Univ. of N. C. Policy Manual*, § 700.1.3, available at,
http://www.northcarolina.edu/apps/policy/index.php?pg=toc&id=s291.

that share common questions of law and fact with this action, and their involvement in this case will not unduly delay the proceedings or prejudice the existing parties. Permissive intervention is desirable and in line with the Fourth Circuit's policy of favoring liberal intervention. Moreover, the Court will impose conditions on Proposed Intervenors' participation in the case to mitigate the impact of certain concerns raised by SFFA and UNC-Chapel Hill.

For the reasons outlined herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Proposed Intervenors' Motion to Intervene in Defense of UNC-Chapel Hill's Admissions Policy (ECF No. 39) is GRANTED IN PART and DENIED IN PART. Proposed Intervenors' motion to intervene as of right under Rule 24(a) is DENIED. However, their motion for permissive intervention under Rule 24(b) is GRANTED. The following conditions apply to Proposed Intervenors' participation in this case: (1) Proposed Intervenors must comply with the existing scheduling order; (2) Proposed Intervenors will not be permitted access to any confidential information that may be produced in discovery between the parties; and (3) Proposed Intervenors' proposed discovery and presentation of evidence are limited to the following two issues: (a) the history of segregation and discrimination at UNC-Chapel Hill and in North Carolina; and (b) the effect of UNC-Chapel Hill's existing, and SFFA's proposed, admissions processes on the critical mass of diverse students at UNC-Chapel Hill. These conditions shall be complied with unless the Magistrate Judge determines that effective management of the case or the interest of justice dictates otherwise. Further, nothing in this Order shall be interpreted to restrict the Magistrate

14

Judge's management of the discovery process including entering any orders necessary to ensure efficiency and due process.

This, the 13th day of January, 2017.

/s/ Loretta C. Biggs
United States District Judge