IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:14-CV-954

| | |
|---|---|
| STUGENTS FOR FAIR ADMISSIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, et al., <br><br> Defendants. | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF APPLICANT DATA** |

## PRELIMINARY STATEMENT

Before the Court is plaintiff Students for Fair Admissions' motion to compel the University of North Carolina at Chapel Hill to produce additional data regarding the University's undergraduate admissions practices. The motion fails, however, to acknowledge the full extent of the University's substantial production of data regarding its undergraduate admissions practices. The University has already produced eight years of aggregate applicant data, and, as SFFA notes, will have produced four years of applicant-level data by the time fact discovery closes at the end of this month. The principles of broad discovery under the Federal Rules of Civil Procedure do not require more. To the contrary, compelling the University to produce any additional data, whether applicant-level or aggregate, would impose undue burden on the University that is not proportional to the evidentiary needs of the case.

Even setting aside the University's already substantial production, additional applicant-level data from previous admissions cycles is not relevant to the lawsuit that SFFA chose to file, which demands injunctive relief with respect to UNC-Chapel Hill's *current* admissions practices.  SFFA is not entitled to additional data from years past simply because it asserts that data from periods before it filed its complaint in 2014 is more probative of the University's consideration of race and ethnicity in admissions today.  The assertion rests on pure conjecture.  The data the University has produced shows exactly what is occurring now and what has occurred in the aggregate since 2008 and at the individual applicant level since 2013.

Furthermore, contrary to SFFA's suggested interpretation, the Supreme Court's recent decision in *Fisher v. University of Texas at Austin*, 136 S. Ct. 2198 (2016) ("*Fisher II*") does not require the University to produce eight years of data nor does an order from a federal district court in Massachusetts in unrelated litigation.

Finally, SFFA's contention that additional data productions are burden free for the University badly misses the mark.  What SFFA ignores is that each production of applicant-level data implicates the privacy interests of thousands of individuals and triggers the provision of notice to these individuals under the Family Educational Rights and Privacy Act.  Accordingly, SFFA is wrong to suggest that the University's production of additional data could be done with ease—almost as if nothing more is required than plugging a flash drive into a computer.

## ARGUMENT

### I. The University Has Produced Eight Years Of Aggregate Applicant Data.

With respect to the requested aggregate applicant data from the 2009-10 and 2010-11 admissions cycles, the Court's decision should be a simple one: the motion should be denied in light of the University's previous productions. Aggregate applicant data, as defined by the motion, includes data "reflecting admissions qualifications that are tracked by the office, broken down by in-state vs. out-of-state, gender, ethnicity, athlete vs. non-athlete, and alumni vs. non-alumni."[1] (ECF 84 at 2.)

SFFA's motion implies that the University has refused to produce *any* aggregate applicant data. (*See id.* at 12 ("To date, UNC has agreed to produce four years of applicant data to SFFA. The only issue here is whether SFFA is entitled to two additional years, for a total of six years' worth of applicant data, along with two years of aggregate applicant data."); *id.* at 6 ("UNC indicated that it would produce a third year of applicant data . . . but no aggregate applicant data.").) This description inexcusably ignores documents already produced to SFFA.

The discovery record shows that the University has produced aggregate applicant data created and maintained by its Office of Undergraduate Admissions relating as far back as the 2008-2009 admissions cycle. On September 2, 2016, the University produced a "Summary Statistics" document for the 2013, 2014, and 2015 first year classes. (*See*

---

[1] Although for purposes of this opposition, the University does not dispute SFFA's definition of aggregate applicant data, the University does not agree with SFFA's characterization that its Admissions Office specifically "tracks" applicants or that it classifies applicants as "athlete versus non-athlete."

3

UNC0079662, UNC0079668, and UNC0079674 (attached as Exhibits 1-3).)  In addition to providing detailed information about the enrolled first-year class (including each metric that SFFA specifically notes in its definition), each document reflects summary statistics with respect to applicants and admitted applicants from the *previous four admissions cycles*.  Thus, Exhibit 1 ("Summary Statistics—Fall 2013 First Year Class," UNC0079663) includes aggregate applicant data from the 2008-2009 admission cycle.  In other words, more than six months ago, SFFA possessed seven years' worth of aggregate applicant data.

