IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:14-CV-954

| | |
|---|---|
| **STUDENTS FOR FAIR ADMISSIONS, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNIVERSITY OF NORTH CAROLINA et al.,**<br><br>**Defendants.** | **REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF APPLICANT DATA** |

## I. PRELIMINARY STATEMENT

In its opposition to Student for Fair Admissions, Inc.'s ("SFFA") motion to compel production of the two additional years of applicant data and certain aggregate data, UNC mischaracterizes the extent of its production, overstates the burden of additional production, and ignores the points that control the outcome of this dispute.

*First*, the Supreme Court has made clear that lower courts must consider available data in deciding whether a university can meet the heavy burden of strict scrutiny. Relying only on a selective set of data—almost all of it post-litigation—would fall far short of the Supreme Court's commands. It

also is inconsistent with long-held precedent permitting pre-complaint discovery when a party (like SFFA here) challenges a defendant's pattern or practice in violation of the civil-rights laws.

*Second*, UNC's own decision to rely upon two years of applicant-level data refutes its claims that the handful of charts it has produced are sufficient, and that producing additional years of applicant data is unduly burdensome. On this point, UNC's actions speak louder than its words. UNC decided that it needed to produce two additional years of applicant-level data for its own purposes, rather than the simple charts it claims are sufficient for SFFA's purposes. Having made that strategic decision, UNC cannot turn around and declare that SFFA's request is unreasonable and burdensome. This Court should not allow UNC to cherry-pick only the data it prefers, particularly when a more complete picture is available and necessary to satisfy the Supreme Court's clear evidentiary expectations of universities who seek to defend their use of race in admissions. SFFA's motion should be granted.

## II. ARGUMENT

### A. SFFA's Request Is Consistent with the Supreme Court's Clear Instructions and the Ordinary Scope of Civil-Rights Discovery.

As SFFA noted in its opening brief, the Supreme Court has emphasized the "stringency of the strict-scrutiny burden for a school that employs

race[]"in admissions. *Fisher v. Univ. of Tex. at Austin*, 136 S. Ct. 2198, 2209 (2016) ("*Fisher II*"). To satisfy this burden, UNC must demonstrate that its "admissions processes 'ensure that each applicant is evaluated as an individual and not in a way that makes an applicant's race or ethnicity the defining feature of his or her application.'" *Fisher v. Univ. of Tex. at Austin*, 133 S. Ct. 2411, 2420 (2013) ("*Fisher I*"). The Supreme Court has made clear that a university (and the courts charged with assessing the constitutionality of its processes) must use the "valuable data" about the workings of the university's admissions practice "to scrutinize the fairness of its admissions program." *Fisher II*, 136 S. Ct. at 2214. And in *Fisher II*, it plainly stated that "a narrow 3-year sample" of data "might yield little insight," while data covering the preceding "*eight years* ... may be of significant value in determining the constitutionality of the University's *current* admissions policy." *Id.* at 2209 (emphases added).

UNC attempts to minimize this language from *Fisher* by claiming that the Court's reference to data was predicated on the actual timing of the *Fisher* complaint. Opposition at 8. But UNC misreads the relevant passage. *Fisher II* makes clear that the most recent eight years of data would be of "significant value" to assess the university's *current* practices. This is undoubtedly why

the District of Massachusetts granted a similar request by SFFA in a nearly identical case. *See* Ex. A to SFFA's Motion to Compel (Doc. 84-1).[1]

Although UNC contends that its conduct in the years before it denied admission to SFFA's members is irrelevant, *see* Opposition at 6-7, it cites no law in support of this argument. That is unsurprising, because the law has long provided otherwise. Evidence of UNC's pre-complaint conduct is relevant for several reasons. First, it "may be relevant to establishing a pattern or practice of discrimination." *Lyoch v. Anheuser-Busch Companies, Inc.*, 164 F.R.D. 62, 67 (E.D. Mo. 1995) (citing *Phillip v. ANR Freight Sys., Inc.*, 945 F.2d 1054, 1056 (8th Cir. 1991)). Second, to the extent UNC changed its policies after SFFA filed its complaint,[2] SFFA needs to understand whether UNC's current policies were adopted in "good faith," *Fisher I*, 133 S. Ct. at 2420, or are a mere "pretext for discrimination," *Lyoch*, 164 F.R.D. at 67,

