# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# CASE NO. 1:14-CV-954

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, et al., <br><br> Defendants. | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS UNDER FRCP 12(b)(1)** <br><br> **[REDACTED]** |

Pursuant to Federal Rule of Civil Procedure 12(b)(1), The University of North Carolina at Chapel Hill and other Defendants respectfully submit this memorandum of law in support of their motion to dismiss for lack of subject matter jurisdiction. Plaintiff Students for Fair Admissions cannot meet its burden of proving its eligibility for representational standing—a necessary prerequisite for SFFA to be able to pursue any claims on behalf of its constituents. The Court, therefore, should dismiss the case for lack of subject matter jurisdiction.

## Standard of Review

A plaintiff bears the burden of establishing subject matter jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *U.S. ex rel. Vuyyuru v. Jadhav,* 555 F.3d 337, 347 (4th Cir. 2009); *N. C. State Conference of the NAACP v. N. C. State Bd. of Elections*, No. 1:16CV1274, 2017 WL 4286275, at *2 (M.D.N.C. Sept. 26, 2017). Deriving from Article III's "cases and controversies" requirement,

demonstrating subject matter jurisdiction requires a showing of proper standing. *N. C. State Conference of the NAACP*, 2017 WL 4286275, at *3. "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted) (internal quotations omitted). *See also N. C. State Conference of the NAACP*, 2017 WL 4286275, at *2. When a plaintiff does not have standing, the court lacks subject matter jurisdiction and should dismiss the complaint. *See Vuyyuru*, 555 F.3d at 347.

## ARGUMENT

Plaintiff's lawsuit challenges the constitutionality of the University's undergraduate admissions process. But SFFA does not bring this suit against the University for relief for the organization itself. Although an organization may bring suit in its own right—*see, e.g., N. C. State Conference of the NAACP,* 2017 WL 4286275, at *3 (explaining that an organization that suffers an injury itself may be able to establish "organizational standing")—SFFA's complaint does not allege any injury to the organization itself.

Instead, SFFA asserts "representational standing," (also referred to as "associational standing") to pursue claims *on behalf of its members*, including individuals who were denied undergraduate admission to the University, individuals who intend to apply for undergraduate admission to the University, and the parents of both of these

2

groups. Ex. 1, Plaintiff's Objections and Responses to Defendants' First Combined Discovery Requests, July 13, 2015, General Objection 8 at p. 2-3. Indeed, Edward Blum formed SFFA in 2014 for the purpose of "eliminat[ing] the consideration of race in K through 12 admissions decisions and higher education admissions decisions." Ex. 2, Deposition of Edward Blum ("Blum Dep.") at 56:21-23. The primary means of achieving this objective was to be through litigation. *Id*. at 57:10-11. By providing nothing more than a name and zip code through an online registration form, anyone could join SFFA and be considered a member of the organization. *Id*. at 110:10-23.

As shown below, however, SFFA is not a member-driven organization. Although SFFA claims that it represents these constituents, these individuals do not participate meaningfully in the organization, barely provide any funding for the organization, and do not control or influence the organization. In short, they lack the key characteristics of members of a true membership organization. As a result, SFFA cannot satisfy the threshold requirement of eligibility for representational standing.

I. **SFFA Bears the Burden of Proving Standing.**

"Standing is a threshold jurisdictional question which ensures that a suit is a case or controversy appropriate for the exercise of the courts' judicial powers under the Constitution of the United States." *Pye v. United States,* 269 F.3d 459, 466 (4th Cir. 2001) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998)). As the party invoking federal jurisdiction, SFFA has the burden to prove standing or else the action must be dismissed. *Vuyyuru*, 555 F.3d at 347 ("When, as here, a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the

3

burden of proving the truth of such facts by a preponderance of the evidence."); *see also N. C. State Conference of the NAACP*, 2017 WL 4286275, at *2.

Moreover, when an organizational plaintiff asserts that it has representational standing, courts do not accept this assertion at face value. *See Wash. Legal Found. v. Leavitt*, 477 F. Supp. 2d 202, 209-211 (D.D.C. 2007) (examining the relationship between plaintiff organization and its purported members to assess whether organization could assert representational standing); *AARP v. U. S. Equal Emp't Opportunity Comm'n*, 226 F. Supp. 3d 7, 16 (D.D.C. 2016) (noting that a plaintiff's "mere assertion that an individual is a 'member' of an organization is not sufficient to establish membership"). To the contrary, courts closely examine the plaintiff organization, how it operates, and its relationship with its constituents. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344-45 (1977) (examining, among other things, whether the plaintiff functioned like a membership organization and whether its constituents had the indicia of membership); *Package Shop, Inc. v. Anheuser-Busch, Inc.*, No. CIV. A. 83-513, 1984 WL 6618, at *39 (D.N.J. Sept. 25, 1984) ("The question of whether Wine & Spirits can legitimately speak for its members turns on whether the organization, *in fact*, does have a true membership.") (emphasis added).

