IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:14-CV-954

| | |
|---|---|
| **STUDENTS FOR FAIR ADMISSIONS, INC.,**<br><br>      **Plaintiff,**<br><br>      v.<br><br>**UNIVERSITY OF NORTH CAROLINA et al.,**<br><br>      **Defendants.** | **PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO FILE UNDER SEAL** |

Pursuant to Federal Rule of Civil Procedure 5.2 and Local Rule 5.4, Plaintiff Students for Fair Admissions, Inc. ("SFFA") respectfully files this brief in support of Defendants' motion to file certain materials under seal.

**NATURE OF THIS MATTER**

SFFA—a 501(c)(3) voluntary membership association—has sued the University of North Carolina at Chapel Hill ("UNC") for unconstitutionally using racial preferences in undergraduate admissions. In response, UNC sought far-reaching discovery about SFFA and its members. SFFA produced substantial amounts of material in response to these requests—nearly 1,500 pages of documents—and answered numerous interrogatories. Among other

1

things, SFFA produced the names of (and relevant information about) its members on whose behalf this action is brought; its application to become an IRS-approved 501(c)(3) entity; the IRS's approval letter; its Articles of Incorporation and Bylaws; its Annual Reports; and numerous other documents. In addition to receiving those discovery materials, UNC took the depositions of SFFA's President and one of the members of SFFA upon whom SFFA relies for standing ("Standing Member #1"). In order to protect the First Amendment associational rights of SFFA and its members, SFFA properly designated much of this discovery material as "confidential" or "highly confidential" and produced it subject to the Protective Order governing this case. [Amended Confidentiality and Protective Order, Docket No. 61.]

On October 25, 2017, UNC filed a motion to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. In that motion, UNC challenges SFFA's associational standing. Prior to filing that motion, SFFA and UNC met and conferred regarding SFFA's confidentiality designations as to the discovery materials UNC intended to rely upon in connection with its motion. SFFA agreed that the large majority of these materials could be filed without redaction but continued to assert confidentiality with respect to two items: (1) the identity of Standing Member #1; and (2) SFFA's response to UNC's Interrogatory No. 5, which requests that

SFFA "[i]dentify the name of any Person or entity that has made or provided any form of contribution or donation, whether in the form of cash, property, or other form, to SFFA since its inception."

UNC thus has appropriately protected the confidentiality of these items in its motion to dismiss and supporting memorandum. Specifically, UNC has protected the identity of Standing Member #1 by redacting the individual's name from the top of each page from the relevant deposition transcript and making appropriate redactions to the memorandum in support of its motion. UNC also relies on SFFA's Response to Interrogatory No. 5 in its motion and has included it as Exhibit 6 to its motion; UNC thus has filed Exhibit 6 under seal and has made limited redactions to its supporting memorandum as necessary to ensure the confidentiality of this material. UNC has not and does not challenge SFFA's designation of any of these materials as Confidential or Highly Confidential under the Protective Order.

SFFA now seeks permanent sealing of the identity of Standing Member #1 and its Response to Interrogatory No. 5.

## SUMMARY OF ARGUMENT

**I. Sealing is Necessary to Protect the Associational Rights of SFFA and its Members and Donors.**

Sealing is required here for two reasons: (1) to protect the identity of SFFA's "Standing Member #1" and (2) to protect the confidentiality of the

3

donor information SFFA disclosed to UNC in connection with SFFA's Response to Interrogatory No. 5.

It cannot be questioned that SFFA's and its members' and donors' associational rights are implicated here. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984) ("[W]e have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends."). Indeed, there is a "vital relationship between freedom to associate and privacy in one's associations." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958). And "[t]he freedom to associate encompasses the ability to make financial contributions in order to further a common goal." *Tree of Life Christian Sch. v. City of Upper Arlington*, No. 11-cv-00009, 2012 WL 831918, at *2 (S.D. Ohio Mar. 12, 2012) (citing *Buckley v. Valeo,* 424 U.S. 1, 22 (1976) (holding that campaign contribution limitations impinged on protected associational freedoms)).

