## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

STUDENTS FOR FAIR ADMISSIONS,
INC.,

        Plaintiff,

        v.

UNIVERSITY OF NORTH CAROLINA
et al.,

        Defendants.

Case No. 1:14-cv-954

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ii

INTRODUCTION .............................................................................................. 1

FACTUAL BACKGROUND ................................................................................ 2

ARGUMENT ..................................................................................................... 5

I.    The Indicia-of-Membership Test Does Not Apply to a Voluntary Membership
Organization Like SFFA. ..................................................................................... 7

II.    SFFA Would Have Associational Standing Even if the Court Were to Extend
the Indicia-of-Membership Test to a Voluntary Membership Organization
for the First Time. ................................................................................................. 13

CONCLUSION.................................................................................................... 23

CERTIFICATE OF COMPLIANCE WITH L.R. 7.3 ....................................... 24

CERTIFICATE OF SERVICE ........................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

*AARP v. EEOC,*
 226 F. Supp. 3d 7 (D.D.C. 2016) ................................................................... 22

*AARP v. United States Equal Employment Opportunity Comm'n,*
 226 F. Supp. 3d 7 (D.D.C. 2016) ................................................................... 10

*Allstate Ins. Co. v. City of Chicago,*
 No. 02-cv-5456, 2003 WL 1877670 (N.D. Ill. Apr. 14, 2003) ...................... 10

*Am. Legal Found. v. FCC,*
 808 F.2d 84 (D.C. Cir. 1987) ........................................................................ 17

*Bay Tobacco, LLC v. Bell Quality Tobacco Prod., LLC,*
 261 F. Supp. 2d 483 (E.D. Va. 2003) ............................................................ 15

*Brady Campaign to Prevent Gun Violence v. Salazar,*
 612 F. Supp. 2d 1 (D.D.C. 2009) .................................................................... 9

*Calif. Sportfishing Prot. All. v. Diablo Grande, Inc.,*
 209 F. Supp. 2d 1059 (E.D. Cal. 2002) ........................................................... 8

*Center for Sustainable Economy v. Jewell,*
 779 F.3d 588 (D.C. Cir. 2015) ........................................................................ 8

*Citizens Coal Council v. Matt Canestrale Contracting, Inc.,*
 40 F. Supp. 3d 632 (W.D. Pa. 2014) .................................... 14, 16, 17, 18, 21

*Cleveland Branch, NAACP v. City of Parma,*
 263 F.3d 513 (6th Cir. 2001) ......................................................................... 21

*Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.,*
 686 F. Supp. 2d 663 (E.D. La. 2010) ................................................... 9, 16, 18

*Conservation Law Found. v. Jackson,*
 964 F. Supp. 2d 152 (D. Mass. 2013) ............................................................ 22

*Cullivan v. Kansas City S. R. Co.,*
 09-cv-685, 2010 WL 378433 (S.D. Ill. Jan. 27, 2010) ................................. 15

*Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.,*
 675 F.3d 149 (2d Cir. 2012) ............................................................................ 8

*Doe v. Stincer,*
 175 F.3d 879 (11th Cir. 1999) ................................................................... 9, 18

*Equity In Athletics, Inc. v. Dep't of Educ.,*
 639 F.3d 91 (4th Cir. 2011) ............................................................................. 6

ii

*Friends of the Earth, Inc. v. Chevron Chemical Co.,*
   129 F.3d 826 (5th Cir. 1997) ................................................................................. 15

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.,*
   204 F.3d 149 (4th Cir. 2000) ................................................................................. 13

*Fund Democracy, LLC v. SEC,*
   278 F.3d 21 (D.D.C. 2002) .................................................................................... 14

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l,*
   695 F.3d 330 (5th Cir. 2012) ................................................................................... 8

*Gay-Straight Alliance of Okeechobee High Sch. v. Sch. Bd. of Okeechobee Cty.,*
   477 F. Supp. 2d 1246 (S.D. Fla. 2007) ................................................................. 14

*Gettman v. Drug Enf't Admin.,*
   290 F.3d 430 (D.C. Cir. 2002) .............................................................................. 10

*Grp. Health Plan, Inc. v. Philip Morris, Inc.,*
   86 F. Supp. 2d 912 (D. Minn. 2000) ..................................................................... 10

*Heap v. Carter,*
   112 F. Supp. 3d 402 (E.D. Va. 2015) .................................................................... 10

*Hunt v. Wash. State Apple Advert. Comm'n,*
   432 U.S. 333 (1977) ............................................................... 6, 7, 10, 15, 21

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock,*
   477 U.S. 274 (1986) .............................................................................................. 13

*NAACP v. Alabama,*
   357 U.S. 449 (1958) ........................................................................................ 11, 12

*Nestle Ice Cream Co. v. NLRB,*
   46 F.3d 578 (6th Cir. 1995) ..................................................................................... 9

*New Mexico ex rel. Richardson v. Bureau of Land Mgmt.,*
   565 F.3d 683 (10th Cir. 2009) ............................................................................... 22

*Oregon Advocacy Ctr. v. Mink,*
   322 F.3d 1101 (9th Cir. 2003) .......................................................... 10, 14, 17, 18, 19

*Package Shop, Inc. v. Anheuser-Busch, Inc.,*
   No. 83-cv-513, 1984 WL 6618 (D.N.J. Sept. 25, 1984) ................................... 9, 16

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1,*
   551 U.S. 701 (2007) ............................................................................................ 6, 8

*Parents Involved in Cmty. Sch. v. Seattle School Dist. No. 1,*
   377 F.3d 949 (9th Cir. 2004) ................................................................................... 8

