IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:14-CV-954

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) **DEFENDANTS' REPLY IN**<br>) **SUPPORT OF THEIR MOTION TO**<br>) **DISMISS UNDER FRCP 12(b)(1)** |
| THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, et al., | )<br>) **[REDACTED]**<br>) |
| Defendants. | )<br>)<br>) |

Plaintiff Students for Fair Admissions has opposed The University of North Carolina at Chapel Hill's Motion to Dismiss for lack of representational standing with pleas for sparing judicial inquiry and wholesale deference to the organization's view that it is a membership organization because it says so. Article III requires more, and the Court should too. A case of this gravity cannot and should not go forward when SFFA has failed to carry its burden of demonstrating that it is a genuine membership organization—one where evidence, not mere assertion, demonstrates that members exercise meaningful influence and control over the organization.

SFFA implores the Court to fixate on the formality that the organization is a voluntary membership organization—a refrain that repeats throughout the opposition brief—and to limit the representational standing inquiry strictly to the three-pronged test of *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977). No precedent straightjackets the Court from asking the fundamental, foundational question whether

SFFA is in fact a genuine membership organization, an association of members who decide and conduct the organization's affairs. An alignment of interests and action between individuals and an organization is the bedrock of the Supreme Court's instructions on representational standing.

When the Court looks beyond formality and makes the proper functional inquiry, the facts show an organization that is founder-driven at nearly every turn, with the group's members, even the so-called "standing members," playing no meaningful role and only along for a ride aimed at changing settled law. The deposition testimony of Standing Member #1 revealed an individual with only a cursory understanding of SFFA and a shocking level of disengagement from the organization's affairs. The discovery record also exposes SFFA as an enterprise whose members contribute only a tiny portion of the organization's overall funding. These facts and Article III's standing requirement—not considerations of ideology, as SFFA alleges—drive the University's request that the Court examine SFFA's eligibility for representational standing. As the record shows, SFFA has failed to meets its burden of proving that it has standing, and the Court should dismiss the case.

In the alternative, the Court should allow the University to depose SFFA's new surprise witnesses. Undoubtedly concerned about the viability of Standing Member #1 and its overall record, SFFA revealed two new "standing members" just hours before filing its Opposition. The University had no idea this was coming, and no chance during the discovery period to depose these previously-undisclosed individuals. In light of the

many indicators that SFFA is not a genuine membership organization, the University, at the very least, should be permitted to depose these two previously-undisclosed members before the Court decides such a momentous motion.

## ARGUMENT

I.  **Courts Should Examine Eligibility For Representational Standing Where, As Here, The Record Raises Doubts That The Plaintiff Is A Genuine Membership Organization.**

All agree that SFFA, as plaintiff, bears the burden of proving standing. *See U.S. ex rel. Vuyyuru v. Jadhav,* 555 F.3d 337, 347 (4th Cir. 2009). But SFFA would limit the Court's inquiry to the singular, status-based question whether SFFA is a voluntary membership organization. The law imposes a heavier burden, particularly when record evidence casts substantial doubt on the foundational question whether SFFA's members truly drive and decide the organization's affairs.

This burden implements and furthers the cornerstone principle of representational standing: a genuine membership organization may bring claims on behalf of its members if and because "it and its members are in every practical sense identical." *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 459 (1958); *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 290 (1986) ("[A]ssociational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others"). But not every organization's interests align with its members' interests such that representational standing is automatically conferred. "[S]ome forms of association or claims of

3

'membership' may not warrant the assumption of adequate representation" that underlies a grant of representational standing. Wright & Miller, Fed. Prac. & Proc. § 3531.9.5 (2d ed.). It is this threshold issue of whether SFFA is eligible for representation standing that the Court should probe carefully against the factual record developed during discovery.

