IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

STUDENTS FOR FAIR ADMISSIONS, INC.,

                Plaintiff,

      v.

UNIVERSITY OF NORTH CAROLINA, *et al.*,

                Defendants.

Civil Action No. 1:14-cv-954

## PLAINTIFF'S SECOND SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33 and the Local Rules of the Middle District of North Carolina, Plaintiff Students for Fair Admissions, Inc. ("SFFA") requests that Defendant University of North Carolina, *et al.* ("UNC-CH") answer the following interrogatories within 30 days of service:

## INSTRUCTIONS

1. These interrogatories are continuing in character, and require You to file supplementary answers if You obtain further or different information before trial.

2. Where knowledge or information in possession of a party is requested, such request includes knowledge of the party's officers, directors, agents, representatives, servants and employees, and unless privileged, its attorneys.

3. Unless stated otherwise, requests concerning applications, admitted students, and enrolled students are limited to the application, admission, and enrollment of undergraduate students at UNC.

of the admitted class to readers during the reading period, before releasing decisions to applicants, in any format.

9. Identify which admissions office employees received Core Reports (*e.g.*, UNC0098178), Core Report Comparisons (*e.g.*, UNC0081618), or any similar document disclosing racial makeup of the admitted class to readers during the reading period, before releasing decisions to applicants, and the frequency within which they received them.

10. Identify the date when UNC-CH stopped circulating Core Reports (*e.g.*, UNC0098178) and Core Report Comparisons (*e.g.*, UNC0081618), or similar reports, to application readers during the reading period, before releasing decisions to applicants, and the reason for doing so.

11. Identify the date when UNC-CH removed race from the School Group Review/Decision Review reports and the reason for doing so.

12. Identify which seasonal readers participated in School Group Review/Decision Review since 2012.

13. Describe the process for determining, through the data that You have produced, which applicants' status was changed during the School Group Review/Decision Review process.

14. Identify the author of UNC0323544, when it was drafted or created, and the reason it was drafted or created.

15. Identify the Bates number of the draft of the Working Committee's report on race-neutral alternatives and Howard Kallem's email response referenced in UNC0097721. If Howard Kallem's email referenced in UNC0097721 was not his response to Barbara Polk's email at UNC0097612, then identify the Bates number of that response as well.

5

Case 1:14-cv-00954-LCB-JLW   Document 136-4   Filed 08/03/18   Page 2 of 5

16. Identify the Bates number of the final report by the Working Committee on Race-Neutral Alternatives, referenced in UNC0283495, submitted to the Advisory Committee on Undergraduate Admissions.

17. Identify any changes that were made between Jennifer Kretchmar's draft report for the Working Committee on Race-Neutral Alternatives from October 31, 2014 (*i.e.*, UNC0099540), and the final report, referenced in UNC0283495, submitted to the Advisory Committee on Undergraduate Admissions. For each change, identify:

    a. Who made the change;

    b. the section(s) where the change was made; and

    c. the date the change was made.

Do not identify immaterial changes, such as fixing typos or removing the word "draft."

18. Identify each person who actually drafted any portion of the final report by the Working Group on Race-Neutral Alternatives, referenced in UNC0283495, submitted to the Advisory Committee on Undergraduate Admissions.

19. Identify each person who made suggestions to, but who did not draft any portion of, the final report by the Working Group on Race-Neutral Alternatives, referenced in UNC0283495, submitted to the Advisory Committee on Undergraduate Admissions.

20. Identify the dates on which the Working Group on Race-Neutral Alternatives met.

21. Identify any report, study, paper, or presentation produced by the Committee on Race-Neutral Strategies (or any subcommittee).

22. Identify the dates on which the Committee on Race-Neutral Strategies (or any subcommittee) met.

23. Describe any change made to Your use of race in the admissions process after April 4, 2014. This includes any changes in how race is presented to employees of the admissions office, such as the removal of race from the School Group Review/Decision Review reports as testified to by Barbara Polk in her deposition.

24. Aside from the Working Group on Race-Neutral Alternatives and the Committee on Race-Neutral Strategies, identify any effort to investigate race-neutral alternatives since 2004, and for each provide:

- The person or persons responsible for the effort;
- The person or persons involved in the effort;
- The nature of the inquiry; and
- Any documents created as part of the effort.

25. Describe how You identify economically disadvantaged applicants for readers during the admissions process, including the field(s) used for this purpose in UNC-CH's datasets.

26. Identify the factors and methods for calculating an applicant's "Personal Quality" rating, and, in particular, identify the weight of each factor and the use of a student's essay in calculating this rating, if at all.

27. If you contend that UNC-CH has a compelling interest in using race in the undergraduate admissions process, state the basis for the contention and identify with particularity all facts supporting your contention.

28. If you contend that UNC-CH's use of race in connection with undergraduate admissions process is narrowly tailored to achieve a compelling interest, state the basis for the contention and identify with particularity all facts supporting your contention.

29. If you contend that UNC-CH has given serious, good-faith consideration of workable race-neutral alternatives that will achieve its alleged compelling interest, state the basis for the contention and, for each race-neutral alternative that UNC-CH has considered, identify the time frame in which it was considered; the individuals who participated in its consideration; any conclusions that UNC-CH drew about its workability or availability; and the basis for those conclusions.

Respectfully submitted,

Thomas R. McCarthy
J. Michael Connolly
Bryan K. Weir
Consovoy McCarthy Park PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
(703) 243-9423
E: tom@consovoymccarthy.com

*/s/ Alan M. Ruley*
Alan M. Ruley
N.C. State Bar No. 16407
Bell, Davis & Pitt, P.A.
P.O. Box 21029
Winston Salem, NC 27120-1029
(336) 714-4147
E: aruley@belldavispitt.com

*Attorneys for Plaintiffs*

Dated: May 31, 2017