**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**CASE NO. 1:14-CV-954**

| | |
|---|---|
| **STUDENTS FOR FAIR ADMISSIONS, INC.,** | |
| **Plaintiff,** | **PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO EXCLUDE UNC'S LATE-DISCLOSED WITNESSES AND LATE-PRODUCED DOCUMENTS** |
| **v.** | |
| **UNIVERSITY OF NORTH CAROLINA et al.,** | |
| **Defendants.** | |

Pursuant to Federal Rules of Civil Procedure 26 and 37, Plaintiff Students for Fair Admissions, Inc. ("SFFA") respectfully files this Brief in Support of its Motion to Exclude three fact witnesses disclosed and five documents produced on July 13, 2018—more than a full year after the close of fact discovery—and to limit the testimony of a fourth fact witness to matters disclosed during the fact discovery period.

## I.     NATURE OF THE MATTER BEFORE THE COURT

SFFA seeks to exclude three witnesses first disclosed by Defendants ("UNC") on July 13, 2018, and documents produced by UNC on the same date—more than a year after fact discovery closed. The default remedy for

1

such late disclosures is exclusion of the witnesses and documents from the case entirely. *See Syngenta Crop Prot., LLC v. Willowood, LLC*, 2017 WL 3309699, at *1 (M.D.N.C. Aug. 2, 2017). The burden rests with the party facing exclusion "for belated disclosure to show that its failure to comply with [the Federal Rules] was either justified or harmless." *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003) (quotation omitted). UNC cannot meet its burden, for the reasons explained below.

## II.     STATEMENT OF FACTS

SFFA filed this action on November 17, 2014, challenging the constitutionality of UNC's use of race in its undergraduate admissions process. *See* Compl. ¶¶ 1-7 (Doc. 1). Among other things, the Complaint alleges that UNC does not consider race in an individualized manner or as merely a "plus" factor in making admissions decisions; the Complaint also alleges that UNC has improperly employed racial preferences when there are available race-neutral alternatives capable of achieving student body diversity. *See id.* ¶¶ 197-213 (Doc. 1). UNC filed an Answer on March 24, 2015, admitting in part and denying in part SFFA's allegations. *See generally* Answer ¶¶ 1-227 (Doc. 30).

On May 4, 2015, the parties submitted competing Rule 26(f) reports. (Doc. 32, 33.) The parties agreed that this case should be placed on the

2

Court's Exceptional Case Management Track, but disagreed over the length of the schedule. SFFA proposed twelve months of fact discovery and three months of expert discovery (Doc. 32, at 5); UNC argued for a shorter period of time, contending that nine months total would suffice for both fact and expert discovery (Doc. 33, at 4.). On May 13, 2015, the Court held the initial pretrial conference hearing and adopted UNC's report, setting out a nine-month discovery period. (Doc. 34.)

On May 20, 2015, per the Court's discovery schedule order, the parties exchanged Initial Disclosures. In its Initial Disclosures, UNC identified several potential fact witnesses and several categories of documents it intends to rely on (including documents relating to "scholarships and financial aid" and "the importance of diversity at the University"). Defendants' Initial Disclosures at 3-7 (May 20, 2015) (Exh. 1). On May 22, 2015, SFFA propounded its first set of discovery requests to UNC. Those included requests for "[a]ll reports, analyses, surveys, or other reviews or assessments ... concerning race neutral alternatives ... (regardless of whether those reports, analyses, surveys or other reviews or assessments were completed or finalized)" and "[a]ll documents ... show[ing] Your efforts to evaluate the feasibility and effects of race-neutral alternatives to racial preferences at UNC-CH, and how these alternatives compared to current admissions policies in achieving the

educational benefits of diversity," as well as "[a]ll documents from any time that UNC contends support any denial or defense in the Answer to the Complaint." Plaintiff's First Request for Production of Documents at ¶ 34, 35, 40 (Exh. 2).

