**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**CASE NO. 1:14-CV-954**

| | |
|---|---|
| **STUDENTS FOR FAIR ADMISSIONS, INC.,** | |
| **Plaintiff,** | |
| **v.** | **DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE** |
| **UNIVERSITY OF NORTH CAROLINA et al.,** | |
| **Defendants.** | |

## INTRODUCTION

With this lawsuit, SFFA seeks *permanent* injunctive relief barring the University from pursuing its compelling interest in realizing the educational benefits of diversity for its students by considering race as one factor among many others as part of its admissions practice. Under controlling United States Supreme Court precedent, consideration of race as a factor in admissions decisions is constitutionally permissible so long as the University's admissions policy is "narrowly tailored" to achieve a compelling interest. As the Supreme Court recently emphasized—during the course of this litigation—narrow tailoring requires the University to conduct ongoing reassessments of its admissions approach, including constant reevaluation of race-neutral alternatives. Thus, to evaluate SFFA's claim, and to decide whether to grant sweeping relief to throw

out the University's approach to admissions—potentially at great cost to the University—this Court must consider whether the University is *presently* meeting its ongoing reassessment and reevaluation obligations. It is this evidence, however, that SFFA seeks to prevent the Court from considering through its Motion to Exclude.

Unfortunately for SFFA, prospective injunctive relief cannot be weighed in the vacuum of the past; what is happening now matters. Accordingly, and consistent with its ongoing obligation to supplement its discovery responses, in July 2018, the University produced seven documents (reports, meeting minutes, and notes) that were recently created in the normal course of business and reflect the University's continuous evaluation of its admissions approach and race-neutral alternatives. SFFA seeks to exclude five of those seven documents. Although SFFA claims unfair surprise and prejudice, it has long been aware of this ongoing work by the very University employees who created these documents, took discovery on these efforts, and has previously accepted, without objection, the production of similar documents despite the close of fact discovery. Indeed, *prior* to the close of fact discovery, the University notified SFFA of its plans to continue to supplement its production with these types of materials. The University's production of five additional documents is both timely and justified and results in no harm whatsoever to SFFA. The Motion to Exclude should be denied.

SFFA's Motion also seeks to exclude the testimony of three witnesses disclosed by the University in its Fifth Supplemental Initial Disclosures. In an effort to facilitate a

resolution and narrow the dispute, the University has withdrawn these witnesses.[1]

## BACKGROUND

This case asks whether the University's admissions policies comply with Supreme Court precedent permitting race-conscious admissions practices that are narrowly tailored to achieve a compelling interest "in obtaining the educational benefits that flow from a diverse student body." *Grutter v. Bollinger*, 539 U.S. 306, 343 (2003).

In *Grutter*, the Supreme Court held that a university that considers race as a limited factor in its admissions process must "narrowly tailor" its efforts under strict scrutiny by engaging in "good faith consideration of workable race-neutral alternatives that will achieve the diversity the university seeks." *Id.* at 339. The Court expounded on this requirement in its *Fisher v. University of Texas at Austin* decisions. In *Fisher II*, which was decided during the pendency of this litigation, the Supreme Court made clear that universities have an "*ongoing* obligation to engage in constant deliberation and continued reflection" regarding their admissions and related policies. *Fisher v. Univ. of Tex. at Austin (Fisher II)*, 136 S. Ct. 2198, 2215 (2016) (emphasis added).

SFFA's motion seeks to truncate the factual record and prevent the Court from considering evidence of the University's compliance with these decisions.

### A. The Production SFFA Seeks To Exclude Is a Direct Result of the Obligations SFFA Sued To Enforce and Is Responsive to SFFA's Document Requests

As SFFA acknowledges, the parties have engaged in extensive discovery

---

[1] The University reserves its right to call rebuttal witnesses as necessary.

regarding the University's narrow tailoring obligations, including its admissions policies, its assessment of those policies, and its ongoing consideration of race-neutral alternatives. (ECF 139 (Br. in Supp. of Mot. to Exclude) at 3-6.) Both SFFA's First Requests for Production of Documents ("First Requests") and SFFA's Second Requests for Production of Documents ("Second Requests") sought documents relating to the University's consideration and assessment of race-neutral alternatives. (*See* Ex. 1, First Requests and Ex. 2, Second Requests.)

