IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:14-CV-954

| | |
|---|---|
| **STUDENTS FOR FAIR ADMISSIONS, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**UNIVERSITY OF NORTH CAROLINA et al.,**<br><br>Defendants. | **PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE UNC'S LATE-DISCLOSED WITNESSES AND LATE-PRODUCED DOCUMENTS** |

## PRELIMINARY STATEMENT

In its opening brief, SFFA explained why UNC's belated attempt to inject new fact witnesses and documents into this case more than a year after the close of fact discovery was neither substantially justified nor harmless. UNC, no doubt aware that it is on shaky footing, has dropped its effort to bring new fact witnesses into the case. The key remaining issue, then, is UNC's year-late production of five documents.

UNC—amazingly—insists that its production of these documents (the "Late-Produced Documents") is "timely." UNC Opp. Br. 2, 11. But of course timeliness is measured in relation to the close of the fact discovery period, *see, e.g.*, *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 329 (4th Cir. 2011); *Syngenta Crop Prot., LLC v. Willowood, LLC*, 2017 WL 3309699, at *3 (M.D.N.C. Aug. 2, 2017), and UNC knows

1

full well that it turned the Late-Produced Documents over more than a year after the June 30, 2017 deadline for fact discovery.

Unable to provide any substantial justification for its year-late production, UNC contends that state defendants facing constitutional challenges for injunctive relief can simply ignore the Federal Rules and any governing discovery schedules and lob new witnesses and documents into a case at any time. Because sovereign immunity limits nearly every constitutional challenge against a State to injunctive relief, UNC's theory would license State entities in almost any constitutional case to ignore all discovery rules, cause prejudice to plaintiffs, and waste judicial resources. UNC points to no court that has ever adopted this novel theory—and indeed, no court ever has. Neither the fact that a plaintiff seeks prospective relief nor the State's ongoing duty to comply with the federal Constitution is a legitimate basis for disregard the applicable rules or this Court's procedural orders. State entities must play by the same litigation rules as everyone else. *See United States v. Procter & Gamble Co.,* 356 U.S. 677, 681 (1958) ("The Government as a litigant is, of course, subject to the rules of discovery."). UNC thus has no legitimate justification—much less the requisite "substantial" one—for its year-late production.

Nor is UNC's tardy production harmless. UNC argues that SFFA should have known UNC would violate the discovery rules and this Court's orders, or that SFFA somehow acquiesced to UNC's violations. This is absurd. UNC's conduct here is highly prejudicial to SFFA, because it would deprive SFFA of the "opportunity to

2

conduct relevant discovery and formulate [its] case strategy to account for this evidence." *Syngenta*, 2017 WL 3309699, at *4 (quotation omitted). And UNC's claim that SFFA concedes the importance of the Late-Produced Documents is baseless.

Finally, it is no answer to simply say that SFFA can now promulgate discovery requests, take depositions of the key people implicated by the Late-Produced Documents, and submit supplemental expert reports addressing those documents. To begin, courts consider forcing a party to conduct late discovery as prejudicial in and of itself. Moreover, this Court has previously ordered that there will be no further extensions of the governing schedule in this case, a ruling on which the parties are entitled to rely.

Accordingly, the Court should grant SFFA's motion and order the default remedy provided for the Federal Rules: exclusion of the Late-Produced Documents.

## ARGUMENT

### I. UNC Has Failed To Provide A Substantial Justification For Its Belated Production.

As SFFA explained in its opening brief, the fact that it seeks prospective relief here is no basis for allowing UNC to flout the Federal Rules and the mandatory deadlines set by the Court long ago. Both this Court and the Fourth Circuit have ordered the exclusion of late-disclosed evidence in cases involving claims for injunctive relief. *See, e.g.*, *Syngenta*, 2017 WL 3309699; *Hoyle*, 650 F.3d 321.

