IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14CV954 |
| | ) | |
| UNIVERSITY OF NORTH CAROLINA; UNIVERSITY OF NORTH CAROLINA BOARD OF GOVERNORS; JOHN C. FENNEBRESQUE, W. LOUIS BISSETTE, JR., JOAN TEMPLETON PERRY, ROGER AIKEN, HANNAH D. GAGE, ANN B. GOODNIGHT, H. FRANK FRAINGER, PETER D. HANS, THOMAS J. HARRELSON, HENRY W. HINTON, JAMES L. HOLMES, JR., RODNEY E. HOOD, W. MARTY KOTIS III, G. LEROY LAIL, SCOTT LAMPE, STEVEN B. LONG, JOAN G. MACNEILL, MARY ANN MAXWELL, W. EDWIN MCMAHAN, W. G. CHAMPION MITCHELL, HARI H. MATH, ANNA SPANGLER NELSON, ALEX PARKER, R. DOYLE PARRISH, THERENCE O. PICKETT, DAVID M. POWERS, ROBERT S. RIPPY, HARRY LEO SMITH, JR., J. CRAIG SOUZA, GEORGE A. SYWASSINK, RICHARD F. TAYLOR, RAIFORD TRASK III, PHILLIP D. WALKER, LAURA I. WILEY, as members of the Board of Governors in their official capacities; THOMAS W. ROSS, President of the University of North Carolina in his official capacity; UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL; CAROL L. FOLT, Chancellor of the University of North Carolina at Chapel Hill in her official capacity; UNIVERSITY OF NORTH CAROLINA BOARD OF TRUSTEES; W. LOWRY CAUDILL, ALSTON GARDNER, SALLIE SHUPING-RUSSELL, JEFFERSON W. BROWN, PHILLIP L. CLAY, HAYWOOD D. COCHRANE, DONALD WILLIAMS CURTIS, CHARLES G. DUCKETT, PETER T. GRAUER, KELLY MATTHEWS HOPKINS, STEVEN LERNER, DWIGHT D. STONE, ANDREW HENRY POWELL, as members of the Board of Trustees in their official capacities; JAMES W. DEAN JR., Executive Vice Chancellor and Provost in his official capacity; STEPHEN M. FARMER, Vice Provost, Enrollment, and Undergraduate Admissions in his official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff, Students for Fair Admissions, Inc. ("SFFA") initiated this action against the above-named Defendants (collectively, the "University"), under 42 U.S.C. §§ 1981, 1983, alleging that the University's use of race in its undergraduate admissions process violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* ("Title VI"). (ECF No. 1.) The following motions are currently before the Court: (i) Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(1), (ECF No. 106); (ii) Plaintiff's Motion to File Under Seal, (ECF No. 111); and (iii) Defendants' Motions to File Under Seal Pursuant to Local Rule 5.4(c), (ECF Nos. 108, 116). For the reasons set forth below, Defendants' Motion to Dismiss will be denied; and each of the motions to seal will be granted.

## I. BACKGROUND

SFFA is a Virginia nonprofit corporation. (ECF No. 1 ¶ 10; ECF No. 1-1 ¶ 2; ECF No. 113-2; ECF No. 113-5.) According to its Amended Bylaws, SFFA's purpose is "to defend human and civil rights secured by law, including the right of individuals to equal protection under the law, through litigation and any other lawful means." (ECF No. 107-5 art. II.) In particular, SFFA states that it "seeks to promote and protect the right of the public to be free from discrimination on the basis of race in higher education admissions." (ECF No. 1 ¶ 10.) Edward J. Blum ("Blum") serves as the President of SFFA. (ECF No. 1-1 ¶ 2.) SFFA is managed by a Board of Directors, "consist[ing] of four (4) Board-Elected Directors and one (1) Member-Elected Director." (ECF No. 107-5 art. IV, §§ 4.01, 4.02.) The Board-Elected

directors are elected by "a majority of the directors then in office," whereas the Member-Elected director is elected by a majority of SFFA members. (*Id.* art. IV, § 4.04.)

SFFA's members, referred to as "General Members"[1] in its Bylaws, (*Id.* art. III, §§ 3.01, 3.02), include "prospective applicants and applicants to higher education institutions who were denied admission to higher education institutions, their parents, and other individuals who support the organization's purpose and mission," (ECF No. 1 ¶ 11). At its inception, members were not required to pay a membership fee "because [SFFA] believed [not paying a fee] would encourage participation, aid membership recruitment, and ensure the success of [SFFA] in its early stages." (ECF No. 113-6 at 1; *see* ECF No. 113-1 at 10–11.) SFFA has since amended its Bylaws to establish a dues policy whereby, as of July 30, 2015, members are required "to pay a one-time assessment of $10 as membership dues." (ECF No. 113-6 at 2; ECF No. 113-1 at 10–11.)

