# Exhibit 4

**STUDENTS FOR FAIR ADMISSIONS, INC.,**

        Plaintiff,

    v.

**UNIVERSITY OF NORTH CAROLINA, et al.,**

        Defendants.

## DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFF'S SECOND INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, and the Local Rules of the Middle District of North Carolina, Defendants object and otherwise respond to Plaintiff Students for Fair Admissions, Inc.'s Second Interrogatories (the "Interrogatories") as follows:

### GENERAL OBJECTIONS

1. Defendants object to the Interrogatories to the extent that the Interrogatories, or the related definitions and instructions, purport to impose any obligation on Defendants in excess of the requirements set forth in the Federal Rules of Civil Procedure, the Local Rules of the Middle District of North Carolina, or any other statute, rule, or order applicable to this action.

2. Defendants object to the Interrogatories to the extent that they, or the related definitions and instructions, purport to require Defendants to produce information that is protected from disclosure by the attorney-client privilege, the joint defense privilege, the attorney work product doctrine, or any other applicable privilege or immunity under federal or state

9. Defendants reserve the right to assert additional objections to the Interrogatories, or any other requests for documents or information, if such objections become known or apparent in the future.

10. All defined terms have the same meaning as used by Plaintiff in the Interrogatories unless otherwise defined.

## SPECIFIC RESPONSES AND OBJECTIONS

**Interrogatory No. 8:**

Identify when UNC-CH first began circulating Core Reports (*e.g.*, UNC0098178), Core Report Comparisons (*e.g.*, UNC0081618), or any similar document disclosing racial makeup of the admitted class to readers during the reading period, before releasing decisions to applicants, in any format.

**Response to Interrogatory No. 8:**

Subject to and without waiving their general objections, Defendants state that UNC-CH first provided reports disclosing information regarding the number of students who applied for admission, the number of applications read, the number of admitted students, and the number of enrolled students by a number of dimensions, including race and ethnicity, with a prior year comparison ("Core Report Comparisons") in 2006. Core Report Comparisons were created from 2006 until 2009 and from approximately December 2014 until May 2015. Reports disclosing information regarding the number of students who applied for admission, the number of applications read, the number of admitted students, and the number of enrolled students by a number of dimensions, including race and ethnicity ("Core Reports") were created from 2010 until in or about July 2015. Both Core Report Comparisons and Core Reports ceased in 2015 as discussed in Response to Interrogatory No. 9.

**Interrogatory No. 9:**

>Identify which admissions office employees received Core Reports (*e.g.*, UNC0098178), Core Report Comparisons (*e.g.*, UNC0081618), or any similar document disclosing racial makeup of the admitted class to readers during the reading period, before releasing decisions to applicants, and the frequency within which they received them.

**Response to Interrogatory No. 9:**

Defendants object to Interrogatory No. 9 to the extent that it seeks information without time limitation. Subject to and without waiving their general and specific objections, Defendants state that Core Report Comparisons were emailed to all Office of Undergraduate Admissions staff on a biweekly basis from 2006 to 2009. From approximately December 2014 to May 2015, Core Report Comparisons were posted to a shared drive accessible by Associate Directors of Admission.

Defendants state that from 2009 until approximately 2010, Core Reports were shared with staff on a biweekly basis. Defendants further state that from approximately December 2010 to July 2015, Core Reports were generated by the UNC-CH ITS department and sent via email daily to Jennifer Kretchmar, Barbara Polk, Melissa Florio, and Stephen Farmer.

**Interrogatory No. 10:**

>Identify the date when UNC-CH stopped circulating Core Reports (*e.g.*, UNC0098178) and Core Report Comparisons (*e.g.*, UNC0081618), or similar reports, to application readers during the reading period, before releasing decisions to applicants, and the reason for doing so.

