# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# CASE NO. 1:14-CV-954

| | |
|---|---|
| **STUDENTS FOR FAIR ADMISSIONS, INC.,**<br><br>        **Plaintiff,**<br><br>     v.<br><br>**UNIVERSITY OF NORTH CAROLINA et al.,**<br><br>        **Defendants.** | **JOINT STATUS REPORT REGARDING NOVEMBER 2020 TRIAL** |

All parties (plaintiff Students for Fair Admissions, Inc, the UNC-defendants, and Student-intervenors) respectfully submit this joint status report regarding the November 9, 2020 bench trial date and request a status conference at the Court's earliest convenience.

**SFFA's Position:**

To the extent the Court is willing to go forward with an in-person trial in November, SFFA states that its counsel and witnesses will be ready and available to proceed. If the Court finds that conducting an in-person trial in November is impracticable because of Covid-19, SFFA renews its request for a video trial or (in the alternative) a paper bench trial.

Both SFFA and its members have already suffered injuries of constitutional magnitude. *See Grutter v. Bollinger*, 539 U.S. 306, 323 (2003) ("[W]henever the government treats any person unequally because of his or her race, that person has suffered

an injury that falls squarely within the language and spirit of the Constitution's guarantee of equal protection." (quotation omitted)). Indeed, it is the mere fact of being subject to an admissions process in which race is a factor that amounts to constitutional harm. *See Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) ("[O]ne form of injury within the Equal Protection Clause is being forced to compete in a race-based system."). Thus, as SFFA first emphasized more than five years ago, each time UNC begins another admissions cycle, UNC "inflict[s] an equal-protection injury upon tens of thousands of more applicants." Doc. 52 (July 27, 2015), at 7.

SFFA reiterated the point when it advocated for a January 2020 trial date following the Court's denial of cross-motions for summary judgment:

> These constitutional harms will only grow in magnitude if this case is not resolved before the next admissions cycle begins in October 2020. Indeed, if not resolved before then, UNC will label another 30,000 high-school students by their race, imposing constitutional harm on them in the process—a process that this Court has acknowledged may violate the Equal Protection Clause. SFFA thus requests a trial in January 2020 to facilitate resolution of this case by October 2020, before UNC's next admissions cycle begins.

Doc. 191 (Nov. 1, 2019), at 2.

Trial has already been delayed to November 2020, which means that UNC will impose constitutional harm on the tens of thousands of students who apply to the university this admissions cycle. Delaying trial in this case even further would risk pushing resolution of this case into the Fall of 2021 and which would thereby expose tens of thousands more students to constitutional injury in the process.

It is worth noting that the Court has already recognized that UNC's admissions process may well be unconstitutional. By denying summary judgment to UNC, the Court

necessarily concluded that "there is sufficient evidence favoring [SFFA]," such that the Court could rule for SFFA on its claims that UNC's use of race violates the Equal Protection Clause. Doc. 190, at 11 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)); *see also id.* at 252 ("[A] fair-minded [factfinder] could return a verdict for the plaintiff on the evidence presented."). Further delay in resolving this case—which has been pending in this Court for nearly six years—would only exacerbate the constitutional harm here.

Thus, if an in-person trial is impracticable, SFFA respectfully requests that the Court conduct either a video trial or a paper bench trial in order to protect SFFA and its members from further constitutional harm. Federal courts must be flexible to ensure that the wheels of justice move forward. This is why numerous courts thus have directed that matters by "heard by teleconference or video-conference, or submitted on the briefs." U.S. Court of Appeals for the Fourth Circuit, Updated Public Advisory Regarding Operating Procedures in Response to COVID-19 (May 11, 2020).

Courts around the country have conducted numerous proceedings via video. Here in the Fourth Circuit, the U.S. District Court for the Eastern District of Virginia successfully conducted a five-week bench trial by video, adjudicating a complex patent dispute that involved more than two dozen witnesses. *See Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 2:18-CV-00094, Doc. Nos. 433–76, (E.D. Va. 2020). The Defendant in that case opposed a virtual trial on the grounds that the parties would not be able to effectively cross-examine witnesses over video, but the court rejected that assertion as "unfounded" because the Defendant's concerns were alleviated by (1) pre-trial disclosure

of all exhibits; and (2) the preparation of exhibit books exchanged between parties at the beginning of witness examinations. *Id.*, Doc. No. 406 at 2 (E.D. Va., April 23, 2020). Likewise, the U.S. District Court for the Southern District of New York recently concluded that "[b]ench trials are the one type of proceeding that can go forward, even during a pandemic." *Ferring Pharm. Inc. v. Serenity Pharm., LLC*, 17-cv-09922, Doc. No. 678 (S.D.N.Y. Apr. 23, 2020). Accordingly, it held a bench trial via videoconference from July 6-23. *Id.*, Doc Nos. 695–701. The U.S. District Court for the Northern District of California provides yet another example of courts using video to conduct hearings during the pandemic. *See, e.g.*, N.D. Cal. General Order No. 72-5.