Following production of this data, SFFA requested additional aggregate data in another form.  In response, the University informed SFFA that it does not maintain data in the alternate form that SFFA requested and confirmed that the University produced aggregate applicant data in the form in which it is maintained in the ordinary course.  (Ex. 4 (Dec. 8, 2016 letter from M. Scudder to P. Strawbridge) at 2.)  The University also agreed to supplement its production of both applicant-level and aggregate data with another admissions cycle (2015-16) and specifically reiterated that it had already produced documents covering a seven year time period.  (*Id.*)

Even so, on February 9, 2017, the University produced additional aggregate applicant data in another form in which it is created and maintained in the ordinary course, expressly noting that the production included "aggregate data responsive to your request for the same." (Ex. 5 (Feb. 9, 2017 email from M. Combs to P. Strawbridge).)  In this standalone production, the University provided "First-Year Class Characteristics" corresponding to the 2009-10 through 2014-15 admissions cycles.  (See, e.g., Ex. 6

4

UNC0194052.) The University also produced "First-Year Class Characteristics" for the Fall 2016 class on April 4, 2017, bringing the total scope of the University's production to eight years. Each of these First-Year Class Characteristics also provides the metrics noted in SFFA's definition of aggregate applicant data with the exception of so-called special talent applicants.

Accordingly, SFFA's strident statement that the University has "attempt[ed] to thwart discovery into core aspects of its admissions process," ECF 84 at 10, is unfortunate and just plain wrong. The University has satisfied SFFA's request for eight years of aggregate admissions data. To the extent that SFFA on reply attempts to reframe its motion into an attempt to compel the "Summary Statistics – First Year Class" document for the 2009-10 and 2010-11 admissions cycles, SFFA provides no explanation as to why the University's previous productions are inadequate. In these circumstances, SFFA's motion to compel additional aggregate admissions data should be denied.

## II. SFFA's Demands For Additional Applicant-Level Data Should Be Denied.

### A. Additional Applicant-Level Data Is Irrelevant to SFFA's Claims For Injunctive Relief.

SFFA's demand for an additional two years of applicant-level data should also be denied. There is no question that the Federal Rules of Civil Procedure allow for broad discovery. Those bounds, however, are not unlimited, and district courts have broad discretion in managing discovery, including whether to grant or deny a motion to compel. Under Federal Rule of Civil Procedure 26, a court must consider whether the sought discovery is relevant, proportional to the needs of the case, and whether the burden or

5

expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1); *see Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004); *see also Moore v. DAN Holdings, Inc.*, No. 1:12-cv-503, 2013 WL 1833557, at *11 (M.D.N.C. Apr. 30, 2013) (denying a motion to compel production of additional documents based on the principles of Rule 26(b)(2)(C)). Furthermore, each of the inquiries under Rule 26 is highly fact-intensive and must be considered in connection with the specific circumstances of the pending action. See Fed. R. Civ. P. 26(b)(1) Advisory Committee's note to the 2015 Amendment ("The court's responsibility using all the information provided by the parties, is to consider these and all other factors in reaching a case-specific determination of the appropriate scope of discovery.").

SFFA has filed a lawsuit challenging the University's current undergraduate admissions practices—seeking to have them declared unconstitutional and enjoined. (*See* ECF 1 (Complaint) at 64 seeking permanent injunctions prohibiting Defendants from using race as a factor in *future* undergraduate admissions decisions at UNC-Chapel Hill and requiring Defendants to conduct all admissions in a manner that does not permit those engaged in the decisional process to be aware of or learn the race or ethnicity of any applicant for admission; *see also* ECF 1-1 (Declaration of Edward J. Blum) at ¶ 13 ("*Future* Applicants *will be* denied the opportunity to compete for admission") (emphasis added).) Given SFFA's decision to bring a lawsuit challenging UNC-Chapel Hill's admissions process from 2014 to the present, applicant-level data more than one year prior to this period is not relevant and, as shown below, its production is unnecessary in light of SFFA's precise claims and requests for relief and would be unduly burdensome.

6

In an attempt to sidestep this self-imposed hurdle, SFFA contends that admissions data prior to the filing of its complaint is "more probative of UNC's use of race when litigation was not pending." (ECF 84 at 6.) Why this would be so is entirely unclear in a case that is all and only about the University's admissions practices since the Applicant was denied admission as part of the 2013-2014 admissions cycle.