---

[1] UNC's reliance on this Court's prior decision on intervention is unavailing. Whatever the factual differences underlying the *intervention* dispute, they do not explain why this Court should read *Fisher II* to require any less than the same data production deemed appropriate (over the Defendant's objections) in the Harvard case.

[2] Although UNC emphasizes in its Opposition the need to judge its *current* admissions practices, *see* Opposition at 2, 7, 11, it notably does not contend that it made any material changes to these practices after the suit was filed. And even if it had, the cases described above makes clear that SFFA is entitled to determine whether any such changes are pretext and whether UNC is likely to revert to its prior practices upon cessation of this suit.

Third, as the Fifth Circuit has explained, it is impossible to judge the legality of a current policy without knowing its history:

> [T]he trial judge unnecessarily limited the scope of his inquiry; he disregarded proof of relevant antecedents influencing or explaining present practices.... His conclusions that past events or practices have no probative value here and that, practically speaking, facially neutral present practices are irrebuttably nondiscriminatory were erroneous. Deprived of an historical overview in these situations, Justice would surely be blind.

*United States v. Jacksonville Terminal Co.*, 451 F.2d 418, 441 (5th Cir. 1971) (citations omitted).

For these reasons, courts generally permit broad discovery in discrimination cases, particularly when (as here) the plaintiff alleges a "pattern or practice" of discrimination. Allowable discovery includes conduct by the defendant before the alleged discrimination occurred. "It is well established that discovery of conduct predating the liability period of a [pattern-or-practice] lawsuit is relevant...." *Miller v. Hydride Food Prod. Corp.*, 89 F. Supp. 2d 643, 657 (E.D. Pa. 2000). "'[C]ases examining the scope of discovery in a [discrimination] action permit discovery for a time period that predates the plaintiff's claims,' and 'courts have commonly extended the scope of discovery to a reasonable number of years prior to the liability period of a [discrimination] lawsuit.'" *EEOC v. Princeton Healthcare Sys.*,

No. 10-cv-4126, 2011 WL 2148660, at *12 (D.N.J. May 31, 2011) (citations omitted).

SFFA's request for data from previous years is on the low end of what courts have allowed in discrimination cases. *See, e.g., EEOC v. Whitin Mach. Works, Inc.*, 635 F.2d 1095, 1096 n.3 (4th Cir. 1980) ("[T]he trial court properly considered the ten-year employment history to determine whether any discernible pattern existed."); *Harris v. Pub. Serv. Elec. & Gas Co*, No. 05-cv-2003, 2007 WL 275983, at *3 (D.N.J. Jan. 25, 2007) (10 years); *Princeton Healthcare Sys.*, 2011 WL 2148660, at *17 (6 years); *Harris v. Harley-Davidson Motor Co. Ops.*, No. 09-cv-1449, 2010 WL 4683776, at *3 & n.3 (M.D. Pa. Nov. 10, 2010) (6 years); *Gaul v. ZEP Mfg. Co.*, No. 03-cv-2439, 2004 WL 231298, at *2 (E.D. Pa. Feb. 5, 2004) (5 years).

Indeed, in the "normal case," "a five-year period prior to the alleged violation ... is deemed to be reasonable." *Ga. Power Co. v. EEOC*, 295 F. Supp. 950, 954 (N.D. Ga. 1968), *aff'd*, 412 F.2d 462 (5th Cir. 1969). Necessarily, then, a request for "discovery seeking information starting two and a half years prior to the discriminatory conduct is a reasonable period of time and in line with the majority of cases addressing this discovery issue." *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 656 (D. Kan. 2004).