As noted above, when a court considers a plaintiff's claim of representational standing in the context of a Rule 12(b)(1) motion to dismiss, "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (citation omitted).

4

**II. SFFA Cannot Satisfy the Threshold Requirement of Eligibility for Representational Standing.**

Although there is no doubt that an association *may* have the right to seek judicial relief on behalf of its constituents through representational standing, mere status as an organization does not automatically confer such standing. Instead, as the Supreme Court explained in *Hunt*, an organizational plaintiff bears the threshold burden of proving that it is *eligible* for representational standing, and then it must prove that it meets separate representational standing requirements also articulated in *Hunt*. *See Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1110 (9th Cir. 2003) (first examining whether plaintiff organization had "members" or their functional equivalent, and separately examining whether plaintiff met standing requirements); *Heap v. Carter*, 112 F. Supp. 3d 402, 418-19 (E.D. Va. 2015) (dismissing organizational plaintiff, in part because the plaintiff did not prove that it was an organization capable of asserting representational standing); *Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 86 F. Supp. 2d 912, 917 (D. Minn. 2000), certified question answered, 621 N.W.2d 2 (Minn. 2001) ("Before undertaking the *Hunt* tripartite analysis, however, the Court must first determine whether the plaintiff is the type of organization capable of asserting associational standing"); *Allstate Ins. Co. v. City of Chicago*, No. 02 C 5456, 2003 WL 1877670, at *3 (N.D. Ill. Apr. 14, 2003) ("Before considering the [*Hunt*] factors above, the threshold question is whether the insurance companies even qualify as an association and its insureds as members.").

In assessing an organization's *eligibility* to assert representational standing—separate from the actual standing requirements—the Supreme Court in *Hunt* set forth

three facts that it considered in reaching its conclusion that the organization at issue was eligible for representational standing: (1) whether the organization for all practical purposes performed the functions of a traditional trade association; (2) whether the organization served a specialized segment of the State's economic community, which is the primary beneficiary of its activities; and (3) whether its constituents possessed all of the "indicia of membership" in an organization. *Hunt*, 432 U.S. at 344.

Since *Hunt*, those courts that have evaluated eligibility for representational standing have regularly examined whether the organization's constituents possess indicia of membership. *See, e.g., Gettman v. Drug Enf't Admin.*, 290 F.3d 430, 435 (D.C. Cir. 2002) (dismissing magazine's petition for review in part on lack of representational standing grounds because proposed constituents lacked indicia of membership); *Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999) (analyzing only whether plaintiff organization's constituents had indicia of membership and served a specialized segment of the community); *Heap*, 112 F. Supp. 3d at 419 (dismissing organizational plaintiff in part because plaintiff did not prove that its members had certain indicia of membership, without examining other eligibility criteria). Because SFFA's members lack indicia of membership in an organization, SFFA cannot clear the threshold hurdle of eligibility for representational standing. Therefore, the Court's inquiry should end here as should this lawsuit.

A. **SFFA's Constituents Lack Indicia of Membership.**

Critically, SFFA's constituents lack indicia of membership that are required for SFFA to be able to bring this lawsuit on their behalf. *Hunt* made clear that the "indicia of

membership" inquiry itself includes three considerations: (1) that constituents alone may serve as part of the organization; (2) that constituents alone finance the organization's activities, including the costs of the lawsuit; and (3) that the constituents provide the leadership of the organization. *See Hunt*, 432 U.S. at 344. Since the Supreme Court decided *Hunt* in 1977, courts have applied and developed these principles to a variety of organizations and contexts. With respect to each consideration, SFFA cannot meet its burden to prove sufficient indicia of membership.