As the Supreme Court has emphasized, the "[i]nviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *NAACP*, 357 U.S. at 462. It is for this reason that courts routinely bar altogether the discovery of membership lists, *see, e.g., id.; FEC v.*

4

*Machinists Non-Partisan Political League*, 655 F.2d 380, 397 (D.C. Cir. 1981); *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 2-3 (D.D.C. 2002); *Sierra Club v. Union Elec. Co.*, 2015 WL 9583394, at *4 (E.D. Mo. Dec. 31, 2015); and information about financial contributions, *see, e.g.*, *Int'l Action Ctr.*, 207 F.R.D. at *3; *Tree of Life*, 2012 WL 831918, at *4.

The same concerns require sealing as requested here. Publication of Standing Member #1's identity could subject the individual to harassment and even threats of physical violence. SFFA's President has been called a white supremacist, regularly receives threatening or vile emails and text messages, and has twice received death threats for his advocacy work against racial preferences. Exhibit A, Declaration of Edward Blum ("Blum Decl.") ¶ 24. An SFFA Board member who was a named plaintiff in a similar case against the University of Texas was subjected to an online campaign of harassment. Blum Dec. ¶ 18. She has been called vile and sexist names, been told to "kill yourself," and been the subject of other threats of physical violence. *Id.* ¶ 18. There is every indication that SFFA members will be subjected to the same if their identities are disclosed. Indeed, opponents of this suit have already begun to engage in these deplorable tactics. *Id.* ¶ 9. This type of harassment would lead any reasonable person—especially a young student such as

5

Standing Member #1—to reconsider his or her involvement in constitutional challenges to the use of race in college admissions. *Id.* ¶¶ 15, 16, 25.

Similarly, publication of the donor information produced confidentially to UNC would likely deter participation in and contributions to SFFA. SFFA donors justifiably fear retaliation from other universities, graduate schools, prospective employers, and current employers, among others. *Id.* ¶¶ 20-22. Accordingly, shielding both the identity of Standing Member #1 and the confidential donor information produced in Response to Interrogatory No. 5 is necessary to safeguard the associational rights of SFFA and its members and donors.

**II.     The Request to Seal is Limited and Narrow; Less Drastic Alternatives Would Not Afford Adequate Protection.**

***Standing Member #1's identity.*** As explained above, SFFA seeks to protect Standing Member #1's identity simply via redaction of the individual's name from the top of each deposition page and appropriate redactions in briefing filed in connection with this motion. SFFA is not asserting confidentiality over the substance of Standing Member #1's deposition testimony that UNC relies on in its motion and supporting memorandum. Accordingly, UNC has made no redactions other than to protect Standing Member #1's identity. Given that the only redactions are specifically tailored

6

to protecting Standing Member #1's identity, there is no less drastic alternative that could afford adequate protection.

***Response to Interrogatory No. 5.*** As explained above, SFFA seeks to maintain the confidentiality of its response to UNC's interrogatory requesting that SFFA "[i]dentify the name of any Person or entity that has made or provided any form of contribution or donation, whether in the form of cash, property, or other form, to SFFA since its inception." Accordingly, UNC has redacted the information provided in this response from the memorandum in support of its motion to dismiss and has filed the exhibit that includes this response under seal. Out of all the organizational information that UNC is relying on in its motion to dismiss, SFFA seeks the sealing of only this limited slice of information. SFFA is not seeking to seal any other information relied upon by UNC in its motion—not the numerous excerpts from the deposition testimony of SFFA's President, not the organization's bylaws or amended bylaws, not the articles of incorporation, not the application for 501(c)(3) treatment. Again, given the tailored nature of these redactions, there is no less drastic alternative that could afford adequate protection.

### III. The Motion to Seal Should Be Granted.

The right of access to judicial documents is a "qualified right." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). Although the Supreme Court

7

has recognized this qualified right only in the context of criminal proceedings, *see Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980) (reserving the question whether the right applies in the civil context), many Circuits have extended it to civil proceedings, *see Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004) (collecting cases), including the Fourth Circuit, *see Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988).