*PennEnvironment v. PPG Indus., Inc.,*
   23 F. Supp. 3d 553 (W.D. Pa. 2014) .................................................................... 12

iii

*Schuette v. BAMN,*
    134 S. Ct. 1623 (2014) ................................................................. 11

*SFFA. v. President and Fellows of Harvard College,*
    --- F. Supp. 3d ---, 2017 WL 2407255 (D. Mass. June 2, 2017)..... 6, 7, 9, 10, 11, 12, 13

*Sierra Club v. Fed. Energy Regulatory Comm'n,*
    827 F.3d 59 (D.C. Cir. 2016) ...................................................... 21

*Sierra Forest Legacy v. Sherman,*
    646 F.3d 1161 (9th Cir. 2011)...................................................... 22

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ................................................................. 11

*Sylvia's Haven, Inc. v. Mass. Dev. Fin.,*
    397 F. Supp. 2d 202 (D. Mass. 2005) .......................................... 19

*UAW v. Brock,*
    477 U.S. 274 (1986) ................................................................. 11

Washington Legal Foundation v. Leavitt,
    477 F. Supp. 2d 202 (D.D.C. 2007) .................................... 9, 15, 17, 18

## OTHER AUTHORITIES

Ann E. Carlson, *Standing for the Environment*, 45 UCLA L. Rev. 931 (1998).......... 19, 21

Brad Knickerbocker, *A 'Hostile' Takeover Bid at the Sierra Club,*
    Christian Sci. Monitor (Feb. 20, 2004) ........................................ 21

Ford Foundation, Our Grants........................................................... 21

The Wilderness Society, Our Bylaws.................................................... 22

Shawn L. Alexander, *An Army of Lions:*
    *The Civil Rights Struggle Before the NAACP* (2012) ....................... 21

Wright & Miller, Fed. Prac. & Proc. § 3531.9.5 (2d ed.) ................................ 11

# INTRODUCTION

UNC's motion to dismiss should be denied. The "indicia-of-membership" test that UNC posits does not apply to voluntary membership organizations such as SFFA. Every court that has confronted this issue has held that the "indicia-of-membership" test for associational standing applies only when the organization has no voluntary membership. Any other conclusion would violate Supreme Court precedent; impose extraordinary new burdens on a range of associations that frequently litigate (such as the ACLU and the NAACP); and raise significant First Amendment problems.

But SFFA would satisfy the indicia-of-membership test even it if were applicable. SFFA has over 22,000 members; it has issued Articles of Incorporation, Bylaws, and written membership policies; the IRS approved it as a 501(c)(3) nonprofit organization; and nearly ███ of its members have made a financial contribution. Further, SFFA has at least six members who have suffered an Article III injury, who attested under oath to their involvement in and support of SFFA's mission, and who have ultimate control over this litigation through their willingness to participate. In short, the members on whose behalf SFFA has brought this action have the indicia of membership needed to establish associational standing even if the Court were to apply that test to a voluntary membership organization for the first time.

At bottom, it is unsurprising that UNC contests SFFA's standing. Standing has been challenged in *every* case of this type. But the Supreme Court has rebuffed the challenge *every* time. UNC suggests SFFA is somehow different because of its goal of eliminating racial preferences in college admissions. This is the same unfortunate

treatment Alan Bakke, Jennifer Gratz, Barbara Grutter, and Abigail Fisher experienced for pursuing that same goal. Universities applaud and honor the litigation efforts of the League of Women Voters and the Sierra Club but then argue that SFFA is not entitled to the same treatment. The Court should reject that one-sided, unprecedented view of associational standing—just as the District of Massachusetts did in an identical challenge to SFFA's standing earlier this year.

## FACTUAL BACKGROUND

In the summer of 2013, a group of individuals formed a voluntary membership association "to end race-based classifications and preferences in public policy." Ex. A, Dep. Tr. Edward Blum ("Blum Tr.") at 34, 36. They believed that "[m]embership organizations have a source of energy that think tanks and legal advocacy groups just don't have." *Id.* at 36. But there was "no membership organization" opposing race-based classifications in college admissions "where people could say I am a member of this group, much like I would be a member of the Sierra Club or the ACLU." *Id.* They named their new association Students for Fair Admissions ("SFFA"), *id.*, and their goal was to "[e]ducat[e] the American public about the unfair and unconstitutional uses of race by educational institutions in their admissions policies" through "[s]peeches, debates, forums, one-on-one outreach, media communications," and "litigation." *Id.* at 57-58.

On July 31, 2014, SFFA incorporated as a Virginia nonprofit corporation. Ex. B, SFFA Certificate of Incorporation. Its stated mission is "to defend human and civil rights secured by law, including the right of individuals to equal protection under the law, through litigation and any other lawful means." Ex. C, SFFA Bylaws ("Bylaws") at 1.

2

SFFA's Bylaws set forth its membership policies, organizational structure, and leadership positions, including a board of directors and president. *Id.* at 1-5. SFFA applied to be a 501(c)(3) nonprofit organization, describing itself as "a coalition of prospective applicants and applicants to higher education institutions who were denied admission to higher education institutions, their family members, and other individuals who support the organization's purpose and mission of eliminating racial discrimination in higher education admissions." Ex. D, Application for Tax-Exempt Status at SFFA-UNC 0000041. The IRS approved SFFA's application. Ex. E, IRS Approval of Tax-Exempt Status.