Indeed, contrary to SFFA's assertion that such an inquiry would be unprecedented, courts across the country have examined plaintiff organizations when the facts from pleadings, written discovery, depositions, or the public record raised questions about their eligibility for representational standing. For example, in *Heap v. Carter*, the court rigorously assessed whether a particular church, despite having tax-exempt status, was a genuine membership organization, and, instead of accepting the organization's mere say-so, tested its claim that it "maintain[ed] an active membership." 112 F. Supp. 3d 402, 419 (E.D. Va. 2015). The organization failed to prove that it had "the kind of leadership and financial structure that is closely tied to that of its members or that its members exert any control over the direction of the organization" and therefore could not assert representational standing. *Id*. Similarly, in *AARP v. U.S. Equal Emp't Opportunity Comm'n*, the court closely examined the roles that members actually played in the plaintiff organization, a group that advocates for people age fifty and older. 226 F. Supp. 3d 7 (D.D.C. 2016). More specifically, the court evaluated detailed information from the discovery record about the particular activities and roles that members engaged in and played within the organization. *Id.* at 17. Rather than relying on generalized assertions that members had the opportunity to participate, the court assessed eligibility for

4

representational standing by reviewing and relying on evidence that members served on committees, had elected leaders, voted for their representatives in leadership, financed the organization's activities, paid dues, and completed surveys and opinion polls on the organization's activities. *Id.*

As both *Heap* and *AARP* show, it is neither novel nor inappropriate for courts to inquire into a plaintiff organization's eligibility for representational standing. *See also Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999) (assessing whether plaintiff organization's constituents shared the traits of members of an organization); *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1110 (9th Cir. 2003) (defendant challenged, and court assessed, whether plaintiff organization's constituents were the functional equivalent of members); *Ball by Burba v. Kasich*, 244 F. Supp. 3d 662, 682 (S.D. Ohio 2017) (defendant presented, and court examined, evidence that plaintiff organization's constituents were not "members" for the purposes of representational standing).

## II. SFFA Does Not Meet The Eligibility Requirement For Representational Standing, And The Court Should Dismiss The Complaint.

As shown in Defendants' motion and supporting memorandum, discovery has demonstrated that SFFA cannot meet the threshold burden of establishing its eligibility to assert representational standing. *See Heap*, 112 F. Supp. 3d at 418-19 (dismissing organizational plaintiff, in part because the plaintiff did not prove that it was an organization capable of asserting representational standing); *Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 86 F. Supp. 2d 912, 917 (D. Minn. 2000) ("Before undertaking the

5

*Hunt* tripartite analysis, however, the Court must first determine whether the plaintiff is the type of organization capable of asserting associational standing.").

When courts evaluate a plaintiff's eligibility for representational standing, they examine three traits: members' participation, members' funding, and members' influence and control over the organization. *See* Dkt. 107, Defendants' Memorandum of Law in Support of Their Motion to Dismiss under FRCP 12(b)(1) ("Memo.") at 6. In each instance, SFFA lacks the traits of a genuine membership organization.

### A. SFFA's Members Are Not Actively Involved In The Organization.

To qualify as a genuine membership organization, members must have an "active affiliation," *Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 158 (2d Cir. 2012), or active involvement, *Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F. Supp. 2d 663, 675 (E.D. La. 2010), with the organization. Here, SFFA has presented no evidence that the vast majority of its alleged 22,000 members did anything more than lend their names to a list assembled over the internet by SFFA's founder, Edward Blum. With no meetings or other events for members to attend (Dkt. 107-2 ("Memo. Ex. 2"), Deposition of Edward Blum at 114:21-116:1), nor committees on which members could serve (Reply Ex. 1, Deposition of Edward Blum at 123:12-17), SFFA presented no evidence of active member involvement.

In the face of such evidence, SFFA reaches for the declarations of its standing members as proof of "active involvement," but these generic declarations provide no

6

refuge. For example, ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████ (Dkt. 113-7, Exhibit G to Plaintiff's Opposition, ¶ 8), deposition testimony revealed that these statements ring hollow. Standing Member #1 admitted in his deposition that he does not read communications from SFFA; does not know what SFFA does on a day-to-day basis; has never paid dues or donated to SFFA; did not vote in SFFA's only election; and did not pay enough attention to know that he had the right to vote in the election until a conversation with SFFA's attorneys shortly before his deposition. *See* Memo. at 9-10. Standing Member #1 further testified that since signing up to join SFFA, he has done nothing related to SFFA besides sign a declaration and prepare for and sit for his deposition. Dkt. 107-3 ("Memo. Ex. 3") Standing Member #1 Dep., at 44:21-25. Such passive disengagement does not reflect the unity and alignment of interest required by the Supreme Court's representational standing precedent and cannot satisfy SFFA's burden of proving its members' active involvement in the organization. *See NAACP*, 357 U.S. 459 (allowing representational standing because organization and its members were effectively identical).