On June 29, 2015, the Supreme Court granted certiorari in *Fisher v. Univ. of Texas at Austin*, No. 14-98 ("*Fisher II*"). After the parties filed a joint motion for partial stay that provided for the discovery of certain agreed-upon materials (Doc. 64), the Court on October 1, 2015, entered an order partially staying the proceedings pending a decision by the Supreme Court in *Fisher II* (Doc. 65). The Supreme Court decided *Fisher II* on June 23, 2016. On July 7, 2016, the parties submitted a jointly proposed schedule for discovery and summary judgment (Doc. 69). The parties proposed that fact discovery would conclude on June 30, 2017, that opening expert reports would be due on September 1, 2017, and expert discovery would conclude on December 1, 2017, with summary judgment to be fully briefed by March 15, 2018. (Doc. 69, at 2-3.) On August 1, 2016, the Court issued an order adopting this jointly proposed schedule. (Doc. 72.) The Court set trial for October 2018. (Doc. 76.)

During the fact-discovery period, the parties made multiple rounds of discovery requests. On March 17, 2017, SFFA propounded several discovery requests. Among them were numerous requests for documents relating to

4

"the educational benefits of diversity" and "race-neutral alternatives," including "[a]ll documents and communications regarding the Committee on Race-Neutral Strategies ... , including, but not limited to, all documents concerning the committee's work, schedules, minutes, reports, or summaries of all committee and sub-committee meetings, the committee's final and draft reports, any communications regarding the decision to start the committee, and any communications between the committee members concerning the committee's work." Plaintiff's Second Request for Production of Documents, at ¶¶ 48, 49, 60-63 (Exh. 3). On the same date, SFFA requested information about race-neutral alternatives through several interrogatories, *see* Plaintiff's Second Set of Interrogatories, at ¶¶ 15-22, 24, 29 (Exh. 4), and more generally about UNC's basis for its contention that it "has a compelling interest in using race in the undergraduate admissions process" and that its "use of race in connection with undergraduate admissions process is narrowly tailored to achieve a compelling interest." *Id.* at ¶¶ 27, 28.

In the course of fact discovery, UNC produced over 300,000 pages of documents. In addition, the parties negotiated an agreement allowing SFFA to take the depositions of sixteen UNC officials. Near the end of the fact discovery period, SFFA filed two motions to compel. (Doc. 83, filed May 16, 2017; Doc. 86, filed June 9, 2017.) On June 30, 2017, fact discovery closed,

pursuant to the schedule agreed to by the parties and ordered by the Court the preceding August (Doc. 72). On July 27, 2017, the Court held a hearing on the two motions to compel. On August 9, 2018, the Court issued an order granting one of those motions, requiring UNC to produce "applicant-level data for the 2011-12 and 2012-13 admissions cycles along with aggregate data for the 2009-11 admissions cycles." (Doc. 101, at 7).

The parties met and conferred regarding the timing of these additional productions of data, and subsequently submitted a series of joint motions for extensions to the Court:

- On August 17, 2017, the parties filed a joint motion to extend the expert discovery schedule such that final expert reports were due in April 13, 2018; expert discovery was due on May 31, 2018; and motions for summary judgment would be filed by July 27, 2018. (Doc. 102.) On August 22, 2017, the Court entered an order adopting that schedule (Doc. 104).

- After UNC produced additional data in November 2017 that "it intended to use and rely upon in connection with its opening expert report," (Doc. 118.), the parties jointly sought another extension (moving most deadlines by approximately a month). They proposed that final expert reports would be due by May 11, 2018; that expert discovery would be completed by June 25, 2018; and motions for summary judgment would be filed by August 24, 2018. *Id.* On December 4, 2017, the Court entered an order granting that motion and adopting its proposed schedule (Doc. 119).

- On March 7, 2018, in order to "resolve and accommodate conflicts for both sides' experts and counsel," the parties filed another joint motion to extend the remaining deadlines, again by about a month. (Doc 128). Under this proposal, final expert reports were due on June 8, 2018; expert discovery was to be completed by July 23, 2018; and motions

for summary judgment would be filed September 21, 2018. On March 13, 2018, the Court granted the March 7, 2018, joint motion and adopted its proposed schedule (Doc. 129). In doing so, the Court ordered: "There will be no further extensions." *Id.* (emphasis in original).

On July 13, 2018—more than a full year after the close of fact discovery and after the depositions of SFFA's experts—UNC identified five new fact witnesses and produced to SFFA new documents totaling 246 pages upon which it intends to rely. *See* Letter from M. Combs to T. McCarthy of July 13, 2018 (Exh. 5); Defendants' Fifth Supplemental Initial Disclosures (submitted July 13, 2018) (Exh. 6).[1] UNC later agreed to withdraw one of these witnesses (Brian Smith), but has made clear to SFFA that it intends to rely on the other four witnesses and all of the documents it produced. *See* Email from M. Combs to P. Strawbridge of July 31, 2018 (Exh. 7).