Specifically, SFFA's First Requests sought:

- "All reports, analyses, surveys, or other reviews or assessments prepared by [UNC's] employees or agents during the Relevant Period concerning race-neutral alternatives…"
- "All documents from each admissions cycle during the Relevant Period sufficient to show [UNC's] efforts to evaluate the feasibility and effects of race-neutral alternatives. . . and how these alternatives compared to current admissions policies in achieving the educational benefits of diversity."

(*See* Ex. 1, First Requests at ¶¶ 34-35.) Plaintiff's Second Requests likewise sought:

- "All documents and communications regarding the Committee on Race-Neutral Strategies,"
- "All documents posted to the 'Sakai'[2] site for the …Committee on Race-Neutral Strategies," and
- "All documents upon which UNC is currently relying to satisfy its 'burden of demonstrating, before turning to racial classifications, that available, workable race neutral alternatives do not suffice. . .'"

(*See* Ex. 2, Second Requests at ¶¶ 48, 51, 63.)

In all of its document requests, SFFA defined the "Relevant Period" as "continuing throughout the pendency of this litigation" and stated "[t]hese requests shall

---

[2] "Sakai" refers to an electronic file-share site used at the University.

4

be deemed to be continuing so as to require supplemental answers from time to time until the date of trial." (*See* Ex. 1, First Requests at 3; Ex. 2, Second Requests at 3.) Accordingly, the University has produced documents responsive to SFFA's requests on a rolling basis.

In addition to its written discovery, SFFA also deposed University fact witnesses on the University's ongoing assessment of its admissions approach and race-neutral alternatives. For instance, SFFA sought Rule 30(b)(6) testimony on "[t]he work, analysis, and findings of the Committee on Race-Neutral Strategies, including: (a) The review of any literature on race-neutral admissions processes; (b) The review of the implementation and effects of race-neutral admissions in other jurisdictions; (c) The review of any feasibility of implementing a race-neutral admissions process at UNC-Chapel Hill; (d) The costs and benefits of a race-neutral admissions process." (*See* Ex. 3, Plaintiff's Notice of Rule 30(b)(6) Deposition, dated April 18, 2017.) The University designated Dr. Abigail Panter—chair of the Committee on Race-Neutral Strategies—as its 30(b)(6) witness on these topics. (*See* Ex. 4, Letter from M. Scudder dated June 2, 2017; Ex. 5, Notice of Deposition of Abigail Panter.) SFFA took Dr. Panter's deposition on June 19, 2017 and asked her questions about the Committee's plans and ongoing work. (*E.g.*, Ex. 6, Panter Dep. 102:22 to 103:21, 104:16 to 105:12.)

Through its written discovery responses and document productions, as well as the deposition testimony of Dr. Panter and other University witnesses, the University made SFFA aware of the University's ongoing efforts to assess its admissions policies and

5

race-neutral alternatives *and* the likelihood that it would generate reports and studies after the June 30, 2017 close of fact discovery. Indeed, SFFA acknowledged this fact by letter dated June 30, 2017, in which it suggested it would seek to preclude the University from producing any future Committee materials:

> [W]e have learned during recent deposition testimony and UNC's interrogatory responses . . . . that neither the Committee nor its various subcommittees have produced any reports, studies, papers, or presentations but that they may produce a report or reports in the future. In other words, the Committee and/or its subcommittees will produce their work (if any) after fact discovery closes . . . If UNC attempts to submit and/or rely upon such work as evidence in this case, SFFA will seek to exclude it or seek other appropriate relief.

(*See* Ex. 7, June 30, 2017 Letter from T. McCarthy.)

The University responded through counsel by letter dated August 16, 2017, making clear it took a contrary position:

> Any reports, studies, papers, or presentations produced by the Committee or any of its subcommittees bear directly upon SFFA's claims and the University's defenses in this action. Moreover, evidence of the Committee's ongoing work, even after the close of fact discovery, is appropriate in this case as SFFA seeks prospective injunctive relief. Therefore, the University is entitled to present evidence of current facts to the Court. The University will produce—consistent with its obligations under Rule 26, and may properly rely upon at trial, any relevant work of the Committee or its subcommittees and any other additional evidence relevant to the claims and defenses in this action.

(*See* Ex. 8, Letter to SFFA dated August 16, 2017.)