3

The cases UNC cites are not to the contrary. UNC relies on *Lyons Partnership, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789 (4th Cir. 2001), but that case says *nothing* about late-produced discovery. It stands only for the routine proposition that prospective relief prevents future harm. *Id.* at 799. UNC's only other two cases arise in entirely different contexts: *MercExchange, L.L.C. v. eBay, Inc.*, 467 F. Supp. 2d 608 (E.D. Va. 2006), concerns the discretion of a district court "to reopen the record on remand." *Id.* at 611. It thus is inapposite. And *Continental Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499 (4th Cir. 2002), is even farther off-point. It is an antitrust case challenging the installation of templates limiting the size of carry-on bags in which the Fourth Circuit rightly recognized, in the wake of "the tragic events of September 11, 2001," that the district court on remand would need to consider those tragedies and their "implications for security" in considering any injunctive relief. *Id.* at 503. That these cases are the best ones UNC could find demonstrates that the nature of the relief requested does not exempt a defendant from either the Federal Rules or mandatory deadlines set by a district court.

UNC thus is left to contend that UNC's ongoing duty to comply with the Constitution and the fact that this case involves a request for injunctive relief together somehow exempt UNC from complying with the federal discovery rules and this Court's governing scheduling order. This theory—which has never been adopted by any court—is breathtaking in scope. *Ex Parte Young*, 209 U.S. 123 (1908), makes nearly every constitutional challenge against a State a case seeking injunctive relief. UNC's theory thus would green-light State defendants in almost any constitutional case to freely disregard both the Federal Rules and any governing

4

scheduling orders, despite prejudice to plaintiffs and harm to judicial economy. Moreover, it has no end point—it theoretically would allow a State defendant to ambush an opposing party with new evidence any time before judgment.

It is not surprising that no court has ever adopted UNC's novel theory. "Governmental units are subject to the same discovery rules as other persons and entities having contact with the federal courts." *In re Missouri Dep't of Nat. Res.*, 105 F.3d 434, 436 (8th Cir. 1997); *see also Procter & Gamble Co.,* 356 U.S. at 681 ("The Government as a litigant is, of course, subject to the rules of discovery."); *Resolution Tr. Corp. v. Thornton*, 41 F.3d 1539, 1547 (D.C. Cir. 1994) (same); *Sperandeo v. Milk Drivers & Dairy Emp. Local Union No. 537*, 334 F.2d 381, 384 (10th Cir. 1964) ("[A government actor] in his official governmental capacity ... is in no different position than any ordinary litigant and is, therefore, bound by the discovery provisions of the Federal Rules of Civil procedure in the same respects as any ordinary litigant."); *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d 774, 776 fn.4 (9th Cir. 1994).

If anything, UNC's attempt to rely on its "continuing obligation to satisfy the burden of strict scrutiny" as a means of evading the discovery rules, UNC Opp. Br. 12 (quoting *Fisher v. Univ. of Tex. at Austin (Fisher II)*, 136 S. Ct. 2198, 2209-10 (2016)), shows that UNC does not understand this burden it bears. To be sure, UNC's burden of ensuring that "race plays no greater role than is necessary to meet [a] compelling interest," *Fisher II*, 136 S. Ct. at 2210, 2208, "do[es] not end with the close of discovery." UNC Opp. Br. 12. But that burden likewise does not begin with the start

5

of discovery or the onset of litigation. It begins whenever a university elects to make race a factor in admissions decisions, and it lasts until the university ceases (or is barred from) doing so. But there is no precedent anywhere to support the proposition that ongoing legal duties allow a litigant to evade the normal application of the federal discovery rules and any governing deadlines set by a district court. "The Federal Rules do not permit [UNC] to create its own timetable for disclosure after the discovery period has closed." *Tyco Healthcare Group LP v. Applied Medical Resources Corp.*, 2009 WL 10676782, at *4 (E.D. Tex. Mar. 31, 2009). In short, UNC has provided no substantial justification for its year-late production.

## II. UNC Has Failed To Prove That Its Late Production Would Be Harmless.

UNC contends that its late production is harmless because SFFA should have expected UNC to violate the federal discovery rules and the Court's mandatory deadlines. UNC Opp. Br. 15-18. This is preposterous. SFFA is aware of UNC's ongoing burden, which arose when UNC began using race as a factor in admissions. But nothing about this burden—which, again, exists entirely outside of litigation—indicates that UNC would wait until a year after the close of fact discovery and after the parties had filed all expert reports to lob new evidence into this case.