SFFA currently has over 22,000 members, (ECF No. 113-9 at 2), although it asserts associational standing based on the circumstances of four members (the "Standing Members"),[2] each of whom have submitted signed declarations in support of SFFA's

---

[1] The organization's Bylaws define a General Member as "[a]ny individual who seeks to support the purposes and mission of the Corporation, pays membership dues as may be prescribed by the Board of Directors, and meets any additional standards and procedures that may be prescribed from time to time by the Board of Directors." (ECF No. 107-5 art. III, § 3.02). SFFA's Bylaws specifically state that General Members are *not* members within the meaning of the Virginia Nonstock Corporation Act "and shall have only the rights specifically set forth in the[ ] Bylaws." (*Id.* art. III § 3.01.) Under the Virginia Nonstock Corporation Act (the "Act"), a "member" is "one having a membership interest in a corporation in accordance with the provisions of its articles of incorporation or bylaws." Va. Code Ann. § 13.1-803. "Membership interest" as defined under the Act is defined as the "interest of a member in a domestic or foreign corporation, including voting and all other rights associated with membership." *Id.*

[2] The Court notes that in their reply brief, Defendants argue that "the University should be allowed to depose SFFA's two new standing members," namely, Standing Members 5 and 6. (ECF No. 115

3

Opposition to Defendants' Motion to Dismiss. (*See* ECF Nos. 113-7, 113-10, 113-11, 113-12.) The Standing Members are high school graduates, each of whom applied, and was denied admission to, the University of North Carolina at Chapel Hill ("UNC-CH"). (ECF No. 1 ¶ 13; ECF Nos. 113-7, 113-10, 113-11, 113-12.) The declarations of the Standing Members state that they have voluntarily joined SFFA; they support its mission; they receive updates about the status of the case from SFFA's President; and they have had "the opportunity to have input and direction on SFFA's case." (ECF Nos. 113-7, 113-10, 113-11, 113-12.)

SFFA filed its Complaint on November 17, 2014 in which it alleges that the University "has intentionally discriminated against certain of [its] members on the basis of their race, color, or ethnicity in violation of the Fourteenth Amendment and [federal law]" by: (i) "employing an undergraduate admissions policy that does not merely use race as a 'plus' factor in admissions decisions in order to achieve student body diversity"; (ii) "employing racial preferences in undergraduate admissions where there are available race-neutral alternatives capable of achieving student body diversity"; and (iii) "employing an undergraduate admissions policy that uses race as a factor in admissions." (ECF No. 1 ¶¶ 198, 205, 215.) SFFA seeks declaratory and injunctive relief, as well as attorneys' fees and costs. (*Id.* at 64.)

Defendants move for dismissal of SFFA's Complaint, pursuant to Rule 12(b)(1), for lack of standing to sue. (ECF No. 106.) In addition, the parties have filed motions to seal

---

at 11.) In response to this argument, Plaintiff states that "[b]ecause Standing Members 5 [and] 6 are irrelevant to this motion, the Court is free to disregard their declarations for the purposes of resolving the motion." (ECF No. 123 at 4 n.1.) In light of this concession by Plaintiff with respect to Standing Members 5 and 6, and further, because "[a]ssociational standing may exist even when just one of the association's members would have standing," *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 186 (4th Cir. 2007), the Court will not consider the circumstances of Standing Members 5 and 6 in ruling on the instant motion to dismiss.

4

unredacted materials submitted in conjunction with their briefing on Defendants' motion to dismiss. (ECF Nos. 108, 111, 116.) The Court will first address Defendants' motion to dismiss.