**Response to Interrogatory No. 10:**

Defendants object to Interrogatory No. 10 to the extent that it seeks information without time limitation. Subject to and without waiving their general and specific objections, Defendants refer to their Response to Interrogatory No. 9 for the time periods during which Core Reports and Core Report Comparisons were circulated. The 2015 decision to cease generation of Core

**Response to Interrogatory No. 25:**

Defendants object to Interrogatory No. 25 because the term "economically disadvantaged" is undefined, vague, and ambiguous. Without waiving their general and specific objections, Defendants state that the University believes the following information can relate to socioeconomic status, including:

- If the applicant applies for admission with a fee waiver (Column "Payment Type" with entry of WAVR in documents such as UNC0014633)
- If the applicant is a first generation college student (Column FGCL with entry of FGCL in documents such as UNC0014633)
- If the applicant discloses any aspect of their socioeconomic status in some portion of their application, including essays, recommendation letters, or parental occupation
- Whether the applicant attended a high school where a large percentage of the student body receives free or reduced price lunch

**Interrogatory No. 26:**

Identify the factors and methods for calculating an applicant's "Personal Quality" rating, and, in particular, identify the weight of each factor and the use of a student's essay in calculating this rating, if at all.

**Response to Interrogatory No. 26:**

Subject to and without waiving their general objections, Defendants state that UNC-CH considers the six following criteria in assessing an applicant's "Personal Quality" rating: (1) intellectual curiosity; (2) contribution to diversity, broadly defined; (3) strength of character; (4) impact on others; (5) exceptional achievement; and (6) overcoming adversity. These criteria are not assigned weights and no formula or method is used to assign a specific rating. An applicant's "Personal Quality" rating and essay rating are separate, but the two may be related in that an applicant's essays may be one of many sources of information used to assess the "Personal Quality" rating. Defendants also incorporate UNC0323603 and UNC0326625 into their response.

**Interrogatory No. 27:**

If you contend that UNC-CH has a compelling interest in using race in the undergraduate admissions process, state the basis for the contention and identify with particularity all facts supporting your contention.

**Response to Interrogatory No. 27:**

Defendants object to Interrogatory No. 27 because it is premature, overly broad, unduly burdensome, and improper to purport to require Defendants to marshal "with particularity all facts." Defendants further object to this Interrogatory to the extent it calls for legal conclusions. Defendants also object to this Interrogatory to the extent it calls for expert opinion or related disclosures prior to the deadlines for expert discovery. Defendants further object to this contention interrogatory as unnecessary in so far that it requires Defendants to prepare effectively a pre-trial disclosure, well before the close of all discovery in the case *and* prior to summary judgment deadlines. Plaintiff cannot identify any compelling, specific need that would necessitate such disclosures at this time, particularly given the extensive deposition testimony obtained by Plaintiff from 16 University witnesses, Defendants' Rule 26 Disclosures, and the documents produced by Defendants. *See*, *e.g.*, *BB & T Corp. v. United States*, 233 F.R.D. 447, 450-51 (M.D.N.C. 2006) ("A court may be well advised to examine whether contention discovery is truly necessary in any particular case. As the United States points out, contention discovery often requires a party to, in essence, prepare a trial brief at an earlier time in the litigation process than normally occurs. Without some specific reason to require such an acceleration, the Court may well deem the burden to outweigh the benefit.").

Without waiving their general and specific objections, Defendants state that the University does have a compelling interest in realizing the educational benefits of diversity as part of fulfilling its educational, research, and service missions and its core responsibilities to the State of North Carolina, including serving its diverse communities and residents. Defendants

14

state that the University pursues this compelling interest, in part, by permitting limited consideration of race and ethnicity as part of an individualized, holistic review of applicants for undergraduate admission. Defendants also state that the University seeks to obtain the educational benefits of diversity through a broad definition of diversity that includes, but is not limited to, race and ethnicity. In pursuing the admission and enrollment of diverse classes, the University recognizes and remains committed to the educational benefits of diversity, as identified and explained in the University's Report on the Educational Benefits of Diversity and Inclusion (UNC0349694), among other documents produced in discovery. Defendants also reserve all rights to submit expert testimony regarding, but not limited to, the educational benefits of diversity.