SFFA's counsel and witnesses would be ready and willing to appear by video. Although UNC and Intervenors state that they object to trial by video, both appear to have some witnesses that intend to appear only via video if the court holds an in-person trial. *See infra* p.7 (UNC: "To the extent the Court is willing to go forward with an in-person trial in November, based upon its current assessment of the COVID-related risks and circumstances, the University anticipates that its trial counsel and the majority of its key witnesses will be available"); *see also infra* p.9 (Intervenors: "Should trial proceed in November, Student-intervenors respectfully request that this Court permit some of their witnesses to testify by videoconference, or other remote means, due to the extenuating health and safety circumstances."). This undercuts their claims that they would be prejudiced by trying this case via video.

In the alternative, the Court could conduct a paper bench trial. District courts maintain the authority to conduct paper bench trials consistent with Rules 52 and 56.

4

*Pinario v. Prudential Ins. Co. of Am.*, 2009 WL 10705395, at *3 (E.D.N.C. July 23, 2009). Such trials are "equivalent to a conventional trial." *Dugan v. R.J. Corman R. Co.*, 344 F.3d 662, 665 (7th Cir. 2003). The Court may simply "convert the motions [for summary judgment] into a bench trial on the paper record." *APB Realty, Inc. v. Georgia-Pacific, LLC*, 948 F.3d 37, 40 (1st Cir. 2020); *United States v. $49,790 in United States Currency*, 763 F. Supp. 2d 1160 (N.D. Cal. 2010); *Koswenda v. Flossmoor Sch. Dist. No. 161*, 227 F. Supp. 2d 979, 984 (N.D. Ill. 2002).

A district court's authority to conduct a paper bench trial includes the authority to "make any credibility determinations or weigh the evidence as necessary to issue a final adjudication of the matter on the merits." *Hinderstein v. Advanced Call Ctr. Techs.*, 2017 WL 751420, at *1 (C.D. Cal. Feb. 27, 2017). As at any other bench trial, the judge "sits as finder of fact and is empowered to evaluate the evidence, determine the credibility of witnesses, and draw whatever reasonable inferences the judge deems appropriate given his factual findings." *Weisner v. Liberty Life Assurance Co. of Bos.*, 192 F. Supp. 3d 601, 608 (D. Md. 2016). This authority to make credibility determinations on the paper record applies equally to both fact and expert witnesses. *See, e.g.*, *$49,790 in United States Currency*, 763 F. Supp. 2d at 1162; *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 414 F. Supp. 3d 822, 825 (W.D.N.C. 2019).

The exercise of this authority would be warranted in light of the current conditions—especially given that the parties believe there is little (if any) factual dispute

5

here[1] and have expressed their intent to put witness testimony into the record via deposition transcripts. Doc. 191 (Nov. 1, 2019), at 1. To be sure, this is not how the parties initially envisioned the resolution of this case. But if an in-person trial is not practicable, then conducting either a video trial or a paper bench trial would be not only within the Court's authority but the most practical way of protecting SFFA and its members from further constitutional harm while also "protect[ing] public health, … reduc[ing] the size of public gatherings and avoid[ing] unnecessary travel." Amended Standing Order 13 (M.D.N.C. July 30, 2020).

**The UNC-Defendants' Position:**

Like SFFA, the University continues to wish to bring this case to a resolution promptly, but the University respectfully submits that it would be severely prejudiced without the ability to have its witnesses and counsel appear physically in front of the Court in a complex case that could fundamentally affect the University's entire admission process and, as a result, the fundamental nature of the University. The defendants are a public institution and its officials, and in a case of this significance, the University respectfully submits that it should have full access to a public courtroom to refute false accusations. Moreover, in-person testimony is also necessary in light of the Court's order on summary judgment, which repeatedly observed that the factfinder would be presented with genuine issues of material fact that turn on competing expert evidence and fact witness credibility.