Moreover, setting aside this relevance point, SFFA has received the data it demands. As previously discussed, the University has produced aggregate applicant data for the *five* admissions cycles that occurred prior to the complaint. (See Ex. 1 at UNC079663 (reflecting applied/admitted statistics for the 2008-2009, 2009-10, 2010-11, 2011-12, and 2012-13 admissions cycle).) The University has also, as SFFA notes, agreed to produce applicant-level data from 2013 onward, including the most recent two years of applicant-level data corresponding to the 2015-16 and 2016-17 admissions cycles.

SFFA's peculiar focus on which specific discovery request the University produced the data in response to (ECF 84 at 4-5, 6-7) is of no matter to the dispute before the Court. Nonetheless and to be clear, the University agreed to produce this data both to "supplement its production" (Ex. 4 at 2) in response to SFFA's request and because that data relates most directly to UNC-Chapel Hill's *current* admissions process. Setting this distraction aside, however, SFFA has this very substantial amount of aggregate and applicant-level admissions data in its possession.

7

### B. SFFA Mischaracterizes The Supreme Court's Direction In *Fisher II*.

SFFA relies heavily upon the Supreme Court's recent decision in *Fisher II* to imply that the Supreme Court instructed that eight years of data must be produced in all subsequent litigation challenging higher education admissions practices. (ECF 84 at 11-13.) Not so.

SFFA cherry picks language from a section of the Supreme Court's opinion emphasizing that UT-Austin's admissions "program is *sui generis*," 136 S. Ct. at 2208, and then attempts to divine from accompanying language a mandate that courts in other cases must consider eight years of admissions data to assess compliance with strict scrutiny standards. SFFA's approach reflects a misreading of the Supreme Court's direction on *Fisher II*. Contrary to SFFA's suggestion, the Court did not prescribe eight years as the amount of data needed for proper strict scrutiny analysis, but instead referenced the time period of eight years because that was the length of time that had passed between petitioner Abigail Fisher's application to UT-Austin and the Court's ultimate decision in 2016. *Id.* at 2209.

To be sure, all agree that data analysis is important in this litigation and indeed is why the University has produced the substantial volume of data that it has throughout discovery. But acknowledging that point does not mean there is a requirement—and certainly not one coming from *Fisher II*—that at least eight years' of data must be produced without regard to any relevance limitations and considerations of discovery burdens. The University's production of eight years of aggregate data and four years of

8

applicant-level data is sufficient and fully consistent with *Fisher II*'s guidance on the importance of data-driven analysis.

Relatedly, nothing about the litigation against Harvard controls here or requires a particular outcome on SFFA's present motion. As this Court noted when granting the proposed intervenors' motion to intervene, the "factual circumstances of the two cases are distinguishable." (ECF 79 at 12; *id.* at 13 (citing Wright, Miller & Kane, supra, §1913, at 497 ("The exercise of discretion by a particular judge, responding to all the circumstances of a particular case, is not likely to be of much help to another judge faced with a different case.")).) Moreover, nothing about the factual circumstances of the Harvard litigation should require the University to produce excess and unnecessary discovery that also imposes an undue notice burden and implicates the privacy concerns of another approximately 60,000 individuals.

### C. Production Of Additional Applicant-Level Data Would Be Unduly Burdensome.

Finally, requiring the University to produce additional data, particularly applicant-level data, would also impose an undue burden that is not proportional to the needs of the case and is unwarranted given the University's prior and forthcoming productions. *See Moses H. Cone Mem'l Hosp. Operating Corp. v. Conifer Physician Servs., Inc.*, No. 1:13-CV-651, 2016 WL 430494, at *5 (Feb. 3, 2016) (Webster, Magistrate Judge) (denying motion to compel because plaintiff's request at a late stage in light of the production plaintiff had already received was unduly burdensome and not in keeping with Rule 26(b)(2)(C)'s proportionality limits) (citing *Basile Baumann Prost Cole & Assocs. v.*

9

*BBP & Assocs. LLC*, No. WDQ-11-2478, 2013 WL 1622001, at *3 (D. Md. Apr. 9, 2013)).