UNC's focus on SFFA's decision to seek equitable relief also misses the mark. A number of the cases cited above were limited to claims for equitable relief. *See also, e.g., Dunlop v. J.C. Penney Co.*, No. 74-cv-207, 1975 WL 218, at *2 (M.D.N.C. June 5, 1975); *cf. Evans v. Local Union 2127, Int'l Bhd. of Elec. Workers, AFL-CIO*, 313 F. Supp. 1354, 1360 (N.D. Ga. 1969) ("While the Court agrees that Title VII is meant to be essentially prospective, this position does not foreclose inquiry into past actions or practices which may shed light on present deeds or policies which do violate the Act.").

As these cases demonstrate, SFFA's request for two additional years of applicant data predating the Complaint (for a total of three years of applicant data before the Complaint and six years overall) is well within the mainstream of discovery ordered in similar cases, complies with the Supreme Court's explicit instructions for cases challenging university admissions practice, and coincides with the decision of the District of Massachusetts in nearly identical circumstances.

### B. UNC's Arguments Concerning Privacy and Burden Are Inconsistent with Its Own Strategic Decisions.

In its Opposition, UNC asserts that the burden of producing the two additional years of applicant data requested by SFFA would not be proportional to the needs of the case. Opposition at 9. It emphasizes the purported burden of producing these data and cites a few cases that trimmed

back some movants' requests. *Id.* at 10-11. None of these arguments warrants denial of SFFA's limited request for two additional years of data.

The logic of UNC's arguments falls apart in light of UNC's own strategic choices to voluntarily rely on two years of applicant data from the period after the Complaint was filed. The burden of providing FERPA notice (which requires an electronic notification plus a mailing to addresses UNC has in its possession) was no obstacle to UNC when it sought production of the data it deemed necessary to its defense. It cannot now claim that the burden and privacy interests somehow render SFFA's identical request for two years of pre-Complaint data unduly burdensome.[3]

The cases UNC relies upon for the suggestion that SFFA's request should be trimmed back despite its relevance are all inapposite. To begin, those cases do not account for the specific guidance from *Fisher II.* Moreover, the specific application of Rule 26 in almost all of those cases falls outside the context of civil-rights pattern-and-practice claims, unlike the decisions cited by SFFA above. SFFA's decisions are far more relevant to the appropriate scope of discovery here.

---

[3] Nor can UNC claim that the timing of this request somehow heightens the burden, given that UNC itself made the decision to produce additional data—and sought the Court's approval to do so—near the end of the discovery process, only a few weeks before SFFA filed this motion.

Further, some of UNC's cases emphasize the importance of demonstrating with particularity the burden imposed by the request—a showing that UNC has not and cannot make here. *See, e.g.*, *Eggleston v. Wal-Mart Stores E., LP.*, No. 05-cv-721, 2006 WL 585152, at *2 (E.D. Va. Mar. 10, 2006) (noting that the Defendant explained that the request required it to review tens of thousands electronic and paper files, and that each file review would take up to twenty minutes); *Capital One Bank (USA) N.A. v. Hess Kennedy Chartered, LLC*, No. 08-cv-147, 2008 WL 4467160, at *4 (E.D. Va. Sept. 30, 2008) ("As [the defendant] bears the burden of proof, and has not provided sufficient explanation, it must undertake reasonable efforts to produce the information or demonstrate, with specificity, why it would be overly burdensome and costly."). In any event, the decisions are generally consistent with SFFA's request for two additional years of applicant data, which would provide three years of pre-Complaint data. *See, e.g.*, *Anderson v. Consol. Coal Co.*, No. 11-cv-138, 2014 WL 12595769, at *6 (N.D. W. Va. May 19, 2014) (granting motion to compel discovery from a five-year period); *Smith v. Bayer Material Sci., LLC*, Case No. 12-cv-171, 2013 WL 3153467, at *5 (N.D. W. Va. June 19, 2013) (granting discovery request for information going back five years); *Capital One Bank*, 2008 WL 4467160, at *3 (granting motion to compel

discovery over five-year period); *Eggleston*, 2006 WL 585152, at *2 (granting discovery of two years' worth of pre-complaint data).