### 1. SFFA's Constituents Do Not Meaningfully Participate or Serve in the Organization.

In assessing whether constituents are members for purposes of representational standing, the Court must examine whether constituents serve in leadership roles or at least participate generally in an organization. *See Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.,* 675 F.3d 149, 158-59 (2d Cir. 2012) (applying *Hunt* and determining that plaintiff organization lacked indicia of membership because its constituents lacked "a sufficiently active affiliation with the organization" or "the power to elect its directors, make budget decisions, or influence [the organization's] activities or litigation strategies"); *Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F. Supp. 2d 663, 675 (E.D. La. 2010) (applying *Hunt* and noting "[A] person becomes a member [of the plaintiff organization] through active, voluntary involvement, such as by attending neighborhood or strategy team meetings"); *Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 598 (D.C. Cir. 2015) (applying *Hunt* and holding that the organization was

7

a traditional membership organization and emphasizing that "[plaintiff's] members and its President aver that they participate actively in CSE's operations").

Discovery in this litigation, including the testimony of SFFA's President and a member designated for standing purposes, revealed that SFFA's members *do not* play a meaningful role in the organization beyond the mere act of joining, much less serve in leadership roles. For example, after joining, individuals have no responsibilities or duties in the organization. Ex. 3, Deposition of Standing Member #1 ("Standing Member #1 Dep."), at 46:8-10 (Q. Do you have any duties or responsibilities just in the ordinary course per month or year as a member? A. No.). Similarly, SFFA has no committees for its constituents to serve on, meetings to attend, or activities to participate in. *See* Ex. 2, Blum Dep., at 114:21-116:1. Besides a teleconference every few months, there are no organizational opportunities for SFFA's constituents to interact with each other or the organization's leadership. *Id.*

Nor does membership in SFFA confer many rights. Indeed, SFFA's original bylaws did not grant members any rights at all. Ex. 4, SFFA Original Bylaws, at Section 3.02. Even the amended bylaws provide only the right to vote for a single director and the right to resign. Ex. 5, SFFA Amended Bylaws, at Sections 3.02, 3.03. Thus, without any responsibilities and with rights that are limited at best, SFFA's constituents do not have "a sufficiently active affiliation with the organization," *Disability Advocates,* 675 F.3d at 158–59; do not "participate actively" in SFFA's operations, *Ctr. for Sustainable Econ.*, 779 F.3d at 598; and do not have "active, voluntary involvement" in SFFA,

8

*Concerned Citizens*, 686 F. Supp. 2d at 675. With such a limited role, SFFA's constituents cannot be considered "members" for standing purposes.

The testimony of the individual that SFFA designated to assert standing demonstrates how uninvolved SFFA's constituents are with the organization. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉; Ex. 3, Standing Member #1 Dep., at 36:15-38:6. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉:

- Standing Member #1 does not read emails or communications from SFFA. (Ex 3, Standing Member #1 Dep., at 51:2-9) (Q. Do you ever receive any communications from Students For Fair Admissions? A. Not that I know of. I probably, if they have an email list, I probably get emails but I generally ignore most emails unless they are of particular importance, so. Q. So it -- okay. And that would have been emails, if you received any, you would have ignored them? A. Yes.).

- Standing Member #1 does not know what SFFA does on a day-to-day basis. (*Id* at 18:16-18.)

- Standing Member #1 has never made a donation or paid dues to SFFA. (*Id.* at 38:13-17.)

- Standing Member #1 does not participate in SFFA activities, besides preparing for a deposition and submitting a declaration for this lawsuit. (*Id.* at 44:21-25) (when asked about his participation since becoming a member, Standing Member #1 responded "I had to make a declaration and appear here today [to be deposed], no other responsibilities").

- Standing Member #1 was not aware that SFFA had held an election for a director, and did not even know that a member had the right to vote in such an election until SFFA's lawyers said so a week before the deposition. (*Id.* at 46:14-25) (Q. Okay. Any others [i.e. member rights] that you can think of? A. The right to vote for one of the board positions. Q. And how do you

9

> know that you have that right? A. Because I was told. Q. By who? A. By legal counsel. Q. Okay. When? A. Recently, like the last week or so. Q. Okay. Before that point in time, did you know that you had a right to vote for -- vote for any position in the organization? A. No.).

Thus, except for giving a name and address to SFFA in August 2014 and preparing for a deposition in June 2017, even SFFA's hand-picked representative has been virtually uninvolved in the organization. Such minimal involvement does not constitute meaningful participation in the organization.