This qualified right arises from two independent sources—the common law and the First Amendment. *See Virginia Dep't of State Police v. Washington Post*, 386 F.3d, 567 (4th Cir. 2004). "While the common law presumption in favor of access attaches to all 'judicial records and documents,' the First Amendment guarantee of access has been extended only to particular judicial records and documents." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988) (internal citation omitted). Accordingly, some documents "fall within the common law presumption of access, while others are subject to the greater right of access provided by the First Amendment. Still others may not qualify as 'judicial records' at all." *United States v. Moussaoui*, 65 F. App'x 881, 889 (4th Cir. 2003) (internal citation omitted).

The common law presumes a right of public access "to inspect and copy … judicial records and documents." *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978); *see also Stone,* 855 F.2d at 180. A court may exercise its supervisory power to seal judicial documents if competing interests outweigh the interest in access. *Nixon,* 435 U.S. at 598-99, 602-03; *In re Knight Publishing Co.,* 743 F.2d 231, 235 (4th Cir. 1984). Whether the balance weighs in favor of sealing is within the sound discretion of the court. *See Nixon,* 435 U.S. at 599; *Rushford,* 846 F.2d at 253. In carrying out this balancing effort, a court may consider "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." *Knight*, 743 F.2d at 235 (citation omitted).

Unlike the common-law right, the First Amendment right of access has a more limited scope that "has been extended only to particular judicial records and documents." *Stone,* 855 F.2d at 180. This right applies to trial proceedings, and the Fourth Circuit has concluded that it applies in civil cases to documents filed in connection with a motion for summary judgment "[b]ecause summary judgment adjudicates substantive rights and serves as a

substitute for a trial." *Rushford*, 846 F.2d at 252. When this right attaches, it is stronger than the common law right; "the denial of access must be necessitated by a compelling government interest and narrowly tailored to serve that interest." *Id.* at 253.

It is not entirely clear whether the First Amendment right to access attaches to documents filed in support of a motion to dismiss on standing grounds. *See In re Policy Mgmt. Sys. Corp.*, 67 F.3d 296 (4th Cir. 1995) (unpublished). But it makes no difference here because the interests supporting the narrow sealing request outweigh the right to access, even under the more stringent test. Protecting a constitutional right is always a compelling government interest; indeed, "[i]t can hardly be argued that seeking to uphold a constitutional protection … is not per se a compelling state interest." *Republican Party of Minnesota v. White*, 416 F.3d 738, 753 (8th Cir. 2005); *see also United States v. Raines*, 362 U.S. 17, 27 (1960) ("[T]here is the highest public interest in the due observance of all the constitutional guarantees."). Accordingly, there is a compelling government interest in safeguarding the free associational rights of SFFA and its members and donors. And as explained above, the request to seal the identity of Standing Member #1 and SFFA's Response to Interrogatory No. 5 is narrowly tailored. Indeed, the sealing request is so narrow that there is no less restrictive

10

alternative that is capable of protecting the associational rights of SFFA and its members and donors. *See supra* 6-7.[1]

## CONCLUSION

For the reasons stated in the accompanying brief, SFFA respectfully requests that this Court grant to motion to file under seal.

Respectfully submitted,

/s/ *Thomas R. McCarthy*
Thomas R. McCarthy
Consovoy McCarthy Park PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
(703) 243-9423
E: tom@consovoymccarthy.com

/s/ *William S. Consovoy*
William S. Consovoy
Consovoy McCarthy Park PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201

/s/ *Alan M. Ruley*
Alan M. Ruley
N.C. State Bar No. 16407
Bell, Davis & Pitt, P.A.
P.O. Box 21029
Winston Salem, NC 27120-1029
(336) 714-4147
E: aruley@belldavispitt.com

---

[1] SFFA further notes that the materials sought to be filed under seal are irrelevant to the resolution of UNC's challenge to SFFA's associational standing. As SFFA will explain in its forthcoming opposition, an association has standing when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 343, (1977). Neither the identity of Standing Member #1 nor information about donors and donations to SFFA has any bearing on the three-factor test outlined in *Hunt*.

(703) 243-9423
E: will@consovoymccarthy.com

*Attorneys for Plaintiff*

Dated: November 8, 2017

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing pleading via the Court's electronic filing system, pursuant to the Electronic Filing Procedures, on all attorneys of record who have entered an appearance by ECF in this matter.

This the 8th day of November, 2017.

/s/ *Thomas R. McCarthy*
Thomas R. McCarthy