SFFA's membership is open to "[a]ny individual who seeks to support the purposes and mission of [SFFA]" subject to "any additional standards and procedures that may be set from time to time by the Board of Directors." Bylaws at 1-2. The Board opened membership to anyone who supports SFFA's mission. Blum Tr. 71-72. In the beginning, individuals could join through SFFA's website or by otherwise expressing an intent to join. *Id.* No membership fee was required, as the Board wanted to reduce barriers to joining the organization in its infancy. Blum Tr. 72; Ex. F, Unanimous Written Consent of the Board to Amend the Bylaws ("Bylaws Amendments") at 1-2.

SFFA had over 40 members when it filed this lawsuit in November 2014. Blum Tr. 71. One of those individuals was a student ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ ("Standing Member #1). Ex. G, ¶ 2. Standing Member #1 attained a 4.4839 GPA, an SAT score of 2180, and countless other achievements while at ▮▮▮ ▮▮▮ Ex. H, 57-62. But Standing Member #1 was denied admission to UNC in April

3

2014. Ex. G, ¶ 3. Standing Member #1 believed that racial discrimination affected the consideration of the individual's application. Ex. H, 22-23. In the summer and fall of 2014, Standing Member #1 reached out to and met with Mr. Blum and SFFA's attorneys to discuss possible legal action against UNC. Blum Tr. 127-28, 130; Ex. H, 18-21, 31-35. After learning more about SFFA's mission and its goal of ending UNC's campaign of discrimination, the individual joined SFFA and become a standing member in this case in the belief that "it is a good cause and because I feel as though I would be a valuable member." Ex. G, ¶ 6; Ex. H, 22-23, 36.

On November 17, 2014, SFFA initiated this lawsuit on behalf of its members. Doc. 1. Membership growth continued as news of SFFA's activities spread. Blum Tr. 68-70. During this time period, Mr. Blum traveled the country speaking to groups interested in SFFA's mission. *Id.* By the summer of 2015, SFFA had grown to more than 20,000 members. *Id.* SFFA has over 22,000 members as of November 2017. Ex. I, Plaintiff's Fourth Amended Objections & Responses to Defendants' Combined Discovery Requests to Plaintiff ("Interrogatory Responses") at 4.[1]

As interest in SFFA increased and the association matured, SFFA amended its Bylaws to account for the rapid growth. Bylaws Amendments at 1-2; Blum Tr. 75. To give its members "a direct voice in [its] decision-making, including the management and direction of ongoing litigation," SFFA increased the size of the Board of Directors to five and empowered its members to directly elect one of those directors. Bylaws Amendments

---

[1] SFFA has supplemented its interrogatory responses to provide UNC the most current information regarding its membership, donors, and members on whose behalf this action is brought, consistent with Fed. R. Civ. P. 26(e).

4

at 1; Bylaws at 2; Blum Tr. 75 ("[T]he current board felt that we ought to allow, much like other advocacy groups allow, a board member selected from the membership."). The members elected Joe Zhou to the Board of Directors. Blum Tr. 75.

In addition, SFFA now offers membership to "any individual who … pays membership dues as may be prescribed by the Board of Directors." Bylaws at 1-2. The Board voted to require new members to pay a membership fee of $10 as of July 30, 2015. *Id.* By November 1, 2017, ███ members had made ███ contributions amounting to more than ███. Interrogatory Responses at 8.

SFFA has continued to welcome new members. Among them are five more students rejected by UNC in recent years. These students are graduates of the high school classes of 2012, 2015, 2016, and 2017. All joined SFFA because they believe UNC discriminated against them; all became standing members. Exs. J-N. Each has declared under oath that they voluntarily joined SFFA, are members of SFFA, and "support its mission"; that they have "received updates about the status of the case" from SFFA; and that SFFA has answered their questions and given them "the opportunity to have input and direction on SFFA's case." Exs. J-N.

## ARGUMENT

A membership association has standing if it satisfies three requirements: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the

5

lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). UNC does not dispute that SFFA satisfies these requirements. Nor could it.

First, SFFA has members with standing because "one form of injury under the Equal Protection Clause is being forced to compete in a race-based system that may prejudice the plaintiff." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007). Second, this lawsuit is germane to SFFA's mission "to defend human and civil rights secured by law, including the right of individuals to equal protection under the law." Bylaws at 1. Third, this case does not require participation of individual members because SFFA "seeks declaratory and injunctive relief." *Equity In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 99 (4th Cir. 2011).

Because UNC cannot dispute that SFFA satisfies the three-part test for associational standing, it argues that SFFA must satisfy a wholly separate test to establish associational standing—*i.e.*, SFFA must prove that its members exhibit "indicia of membership." Mot. at 5-15. UNC is incorrect. The indicia-of-membership test does not apply to voluntary membership associations like SFFA, as the District of Massachusetts held in an identical challenge to SFFA's standing. *See SFFA v. President and Fellows of Harvard College*, --- F. Supp. 3d ---, 2017 WL 2407255 (D. Mass. June 2, 2017). Second, the facts demonstrate that even if the indicia-of-membership test somehow applied, SFFA would easily satisfy it.