SFFA's other assertion about member activities—that members have "spent many hours" discussing the case, meeting with Mr. Blum, and otherwise participating in the organization—is similarly hollow. Dkt. 113, Plaintiff's Opposition ("Opp.") at 19. The record contains no evidence to support these assertions. SFFA's only citation for these

7

contentions is to its own opposition brief, and the organization's mere assertion simply is not evidence of active member involvement. *AARP*, 226 F. Supp. 3d at 16 (explaining that "a mere assertion that an individual is a 'member' of an organization is not sufficient to establish membership"); Memo. at 5-6.

### B. Overwhelming Outside Funding Weighs Against A Finding Of A Genuine Membership Organization.

Similarly, SFFA's disproportionately low level of member funding shows that it is not eligible for representational standing as a true membership organization. *See e.g., Nestle Ice Cream Co. v. N.L.R.B.*, 46 F.3d 578, 586 (6th Cir. 1995) (concluding that plaintiff union lacked representational standing to represent employees in part because they did not finance the union); *Package Shop, Inc. v. Anheuser-Busch, Inc.*, No. CIV. A. 83-513, 1984 WL 6618, at *40 (D.N.J. Sept. 25, 1984) (granting motion to dismiss and emphasizing that members "do not finance the organization, except indirectly, through their one-time contribution"). ███████████████████████████████████████████████ Reply Ex. 2, Plaintiff's Fourth Amended Objections and Responses to Defendants' First Combined Discovery Requests to Plaintiff ("Plaintiff's Fourth Amended Responses"), Response to Interrogatory No. 5 at p. 8. ███████████████████ ███████. *Id.* This fact, too, weighs against a finding that SFFA is a genuine membership organization.
8

### C. SFFA's Members Lack The Required Level Of Influence And Control Over The Organization.

Finally, a genuine membership association allows members to influence and control the organization. *See Disability Advocates*, 675 F.3d at 158–59. SFFA's leadership, however, is all but immune from member control or influence. All three of SFFA's officers are self-appointed, unelected, and not subject to term limits. Dkt. 107-9, ("Memo. Ex. 9"), SFFA's Articles of Incorporation, at ¶ 3. Four of its five director positions are unelected. Dkt. 107-5, ("Memo. Ex. 5"), SFFA Amended Bylaws, at Section 4.02. Members have no means to censure or remove directors. Memo. Ex. 2 at 50:5-11. Nor do members have any committees or advisory councils through which they can oversee the Board or provide input on its work. Id. at 114:21-116:1. The way SFFA is set up and run, members lack meaningful ways to influence—much less control—the organization.

SFFA's assertion that its standing members have influence and control because they could resign (and therefore harm the lawsuit) (Opp. at 16) does not prove the contrary. Whether standing members can stop a lawsuit is irrelevant. The qualities that demonstrate influence and control over the organization as a whole are what matter, such as members electing a group's leadership and members serving on committees that advise the board (*Disability Advocates*, 675 F.3d at 158–59; *AARP*, 226 F. Supp. 3d at 17), and SFFA lacks these traits.

### D. Neither The *Harvard* Litigation Nor The First Amendment Prevents This Court From Examining SFFA's Eligibility For Representational Standing.

In addition to focusing on the formality of its status as a voluntary membership organization rather than its actual function as an organization, SFFA argues that the decision finding representational standing in its lawsuit against Harvard University should control the Court's decision here. Opp. at 12-13. But the *Harvard* court expressly (and importantly) recognized that the law could permit a different path: "there may be situations in the future in which the adequacy of an organization's representativeness is so seriously in doubt that the Court should consider *Hunt*'s indicia-of-membership analysis or some other criteria to further evaluate the issue of associational standing." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll. (Harvard Corp.)*, No. 14-CV-14176-ADB, 2017 WL 2407255, at *6 (D. Mass. June 2, 2017) (citing *Brock*, 477 U.S. at 290). The record here, developed over the entire course of fact discovery, presents this precise situation.