The four witnesses are Robert Blouin, University of North Carolina at Chapel Hill Provost and Executive Vice Chancellor; Yolanda Keith, Program

---

[1] UNC supplemented its Initial Disclosures four times during the fact discovery period: Defendants' Supplemental Initial Disclosures (Sept. 28, 2016) ("UNC First Supp. Disc.") (Exh. 8); Defendants' Second Supplemental Initial Disclosures (Jan. 11, 2017) ("UNC Second Supp. Disc.") (Exh. 9); Defendants' Third Supplemental Initial Disclosures (Feb. 3, 2017); and Defendants' Fourth Supplemental Initial Disclosures (May 30, 2017). UNC's Supplemental and Second Supplemental Initial Disclosures both indicated that UNC intended to rely on numerous witnesses and categories documents with information regarding the "educational benefits of diversity," "financial aid and scholarships" (including the "Carolina Covenant" program), and "race-neutral alternatives." *See generally* Exh. 8 at 2-6; Exh 9 at 2-15.

Director, Carolina College Advising Corps;[2] Rachelle Feldman, Associate Provost and Director, University Office of Scholarships and Student Aid;[3] and Jonathan Pruitt, University Vice Chancellor of Finance and Operations.[4] *Id.* at 2-3.

Robert Blouin succeeded James Dean as Provost and Executive Vice Chancellor in September of 2017, and UNC disclosed him as the successor to Dean (a named defendant who SFFA deposed in June of 2017). Notwithstanding the delay in disclosing Blouin as the successor to Dean, SFFA does not object to UNC's reliance on Blouin as the successor to Dean to the extent Blouin's testimony covers materials disclosed during the fact-discovery period. UNC, however, has stated that it intends to rely on the other three individuals as fact witnesses to rebut specific issues and claims made by SFFA's experts during expert discovery (either through declarations or trial testimony). UNC also indicated that it may rely on Blouin to testify about

---

[2] Keith has served in this role since 2010. *See* UNC, Carolina College Advising Corps, *available at* https://carolinacollegeadvisingcorps.unc.edu/about/contact/.

[3] Feldman was hired in this role in June of 2016. See Feldman named Carolina's director of scholarships, financial aid, University Gazette (June 21, 2016), *available at* https://gazette.unc.edu/2016/06/21/feldman-named-carolinas-director-of-scholarships-financial-aid/.

[4] Pruitt started in this role in January of 2018 after serving at the CFO for the UNC System for approximately 12 years before that. *See* UNC, Finance & Operations, *available at* https://fo.unc.edu/about/vice-chancellor/.

recent reports and documents produced by UNC regarding its assessment of

the benefits of racial diversity and the viability of race-neutral alternatives.

In particular, UNC states that:

- Keith intends to submit testimony "regarding Carolina College Advising Corps program[.]"[5]

- Feldman intends to submit testimony "regarding the role of the Office of Scholarships and Student Aid in student recruitment and retention; the University's provision of scholarships and aid to undergraduate students; the University's commitment to ensuring access to the University as part of its public service mission; efforts to increase diversity and inclusion at the University, including socioeconomic diversity; and the University's scholarship and aid programs, including the Carolina Covenant program."

- Pruitt intends to submit testimony "regarding the University's finances and the stewardship of the University's financial resources."

Exh. 6, at 2-3. SFFA objects to the late disclosure of these three individuals

(the "Late-Disclosed Witnesses") and seeks herein to exclude them as

witnesses from this action.

The late-produced documents consist of (1) a 137-page report dated

May 2018 that was produced by UNC's Race-Neutral Strategies Committee

entitled "Examining Potential Race-Neutral Strategies in Undergraduate

Admissions at University of North Carolina at Chapel Hill" (the "May 2018

---

[5] UNC initially offered a number of areas for Ms. Keith's testimony, but later limited the topics to the Carolina College Advising Corps. *See* Exh. 7.