Since July 2017, the Committee has continued its work as it is constitutionally

required to do and the University has produced evidence related to the University's consideration of race-neutral alternatives.

Likewise, the University has continued its assessment of the educational benefits of diversity, consistent with the Supreme Court's guidance in *Fisher II*, including studying and analyzing data from the University's campus climate survey administered in 2016. SFFA was made aware of these plans through the University's production of the Provost's May 2017 Report on the Educational Benefits of Diversity ("Provost's Report"), which explained that the University's assessment work was "far from complete." (*See* Ex. 9, Provost's Report at 16.) The Provost's Report specifically states that the University would "continue tracking the diversity of our student body," "commit to hearing our students' experiences" in particular ways, and "expand the ways in which we gather information about diversity and inclusion." (*Id.*) The Provost's Report further explains that the University will invest in additional efforts, including "[c]ollecting broader data through additional surveys and climate studies, creating more opportunities for students to express themselves to campus leadership, and developing more refined assessment criteria for our diversity and inclusion programs." (*Id.*) SFFA asked questions about the Provost's Report in the depositions of then-Provost James Dean and Vice Provost for Enrollment and Undergraduate Admissions Stephen Farmer. (*E.g.*, Ex. 10, Dean Dep. 82:8 to 83:18, 136:8-17, 149:6 to 151:12; Ex. 11, Farmer Dep. 370:20-24.)

As specifically requested by SFFA, the University produced the results of its ongoing assessment efforts. On December 11, 2017, the University produced:

7

- Report titled Preliminary Results from the 2016 Undergraduate Diversity & Inclusion Survey; and
- Data and analysis from the University's recent climate survey.

(*See* Ex. 12, Email dated December 11, 2017 from M. Combs to T. McCarthy; *see also* Ex. 13, Email dated December 11, 2017 from A. Morgan to T. McCarthy.)  SFFA did not raise any concerns with or object to this production, nor did SFFA seek additional discovery or demand additional depositions.

Subsequently, on December 21, 2017, the University produced to SFFA additional materials generated during the Fall 2017 academic semester.  (*See* Ex. 14, Email dated December 21, 2017 from M. Combs to P. Strawbridge and T. McCarthy.)  This production consisted of:

- Minutes from the Committee's September 21, September 27, and November 27, 2017  meetings detailing the Committee's activities and summarizing research and data analysis conducted by its subcommittees;
- Survey materials posted to the Committee Sakai site; and
- Scholarly articles read and considered by the Committee and posted to its Sakai site.

Again, SFFA did not raise any concerns with or object to this production, nor did SFFA seek additional discovery or demand additional depositions.

The Committee continued its work in 2018.  Additionally, the University's Educational Benefits of Diversity & Inclusion Working Group, convened in December 2017 to enhance the University's assessment of its progress towards obtaining the educational benefits of diversity pursuant to *Fisher II* and recommendations made in the Provost's Report, met and conducted the majority of its work during the first half of 2018.  On July 13, 2018, the University again supplemented its production to SFFA in

8

order to produce the materials generated by the Committee and the Working Group during the first half of 2018 ("July 13th Production"). (*See* Ex. 15, Email dated July 13, 2018 from M. Combs to Plaintiff's Counsel.) This production—totaling seven documents—consisted of:

- Interim Report of the Committee on Race-Neutral Strategies, dated May 25, 2018;
- July 3, 2018 cover email from the Chair of the Committee distributing the Interim Report to University leadership;
- Materials posted to the Committee's Sakai site; and
- Status Report of the Educational Benefits of Diversity & Inclusion Working Group, dated June 25, 2018.

At the same time as its July 13, 2018 production, the University also supplemented its Initial Disclosures to include the following witnesses: Robert Blouin, Executive Vice Chancellor and Provost; Yolanda Keith, Program Director of Carolina College Advising Corps; Rachelle Feldman, Director of the Office of Scholarships and Student Aid; Jonathan Pruitt, Vice Chancellor of Finance and Operations; and Brian Smith, University Treasurer ("Fifth Supplemental Initial Disclosures"). (*See* Ex. 16, Fifth Supplemental Initial Disclosures.) Robert Blouin succeeded James Dean as University Provost and is an individual defendant in the case. The remaining four witnesses at issue were disclosed as rebuttal witnesses to correct specific factual assertions made by SFFA's expert, Richard Kahlenberg, in his expert reports and July 11, 2018 deposition.