Nor did SFFA somehow acquiesce in UNC's violation of the discovery rules. The parties' exchange of letters at the close of the fact discovery period did nothing more than set out the parties' basic positions if UNC were to make untimely productions in the future. This type of reservation of rights is commonplace in

6

litigation. And the reason why SFFA did not move to exclude UNC's belated production of documents in December of 2017 is because SFFA was not prejudiced by those productions. Although those productions came five months after the close of fact discovery, SFFA's experts were able to consider these documents in connection with their expert reports. Indeed, one of SFFA's experts reviewed and identified in his opening report each of the documents UNC produced in December of 2017. Similarly, SFFA had the opportunity to ask about these documents at the deposition of UNC's experts (and in some cases, did so). Moreover, many of those documents were articles written by third parties about affirmative action and/or race-neutral alternatives; in other words, they were similar in nature to the two publicly available documents UNC turned over along with the Late-Produced Documents and which SFFA is *not* seeking to exclude. *See* SFFA Br. 10.

Although UNC feigns confusion about why SFFA would seek to exclude the Late-Produced Documents when it did not seek to exclude the other untimely productions, the reason is quite obvious. By turning these documents more than a year after the close of fact discovery, and after both SFFA and UNC had submitted all expert reports and deposed each others' experts, UNC deprived SFFA of the "'opportunity to conduct relevant discovery and formulate [its] case strategy to account for this evidence.'" *Syngenta*, 2017 WL 3309699, at *4 (quotation omitted).

The suggestion that SFFA would not have sought discovery relating to the Late-Produced Documents if they were timely produced (UNC Opp. Br. 17-18) is

7

demonstrably wrong. To illustrate, consider the two lengthy reports UNC just produced: (1) a 137-page report dated May 2018 that was produced by UNC's Race-Neutral Strategies Committee entitled "Examining Potential Race-Neutral Strategies in Undergraduate Admissions at University of North Carolina at Chapel Hill"; (2) an 83-page June 2018 report produced by UNC's Educational Benefits of Diversity & Inclusion Working Group. UNC produced similar types of reports during the fact discovery period. SFFA sought discovery regarding drafts of those reports and any data and analysis relating thereto, questioned UNC's admissions officials about them at depositions, and addressed them extensively via expert report. *See, e.g.*, Pl.'s Second Request for Prod. of Docs. at ¶¶ 41, 46, 49, 50 (Exhibit 1). SFFA would have pursued the same course with the Late-Produced Documents had they been produced in a timely manner.[1] Clearly, then, SFFA is prejudiced by UNC's untimeliness. *See Hoyle*, 650 F.3d at 330 ("Defendant has been clearly prejudiced in that it has lost its opportunity to depose Williams."); *Tyco Healthcare*, 2009 WL

---

[1] That SFFA would have explored these issues through discovery is not an "acknowledg[ment] that the evidence it seeks to exclude is important in this case." UNC Opp. Br. 18. SFFA noted only in its opening brief that "UNC undoubtedly thinks these witnesses and documents are important and wants to use them at summary judgment and trial because it feels the need to shore up its case." SFFA Br. 19. But as SFFA explained previously, that UNC thinks these documents are important to its case works against UNC (not in its favor), at least under governing Circuit law. *See id.* (citing *Russell*, 763 F.3d at 398; and *Hoyle*, 650 F.3d at 330); *see also S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 598-99 (4th Cir. 2003) ("The fact that the expert's testimony regarding the paint formula might have been helpful to [Southern States'] case in the eyes of the jury also points out why it should have been disclosed in a timely manner to [Sherwin–Williams].").

8

10676782, at *3 ("Applied's late production prejudiced Tyco[.] Tyco was unable to take depositions or obtain other discovery relating to these documents, since the fact discovery period had closed in September 2007. Tyco was unable to provide these documents to its experts for inclusion or analysis in expert reports.").