## II. DEFENDANTS' MOTION TO DISMISS

### A. Standard of Review

Under Rule 12(b)(1), a party may seek dismissal based on the court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Subject-matter jurisdiction is a threshold issue that relates to the court's power to hear a case and must be decided before a determination on the merits of the case. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005). A motion under Rule 12(b)(1) raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The burden of proving subject matter jurisdiction rests with the plaintiff. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Accordingly, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* A court should grant a motion to dismiss for lack of subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* On a motion to dismiss for

5

lack of standing, a court must construe the complaint in the plaintiff's favor, accepting as true the factual allegations in the complaint. *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

B.   Discussion

Defendants argue that SFFA's Complaint should be dismissed because SFFA, which asserts "'representational standing' . . . to pursue claims *on behalf of its members*," has failed to demonstrate standing to sue. (ECF No. 107 at 1, 2.) Specifically, Defendants argue that "[b]ecause SFFA's members lack indicia of membership in an organization, SFFA cannot clear the threshold hurdle of eligibility for representational standing." (ECF No. 107 at 6.) In response, SFFA argues that the University is incorrect and "[t]he indicia-of-membership test does not apply to voluntary membership associations like SFFA." (ECF No. 113 at 11.) SFFA further argues that, even if such a test applies, "SFFA would easily satisfy it." (ECF No. 113 at 11.) The Court agrees with SFFA.

Under Article III of the United States Constitution, the jurisdiction of a federal court is limited to cases and controversies. U.S. Const. art. III, § 2. Standing to sue, therefore, "ensure[s] that federal courts do not exceed their authority." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish constitutional standing at the motion-to-dismiss stage, Plaintiffs must plausibly allege that they have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Plaintiffs bear the burden of establishing these elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "Where, as here, a case is at the pleading

6

stage, [Plaintiffs] must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth,* 422 U.S. at 518).

"The standing requirement must be satisfied by individual and organizational plaintiffs alike." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005). An organizational plaintiff may establish standing to sue on its own behalf when the organization seeks redress for an alleged injury suffered by the organization itself. *Id.* "Additionally, an organizational plaintiff may establish associational standing to bring an action in federal court on behalf of its members." *Id.* (internal quotation marks omitted). At issue here is whether SFFA has associational standing[3] to sue.

Associational standing exists when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). Although the first two requirements are constitutional in nature, the third is prudential. *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555–57 (1996). "Associational standing may exist even when just one of the association's

---

[3] In their briefs, the parties appear to use the terms "representational standing" and "associational standing" to refer to an organization's ability to sue on behalf of its members. (*See generally* ECF Nos. 107, 113, 115.) Courts have used both terms to refer to this concept. *See, e.g., United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (explaining that the requirements for "associational standing" to sue were elaborated in *Hunt*); *Pennell v. City of San Jose*, 485 U.S. 1, 7 n.3 (1988) (explaining that the *Hunt* requirements must be satisfied in order to assert "associational or representational standing"); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 155 (4th Cir. 2000) (explaining that an organization has "representational standing" when the *Hunt* factors are satisfied). Because the Supreme Court in *Hunt* uses the term "associational standing," this Court will likewise employ that term here.

7

members would have standing." *Retail Industry Leaders Ass'n v. Fielder*, 475 F.3d 180, 186 (4th Cir. 2007).

Relying on *Hunt v. Wash. State Apple Advertising Comm'n*, Defendants here argue that before determining whether SFFA meets the requirements necessary for associational standing, the Court must first examine whether SFFA's constituents possess indicia of membership. (ECF No. 107 at 5–6.)

In *Hunt*, the Supreme Court considered whether the Commission at issue in that case was precluded "from asserting the claims of . . . its constituency," based on the fact that it was "a state agency, rather than a traditional voluntary membership organization." *Hunt*, 432 U.S. at 344. The Supreme Court held that it was not so precluded, and further concluded that, where an organization lacked formal members, it could still have associational standing if its constituents "possess[ed] all of the indicia of membership in an organization." *Id.* To establish indicia of membership, an organization must show that its purported members: (i) elect the organization's leadership; (ii) serve as the organization's leadership; and (iii) finance the organization's activities, including the costs of litigation. *See id.* at 344–45. According to the Court, even though the Commission was not a "traditional voluntary membership organization," it nonetheless had associational standing to sue because "[i]n a very real sense," the Commission represented its constituency and it "provide[d] the means by which they express[ed] their collective views and protect[ed] their collective interests." *Id.*

Courts apply the indicia-of-membership test for associational standing purposes in cases where an organization lacks traditional voluntary membership or any actual members, like the state agency at issue in *Hunt*. *See id.* at 344 ("[W]hile the apple growers and dealers are

8

not 'members' of the Commission in the traditional trade association sense, they possess all of the indicia of membership in an organization."); *see also Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 159 (2d Cir. 2012) (explaining that the Supreme Court in *Hunt* "held that the Constitution requires that the constituents of a non-membership organization manifest the 'indicia of membership' for that organization to have associational standing to sue on their behalf."); *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 n.9 (5th Cir. 2012) (stating that "[i]f the association seeking standing does not have traditional members, as here, the association establishes its standing by proving that it has 'indicia of membership'" (citing *Hunt*, 432 U.S. at 344–45)); *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 119 (3d Cir. 1997) (stating that organizations with charters prohibiting them from having formal members "need only prove that their members possess the 'indicia of membership'" in order to assert associational standing); *Wilson v. Thomas*, 43 F. Supp. 3d 628, 632 (E.D.N.C. 2014) (applying the indicia-of-membership test to a non-membership organization to determine associational standing).