Without waiving their general and specific objections, Defendants state that facts supporting the University's compelling interest in the educational benefits of diversity are also included in, but not limited to, the following documents:

- UNC0349694 (May 26, 2017 Educational Benefits of Diversity and Inclusion Report) and the information and documents cited therein
- UNC0323722 (UNC Mission Statement)
- UNC0283397 (2014-2015 Diversity Plan Report); UNC0095363 (2012-2014 Diversity Plan Report); UNC0283341 (2011-2012 Diversity Plan Report); UNC0283289 (2009-2010 Diversity Plan Report)
- UNC0283261 (Faculty Council Resolution on Diversity and Inclusion)
- UNC0283224 (Presentation to Faculty Council)
- UNC0379188 (2011 Academic Plan)
- UNC0283505 (Minutes of Committee on Race Neutral Strategies)
- UNC0350125; UNC0350252; UNC0350264; UNC0350450; UNC0350459; UNC0350761; UNC0350993; UNC0351312; UNC0351622; UNC0351657; UNC0351680; UNC0352021; UNC0352031; UNC0352069; UNC0352152; UNC0352088; UNC0352125; UNC0352139 (Office of Institutional Research Surveys and Assessment Data)
- Documents and information available on the University's website, as described and disclosed in Defendants' September 28, 2016 Supplemental Disclosures, February 3, 2017 Third Supplemental Disclosures, May 30, 2017 Fourth Supplemental Disclosures, and Defendants' April 13, 2017 production letter to Patrick Strawbridge

15

Without waiving their general and specific objections, and reserving their right to add additional witnesses as necessary and appropriate, Defendants will also rely upon witness testimony to provide evidence supporting its compelling interest in the educational benefits of diversity as disclosed in Defendants' May 20, 2015 Initial Disclosures, September 28, 2016 Supplemental Disclosures, January 11, 2017 Second Supplemental Disclosures, February 3, 2017 Third Supplemental Disclosures, and May 30, 2017 Fourth Supplemental Disclosures. These witnesses may include: Stephen Farmer, Carol Folt, James Dean, Winston Crisp, Felicia Washington, Chris Faison, Marcus Collins, Jonathan Sauls, Kevin Guskiewicz, Abigail Panter, Rumay Alexander, Nilay Argon, Fitz Brundage, Maribel Carrion, Paul Cuadros, Joe DeSimone, Emil Kang, Patricia McAnany, Viji Sathy, Louise Toppin, Ezra Baeli-Wang, Rye Barcott, Chelsea Barnes, Melody Barnes, Taylor Bates, Ron Bilbao, Regan Buchanan, Gabe Chess, Mary Cooper, Marty Davidson, Lauren Eaves, Laura Gamo, Rachel Gogal, Teddy Gonzalez, Peter Henry, Atrayus Goode, Brittany Hunt, Donovan Livingston, Katy Lucci, Kendall Luton, Karol Mason, Ashley McMillan, Merrick Osborne, Michael Ortiz, Jordan Peterkin, Micah Poulson, Vishal Reddy, Neils Ribeiro-Yemofio, Jonathan Rich, Shruti Shah, Stick Williams, Camille Wilson, Anne Zhou, Frank Baumgartner, Allan Blattner, Cedric Bright, Christopher Clemens, Michael Crimmins, Kelly Hogan, Sherick Hughes, Crystal King, Steven Matson, Enrique Neblett, Laura Lopez-Sanders, Patricia Timmons-Goodson, Alex Kenley, Jennifer Ho, Richard Kohn, Lindsay-Rae McIntyre, Jonathan Reckford, and Richard Vinroot.

**Interrogatory No. 28:**

> If you contend that UNC-CH's use of race in connection with undergraduate admissions process is narrowly tailored to achieve a compelling interest, state the basis for the contention and identify with particularity all facts supporting your contention.

16