---

[1] Doc 153 (Jan. 18, 2019), at 31 (UNC: "[T]here are no disputes of *material* fact."); Doc 183 (April 4, 2019), at 9 (UNC: "In the end, a trial is not needed here."); Doc. 177 (March 4, 2019), at 1 (SFFA: "[I]t is clear that to the extent there any factual disputes in this case, none of them are material.").

(See, e.g., ECF No. 190 at 18-19 ("The Court's determination of whether UNC considers race as a 'plus' factor, or a dominant factor, in its admissions decisions is critically dependent on competing expert evidence regarding UNC's admissions data, as well as the credibility of the testimony of UNC's admissions personnel regarding the manner in which an applicant's race is factored into admissions decisions."), 24 ("The Court's determination of this issue would require that the Court weigh the evidence in the record, including the conflicting expert evidence, and draw conclusions with respect to the credibility of witnesses.").)

To the extent the Court is willing to go forward with an in-person trial in November, based upon its current assessment of the COVID-related risks and circumstances, the University anticipates that its trial counsel and the majority of its key witnesses will be available, assuming that the parties and Court can set appropriate protocols and processes in advance relating to issues such as the number of persons in the courtroom, social distancing, and other safety precautions.[2] The University is also willing to continue to work with SFFA and Student-intervenors in good faith to streamline the number of witnesses who must testify live at trial by agreeing to submit certain testimony through declaration or deposition designation. The fact that University is willing to proceed with an in-person trial where a limited number of witnesses may not appear live is an effort to move as expeditiously as reasonably possible. It also reflects the reality that not all

---

[2] To the extent that certain witnesses may be at "high risk" of severe illness from COVID-19, live with someone at high risk pursuant to the guidance of the N.C. Department of Health and Human Services, or have other concerns related to the on-going public health crisis, certain accommodations may need to be discussed.

7

witnesses are similarly situated in terms of the risks presented to them by traveling to the courthouse and appearing live. That flexibility, however, does not undercut the University's well-founded position that it should be able to get as fair a trial as possible and address accusations head on in a public courtroom.

Should the Court believe that the on-going public health crisis continues to present insurmountable obstacles to conducting this critically important trial in-person, the University respectfully asks that the Court continue the trial to a date in 2021 when all witnesses and counsel can appear live in front of the Court. To further that goal and to ensure that the Court, the parties, trial counsel, and witnesses may plan for and schedule an in-person trial as soon as reasonably possible, if the Court elects not to hold a live trial in November, the UNC-defendants request that the Court set a status conference in mid-November or early December to better evaluate the state of affairs at that time and set a feasible trial date. The University has consulted with its trial team and key witnesses and, based upon current circumstances, anticipates that they can be available for a trial anytime in February or May 2021.

With respect to SFFA's renewed request for a paper bench trial, the Court has already denied this request once and made clear when doing so that any such request would only be considered "if all parties agree to a bench trial and are prepared to waive their respective right to a full trial." (ECF No. 206 at 2.) The UNC-Defendants continue to object and will not waive their right to a full trial.

**Student-Intervenors' Position:**

Student-intervenors support proceeding in a manner that permits prompt resolution but does not compromise developing a full and complete record of the complex issues raised by this lawsuit. As this Court recognized in its Order permitting intervention, this is a case of great magnitude: "the result of this litigation will have a direct and significant impact on North Carolinians' access to UNC-Chapel Hill." (*See* ECF No. 79 at 13.) It remains critical that Student-intervenors can, consistent with this Court's Order, "contribute to a full development of the legal and factual issues and ensure that all competing legal arguments are presented." (*Id.* at 12.) Live testimony and rigorous cross-examination, as well as the Court's opportunity to judge the credibility of witnesses and to ask witnesses questions, will greatly benefit the Court and provide the parties the full opportunity to present their case.[3]

To this end, Student-intervenors agree with the UNC-Defendants that the trial should proceed in-person to the greatest extent possible, with appropriate health and safety precautions in place. To the extent the Court is willing to go forward with a trial in November, Student-intervenors anticipate that its trial counsel will be available to present their case in-person and that most locally-based witnesses will be available to testify in-person. However, some Student-intervenor witnesses will not be able to travel to North

---

[3] Student-intervenors note that this case's far-reaching consequences and questions involving equitable access to higher education—the training grounds for North Carolina's future leaders—fundamentally differ in kind from the patent disputes cited by SFFA as examples of trials held entirely by video during the pandemic. *See supra* p. 3-4 (citing only two example cases, both of which involve patent disputes).