Contrary to SFFA's statement that the University has produced applicant-level data with "relative ease," ECF 84 at 13 & 3, the production of such applicant-level data is an intensive process that involves significant time and expense.  As the Court is aware, the Court entered an order at the request of the parties to allow the University to produce applicant-level data for the 2013-14 and 2014-15 admissions cycles in a manner that would protect the substantial privacy concerns for individual applicants.  (ECF 61.)  The Court entered a similar order for the 2015-16 and 2016-17 admissions cycles.  (4/17/2017 Text Order.)  Following entry of those orders, the University provided notice to affected applicants consistent with the requirements of the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, and its implementing regulations, 34 C.F.R. pt. 99.  More specifically, the University has already sent *one hundred and thirty-thousand individual notices* and dedicated significant resources to address applicants' inquiries about them.  If SFFA's motion is granted, it will mean approximately sixty-thousand more notices and corresponding resources.

Moreover, the relevance of this type of data does not eradicate the other considerations of Rule 26.  Courts in this circuit have imposed temporal limits upon discovery because of the burden that overbroad requests impose upon the producing party.  *See*, *e.g.*, *Anderson v. Consolidation Coal Co.*, No. 1:11-CV-138, 2014 WL 12595769, at *6 (N.D.W. Va. May 19, 2014) (granting a motion to compel but limiting the temporal scope to half of the requested period); *Smith v. Bayer Material Sci., LLC*,

10

No. 5:12-CV-171, 2013 WL 3153467, at *5 (N.D.W. Va. June 19, 2013) (granting a motion to compel but limiting the time period because "the temporal scope and lack of geographic scope of Plaintiff's requests can become unduly burdensome on Defendant"); *Capital One Bank (USA) N.A. v. Hess Kennedy Chartered, LLC*, No. 3:08CV147, 2008 WL 4467160, at *3 (E.D. Va. Sept. 30, 2008) (granting a motion to compel but limiting the time period because "beyond which the Court concludes production would be overly burdensome"); *Eggleston v. Wal-Mart Stores E., LP.*, No. CIV.A. 3:05CV721, 2006 WL 585152, at *2 (E.D. Va. Mar. 10, 2006) (granting a motion to compel but limiting the temporal scope on the grounds that it was "overly burdensome"); *Thompson v. Dep't of Hous. & Urban Dev.*, 199 F.R.D. 168, 172 (D. Md. 2001) ("For example, if the plaintiff seeks discovery of information going back 20 years, and the defendant objects on the grounds of burden, a possible solution may be to agree first to produce information going back 5 years. Then, depending on the results of a review of the more recent information, if more extensive disclosure can be justified, based on the results of the initial, more limited, less burdensome, examination, it should be produced.").

    Particularly here, where SFFA has chosen to seek declaratory and injunctive relief focused on the University's present admissions practices and where the University has already produced data that would allow SFFA to conduct any analysis it deems necessary to assess the University's admissions practices, ECF 84 at 13, any marginal benefit to the sought discovery is outweighed by the significant burden that production would impose. Consequently, because the University has committed to producing four years of applicant-level data, including data relating to its current admissions process, and has
11

already produced eight years of aggregate applicant data, SFFA's motion should be denied.

**Respectfully submitted this 5th day of June, 2017.**

JOSH STEIN
Attorney General

/s/ Stephanie Brennan
Stephanie Brennan
Special Deputy Attorney General
NC State Bar No. 35955
E: sbrennan@ncdoj.gov

/s/ Matthew Tulchin
Matthew Tulchin
Assistant Attorney General
NC State Bar No. 43921
E: mtulchin@ncdoj.gov
NC Department of Justice
Post Office Box 629
Raleigh, NC 27602-0629
(919) 716-6920

/s/ Michael Scudder
Michael Scudder
Lara Flath
Marianne Combs
Skadden, Arps, Slate, Meagher & Flom LLP
155 North Wacker Drive
Chicago, IL 60606-1720
(312) 407-0700
E: michael.scudder@skadden.com
E: lara.flath@skadden.com
E: marianne.combs@skadden.com

/s/ Lisa Gilford
Lisa Gilford
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Ave.
Los Angeles, CA 90071
(213) 687-5130
E: lisa.gilford@skadden.com
*Attorneys for Defendants*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), I hereby certify that the body of this brief, including headings and footnotes, does not exceed 9,000 words.

This 5th day of June, 2017.

/s/ Michael Scudder  
Michael Scudder

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Defendants' Opposition to Plaintiff's Motion to Compel Production of Applicant Data via the Court's electronic filing systems, pursuant to the Electronic Filing Procedures, on all attorneys of record who have entered an appearance by ECF in this matter.

This 5th day of June, 2017.

/s/ Michael Scudder
Michael Scudder

14