### C. The "Aggregate Data" Produced by UNC is Not Probative of the Key Question—Which is Why UNC Sought Additional Applicant-Level Data.

Finally, UNC spends substantial time in its brief emphasizing the alleged value of the "aggregate data" it has produced, and attaches examples of such to its motions. Opposition at 3-5. A simple review of those exhibits reveals their inadequacy. The documents identified by UNC provide an overview of the admitted class, breaking down the total number of applicants and admitted students by various categories: race, residency, ACT scores, etc. But none of these documents provides breakdowns sufficient to identify the role that race is actually playing in the admissions process. *See* Doc. 85-1, Doc. 85-2, Doc. 85-3, Doc. 85-6. For example, one cannot identify from this data how many of the Asian students who applied received SAT scores above 1500. Nor can one identify the relative high-school GPAs, class rank, or other criteria by ethnicity. *This* is the information that is crucial in analyzing whether "an applicant's race or ethnicity the defining feature of his or her application." *Fisher I*, 133 S. Ct. at 2420. The data UNC relies upon now is of very little use for the analysis under which UNC will bear the burden of proof.

Indeed, UNC effectively concedes as much. After all, it chose not to rely upon this type of aggregate data when it sought leave to produce applicant-level data for two additional years. If the data sheets were not enough for UNC's defensive purposes, there is no reason why SFFA should be forced to use them. Basic equity—combined with the Supreme Court's emphasis of the need to make use of the data in the university's possession—require that SFFA's request be treated the same as UNC's.

SFFA is also seeking aggregate data for two additional years, but it has requested specific aggregate data that would permit some analysis of the role that race actually plays in the individualized decisionmaking process. UNC rejected SFFA's request for this information, instead insisting that the existing reports were all it would provide. *See* Exhibit C. UNC's repeated insistence that it has provided this aggregate data is thus nonresponsive to the actual dispute. UNC thus is left with no serious objection to producing the more specific aggregate data requested by SFFA. Accordingly, SFFA requests that UNC be ordered to produce the aggregate data requested by SFFA, to the extent it is available.[4]

---

[4] Discovery has confirmed that much of the data SFFA seeks are available, either through the admissions office or through UNC's Office of Institutional Research and Assessment.

## CONCLUSION

For the foregoing reasons, the Court should grant SFFA's motion to compel and order UNC to produce applicant data from UNC's electronic databases for the 2011-12 and 2012-13 admissions cycles, and aggregate data from the 2009-10 and 2010-11 admissions cycles.

Respectfully submitted,


*/s/ Thomas R. McCarthy*
Thomas R. McCarthy
Consovoy McCarthy PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
(703) 243-9423
E: tom@consovoymccarthy.com

*/s/ William S. Consovoy*
William S. Consovoy
Consovoy McCarthy PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
(703) 243-9423
E: will@consovoymccarthy.com

*/s/ J. Michael Connolly*
J. Michael Connolly
Consovoy McCarthy PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
(703) 243-9423
E: mike@consovoymccarthy.com

*/s/ Alan M. Ruley*
Alan M. Ruley
N.C. State Bar No. 16407
Bell, Davis & Pitt, P.A.
P.O. Box 21029
Winston Salem, NC 27120-1029
(336) 714-4147
E: aruley@belldavispitt.com

*Attorneys for Plaintiffs*


Dated: June 12, 2017

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.3

Pursuant to L.R. 7.3(d)(1), I hereby certify that the body of this brief, including headings and footnotes, contains 5,106 words, which is less than the limit for this filing.

This the 12th day of June, 2017.

/s/ Alan M. Ruley
Alan M. Ruley

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing pleading via the Court's electronic filing system, pursuant to the Electronic Filing Procedures, on all attorneys of record who have entered an appearance by ECF in this matter.

This the 12th day of June, 2017.

/s/ Alan M. Ruley
Alan M. Ruley