### 2. SFFA is Not a Constituent-Funded Organization.

In addition to not participating generally in the organization and not serving in leadership roles, SFFA's constituents provide almost none of the organization's funding. The absence of constituent funding is a factor that courts often rely upon when ruling that an organization lacks eligibility for representational standing. *See e.g., Nestle Ice Cream Co. v. N.L.R.B.*, 46 F.3d 578, 586 (6th Cir. 1995) (concluding that plaintiff union lacked representational standing to represent employees because they lacked indicia of membership in an organization, specifically, that "[t]he employees had no power to elect Teamsters officials [and] did not finance the Teamsters"); *Package Shop,* 1984 WL 6618, at *40 (granting motion to dismiss and noting that members "do not finance the organization, except indirectly, through their one-time contribution"). In contrast, being entirely member-financed weighs in favor of representational standing. *See Concerned Citizens*, 686 F. Supp. 2d at 676 (finding that organization had representational standing, in part because it had "no external financing" at all).

10

Here, SFFA's affirmative representations make clear that it is not constituent-funded. In fact, ███████████████████████████████████████████████
████████████████████████████████████████████ Ex. 6, Plaintiff's Second Amended Objections and Responses to Defendants' First Combined Discovery Requests to Plaintiff ("Plaintiff's Second Amended Responses"), Response to Interrogatory No. 5 at p. 8. In 2015 alone, the Searle Freedom Trust gave SFFA $500,000. Ex. 7, Form 990-PF: Return of Private Foundation for The Searle Freedom Trust, 2015, at p. 28 (retrieved from http://990.erieri.com/EINS/367244615/367244615_2015_0d942bf4.PDF). Additionally, SFFA's initial funding came from the Project on Fair Representation—another litigation vehicle controlled by SFFA's founder, Mr. Blum. Ex. 8, 501(c)(3) Application of Students for Fair Admissions, at SFFA-UNC 0000046.

In contrast, ██████████████████████████████████████████████ Ex. 6, Plaintiff's Second Amended Responses, Response to Interrogatory No. 5 at p. 8. ████
██████████████████████████████████████████████
███████████████████ With such a miniscule portion of funding coming from members, SFFA cannot be considered a member-funded organization.

Additionally, SFFA has collected very little money in the form of dues from members. SFFA originally had no dues requirement. Ex. 4, Original Bylaws, at Sections 3.01-3.02. Only beginning in June 2015 did SFFA require new members to pay a one-time $10 fee upon joining. Ex. 5, Amended Bylaws at Sections 3.01-3.02. SFFA has received approximately $1,000—a miniscule amount of its total funding of more than

11

$2.8 million—from membership dues. Ex. 2, Blum Dep. at 73:23-24 (about a hundred new members have paid the $10 membership fee). But even if more people had paid a fee upon joining the organization, an indirect, "one-time contribution" is not enough to make SFFA a member-funded organization. *See Package Shop*, 1984 WL 6618 at *40 (concluding that organization could not sue on behalf of members, in part because "members do not finance the organization, except indirectly, through their one-time contribution").

### 3. SFFA's Leadership Structure Does Not Provide Sufficient Ways For Constituents to Control or Influence the Organization.

Finally, the constituents that SFFA purportedly represents do not have any meaningful control or influence over the organization. For example, electing an organization's leaders is often considered a critical component of eligibility for representational standing. *See e.g. Nestle Ice Cream*, 46 F.3d at 586 (employees lacked indicia of membership in plaintiff union, in part because "[t]he employees had no power to elect Teamsters officials"); *Disability Advocates*, 675 F.3d at 159 (organization lacked representational standing because it did not provide evidence that its constituents had the power to elect directors or influence activities). In addition to elections, courts have looked at other ways constituents control or influence an organization. To illustrate, if constituents exercise control or influence through means such as advisory committees, courts have been more likely to find that the organization has representational standing. *See*, *e.g.*, *Stincer,* 175 F.3d at 886 (advocacy organization created for people with mental health disabilities had representational standing, in part because its governing board was

*required* to include constituents, and because 60% of the organization's advisory council, including the chair, was *required* to be constituents); *AARP*, 226 F. Supp. 3d at 17 (finding that AARP has representational standing in part because its members serve on committees that advise the board and guide AARP activities through annual polls and surveys).

Even pursuant to a broad interpretation of control or influence over an organization, however, SFFA lacks these characteristics.