6

## I.     The Indicia-of-Membership Test Does Not Apply to a Voluntary Membership Organization Like SFFA.

The Court should refuse to apply the indicia-of-membership test to SFFA. That test derives from the Supreme Court's *Hunt* decision. There, the Washington State Apple Advertising Commission, a state agency, sued on behalf of the state's apple growers and dealers. 432 U.S. at 335-42. The familiar three-part test for associational standing, which the Supreme Court developed with membership organizations in mind, did not fit the Commission because it was "not a traditional voluntary membership organization such as a trade association, for it [had] no members at all." *Id.* at 342. The "question presented" thus was whether "the Commission's status as a state agency, rather than a traditional voluntary membership organization, preclude[d] it from asserting the claims of the Washington apple growers and dealers who form[ed] its constituency." *Id.* at 344. The Court found that the Commission had standing because its constituents "possess[ed] all of the indicia of membership." *Id.*

But the Supreme Court *never* suggested that this indicia-of-membership test should apply to every organization asserting associational standing. Precisely the opposite: *Hunt* clarified that "[i]f the Commission were a voluntary membership organization," then "its standing to bring this action as the representative of its constituents would be clear" because it would have satisfied the traditional three-part test for associational standing. *Id.* at 342. In other words, "[i]n introducing the indicia-of-membership test, *Hunt* expanded the category of organizations that could have associational standing, rather than limiting it." *SFFA*, 2017 WL 2407255, at *5.

7

*Parents Involved* confirms this result. "Parents Involved in Community Schools" was a "nonprofit corporation comprising the parents of children who have been or may be denied assignment to their chosen high school in the district because of their race." *Parents Involved*, 551 U.S. at 713. At no point did the Supreme Court or the lower courts investigate whether the organization's members had "indicia of membership." As a voluntary membership association, Parents Involved could sue because one of its members was injured, *id.* at 718-19, and because it met "the other requirements for associational standing," *Parents Involved in Cmty. Sch. v. Seattle School Dist. No. 1*, 377 F.3d 949, 958 (9th Cir. 2004) (citation omitted).

Accordingly, it is settled law that "the 'indicia of membership' requirement in *Hunt* applies only to situations in which an organization is attempting to bring suit on behalf of individuals who are not members." *Calif. Sportfishing Prot. All. v. Diablo Grande, Inc.*, 209 F. Supp. 2d 1059, 1066 (E.D. Cal. 2002) (collecting cases); *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 n.9 (5th Cir. 2012) (explaining that indicia-of-membership test applies "[i]f the association seeking standing does not have traditional members"). Indeed, UNC's own authority confirms this basic rule. *See, e.g., Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 157 (2d Cir. 2012) (explaining that the indicia-of-membership test applies to "non-membership organizations"); *Center for Sustainable Economy v. Jewell*, 779 F.3d 588, 598 (D.C. Cir. 2015) (explaining the plaintiff had standing without more because it was "a traditional membership organization with a defined mission that serves a discrete, stable membership with a definable set of common interests."). The "'indicia

8

of membership'" thus plainly "is necessary only when an organization is not a 'traditional membership organization.'" *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 29 (D.D.C. 2009).

As in the Harvard case, "the key cases [UNC] relies on to support the proposition that *Hunt*'s membership test should be applied to actual membership organizations all involved organizations that, unlike SFFA, asserted standing on behalf of non-members or had factual circumstances[] not present here." *SFFA*, 2017 WL 2407255, at *6. In *Washington Legal Foundation ("WLF") v. Leavitt*, for example, the plaintiff was a "public interest law firm" that tried to sue on behalf of three individuals who were subscribers to its mailing list and "[we]re not members as defined by [the law firm's] Articles of Incorporation." 477 F. Supp. 2d 202, 208-11 (D.D.C. 2007). In *Package Shop, Inc. v. Anheuser-Busch, Inc.*, the plaintiff's so-called members "consist[ed] exclusively of a group of contributors to [an unrelated] 1979 anti-deregulation [campaign]." No. 83-cv-513, 1984 WL 6618, at *7-8, *40 (D.N.J. Sept. 25, 1984). In *Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, the plaintiff was an organization with no "formal list of members" who were only "linked through informal networks and email contact lists." 686 F. Supp. 2d 663, 675 (E.D. La. 2010). In short, contrary to UNC's claim, "[n]one of these cases require or even recommend the application of the indicia-of-membership test to all associational standing cases." *SFFA*, 2017 WL 2407255, at *5.[2]

---

[2] *See also Nestle Ice Cream Co. v. NLRB*, 46 F.3d 578, 586 (6th Cir. 1995) (unions seeking to represent "employees [who] were not members of the Unions" lacked associational standing); *Doe v. Stincer*, 175 F.3d 879, 885 (11th Cir. 1999) (explaining that the plaintiff was "not a membership organization ... suing on behalf of any members."); *Oregon Advocacy Ctr. v. Mink*,

UNC's inability to find supporting authority is unsurprising because its position is untenable. A membership organization does not need to prove that "for all *practical* purposes [it] performs the functions of a traditional [membership organization]," *Hunt,* 432 U.S. at 344 (emphasis added), precisely because *it already is a voluntary membership organization.* Its members do not need to exhibit any "indicia of membership," *id.,* because they are *in fact* members of the organization. UNC's attempt to muddle straightforward precedent should be rejected.

If UNC were right, there would be countless cases applying the indicia-of-membership test to membership organizations. But they do not exist—not one. Neither the Supreme Court nor the Fourth Circuit has required a membership organization to satisfy anything other than the traditional three-part test for associational standing. *See SFFA,* 2017 WL 2407255 at *5 ("Although Harvard argues that *Hunt* and its progeny support the application of an indicia-of-membership test to all organizations asserting associational standing, regardless of whether they formally have members, *the Court is not aware of any case that explicitly stands for this proposition.*" (emphasis added)).