SFFA's contention that the University's position somehow sets up a collision course with the First Amendment is a red herring. Opp. at 12. Courts and opposing parties can and do examine an organization's eligibility for representational standing without harming members' privacy or associational rights. *See, e.g.*, *AARP*, 226 F. Supp. 3d at 17 (scrutinizing how plaintiff organization functions and what specific roles members play in the organization, without discouraging public interest litigation or violating members' First Amendment rights). Indeed, in this very case, the University

10

and SFFA worked together productively to ensure respect for the associational privileges of SFFA's members, while also allowing the University to develop an appropriate factual record—the one before the Court in this Motion. SFFA's exaggerated constitutional concern is misplaced and does not prevent the Court from examining whether SFFA is a genuine membership organization.

### III. In The Alternative, The University Should Be Allowed To Depose SFFA's Two New Standing Members.

On the same day that SFFA filed its Opposition to the University's motion, it amended its discovery responses and identified two new standing members, both of whom submitted declarations. Reply Ex. 3, Plaintiff's Fifth Supp. Response to Interrogatories 4 and 6; Dkt. 113-13 and 113-14, Opp. Exhibits M and N. Such gamesmanship only highlights the fact that SFFA does not have the discovery record to support its burden of demonstrating representational standing.

Beyond the questionable timing of these disclosures—months after the close of fact discovery—SFFA's belated identification of new standing members is prejudicial to the University. In addition to deposing Standing Member #1, the University sought to depose in May and June 2017 another standing member who had submitted a declaration almost identical to Standing Member #1's—only to learn, first, that the declarant was unavailable, and second, that SFFA no longer wished to rely on him for representational standing. Reply Ex. 4, Plaintiff's Third Supp. Response to Interrogatories 4 and 6; Reply Ex. 6, Plaintiff's Fourth Supp. Response to Interrogatories 4 and 6. Suddenly, *more than four months* after the close of fact discovery, and *after* the University filed its motion to

11

dismiss, SFFA has identified new individuals that the University never had the opportunity to depose.

In these circumstances, the University at the very least requests leave to depose these newly identified standing members so that the University and the Court may have the benefit of a full record on which to evaluate SFFA's assertions. *See Chalmers v. Petty*, 136 F.R.D. 399, 404 (M.D.N.C. 1991) (finding that compelling plaintiff to produce witnesses for deposition was appropriate after plaintiff announced two new witnesses in its opposition to a summary judgment motion). Two additional depositions would not delay the litigation and are proportionate to the gravity of the standing inquiry at issue and SFFA's late notice.

## **CONCLUSION**

For these reasons as well as those articulated in Defendants' Motion to Dismiss, the Court should dismiss SFFA's complaint under Rule 12(b)(1) for lack of subject matter jurisdiction.

Respectfully submitted this 29th day of November, 2017.

|  |  |
|---|---|
|  | JOSH STEIN<br>Attorney General |
| /s/ Michael Scudder<br>Michael Scudder<br>Lara Flath<br>Marianne Combs<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>155 North Wacker Drive<br>Chicago, IL 60606-1720<br>(312) 407-0700 | /s/ Stephanie Brennan<br>Stephanie Brennan<br>Special Deputy Attorney General<br>NC State Bar No. 35955<br>E: sbrennan@ncdoj.gov<br><br>/s/ Matthew Tulchin<br>Matthew Tulchin<br>Special Deputy Attorney General |

E: michael.scudder@skadden.com
E: lara.flath@skadden.com
E: marianne.combs@skadden.com

/s/ Lisa Gilford
Lisa Gilford
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Ave.
Los Angeles, CA 90071
(213) 687-5130
E: lisa.gilford@skadden.com

NC State Bar No. 43921
E: mtulchin@ncdoj.gov
NC Department of Justice
Post Office Box 629
Raleigh, NC 27602-0629
(919) 716-6920

*Attorneys for Defendants*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), I hereby certify that the body of this brief, including headings and footnotes, does not exceed 3,125 words.

This 29th day of November 2017.

/s/ Michael Scudder
Michael Scudder

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Reply in Support of Defendants' Motion to Dismiss via the Court's electronic filing systems, pursuant to the Electronic Filing Procedures, on all attorneys of record who have entered an appearance by ECF in this matter.

This 29th day of November, 2017.

/s/ Michael Scudder
Michael Scudder

15

Case 1:14-cv-00954-LCB-JLW   Document 115   Filed 11/29/17   Page 15 of 15