Race-Neutral Strategies Report"); (2) an 83-page June 2018 report produced by UNC's Educational Benefits of Diversity & Inclusion Working Group (an entity formed in December of 2017); (3) a July 3, 2018 email (a portion of the document is redacted and marked "privileged") from Senior Associate Dean Abigail Panter to multiple UNC addressees attaching the May 2018 Race-Neutral Strategies Report; (4) minutes from an April 9, 2018 meeting of the Data Analytics Subcommittee of the Race-Neutral Strategies Task Force; (5) an undated page of what appear to be typed notes regarding "Race Neutral Alternative Strategies – Impact of Diversity on the Student Experience"; (6) a June 14, 2018 *Washington Post* article entitled "A shake-up in elite admissions: U-Chicago drops SAT/ACT testing requirement"; and (7) a chapter from Richard Kahlenberg's book "The Future of Affirmative Action."

SFFA does not seek to exclude the last two of these seven documents, one of which is a newspaper article and the other of which is a book edited by one of SFFA's experts. SFFA seeks to exclude the other five late-produced documents, all of which were created by UNC (the "Late-Produced Documents").

### III. QUESTION PRESENTED

This motion presents the question whether UNC can meet its burden of demonstrating that its three Late-Disclosed Witnesses and five Late-Produced Documents should not be excluded from this action.

### IV. ARGUMENT

"Early in the litigation, a litigant must disclose the information and witnesses that it 'may use to support its claims or defenses.'" *Syngenta*, 2017 WL 3309699, at *1 (quoting Fed. R. Civ. P. 26(a)(1)(A)(i)). "The purpose of Rule 26(a) is to allow the parties to adequately prepare their cases for trial and to avoid unfair surprise." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014). A party must also supplement its disclosures if it obtains new information, "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

The "presumed sanction" for failure to make timely disclosures is exclusion of the late-disclosed witnesses or documents. *Syngenta*, 2017 WL 3309699, at *5. As this Court has put it, "[Rule] 37(c) provides 'strong inducement' for following the disclosure requirements of Rule 26(a) and (e)." *Id.* at *1 (quoting Fed. R. Civ. P. 37(c) Advisory Comm. Notes (1993)). "If a party fails to provide information or identify a witness as required by Rule

26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).[6] The burden rests with the party facing exclusion "for belated disclosure to show that its failure to comply with [the Federal Rules] was either justified or harmless." *S. States Rack & Fixture*, 318 F.3d 592, 596 (4th Cir. 2003) (quotation omitted).

The Fourth Circuit has explained that, "in exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *S. States Rack & Fixture*, 318 F.3d at 597.[7]

---

[6] "For the sanction of exclusion to apply, Rule 37(c)(1) does not require a finding of bad faith or callous disregard of the discovery rules." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 330 (4th Cir. 2011).

[7] "Four of these factors—surprise to the opposing party, ability to cure that surprise, disruption of the trial, and importance of the evidence—relate mainly to the harmlessness exception, while the remaining factor—explanation for the

Under this framework, courts within the Fourth Circuit have regularly excluded late-disclosed witnesses and documents. *See, e.g.*, *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 329 (4th Cir. 2011) (excluding witness disclosed two months after fact discovery closed); *Syngenta*, 2017 WL 3309699, at 1, 3 (ordering the exclusion of defendants' documents and witnesses disclosed 10 months after the close of fact discovery). In fact, the Fourth Circuit has excluded evidence that was disclosed during a reopened discovery period. *See Russell*, 763 F.3d at 397.

This Court should follow the lead of the Fourth Circuit and its own precedent in *Syngenta* and exclude the Late-Disclosed Witnesses and Late-Produced Documents from this action in order to "protect [SFFA] from unfair prejudice caused by the last-minute surprise disclosures of the witnesses and documents." *Syngenta*, 2017 WL 3309699, at *5.

## A. IT IS UNDISPUTED THAT UNC PRODUCED THE DOCUMENTS AND DISCLOSED THE WITNESSES MORE THAN A YEAR AFTER THE CLOSE OF FACT DISCOVERY.

Fact discovery opened in this case on May 13, 2015, when the Court adopted the initial nine-month discovery schedule. On May 20, 2015, UNC began identifying potential fact witnesses in its Initial Disclosures, which it

---

nondisclosure—relates primarily to the substantial justification exception." *S. States Rack & Fixture*, 318 F.3d at 597.