## B.   SFFA Rejected the University's Good Faith Efforts To Compromise

The parties held a meet-and-confer conference on July 19, 2018, during which SFFA stated its intention to move to exclude the documents produced in UNC's July 13th

9

Production and witnesses named in the University's Fifth Supplemental Initial Disclosures. SFFA indicated that it did not object to the substitution of Blouin for Dean. In a good faith effort to resolve the dispute, on July 20, 2018 the University offered to make its proposed witnesses available for deposition within 30 days. (*See* Ex. 17, Email dated July 20, 2018 from M. Combs to P. Strawbridge.) In addition, the University offered to make Dr. Panter available for an additional deposition within 30 days to testify regarding the Committee's Interim Report and the Educational Benefits of Diversity & Inclusion Working Group. (*See id.*) All of these depositions could have been completed by August 20—earlier than the filing of this opposition and a full month before the summary judgment deadline.

One week later, SFFA responded and rejected the University's offer, claiming that the University's proposal was "not feasible." (*See* Ex. 18, Email dated July 27, 2018 from P. Strawbridge to M. Combs.) The University subsequently offered to remove Smith from its Fifth Supplemental Initial Disclosures and further explained that Keith would not testify at trial but instead would offer a declaration on one topic. (*See* Ex. 19, Email dated July 31, 2018 from M. Combs to P. Strawbridge.) SFFA did not respond to the University's offer and filed its Motion on August 3, 2018.

Prior to filing this Opposition, in a further effort to reach a resolution (and without waiving any rights to present necessary rebuttal testimony as the case goes forward), the University removed Keith, Pruitt, and Feldman from its Fifth Supplemental Initial Disclosures. Nevertheless, SFFA refused to withdraw its motion. Thus, the only dispute

10

before this Court is (1) whether five documents produced on July 13th should be excluded from this Court's consideration, and (2) whether Blouin (an individual defendant) should be artificially limited by the record SFFA developed.

## ARGUMENT

SFFA seeks to exclude five of the seven documents produced in UNC's July 13th Production and limit the testimony of Robert Blouin to facts and materials disclosed during the fact discovery period pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure. (*See* ECF 139 at 10-11.) SFFA's Motion as to the July 13th Production and Robert Blouin should be denied.

## I. The University's July 13th Production Was Timely

Contrary to SFFA's argument, the close of fact discovery does not impose an absolute and impermeable deadline preventing the disclosure of responsive, relevant information. SFFA's position ignores the ongoing nature of the University's narrow tailoring obligations under controlling Supreme Court precedent, and the implications of its own decision to pursue injunctive relief.

### A. Controlling Supreme Court Precedent Required the University To Engage in Its Ongoing Work, Which Is Reflected in the July 13th Production

SFFA admits that the documents in the July 13th Production relate to "two of the focal points of the applicable legal standard." (ECF 139 at 17 (citations omitted).) Nevertheless, SFFA contends that UNC's July 13th Production was untimely because

11

these two focal points—"race neutral alternatives" and the "educational benefits of diversity"—have been known "since early in the case." This argument ignores that the Supreme Court mandated continual reassessment of these issues; the University's obligations in this regard do not end with the close of discovery.

The Supreme Court's words—"ongoing," "constant," and "continued"—show the persistent nature of the University's obligation to assess the educational benefits of diversity and race-neutral alternatives. *Fisher II*, 136 S. Ct. at 2215; *see id.* at 2210 (noting that UT Austin's "periodic reassessment[s] of the constitutionality, and efficacy, of its admissions program" must, in future iterations, consider new data and the school's experiences collected since the beginning of the admissions plan). Moreover, the Court was clear that this assessment must account for changing circumstances. *Id.* at 2209-10 (discussing a university's "continuing obligation to satisfy the burden of strict scrutiny in light of changing circumstances"). This necessarily requires collecting new information in order to assess and reassess the University's policies and programs. *Id.* at 2210 ("Through regular evaluation of data and consideration of student experience, the University must tailor its approach in light of changing circumstances, ensuring that race plays no greater role than is necessary to meet its compelling interest.").