It is no answer to say that SFFA could *now,* at this late date, propound discovery requests, take depositions of the key individuals involved in creating the Late-Produced Documents, and file supplemental expert reports. This is both because courts consider forcing a party to conduct such late discovery and take such late depositions as "plainly prejudicial," *Jackson Family Wines, Inc. v. Diageo N. Am., Inc.*, 2014 WL 104902, at *4 (N.D. Cal. Jan. 9, 2014); *see also Syngenta*, 2017 WL 3309699, at *5, and because the Court has ordered that "[t]here will be no further extensions" of the governing schedule in this case, Doc 129 (emphasis in original), precluding the possibility of further discovery. *See Tyco Healthcare*, 2009 WL 10676782, at *4 ("No [extension] is available to cure any prejudice to Tyco. This factor weighs in favor of exclusion."). There is no reason to revisit the Court's prior ruling; the plain and obvious remedy is to exclude the Late-Produced Documents.

In the event, however, that the Court decides to permit UNC to rely on the Late-Produced Documents, SFFA must be afforded leave to make appropriate discovery requests; depose the UNC officials who authored or created these documents (including Abigail Panter and the various committee and subcommittee heads who were responsible were authoring the two reports and/or conducting the

9

analyses underlying them); and submit supplemental expert reports addressing them.[2] In order to allow for sufficient time to conduct such discovery—especially in light of the other commitments of SFFA's experts and counsel, SFFA Br. 21 n.8, SFFA would need a 90-day discovery period, and an extension of the deadline for summary judgment motions to 30 days past the end of that period.

### III. The Court Should Limit Any Testimony By Mr. Blouin To Documents And Matters Disclosed During The Fact Discovery Period.

UNC should not be permitted to use Mr. Blouin (nor any other witness) as a vehicle for introducing into this case the very evidence that UNC would not otherwise be allowed to use due to its late production.

### CONCLUSION

For all these reasons as well as those set out in SFFA's opening brief, the Court should grant SFFA's motion, exclude the Five Late-Produced Documents from this litigation, and limit any testimony by Mr. Blouin to documents and matters disclosed during the fact discovery period.

---

[2] Even UNC's cases, while inapposite, make clear that where a district court permits a party to rely on late-disclosed materials or witnesses, the opposing party should be permitted to conduct any necessary discovery. *See, e.g., Jernigan v. Mallinckrodt, Inc.*, 2006 WL 8438694, at *2 (E.D.N.C. Nov. 20, 2006); *North Carolina v. Alcoa Power Generating, Inc.*, 2015 WL 224740, at *2 (E.D.N.C. Jan. 15, 2015).

Respectfully submitted,

/s/ *Thomas R. McCarthy*
Thomas R. McCarthy
Consovoy McCarthy Park PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
(703) 243-9423
E: tom@consovoymccarthy.com

/s/ *William S. Consovoy*
William S. Consovoy
Consovoy McCarthy Park PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
(703) 243-9423
E: will@consovoymccarthy.com

/s/ *J. Michael Connolly*
J. Michael Connolly
Consovoy McCarthy Park PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
(703) 243-9423
E: mike@consovoymccarthy.com

/s/ *Alan M. Ruley*
Alan M. Ruley
N.C. State Bar No. 16407
Bell, Davis & Pitt, P.A.
P.O. Box 21029
Winston Salem, NC 27120-1029
(336) 714-4147
E: aruley@belldavispitt.com

*Attorneys for Plaintiffs*

Dated: September 6, 2018

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.3

Pursuant to L.R. 7.3(d)(1), I hereby certify that the body of this brief, including headings and footnotes, contains 2,606 words, which is less than the limit for this filing.

This the 6th day of September, 2018.

/s/ *Thomas R. McCarthy*
Thomas R. McCarthy

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing document via the Court's electronic filing system, pursuant to the Electronic Filing Procedures, on all attorneys of record who have entered an appearance by ECF in this matter.

This the 6th day of September, 2018.

/s/ *Thomas R. McCarthy*
Thomas R. McCarthy