As articulated by the court in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,[4] however, "[i]t is less clear . . . whether *Hunt's* indicia-of-membership test can or should ever be undertaken in connection with associations that actually have identifiable members, such as SFFA, and if so, under what circumstances." 261 F. Supp. 3d 99, 107 (D. Mass. 2017) (citing cases). Defendants argue that "[s]ince *Hunt*, . . . courts that have evaluated

---

[4] SFFA has filed a similar action, currently pending in the District of Massachusetts, in which it alleges that Harvard "employs racially and ethnically discriminatory policies and procedures in administering its undergraduate admissions program, in violation of Title VI of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." *Harvard*, 261 F. Supp. 3d at 102.

9

eligibility for [associational] standing have regularly examined whether the organization's constituents possess indicia of membership." (ECF No. 107 at 6.) Yet, despite this contention, Defendants cite no cases where the indicia-of-membership test was applied to a voluntary membership organization like SFFA. Moreover, like the district court in *Harvard*, this Court "is not aware of any case that explicitly stands for this proposition." *Harvard*, 261 F. Supp. 3d at 107. Rather, in each of the cases cited by Defendants in support of this argument, the indicia-of-membership test was applied to organizations that were not traditional voluntary membership associations. *See, e.g., Doe v. Stincer*, 175 F.3d 879, 885–86 (11th Cir. 1999) (applying indicia-of-membership test to advocacy center with constituents rather than traditional members); *Heap v. Carter*, 112 F. Supp. 3d 402, 418–19 (E.D. Va. 2015) (examining the indicia of membership of an organization for which it had "no details about who the membership is or whether [the organization] truly can be considered a voluntary membership organization or a functional equivalent"); *Gettman v. Drug Enf't Admin.*, 290 F.3d 430, 435 (D.C. Cir. 2002) (applying indicia-of-membership test to an organization that "does not have any members").

Accordingly, like the court in *Harvard*, this Court concludes that:

> [t]he circumstances here do not call for a functional analysis of SFFA's membership. Where SFFA has clearly stated its mission in its Bylaws and website, where it has consistently, and recently, in highly public ways, pursued efforts to end alleged racial discrimination in college admissions through litigation, and where its members voluntarily associate themselves with the organization, it can be presumed for the purposes of standing that SFFA adequately represents the interests of its current members without needing to test this further based on the indicia-of-membership factors.

*Harvard*, 261 F. Supp. 3d at 109.

Having determined that the indicia-of-membership test is inapplicable, the Court next turns to whether SFFA satisfies the following requirements, set forth in *Hunt*, for associational standing: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. Although Defendants present no arguments asserting that SFFA has failed to meet these requirements, the Court has an independent obligation to ensure that SFFA has standing. *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (stating that the courts have "an obligation to assure ourselves" of litigants' standing).

With respect to the first requirement, "an organization suing as representative [must] include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." *United Food & Commercial Workers Union Local 751*, 517 U.S. at 555. Here, SFFA has provided declarations from four Standing Members, each of whom are high school graduates who applied for admission to UNC-CH, and was denied in 2012, 2014, 2015 and 2016. (ECF Nos. 113-7, 113-10, 113-11, 113-12.) Each Standing Member further states that, while eligible, they have been "able and ready" to apply to transfer to UNC-CH if it were to end its "use of race or ethnicity as an admissions preference." (ECF Nos. 113-7, 113-10, 113-11, 113-12.) SFFA has therefore demonstrated that it has satisfied the requirement that at least one of its Standing Members would have standing to sue on their own. *See Gratz v. Bollinger*, 539 U.S. 244, 262 (2003) (concluding that rejected applicant who

11

was "able and ready" to transfer "has standing to seek prospective relief with respect to the University's continued use of race in undergraduate admissions").