9

Carolina in November to testify in-person due to specific, legitimate health and safety constraints imposed by COVID-19. Should trial proceed in November, Student-intervenors respectfully request that this Court permit some of their witnesses to testify by videoconference, or other remote means, due to the extenuating health and safety circumstances. Student-intervenors submit that these witnesses will provide critical testimony on the two issues on which this Court granted intervention: the history of segregation and discrimination at UNC and in North Carolina; and the effect of admissions processes on the critical mass of diverse students at UNC. (*See id.* at 13-14.)

Alternatively, Student-intervenors support continuing the trial to a date in 2021 when all witnesses and counsel can appear live in front of the Court. As proposed by UNC-defendants, Student-intervenors commit to working in good-faith with the other parties to evaluate the state of affairs in November and December, and set a feasible trial date in 2021. At this time, Student-intervenors' counsel and witnesses are also available for a trial anytime during February or May 2021, the months proposed by UNC-Defendants.[4]

For the same reasons described above by UNC-Defendants, Student-intervenors also object to SFFA's renewed request that this Court conduct a paper bench trial without the benefit of live witness testimony at trial. Student-intervenors reserve the right to provide further briefing to the Court on that issue, as necessary

---

[4] Availability of Student-intervenors' witnesses for in-person testimony will depend on the progression of COVID-19 in the intervening months. As proposed by UNC-Defendants and Student-intervenors, the parties can better evaluate this situation as part of a status conference in November or December 2020.

10

Respectfully submitted this 11th day of September, 2020.

/s/ Thomas R. McCarthy
Thomas R. McCarthy
Consovoy McCarthy PLLC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
(703) 243-4923
E: tom@consovoymccarthy.com

/s/ William S. Consovoy
William S. Consovoy
Consovoy McCarthy PLLC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
(703) 243-4923
E: will@consovoymccarthy.com

/s/ J. Michael Connolly
J. Michael Connolly
Consovoy McCarthy PLLC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
(703) 243-4923
E: mike@consovoymccarthy.com

/s/ Patrick Fitzgerald
Patrick Fitzgerald
Amy Van Gelder
Marianne Combs
Skadden, Arps, Slate, Meagher & Flom LLP
155 North Wacker Drive
Chicago, IL 60606-1720
(312) 407-0700
E: patrick.fitzgerald@skadden.com
E: amy.vangelder@skadden.com
E: marianne.combs@skadden.com

/s/ Alan M. Ruley
Alan M. Ruley
N.C. State Bar No. 16407
Bell, Davis & Pitt, P.A.
P.O. Box 21029
Winston Salem, NC 27012
(336) 704-4147
E: aruley@belldavispitt.com

*Attorneys for Plaintiff*

JOSHUA H. STEIN
Attorney General

/s/ Stephanie Brennan
Stephanie Brennan
Special Deputy Attorney General
NC State Bar No. 35955
E: sbrennan@ncdoj.gov

/s/ Tamika Henderson
Tamika Henderson
Assistant Attorney General
NC State Bar No. 42398
E: tlhenderson@ncdoj.gov

11

/s/ Lara Flath
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001
(212) 735-3000
E: lara.flath@skadden.com

*Attorneys for UNC-Defendants*

/s/ Reed N. Colfax
Reed N. Colfax*
RELMAN & COLFAX PLLC
1225 19th Street NW, Suite 600
Washington, DC 20036
rcolfax@relmanlaw.com
Tel: (202) 728-1888

/s/ Jack Holtzman
Jack Holtzman, N.C. Bar No. 13548
Emily P. Turner, N.C. Bar No. 49578
NORTH CAROLINA JUSTICE CENTER
224 South Dawson Street
Raleigh, NC 27601
jack@ncjustice.org
emilyt@ncjustice.org
Tel: (919) 856-2165

/s/ Jon M. Greenbaum
Jon M. Greenbaum*
David Hinojosa*
Genevieve B. Torres*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1401 New York Avenue NW, Suite 400
Washington, DC 20005
jgreenbaum@lawyerscommittee.org
gbonadies@lawyerscommittee.org
Tel: (202) 662-8600
*Special Appearance

*Attorneys for Student-Intervenors*

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing Joint Status Report Regarding November 2020 Trial via the Court's electronic filing systems, pursuant to the Electronic Filing Procedures, on all attorneys of record who have entered an appearance by ECF in this matter.

This 11th day of September, 2020.

/s/ Patrick Fitzgerald

13

Case 1:14-cv-00954-LCB-JLW   Document 211   Filed 09/11/20   Page 13 of 13