First, the board of directors is almost entirely self-appointed, which weighs heavily against a finding that SFFA has representational standing. *See Package Shop,* 1984 WL 6618 at *40 (granting motion to dismiss and questioning plaintiff's status as a membership organization in part because "[t]he organization essentially is run by people who are self-appointed"). SFFA's three original directors—the current president, secretary, and treasurer—were self-appointed. Ex. 9, SFFA's Articles of Incorporation, at ¶ 3. Even when SFFA expanded the board to five positions, four of the five directors remained self-appointed. *See* Ex. 5, SFFA Amended Bylaws, at Section 4.02 (allowing only a single director to be elected by members). Additionally, Mr. Blum, as president, performs nearly all of the board's work himself:

- Mr. Blum manages the day-to-day activities of the organization, including communications with counsel and constituents, outreach, and media relations (Ex. 2 (Blum Dep.) at 53:24-25);
- Mr. Blum does fundraising work, including drafting grant proposals, sending grant proposals, following up on grant proposals, making presentations to foundations, making presentations to individuals, and making phone calls to individuals and foundations (*Id.* at 46:18-22);

13

- Mr. Blum prepares agendas for phone calls among board members (*Id.* at 51:14-24);

- Mr. Blum gives speeches and presentations (*Id.* at 112:7-13); and

- Mr. Blum approves content for social media campaigns (*Id.* at 21:21-24).

Because SFFA has only a single elected director, and because the president effectively runs the organization by himself, SFFA "essentially is run by people who are self-appointed" and lacks representational standing. *See Package Shop,* 1984 WL 6618 at *40.

Second, SFFA's leadership structure does not allow constituents to exercise meaningful control or influence over the organization. SFFA has no member committees that would allow constituents to control or influence the organization. *See* Ex. 2, Blum Dep., at 114:21-116:1. *Cf. Stincer*, 175 F.3d at 886 (advocacy organization created for people with mental health disabilities had representational standing, in part because its governing board was *required* to include constituents, and because 60% of the organization's advisory council, including the chair, was *required* to be constituents); *AARP,* 226 F. Supp. 3d at 17 (finding that members could influence plaintiff organization by serving on board advisory committees). SFFA's constituents cannot remove a director for any reason, which means they can neither use nor threaten removal as a way of controlling directors. Ex. 2, Blum Dep., at 50:5-11. Thus, SFFA's organizational structure allows a largely self-appointed board to operate without meaningful control or influence by its constituents. This leadership framework is not one of the "indicia of membership" under *Hunt*. *See also Package Shop*, 1984 WL 6618, at *41 (granting

14

motion to dismiss and holding that plaintiff lacked association, in large part because "it does not appear that the membership can control the actions of the officers and trustees, most of whom they did not elect. . . . The alleged members . . . do not have the control over the organization which would give it standing to sue on their behalf").

\* \* \*

As a threshold issue, to be eligible for representational standing, a plaintiff must prove that it is a genuine membership organization. SFFA cannot do so. SFFA lacks significant constituent participation, is funded almost entirely by outside groups rather than constituents, and fails to provide constituents with meaningful influence and control over the organization. Because SFFA's constituents lack indicia of membership, the organization has failed to carry its burden of proving that it has standing to bring this lawsuit challenging the University of North Carolina at Chapel Hill's undergraduate admissions practices.

## **CONCLUSION**

For these reasons, the Court should dismiss the complaint under Rule 12(b)(1) for lack of subject matter jurisdiction.

**Respectfully submitted this 25th day of October, 2017.**

/s/ Michael Scudder
Michael Scudder
Lara Flath
Marianne Combs
Skadden, Arps, Slate, Meagher & Flom LLP
155 North Wacker Drive
Chicago, IL 60606-1720
(312) 407-0700
E: michael.scudder@skadden.com
E: lara.flath@skadden.com
E: marianne.combs@skadden.com

/s/ Lisa Gilford
Lisa Gilford
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Ave.
Los Angeles, CA 90071
(213) 687-5130
E: lisa.gilford@skadden.com

JOSH STEIN
Attorney General

/s/ Stephanie Brennan
Stephanie Brennan
Special Deputy Attorney General
NC State Bar No. 35955
E: sbrennan@ncdoj.gov

/s/ Matthew Tulchin
Matthew Tulchin
Special Deputy Attorney General
NC State Bar No. 43921
E: mtulchin@ncdoj.gov
NC Department of Justice
Post Office Box 629
Raleigh, NC 27602-0629
(919) 716-6920

*Attorneys for Defendants*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), I hereby certify that the body of this brief, including headings and footnotes, does not exceed 6,250 words.

This 25th day of October, 2017.

/s/ Michael Scudder
Michael Scudder

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Defendants' Memorandum of Law In Support of Their Motion to Dismiss Pursuant to FRCP 12(b)(1) via the Court's electronic filing systems, pursuant to the Electronic Filing Procedures, on all attorneys of record who have entered an appearance by ECF in this matter.

This 25th day of October, 2017.

/s/ Michael Scudder<br>
Michael Scudder