---

322 F.3d 1101, 1110 (9th Cir. 2003) (explaining there was no "direct membership linkage" between the harmed individuals and the association); *Gettman v. Drug Enf't Admin.,* 290 F.3d 430, 435 (D.C. Cir. 2002) (magazine seeking to represent non-member "readers and subscribers" lacked associational standing); *Grp. Health Plan, Inc. v. Philip Morris, Inc.,* 86 F. Supp. 2d 912, 918 (D. Minn. 2000) ("[T]he relationship between Plaintiffs and their 'members' is most aptly described as a that of a business-consumer relationship, which is readily distinguishable from the traditional association-member relationship necessary to support an assertion of associational standing."); *Allstate Ins. Co. v. City of Chicago,* No. 02-cv-5456, 2003 WL 1877670, at *4 (N.D. Ill. Apr. 14, 2003) (insurance companies seeking to represent consumers who "purchase[] insurance" lacked associational standing); *cf. Heap v. Carter,* 112 F. Supp. 3d 402, 418-19 (E.D. Va. 2015) (dismissing complaint for failure to plead adequate information about the organization and its membership in the complaint); *AARP v. United States Equal Employment Opportunity Comm'n,* 226 F. Supp. 3d 7, 17 (D.D.C. 2016) (declining to determine whether indicia-of-membership test applies because organization would satisfy it regardless).

10

Moreover, courts have "an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). It is implausible that the courts and parties simply missed the issue in cases like *Parents Involved*, *Schuette v. BAMN*, 134 S. Ct. 1623 (2014), and countless others involving similar organizations, *see SFFA*, 2017 WL 2407255, at *4 n.9. The myriad decisions addressing associational standing express "little concern" over the "nature of the organization" because "most organization plaintiffs exist in traditional voluntary forms with knowing and willing members." Wright & Miller, Fed. Prac. & Proc. § 3531.9.5 (2d ed.); *id.* (*Hunt* "does not provide any general lessons" because "[m]ost cases involve representation by environmental, neighborhood, political action, civil rights, trade, or like familiar organizations in traditional forms").

The lack of support for UNC's position should be no surprise because the law *favors* membership organizations bringing these kinds of suits. Associational suits are "advantageous both to the individuals represented and to the judicial system as a whole" because an association can provide a "'medium through which its individual members seek to make more effective the expression of their views.'" *UAW v. Brock*, 477 U.S. 274, 289-90 (1986) (quoting *NAACP v. Alabama*, 357 U.S. 449, 459 (1958)). Forming an organization to vindicate the rights of individuals is neither unusual nor undesirable. "[T]he doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." *Id.* at 290; *PennEnvironment v. PPG Indus., Inc.*, 23 F. Supp. 3d 553,

11

581-82 (W.D. Pa. 2014) ("[T]hat the plaintiff organizations were 'solicited' ... to join the lawsuit ... [is] not relevant to the issue of [associational] standing.").

UNC's position would also put associational standing on a collision course with the First Amendment. If the indicia-of-membership test applied in every case, then traditional membership organizations—including the NAACP, Sierra Club, ACLU, League of Women Voters, and the Brady Center—would be threatened with this type of attack in every case. Defendants would attempt to kill public-interest litigation at the outset based on improper scrutiny of organizations' membership and innermost workings. The potential chilling effect on First Amendment freedoms is obvious and intolerable. *See NAACP*, 357 U.S. at 462-63.

It is for these reasons that the District of Massachusetts rejected Harvard's identical challenge to SFFA's standing earlier this year. Reviewing *Hunt* and its progeny, the court concluded that the indicia-of-membership test for associational standing purposes applies only when the organization "does not have any actual members, such as the state agency involved in *Hunt*." *SFFA*, 2017 WL 2407255, at *4. The court rejected Harvard's (and now UNC's) view that associational standing "turn[s] on a subjective evaluation of whether 'members' are 'genuine' members or not, with the organization's view of its own members being only one factor in the analysis." *Id.* at *5. Thus, "[w]here SFFA has clearly stated its mission in its Bylaws and website, where it has consistently, and recently, in highly public ways, pursued efforts to end alleged racial discrimination in college admissions through litigation, and where its members voluntarily associate themselves with the organization, it can be presumed for the purposes of standing that

12

SFFA adequately represents the interests of its current members without needing to test this further based on the indicia-of-membership factors." *Id.* at *6. Examining the three *Hunt* factors, the Court easily concluded that SFFA had associational standing in its suit against Harvard. *Id.* at *6-*7.

In short, the indicia-of-membership test does not apply to traditional membership organizations like SFFA. SFFA has met its burden by demonstrating that it is a voluntary membership organization and that it satisfies the three *Hunt* requirements. *See, e.g., Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 155 (4th Cir. 2000). UNC's motion should be denied.

**II.**  **SFFA Would Have Associational Standing Even if the Court Were to Extend the Indicia-of-Membership Test to a Voluntary Membership Organization for the First Time.**

Even if this Court were to depart from the unbroken line of authority by requiring SFFA to satisfy the indicia-of-membership test, SFFA still would have standing. SFFA represents the shared interests of its over 22,000 members. Each member was aware of SFFA's mission and chose to join SFFA. Nearly ▮▮▮ of them have contributed financially (more than ▮▮▮) to support its mission. Interrogatory Responses at 8. The membership directly elected a Board member through a competitive process. And at least six SFFA members have declared that they are standing members in this action and SFFA represents their interests. In short, SFFA is a traditional membership organization comprised of individuals who have "band[ed] together in an association ... to promote their interests." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 290 (1986). If an "unincorporated, voluntary association of [high

13

school] students" meets the demands of associational standing, UNC's contention that SFFA does not is unsustainable. *Gay-Straight Alliance of Okeechobee High Sch. v. Sch. Bd. of Okeechobee Cty.*, 477 F. Supp. 2d 1246, 1248, 1251-52 (S.D. Fla. 2007).