13

supplemented four times before the fact discovery period closed on June 30, 2017 (each time identifying additional fact witnesses). *See supra* p.7 n.1. It was not until July 13, 2018—more than one year after the close of discovery—that UNC identified the four Late-Disclosed Witnesses (all four of whom have been employees of UNC since before the close of fact discovery). As noted above, courts within this Circuit have excluded witnesses and documents that were not nearly this late. *See, e.g.*, *Russell*, 763 F.3d at 397 (disclosed during re-opened discovery period); *Hoyle*, 650 F.3d at 329 (two months after fact discovery closed); *Syngenta*, 2017 WL 3309699, at 1, 3 (10 months after fact discovery closed).

Moreover, the lateness of these disclosures is particularly problematic because UNC intends to use the Late-Disclosed Witnesses and Late-Produced Documents to rebut the work of SFFA's experts, yet UNC did not disclose them until the eve of the close of expert discovery—after the depositions of SFFA's experts. Indeed, much of the information could have been produced (and the witnesses could have been identified) long before the depositions of SFFA's experts in late June or early July—some of the documents date back to late 2017, and the latest document bears a date of early July 2018. The production of all this information the week after Mr. Kahlenberg's July 11 deposition frustrates SFFA's ability to respond to or test this information.

14

**B.     EXCLUSION OF THE LATE-DISCLOSED WITNESSES AND LATE-PRODUCED DOCUMENTS IS THE APPROPRIATE REMEDY.**

"[E]xclusion is the presumed sanction" for failure to timely disclose witnesses and documents. *Syngenta*, 2017 WL 3309699, at *5. The burden rests with UNC as the party facing exclusion "for belated disclosure to show that its failure to comply with [the Federal Rules] was either justified or harmless." *S. States Rack & Fixture*, 318 F.3d at 596 (quotation omitted). UNC cannot meet that burden. As explained more fully below, UNC's disclosure more than a year after the close of discovery is neither substantially justified, nor harmless. Accordingly, UNC's Late-Disclosed Witnesses and Late-Produced Documents should be excluded from this action.

**1.     UNC's Disclosure of the Late-Disclosed Witnesses and Late-Produced Documents More Than A Year After The Close of Fact Discovery Is Not Substantially Justified.**

*Late-Disclosed Witnesses*. UNC's year-long delay in identifying the three Late-Disclosed Witnesses is not substantially justified. To begin with, UNC thus far has not articulated any justification for its late disclosure thereof. This is undoubtedly because all three are and have been UNC employees since before the close of fact discovery, *see supra* p.8 & nn. 2-4. *See Russell*, 763 F.3d at 398 (fact that late-disclosed witness was the defendants' own employee weighed against finding substantial justification). Moreover, the topics about which they have information—financial aid and scholarships

15

and UNC's financial resources—have "been a[t] issue since the beginning of this case," *Syngenta*, 2017 WL 3309699, at \*4. *See, e.g.*, Compl. ¶¶ 5, 65, 119-24, 125, 208; Defendants' Initial Disclosures at 6; *see also supra* p.7 n.1. There is no reason that UNC could not have identified them within the fact discovery period. Most egregious is UNC's late identification of Ms. Keith as a fact witness; UNC identified her as a custodian for the purpose of producing email in response to SFFA's discovery requests in July of 2015. *See Hoyle*, 650 F.3d at 330. UNC had more than sufficient knowledge that the topics about which the Late-Disclosed Witnesses have information were central to this case. Clearly, then, UNC's failure to disclose these witnesses within the fact discovery period is not substantially justified.

**Late-Produced Documents**. UNC's failure to disclose the five Late-Produced Documents within the fact discovery period likewise is not justified, especially given that SFFA requested documents of these types at the start of the fact discovery period. *See Syngenta*, 2017 WL 3309699, at \*4 (explaining that the failure to disclose in response to discovery requests that cover the late disclosure weigh in favor of exclusion); *Hoyle*, 650 F.3d at 329-30 (same). That the documents were not created until after the close of fact discovery is no justification. *See Jackson Family Wines, Inc. v. Diageo N. Am., Inc.*, 2014 WL 104902, at \*3 (N.D. Cal. Jan. 9, 2014) (concluding that the fact that the

16

"Plaintiffs did not create the [documents] until months after the close of fact discovery" is "no[t] [a] persuasive explanation for the late production"). This is of course because "[t]he purpose of Rule 26(a) is to allow the parties to adequately prepare their cases for trial and to avoid unfair surprise." *Russell*, 763 F.3d at 396. It simply is unfair for UNC to surprise SFFA with newly created documents more than a year after the close of fact discovery and just before summary judgment motions are due.