### B. Current Facts Are Vital to a Court's Decision When Injunctive Relief Is Sought

The University is satisfying its constitutional obligations and is entitled to present such evidence of its ongoing assessment to the Court, particularly here, where SFFA seeks prospective relief that would impact the University's approach to admissions

moving forward. The Fourth Circuit has stated that a "prospective injunction is entered only on the basis of current, ongoing conduct that threatens future harm." *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001); *see also Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 503 (4th Cir. 2002) (remanding for reconsideration of an injunction and recognizing that, "on remand, the district court and the parties will undoubtedly have to deal with [recent events] in considering any prospective relief").

Indeed, courts have denied motions to exclude evidence produced after the close of discovery where injunctive relief was sought. In *MercExchange, L.L.C. v. eBay, Inc.*, 467 F. Supp. 2d 608 (E.D. Va. 2006), the court denied eBay's motion to strike newly-submitted evidence in support of a renewed motion for injunction in a patent case. *Id.* at 611. eBay contended that the evidence at issue was an attempt to "improperly backfill the record." *Id.* at 610-11. The court disagreed, and held it needed to consider current facts relating to the producing party's patent claims as it was "charged with determining the equitable relief appropriate on the date of the court's order." *Id.* at 611. The five documents contained in UNC's July 13th Production (which were not available prior to the close of fact discovery) were produced well ahead of the summary judgment deadline (and trial date), contain the most current facts necessary for the Court to determine whether injunctive relief is appropriate and should not be excluded.

The cases SFFA relies upon to suggest that production cannot occur after discovery deadlines in injunctive relief actions involve circumstances not present in this

13

case. (ECF 139 at 17-18.) Notably, none of the cases cited by SFFA for this proposition involve cases where the controlling law imposes a continuing duty on a party that necessarily leads to the ongoing creation of relevant material. In addition, the cases involve situations where the disclosing party delayed its disclosure right up to the trial date or after summary judgment motions had been filed. For example, in *Syngenta Crop Protection, LLC v. Willowood, LLC*, No. 1:15-CV-274, 2017 WL 3309699 (M.D.N.C. Aug. 2, 2017), the disclosing party waited until three months before trial to identify additional trial witnesses and two months before trial to produce trial exhibits not disclosed during discovery. *Id.* at *1. Similarly, in *Hoyle v. Freightliner, LLC*, 650 F.3d 321 (4th Cir. 2011), the disclosing party did not disclose a new witness until *after* the non-disclosing party had filed its motion for summary judgment. *Id.* at 329. Furthermore, the cases involve situations where the disclosing party, unlike the University, failed to give notice that it would rely upon additional documents. *See Willowood*, 2017 WL 3309699, at *5; *Jackson Family Wines, Inc. v. Diageo N. Am., Inc.*, Case No. 11-5639 EMC (JSC), 2014 WL 104902, at *1-3 (N.D. Cal. Jan. 9, 2014) (excluding 56 photos produced after the close of discovery by plaintiff where defendant had no indication that plaintiff would do so). These cases are simply inapposite.

## II. Exclusion Is Not Warranted Under Rule 37(c)(1)

The University complied with its obligation to supplement its discovery under Rule 26(e) by producing documents that only became available after the close of fact discovery. Fed. R. Civ. P. 26(e). Even if the University's July 13th Production could be

14

deemed untimely, exclusion still would not be warranted. Under Rule 37(c)(1), exclusion of evidence is inappropriate if its untimely disclosure is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The following factors are relevant to this determination: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the disclosing party's explanation for its failure to disclose the evidence. *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir.) (quoting *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)), *cert. denied*, 138 S. Ct. 470 (2017). Each of these factors weighs against SFFA's motion to exclude.