With respect to the second requirement, SFFA's mission, as stated in its Bylaws, is "to defend human and civil rights secured by law, including the right of individuals to equal protection under the law, through litigation and any other lawful means." (ECF No. 113-3 art. II.) Thus, the instant lawsuit which seeks to end the University's alleged racial discrimination in its admission process is aligned with, and furthers, SFFA's stated purpose. SFFA therefore satisfies the second requirement for associational standing.

With respect to the third requirement, because SFFA does not seek monetary damages but, rather, seeks declaratory and injunctive relief, (ECF No. 1 at 64), "obtaining such relief, based on the claims in this case, would not require individual participation by its members." *Harvard*, 261 F. Supp. 3d at 110. *See Equal Rights Ctr. v. Abercrombie & Fitch Co.*, 767 F. Supp. 2d 510, 529 (D. Md. 2010) (explaining that typically, "an application for money damages [has been] considered to be the type of request for relief that would preclude associational standing under *Hunt's* third prong because damages claims usually require significant individual participation"). Ultimately, "[t]he injunctive and declaratory relief requested [here] need not be tailored to or require any individualized proof from any particular member." *Harvard*, 261 F. Supp. 3d at 110.

In light of the Court's determination that SFFA has satisfied the requirements necessary for associational standing, the Court concludes that SFFA has standing to sue on behalf of its members. Defendants' motion to dismiss for lack of standing will, therefore, be denied.

## III. MOTIONS TO SEAL

The Court will next address the pending motions to seal. The parties move this Court to file the following materials under seal:

(i) Materials in the parties' motion to dismiss briefs and accompanying exhibits related to the identity of its Standing Members, (ECF No. 108 ¶ 4; ECF No. 111 ¶¶ 3, 6; ECF No. 116 ¶ 5); and

(ii) SFFA's initial and supplemental responses to the University's Interrogatory No. 5 regarding the identity of "any Person or entity" that has contributed or donated to SFFA since its inception, (ECF No. 108 ¶ 5; ECF No. 111 ¶ 3; ECF No. 116 ¶ 6).

"It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). "The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." *Id.* "The common law," however, "does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). "The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that 'countervailing interests heavily outweigh the public interests in access.'" *Doe*, 749 F.3d at 265–66 (quoting *Rushford*, 846 F.2d at 253). The First Amendment presumptive right of access, in contrast, extends "only to particular judicial records and documents." *Id.* at 266. Further, the First Amendment presumptive right of access may only be restricted upon a showing that such a restriction is "necessitated by a compelling

13

government interest and . . . narrowly tailored to serve that interest." *Id.* (internal quotation marks omitted).

"When presented with a request to seal[5] judicial records or documents, a district court must comply with certain substantive and procedural requirements." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004). Procedurally, a district court presented with a sealing request must:

> (1) provide public notice of the sealing request and a reasonable opportunity for the public to voice objections to the motion; (2) consider less drastic alternatives to closure; and (3) if it determines that full access is not necessary, it must state its reasons—with specific findings—supporting closure and its rejections of less drastic alternatives.

*Doe*, 749 F.3d at 272. Local Rule 5.4 outlines similar requirements.[6] LR 5.4. The burden rests on the party seeking to keep information sealed. *Va. Dep't of State Police*, 386 F.3d at 575. Here, SFFA, as the party seeking to maintain the confidentiality of these documents, bears this burden.

Substantively, a district court must "first 'determine the source of the right of access with respect to each document.'" *Doe*, 749 F.3d at 266 (quoting *Va. Dep't of State Police*, 386 F.3d at 576). The Fourth Circuit has "squarely held that the First Amendment right of access attaches to materials filed in connection with a summary judgment motion." *Id.* at 267. The

---

[5] Courts construe a request to redact a document as a request to seal in part. *ATI Indus. Automation, Inc. v. Applied Robotics, Inc.*, 801 F. Supp. 2d 419, 424–25 (M.D.N.C. 2011) (collecting cases).

[6] These requirements are: (1) stating "the reasons why sealing is necessary;" (2) explaining "why less drastic alternatives to sealing will not afford adequate protection;" (3) "[a]ddress[ing] the factors governing sealing of documents reflected in governing case law;" and (4) stating "whether permanent sealing is sought and, if not, stat[ing] how long the document should remain under seal and how the document should be handled upon unsealing." LR 5.4(b).