The answer is the same if the Court evaluates the question in a more granular way. Attacking SFFA, UNC pays little attention to whether SFFA's standing members—as opposed to the broader membership—have indicia of membership. But the focus must be those on "whose behalf this lawsuit is brought." *Citizens Coal Council v. Matt Canestrale Contracting, Inc.*, 40 F. Supp. 3d 632, 639 (W.D. Pa. 2014). The function of the indicia-of-membership test is to ensure the association "is sufficiently identified with and subject to the influence *of those it seeks to represent* as to have a 'personal stake in the outcome of the controversy.'" *Oregon Advocacy Ctr.*, 322 F.3d at 1111 (emphasis added). UNC avoids the issue because, as explained below, it cannot seriously dispute that SFFA genuinely represents these individuals. Mot. at 2-3.

*First*, all of SFFA's standing members declared under oath that SFFA genuinely represents them. Exs. H, J-N. That alone is dispositive. *Compare Citizens Coal*, 40 F. Supp. 3d at 643 (approving standing because "[e]ach of the Standing Witnesses testified at their depositions that they joined CCC so that the lawsuit could be filed" and "knew that CCC was filing this lawsuit on their behalf"), *with Fund Democracy, LLC v. SEC*, 278 F.3d 21, 26 (D.D.C. 2002) (rejecting standing because no members could attest that the organization "represented their views and that they approved of [its] activities"). The standing members' declarations—and Standing Member #1's deposition testimony—demonstrate that each one voluntarily joined SFFA, SFFA represents them, and they are

14

actively involved in SFFA. Exs. H, J-N. There is no basis to discredit this uncontroverted testimony. *Cullivan v. Kansas City S. R. Co.*, 09-cv-685, 2010 WL 378433, at *4 (S.D. Ill. Jan. 27, 2010) ("[C]ourts will take as true, and often give great weight, to uncontradicted affidavits in discerning whether subject matter jurisdiction exists."); *Bay Tobacco, LLC v. Bell Quality Tobacco Prod., LLC*, 261 F. Supp. 2d 483, 492 (E.D. Va. 2003) (same).

*Second*, not only do SFFA's standing members aver that they are members, but every corporate document and practice confirms their testimony. SFFA has a "clearly articulated and understandable membership structure," *Friends of the Earth, Inc. v. Chevron Chemical Co.*, 129 F.3d 826, 829 (5th Cir. 1997), under which these individuals qualify as members, *see supra* at 3-5. SFFA and its standing members thus are not colluding in a post-hoc attempt to "manufacture" standing. *See WLF*, 477 F. Supp. 2d at 208, 211 (rejecting standing where the injured individuals were "not members as defined by [the] Articles of Incorporation" and were merely labeled as "'members' for the purposes of this lawsuit"). UNC does not and cannot dispute that these individuals are genuine SFFA members.

*Third*, the standing members "voluntarily associated themselves" with SFFA. *Friends of the Earth*, 129 F.3d at 829. No individual was coerced into joining SFFA. Rather, they "agreed to submit a declaration ... and wanted to participate in this lawsuit." Blum Tr. 132. Thus, SFFA's standing is even stronger than the Commission's in *Hunt*, which forced apple growers and dealers to "finance[] the Commission through mandatory assessments." *Friends of the Earth*, 129 F.3d at 829; *see Hunt*, 432 U.S. at 344-45. This

15

provides additional assurance that SFFA genuinely represents the standing members. *Concerned Citizens*, 686 F. Supp. 2d at 675 (approving standing where the members joined voluntarily); *Citizens Coal*, 40 F. Supp. 3d at 641 n.10 (approving standing where "the Standing Witnesses came to be members of CCC ... after learning about the organization, generally through community meetings, grassroots outreach events, or the website").

*Fourth*, when the standing members voluntarily associated with SFFA, they knew that one of the organization's main purposes was to pursue litigation against UNC. *See supra* at 3-5. Before they became standing members, SFFA discussed the nature of this lawsuit with them, and they agreed to submit their testimony in the litigation. Blum Tr. 127, 130-33. Every standing member understood the consequences of their membership and chose to go forward. *Id.* Thus, not only does every standing member support SFFA, but all of them specifically support *this* action. *Concerned Citizens*, 686 F. Supp. 2d at 676 (approving standing absent "indication in the record that [the organization] has any dissenting members with respect to this litigation or any other issue"); *Citizens Coal*, 40 F. Supp. 3d at 641 (approving standing where the organization "met with the Standing Witnesses prior to filing ... this action and obtained their approval to bring this action"); *cf. Package Shop*, 1984 WL 6618, at *41 (rejecting standing because injured members had merely supported prior, unrelated litigation).

*Fifth*, SFFA's standing members have "control" over this litigation. *Citizens Coal*, 40 F. Supp. 3d at 639-40. If they "chose to terminate their membership in [SFFA], that would in effect terminate this litigation as associational standing would then be lacking."

16

*Id.* at 641. The standing members thus are not "uninvolved in the organization," Mot. at 10—they are indispensable. Their ability to resign is a powerful mechanism of control over SFFA. *Compare Citizens Coal*, 40 F. Supp. 3d at 640 (approving standing because "the Standing Witnesses here do possess the means to influence the priorities and activities that [the organization] has undertaken, specifically, through this litigation, as there would be no lawsuit without the Standing Witnesses"), *with Am. Legal Found. v. FCC*, 808 F.2d 84, 87-88 (D.C. Cir. 1987) (rejecting standing where a nonprofit media law center sought to represent "all members of the public who regularly watch ABC News"). Moreover, the standing members are afforded the opportunity to give their input and direction. *See supra* at 5.