The documents UNC wants to lob into the case at this late date all relate to "race-neutral alternatives" and the "educational benefits of diversity." These are two of the focal points of the applicable legal standard. *See generally Grutter v. Bollinger*, 539 U.S. 306, 330-342 (2003); *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 307-14 (2013); Compl. at ¶¶ 190-95. They obviously "ha[ve] been front and center in the dispute … since early in the case." *Syngenta*, 2017 WL 3309699, at *4. Indeed, the disclosures that UNC actually made in a timely manner make clear that UNC understood this all along. *See supra* p.7 n.1; *see also supra* 3-4. UNC thus has no substantial justification for its year-late production.

Nor can UNC justify its year-late disclosures based on the fact that SFFA seeks injunctive relief. The nature of the relief requested is no basis for flouting mandatory deadlines set by the Court long ago (especially given the

prejudice to SFFA). Indeed, several of the cases cited herein are instances where courts ordered exclusion of late-disclosed witnesses and/or documents notwithstanding that they involved claims for injunctive relief. *See, e.g.*, *Hoyle*, 650 F.3d 321; *Syngenta*, 2017 WL 3309699; *Jackson Family Wines*, 2014 WL 104902.

### 2. UNC's Failure To Disclose The Late-Disclosed Witnesses and Late-Produced Documents Is Not Harmless.

In its Initial Disclosures and four timely supplements thereto, UNC identified dozens of potential fact witnesses. SFFA "was entitled to rely on [UNC's timely] disclosures as to who its witnesses were likely to be." *Syngenta*, 2017 WL 3309699, at *4; *see also McCollum v. UPS Ground Freight Inc.*, 2013 WL 105225, at *3 (D. Ariz. Jan. 9, 2013) ("[P]laintiffs were entitled to rely on the 'critical' purpose of Rule 26(a)(1)(A)—to inform [them] which witnesses and documents the disclosing party may use to support its claim or defenses." (quotation omitted)).

Similarly, UNC early on in the case identified categories of documents that encompass the documents it just produced more than a year after fact discovery closed. *See supra* p.7 n.1. During the fact discovery period—which lasted more than two years—UNC produced hundreds of thousands of pages of documents to SFFA, including several lengthy studies and reports and other documents that relate to the educational benefits of diversity and race-

neutral alternatives. Especially by the time another full year had passed, SFFA was "entitled to rely on [UNC's timely] disclosures as to" the documents UNC intended to rely on. *Syngenta*, 2017 WL 3309699, at *4; *see also McCollum*, 2013 WL 105225, at *3.

By identifying the three Late-Disclosed Witnesses and the Five Late-Produced Documents more than a year after the close of fact discovery, UNC deprived SFFA of the "'opportunity to conduct relevant discovery and formulate [its] case strategy to account for this evidence.'" *Syngenta*, 2017 WL 3309699, at *4 (quoting *McCollum*, 2013 WL 105225, at *3).

UNC undoubtedly thinks these witnesses and documents are important and wants to use them at summary judgment and trial because it feels the need to shore up its case. But that is a reason for the exclusion—not the admission—of these documents. *See Russell*, 763 F.3d at 398 ("Given the advanced stage of the litigation *and the significance of the evidence to Russell's case*, the district court justifiably concluded that the late disclosures were not harmless.") (emphasis added); *see also Hoyle*, 650 F.3d at 330 (excluding late-disclosed witness in part because he might have "evidence highly relevant to the case").