*First*, SFFA cannot credibly claim that it was surprised by the University's July 13th Production. In applying the *Southern States* factors, courts have found that a party moving to exclude documents produced after the discovery deadline was not surprised by the evidence where it was made aware of the subject matter of the documents during the discovery period. *See Jernigan v. Mallinckrodt, Inc.*, No. 5:05-CV-337-F(3), 2006 WL 8438694, at *1 (E.D.N.C. Nov. 20, 2006). In *Jernigan*, the defendant moved to strike medical records attached by the plaintiff to its response to the defendant's motion for summary judgment. *Id.* Despite the defendant requesting copies of these medical records in its request for production of documents, the plaintiff did not produce this particular set of records during discovery. *Id.* In denying the defendant's motion to strike, the court noted that while the defendant "may have been surprised by the precise

15

nature of the medical records," the defendant was made aware of the underlying information in the plaintiff's deposition and thus the late production of the records did not result in prejudice. *Id.*

The same conclusion is warranted here. SFFA has been aware for over a year that the University's work regarding the assessment of the educational benefits of diversity and the consideration of race-neutral alternatives was ongoing, particularly given the clear directive by the Supreme Court in *Fisher II*. SFFA knew that Committee materials would be produced after the June 30, 2017 close of fact discovery. SFFA was also aware that the University would engage in additional efforts to assess the University's achievement of the educational benefits of diversity. SFFA received the Provost's Report during fact discovery and questioned University witnesses in detail about it.

Furthermore, any claim of surprise is undercut by SFFA's June 2017 letter and the University's response, which reiterated the University's intent to rely on ongoing efforts. In addition, SFFA was reminded of the Committee's ongoing work, as well as the University's assessment activities, through the University's December 2017 productions. Tellingly, SFFA did not object then. *See Wickersham v. Ford Motor Co.*, Nos. 9:13-cv-1192-DCN, 9:14-cv-0459-DCN, 2016 WL 5349093, at *4 (D.S.C. Sept. 26, 2016) (applying *Southern States* factors and denying motion in limine seeking to exclude proposed expert testimony where party designating expert failed to make required disclosures under Federal Rule of Civil Procedure 26(a) where the moving party had "little reason to be surprised" because it learned of the designating party's intention to

present testimony on the expert's opinions well over a year before trial).

*Second*, SFFA does not make a credible argument that it cannot cure any surprise resulting from UNC's July 13th Production. SFFA claims that if the University "identified the . . . [l]ate-produced documents within the fact discovery period, SFFA would have propounded discovery requests relating to these . . . documents. . . and had its experts address the lengthy report." (ECF 139 at 19-20.) But this position is directly contradicted by SFFA's conduct. On two separate occasions prior to the July 13th Production, the University produced Committee materials, University reports and data related to the assessment of the educational benefits of diversity. SFFA did not propound discovery requests, take depositions, or seek additional discovery on either of these occasions.

SFFA's inaction in response to the University's December supplemental productions, which were of the same character as the July 13th Production, belies its claim that if the five documents included in the July 13th Production had been produced "earlier in the expert discovery period, before all reports had been submitted and depositions concluded" it would have "been able to seek leave to engage in the necessary discovery." (ECF 139 at 20.) SFFA did not raise concerns about the December supplemental productions and it has refused the University's offers to cure any supposed "surprise" from the July 13th Production through a continued 30(b)(6) deposition. Instead, SFFA brought this Motion. In similar circumstances, courts have refused to grant motions to exclude. *See Bresler*, 855 F.3d at 194 (affirming district court's

17

decision to admit expert testimony that failed to comply with Rule 26 and finding that non-disclosing party had ability to cure surprise where they had notice of the testimony for nearly two months before trial began, but failed to take steps to mitigate the purported surprise caused by the delayed disclosure); *see also Holloway v. Ameristar Casino St. Charles, Inc.*, No. 4:07 CV 218 DDN, 2009 WL 5169535, at *3 (E.D. Mo. Dec. 18, 2009) (denying motion to strike expert testimony where "[b]y remaining silent for over a month, without pursuing any corrective measures, the [moving parties] bear some of the blame for this situation").

Furthermore, UNC's July 13th Production was made over two months before the dispositive motion deadline and over six months before the current trial date of this matter. Accordingly, the production of five documents will not disrupt the schedule. If any additional discovery related to the documents is necessary, ample time remains. Moreover, no prejudice could result from the production of documents concerning the educational benefits of diversity because SFFA has offered no expert testimony or other evidence refuting that these benefits exist. In short, SFFA is not prejudiced by the University's supplemental production. To the contrary, with its Motion, SFFA seeks to limit the record and prejudice the University.