14

Fourth Circuit has also "conclude[d] that the First Amendment guarantee of access should not be extended to documents filed in connection with a motion to dismiss" because "[a] motion to dismiss tests only the facial sufficiency of the complaint [and] a court may not consider any materials outside the pleadings." *In re Policy Mgmt. Sys. Corp.*, 67 F.3d 296, 1995 WL 541623, at *3 (4th Cir. 1995) (unpublished table decision). It is unclear, however, whether the common law or First Amendment right of access applies where, as here, materials are filed in connection with a motion to dismiss for lack of standing in which a court may consider evidence outside the Complaint, *see Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

Even applying the more stringent First Amendment presumption of public access to the materials outlined above, the Court finds that SFFA has satisfied its burden, both substantively and procedurally. First, public notice of the parties' instant requests to seal was given in October, 2017, November, 2017 and December, 2017, when the parties filed their motions and supporting briefs. (*See* ECF Nos. 108, 110, 111, 112, 116, 125.) No objection has since been raised. Next, SFFA requests sealing the identity of its Standing Members arguing that failure to do so "could subject [these individuals] to harassment and even threats of physical violence." (ECF No. 110 at 5; *see* ECF No. 125 at 4.) In addition, SFFA argues that "publication of the donor information produced confidentially to [the University] would likely deter participation in and contributions to SFFA[,] [and] SFFA donors justifiably fear retaliation from other universities, graduate schools, prospective employers, and current employers, among others." (ECF No. 110 at 6; *see* ECF No. 125 at 4.) The Court concludes that SFFA's interests in protecting the identity of its Standing Members and preserving the confidentiality of sensitive donor information are sufficiently compelling to overcome the First

15

Amendment presumptive right of access. *See Bon Vivant Catering, Inc. v. Duke Univ.*, No. 1:13CV728, 2016 WL 7638284, at *2 (M.D.N.C. June 14, 2016) ("Courts often determine that the sensitive and confidential nature of financial information warrants the sealing of such materials." (citing cases)). Further, SFFA's proposed filings under seal, including proposed redactions, relate to a limited set of information and, thus, appears narrowly tailored to serve the compelling interests of confidentiality. The Court will, therefore, grant the parties' motions to seal the following:

> (i) Materials in the parties' motion to dismiss briefs and accompanying exhibits related to the identity of its Standing Members, (ECF No. 108 ¶ 4; ECF No. 111 ¶¶ 3, 6; ECF No. 116 ¶ 5); and
>
> (ii) SFFA's initial and supplemental responses to the University's Interrogatory No. 5 regarding the identity of "any Person or entity" that has contributed or donated to SFFA since its inception, (ECF No. 108 ¶ 5; ECF No. 111 ¶ 3; ECF No. 116 ¶ 6).

## IV. CONCLUSION

Based on the above, the Court concludes that the indicia-of-membership test is inapplicable to SFFA. The Court further concludes that SFFA satisfies the requirements necessary to establish associational standing to sue on behalf of its members. Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction will be denied. The Court further concludes that SFFA has carried its burden of satisfying the requirements to permanently seal the limited information outlined in Section III above. The Court will, therefore, permanently seal the unredacted materials filed in support of the parties' briefing on the motion to dismiss, *i.e.*, ECF Nos. 109, 109-1, 109-2, 114, 114-1 through 114-10, 117, 117-1 through 117-4. A redacted version of these materials, (ECF Nos. 107, 107-3, 107-6,

16

Case 1:14-cv-00954-LCB-JLW   Document 150   Filed 09/29/18   Page 16 of 17

113, 113-1, 113-7 through 113-14, 113-16, 115, 115-2 through 115-5), shall remain accessible to the public.

For the reasons stated herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(1), (ECF No. 106), is DENIED.

IT IS FURTHER ORDERED that Defendants' Motions to File Under Seal Pursuant to Local Rule 5.4(c), (ECF Nos. 108, 116), are GRANTED, and the unredacted versions of materials filed in support of Defendants' briefing on the motion to dismiss, *i.e.*, ECF Nos. 109, 109-1, 109-2, 117, and 117-1 through 117-4, is and shall be permanently sealed. A redacted version of these materials, (ECF Nos. 107, 107-3, 107-6, 115, and 115-2 through 115-5), shall be accessible to the public.

IT IS FURTHER ORDERED that Plaintiff's Motion to File Under Seal, (ECF No. 111), is GRANTED, and the unredacted versions of materials filed in support of Plaintiff's briefing on the motion to dismiss, *i.e.*, ECF Nos. 114, 114-1 through 114-10, is and shall be permanently sealed. A redacted version of these materials, (ECF Nos. 113, 113-1, 113-7 through 113-14, 113-16), shall be accessible to the public.

This, the 29th day of September, 2018.

                                        /s/ Loretta C. Biggs
                                        United States District Judge