*Sixth*, the standing members "possess the means to influence the priorities and activities that [SFFA] has undertaken." *Citizens Coal*, 40 F. Supp. 3d at 640. In addition to their ability to resign (and end this litigation), they "play [a] role in selecting [SFFA's] leadership." *WLF*, 477 F. Supp. 2d at 210. The members directly elected one of SFFA's Board members—Joe Zhou. This position gives members "a direct voice in [SFFA's] decision-making, including the management and direction of ongoing litigation." Bylaws Amendments at 1; *Or. Advocacy*, 322 F.3d at 1111-12 (approving standing where members serve on an "advisory council"); *Citizens Coal*, 40 F. Supp. 3d at 642 (approving standing where bylaws allowed members to "serve on an advisory committee formed directly to influence [the organization's] actions in this litigation"). The standing members also are in contact with SFFA's leadership and attorneys. *Supra* at 3-5; *Citizens Coal*, 40 F. Supp. 3d at 641 (approving standing where the injured members were in

17

"regular and direct contact with [the organization's] executive director"). UNC's assertion that the standing members do not have an "active affiliation with the organization, do not participate actively in SFFA's operations, and do not have active, voluntary involvement in SFFA" is simply wrong as a factual matter. Mot. at 8 (citations and quotation marks omitted). No more "meaningful control or influence," Mot. 14, is needed. *Or. Advocacy*, 322 F.3d at 1111-12 (approving standing where the organization's members could participate only on an "advisory council"); *Stincer*, 175 F.3d at 886 (approving standing because an "advisory council" ensured the "constituents ... possess the means to influence the priorities and activities the Advocacy Center undertakes"); *Citizens Coal*, 40 F. Supp. 3d at 638, 642 (approving standing even though members "do not have voting rights").

UNC also suggests that SFFA is a merely a "litigation vehicle controlled by SFFA's founder, Mr. Blum" and so SFFA can ignore the wishes of its members. Mot. at 11, 13-14. But UNC has *no* evidence that SFFA "is unresponsive to its members," *Concerned Citizens*, 686 F. Supp. 2d at 676, or is failing to advance their interests. Indeed, the standing members' declarations rebut this allegation. *See* Exs H, J-N. Baseless speculation that SFFA acts against its members' interests cannot defeat SFFA's standing.

*Seventh*, SFFA's members support it financially. *WLF*, 477 F. Supp. 2d at 209 (rejecting standing where, among other things, the organization "made no showing that [the individuals] in any way ... financially support" the organization). The three standing members who joined after July 30, 2015, each paid a membership fee, Exs. K, M-N, and

18

██████ members have contributed ████████ as of November 1, 2017, *see* Interrogatory Responses at 8. Thus, the claim that members must play a meaningful role in funding the organization, Mot. 10-12, is satisfied (and the claim that SFFA members "provide almost none of the organization's funding," Mot. 10, is false) ██████████████████████████ █████████████████████████████. Courts have found standing even when the constituents provided *no* funding. *See, e.g., Or. Advocacy*, 322 F.3d at 1111 (approving standing for a group "funded primarily by the federal government, and not by its constituents"); *Sylvia's Haven, Inc. v. Mass. Dev. Fin.*, 397 F. Supp. 2d 202, 207-08 (D. Mass. 2005) (approving standing for an organization that represented homeless children). UNC's requirement that members "alone finance the organization's activities," Mot. at 7, is not only legally unsupported, but would shut out many organizations that serve the poor and underprivileged, as their members rarely can provide funding needed to finance an association's activities.

*Eighth*, SFFA's members have spent many hours discussing the case, meeting with SFFA's president and attorneys, voting in and running for the member-elected Board position, serving on the Board, and attending events. *See supra* at 3-5. This is far more participation than members of "environmental groups such as the NRDC and the [Environmental Defense Fund]," whose lawyers have "virtually no contact with the members," "do not consult with or even know the members," and often "cold-call[] membership lists" to find standing members. Ann E. Carlson, *Standing for the Environment*, 45 UCLA L. Rev. 931, 961-62 (1998). UNC thus has no support for its novel claim that an organization's members *must* "serve in leadership roles or at least

19

participate generally in an organization" for it to have standing, Mot. at 7, but SFFA satisfies this criterion in any event.

UNC's complaints about Standing Member #1's level of involvement with SFFA are also misplaced. Mot. 9-10. As an initial matter, the individual is one of six standing members in this case and one of over 22,000 members of the organization.[3] UNC cites no case in which an organization's standing turns on the level of involvement of a single person. In any event, UNC's criticisms of Standing Member #1 are off the mark. The individual speaks with SFFA's president about the organization; follows the actions of the organization by reading its email updates to members; has "discuss[ed] certain of [the individual's] concerns with leaders of the organization and they seemed receptive to [the individual's] feedback;" has had the "opportunity to help the organization make ... decisions," and knows that, if displeased with SFFA's activities, the individual has the "right to ... withdraw and basically cease being a member." Ex. H, 49-50. Nothing more is needed for associational standing. *See supra* 13-14.