Had UNC identified the Late-Disclosed Witnesses and Late-Produced Documents within the fact discovery period, SFFA would have propounded

discovery requests relating to these witnesses and documents, taken depositions of the Late-Disclosed Witnesses (and potentially the UNC employees who led the subcommittees whose work is the subject of the new reports), and had its experts address the lengthy reports. Or if UNC had disclosed them earlier in the expert discovery period, before all reports had been submitted and depositions concluded, SFFA theoretically might have been able to seek leave to engage in the necessary discovery. At this late point, however, SFFA "could not depose the witnesses or conduct additional discovery [or submit supplemental expert reports] without the Court's permission"—circumstances this Court has found to weigh heavily in favor of exclusion because the "[a]dditional rounds of depositions and supplemental reports and [discovery requests] would completely disrupt" the existing schedule. *Syngenta*, 2017 WL 3309699, at *3; *Hoyle*, 650 F.3d at 330 ("Defendant has been clearly prejudiced in that it has lost its opportunity to depose Williams. Accordingly, the Declaration of Williams will not be considered by the court."); *BorgWarner, Inc. v. Honeywell Int'l, Inc.*, 750 F. Supp. 2d 596, 605-06 (W.D.N.C. 2010) (excluding testimony by a late-disclosed expert). The case for exclusion is even stronger here, because the

20

Case 1:14-cv-00954-LCB-JLW   Document 138   Filed 08/03/18   Page 20 of 24

Court has already ordered that "[t]here will be no further extensions." (Doc 129 (emphasis in original).)[8]

The appropriate remedy here is the "automatic sanction" provided for in the Federal Rules—exclusion of the Late-Designated Witnesses and the Late-Produced Documents from this case. Fed. R. Civ. P. 37(c) advisory committee note (1993).

## CONCLUSION

For the foregoing reasons, the Court should exclude the three Late-Designated Witnesses and the Five Late-Produced Documents, and limit any testimony by Mr. Blouin to documents and matters disclosed during the fact discovery period.

---

[8] UNC has proposed to remedy the harm to SFFA from UNC's late disclosures by allowing SFFA to take the depositions of the three Late-Disclosed Witnesses and Abigail Panter before the current deadline for summary judgment. *See* Exh. 7. But this would not remedy the problem UNC has created. First, it is plainly an insufficient remedy. As SFFA noted above, curing this problem would require not only those depositions but possibly additional ones, along with discovery requests (including email production) and supplemental expert reports. Second, UNC's proposed remedy is impracticable; the time needed to engage in the needed discovery and depositions would likely run into and at least through the summary judgment schedule. SFFA was entitled to rely on the agreed-upon schedule and the Court's admonition that no further extensions would be granted in this case. Its experts and counsel naturally have other commitments (including two scheduled trials in August and September and a third three-week trial scheduled for October), and there is no realistic way that the necessary discovery and depositions could be conducted and supplemental reports prepared and exchanged in time to be adequately addressed in summary judgment motions, which are due on September 21, 2018.

Respectfully submitted,

/s/ Thomas R. McCarthy
Thomas R. McCarthy
Consovoy McCarthy Park PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
(703) 243-9423
E: tom@consovoymccarthy.com

/s/ William S. Consovoy
William S. Consovoy
Consovoy McCarthy Park PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
(703) 243-9423
E: will@consovoymccarthy.com

/s/ J. Michael Connolly
J. Michael Connolly
Consovoy McCarthy Park PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
(703) 243-9423
E: mike@consovoymccarthy.com

/s/ Alan M. Ruley
Alan M. Ruley
N.C. State Bar No. 16407
Bell, Davis & Pitt, P.A.
P.O. Box 21029
Winston Salem, NC 27120-1029
(336) 714-4147
E: aruley@belldavispitt.com

*Attorneys for Plaintiffs*

Dated: August 3, 2018

**<u>CERTIFICATE OF COMPLIANCE WITH L.R. 7.3</u>**

Pursuant to L.R. 7.3(d)(1), I hereby certify that the body of this brief, including headings and footnotes, contains 4,798 words, which is less than the limit for this filing.

This the 3rd day of August, 2018.

<u>/s/ *Thomas R. McCarthy*</u>
Thomas R. McCarthy

Case 1:14-cv-00954-LCB-JLW   Document 138   Filed 08/03/18   Page 23 of 24

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I served the foregoing document via the Court's electronic filing system, pursuant to the Electronic Filing Procedures, on all attorneys of record who have entered an appearance by ECF in this matter.

This the 3rd day of August, 2018.

<u>*/s/ Thomas R. McCarthy*</u>
Thomas R. McCarthy