*Finally*, SFFA acknowledges that the evidence it seeks to exclude is important in this case. (ECF 139 at 17.) Contrary to SFFA's argument, this fact weighs *against*

exclusion.[3] *See North Carolina ex rel. N.C. Dep't of Admin. v. Alcoa Power Generating, Inc.*, No. 5:13-CV-633-BO, 2015 WL 224740, at *2 (E.D.N.C. Jan. 15, 2015) (denying motion to exclude late-filed supplemental expert reports where the expert evidence was "very important" to the disclosing party as it was one of the ways the party intended to prove an element of its case); *see also Betzel v. State Farm Lloyds*, 480 F.3d 704, 706-08 (5th Cir. 2007) (finding that the district court abused its discretion in excluding late-designated expert witnesses "essential" and "necessary to the [designating-party's] case" who were designated three weeks after the moving party filed its motion for summary judgment and one week after the deadline to file *Daubert* motions).

Indeed, granting SFFA's Motion would prevent this Court from considering the very type of evidence that the Supreme Court has held is a critical part of determining whether a University has fulfilled its narrow tailoring obligations and force the Court to make a decision of constitutional importance on an incomplete and inaccurate record. If SFFA is unwilling to provide the Court with full and complete evidence, it should not be permitted to argue that the University has not met its ongoing assessment obligations.

## III.    Provost Blouin's Testimony Should Not Be Limited

SFFA seeks to deprive the Court of the testimony offered by the University's chief academic officer, who SFFA chose to name as an individual defendant in its Complaint.

---

[3] The cases cited by SFFA are not persuasive. In *Russell v. Absolute Collection Services, Inc.*, 763 F.3d 385 (4th Cir. 2014), in addition to failing to produce certain evidence until after the filing of summary judgment, the evidence produced by the disclosing party "presented an entirely new factual basis as to [its] defense"—a situation not present here. *Id.* at 390-91, 398. SFFA's reliance on *Hoyle* is likewise misplaced. In *Hoyle*, the Fourth Circuit remanded the case and noted that because the late-disclosed witness had information "highly relevant" to the disclosing party's claim, it would therefore be within the lower court's discretion to reopen discovery. *Hoyle*, 650 F.3d at 330 n.6.

There is no basis for the limitation of Provost Blouin to the record SFFA created through its written discovery requests and depositions. Moreover, a request to exclude testimony is premature at this stage of the case. Provost Blouin should be permitted to testify on relevant topics of which he has personal knowledge, including the full extent of the University's assessment of race-neutral alternatives and educational benefits of diversity, for the reasons discussed herein.

## CONCLUSION

Plaintiff seeks to use this litigation to end the consideration of race as one factor among many in the admissions process not just at UNC-Chapel Hill but at universities throughout the nation. Accordingly, this case is of great public import. For that reason as well, the University should not be precluded from presenting the Court with the full scope of its efforts. For the foregoing reasons, the University respectfully requests that the Court deny SFFA's Motion to Exclude.

20

Respectfully submitted this 24th day of August, 2018.

JOSH STEIN
Attorney General

/s/ Patrick Fitzgerald
Patrick Fitzgerald
Lara Flath
Marianne Combs
Skadden, Arps, Slate, Meagher & Flom,
LLP
155 North Wacker Drive
Chicago, IL 60606-1720
(312) 407-0700
E: patrick.fitzgerald@skadden.com
E: lara.flath@skadden.com
E: marianne.combs@skadden.com

/s/ Stephanie Brennan
Stephanie Brennan
Special Deputy Attorney General
NC State Bar No. 35955
E: sbrennan@ncdoj.gov

/s/ Nora Sullivan
Nora Sullivan
Assistant Attorney General
NC State Bar No. 43284
E: nsullivan@ncdoj.gov

/s/ Lisa Gilford
Lisa Gilford
Skadden, Arps, Slate, Meagher & Flom,
LLP
300 South Grand Ave.
Suite 3400
Los Angeles, CA 90071
(213) 687-5130
E: lisa.gilford@skadden.com

*Attorneys for Defendants*

21

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), I hereby certify that the body of this brief, including headings and footnotes, does not exceed 6,250 words.

This 24th day of August, 2018.

/s/ Marianne Combs
Marianne Combs

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Defendants' Opposition to Motion to Exclude via the Court's electronic filing systems, pursuant to the Electronic Filing Procedures, on all attorneys of record who have entered an appearance by ECF in this matter.

This 24th day of August, 2018.

/s/ Marianne Combs
Marianne Combs