Taken together, these facts prove SFFA is a "genuine membership organization." Mot. at 15 UNC ignores these substantial indicia of membership and instead advocates for an inflexible view of what factors it subjectively believes create a "true membership organization." *Id.* at 3. UNC demands that SFFA have a specific organizational structure to establish standing. "Nothing in *Hunt*," however, "indicates that the factors delineated

---

[3] UNC's statement that Standing Member #1 was "hand-picked" is irrelevant—and baseless. The individual was interested in joining SFFA before speaking to anyone involved in the organization and, in fact, initiated the first contact with SFFA. Ex. H, 18-21.

20

there are the only factors to be considered." *Citizens Coal*, 40 F. Supp. 3d at 640. Such a straight-jacketed approach would "exalt form over substance." *Hunt*, 432 U.S. at 345.

That SFFA does not have the same structure as the ACLU (established in 1920, with a $133.4 million budget today) or the Sierra Club (established in 1892, with a $97.8 million budget today) proves nothing. SFFA is barely three years old, and its standing members are students and their families, many of whom are first-generation immigrants. When the NAACP formed, it "initially set membership dues at one dollar for associates and two dollars for contributors" to "attract mass support," and it survived "due in large measure to external financial support." Shawn L. Alexander, *An Army of Lions: The Civil Rights Struggle Before the NAACP*, xv (2012). Indeed, such membership organizations still rely on institutional donations. *See, e.g.,* Ford Foundation, Our Grants, https://goo.gl/fWHfrs (donating $12.2 million to the ACLU and $9.9 million to the NAACP since 2006). Nor are annual dues required. *See* Mot. 12. Numerous associations offer lifetime membership, including the NAACP, https://goo.gl/CysokR, and the Sierra Club, https://goo.gl/VrC4yw. But courts do not question whether they represent their members or hold that the indicia-of-membership test applies to them. *See, e.g., Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 526-30 (6th Cir. 2001); *Sierra Club v. Fed. Energy Regulatory Comm'n*, 827 F.3d 59, 65-68 (D.C. Cir. 2016).

Other associations limit the number of member-elected directors to prevent a "hostile takeover." *See* Brad Knickerbocker, *A 'Hostile' Takeover Bid at the Sierra Club*, Christian Sci. Monitor (Feb. 20, 2004); Carlson, *supra*, at 961 n.160 ("With the possible exception of the Sierra Club, members of the national environmental organizations do not

21

exert direct influence on organizational decision making." (citation omitted)). For example, the Wilderness Society, one of the largest and oldest conservationist organizations in the country, is controlled by a Governing Council that is self-perpetuating (its directors are elected not by the members, but "at meetings of the Governing Council"), and its "[m]embers shall not have voting rights." *See* The Wilderness Society, Our Bylaws, art. II, § 1.a; art. V, § 1, https://goo.gl/Y7kY5d. Yet courts have repeatedly found the Wilderness Society to be "a membership organization," *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1171 (9th Cir. 2011), with standing to sue on behalf of its members, *id.* at 1179-80; *see e.g.*, *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 696 n.13 (10th Cir. 2009). The Conservation Law Foundation similarly is run by Trustees chosen by a self-perpetuating Board; "[m]embers shall have only such privileges as the Trustees may designate from time to time and shall in such capacity have no right to notice of or to vote at any meeting." Ex. O, Bylaws of Conservation Law Foundation, Inc., art. III, § 2; art. IV, § 3, art. V, § 1. No court has ever questioned that the organization represents its members. *See, e.g.*, *Conservation Law Found. v. Jackson*, 964 F. Supp. 2d 152, 160-64 (D. Mass. 2013); *see also AARP v. EEOC*, 226 F. Supp. 3d 7, 17 (D.D.C. 2016) (finding associational standing where "the wider AARP membership does not elect AARP's governing Board of Directors, [but] directors are required to be AARP members, and are chosen by other members of the Board, i.e., by other AARP members").

In sum, the record demonstrates that SFFA is a "genuine membership organization" even under UNC's "indicia-of-membership" test. The standing members

22

were injured by UNC's admissions policies, voluntarily became SFFA members, want SFFA to represent them, support SFFA's mission, are involved in this litigation, and financially support SFFA through membership fees and other contributions. No more is required to meet the indicia-of-membership test.

## CONCLUSION

For the foregoing reasons, UNC's motion to dismiss should be denied.

Respectfully submitted,

/s/ *Thomas R. McCarthy*
Thomas R. McCarthy
Consovoy McCarthy Park PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
(703) 243-9423
E: tom@consovoymccarthy.com

/s/ *William S. Consovoy*
William S. Consovoy
Consovoy McCarthy Park PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
(703) 243-9423
E: will@consovoymccarthy.com

/s/ *Bryan K. Weir*
Bryan K. Weir
Consovoy McCarthy Park PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
(703) 243-9423
E: bryan@consovoymccarthy.com

/s/ *Alan M. Ruley*
Alan M. Ruley
N.C. State Bar No. 16407
Bell, Davis & Pitt, P.A.
P.O. Box 21029
Winston Salem, NC 27120-1029
(336) 714-4147
E: aruley@belldavispitt.com

*Attorneys for Plaintiffs*

23

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.3

Pursuant to L.R. 7.3(d)(1), I hereby certify that the body of this brief, including headings and footnotes, contains 6,249 words, which is less than the limit for this filing.

This the 15th day of November, 2017.

/s/ *Thomas R. McCarthy*
Thomas R. McCarthy

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing pleading via the Court's electronic filing system, pursuant to the Electronic Filing Procedures, on all attorneys of record who have entered an appearance by ECF in this matter.

This the 15th day of November, 2017.

/s/ *Alan Ruley*
Alan Ruley