IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:14-CV-954

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, et al., <br><br> Defendants. | **BRIEF IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATED TO SO-CALLED "PAPER CLASSES"** |

Under Federal Rules of Evidence 402 and 403, the UNC-defendants respectfully submit this brief in support of their motion *in limine* to exclude evidence related to so-called "paper classes."

This case is about the legality of the University's undergraduate admissions program. But plaintiff Students for Fair Admissions, Inc. has repeatedly attempted to inject irrelevant and inflammatory evidence into this litigation about irregular classes at the University that were limited to a single academic department and that took place years before the allegations at issue here. When SFFA moved to compel discovery on this topic, Magistrate Judge Webster denied the motion because the requested discovery was irrelevant. Judge Webster was right. Indeed, SFFA did not even object to his decision. Yet SFFA again raised the issue of irregular classes in its motion for summary judgment and seeks to introduce the issue again at trial.

For two reasons, any evidence about the irregular classes should be excluded before the trial begins.

First, the evidence is irrelevant. The irregular classes have nothing to do with the University's admissions process. The classes also ended years before the allegations at issue here and therefore have no connection to the forward-looking injunctive relief that SFFA seeks.

Second, the evidence will waste time. There is no competent record evidence about the irregular classes because Judge Webster correctly denied SFFA's motion to compel discovery on that issue. Creating a record at or before trial could consume this Court's time as the parties present evidence and argument about the academic irregularities.

At bottom, SFFA's insistence on raising this irrelevant historical episode is nothing more than a thinly veiled attempt to smear the University and distract from the real legal questions here. Evidence about the irregular classes should be excluded before the trial begins so that the parties can provide a focused presentation of the facts that are actually relevant to the Court.

For these and other reasons explained below, this Court should grant the University's motion *in limine* to exclude evidence related to so-called "paper classes."

## BACKGROUND

In its complaint, SFFA alleged that the University's use of race in undergraduate admissions is unlawful. (ECF No. ("Compl.") ¶ 1.) SFFA sued the University in 2014 on behalf of a student who is not an underrepresented minority and who was allegedly denied admission during the 2013-2014 admissions cycle as a result. (*Id.* ¶¶ 13-14, 19.) SFFA

2

also sued on behalf of other, similarly situated students who are not underrepresented minorities and who may be denied admission to the University in the future. (*Id.* ¶¶ 21-22.) SFFA seeks a declaration that the University's admissions process is unlawful and an injunction to prevent its continued operation in the future. (*Id.* Prayer for Relief.)

Yet SFFA has repeatedly attempted to inject an issue into this litigation that has nothing to do with the admissions process. Specifically, SFFA has sought to raise a historical episode involving irregularities in one of the University's academic departments. Decades ago, so-called "paper classes" became available in the Department of African and Afro-American Studies. These courses did not require class attendance and entailed little or no faculty participation. Students submitted a research paper, and generally received high grades.

In 2011, these irregularities came to light and were widely reported in the media. The University conducted a series of investigations. As part of its review, the University retained the law firm of Cadwalader, Wickersham & Taft, which produced a report on the irregular classes. (ECF No. 166.)

The report found that the irregular classes ended in 2011, as soon as they came to the attention of University administrators. (*Id.* at 24-30.) The report also found that no similar classes were offered in any of the University's many other academic departments. (*Id.* at 31.) In addition, the report described a number of reforms that the University adopted to prevent these types of classes from being offered in the future. (*Id.* at 95-97.)

Of particular importance here, the report did not assess the University's admissions program. (*See id.* at 47 n.84.) Likewise, the report did not draw any conclusions—or even

3

mention—the racial or ethnic make-up of the students who enrolled in the irregular classes, much less how those students fared in the admissions process. Instead, the report focused on a single academic department's post-admissions conduct that ended in 2011. (*Id.* at 31.)

In searching for some basis beyond speculation to support its hypothesis that the irregular classes were comprised of students who were admitted despite "low qualifications" (ECF No. 159 at 11), SFFA moved to compel the production of documents or data concerning the students who enrolled in the irregular classes, including the identities of those who maintained their academic standing because of the classes. (ECF No. 86 at 1-2.) SFFA argued that this information was relevant because it could show the alleged "negative effects" of the University's admissions program. (ECF No. 87 at 19.)

Magistrate Judge Webster denied SFFA's motion. (ECF No. 101.) For two reasons, Judge Webster held that evidence about the irregular classes was irrelevant to SFFA's challenge to the University's admissions process. (*Id.* at 11.) First, Judge Webster held that evidence about the irregular classes had nothing to do with the University's admissions department because it was "outside the scope of the responsibilities and guidelines of UNC admissions." (*Id.*) Thus, Judge Webster concluded that the evidence was not relevant to a challenge to the University's admissions process. Second, Judge Webster held that evidence about the irregular classes was a "post-admissions performance issue." (*Id.*) Post-admission evidence of that kind, he concluded, is not relevant because it does not relate to students' academic performance when they *seek admission* to the University. (*Id.* at 10.) Rather, the question relevant to SFFA's claims is whether a student seeking admission "was treated unequally in the admissions process," which "necessarily means

4

reviewing [the student's] application against other admitted students at the time of the decision—not enrolled student performance." (*Id.*)

SFFA did not object to Judge Webster's decision.

Despite this non-objection, SFFA continued to raise the issue of irregular classes throughout discovery, including during depositions of University administrators. (*See* Declaration of Patrick Fitzgerald Ex. 1 (Clayton Dep.) at 263-70); Fitzgerald Ex. 2 (Polk Dep.) at 328-39; Fitzgerald Ex. 3 (Folt Dep.) at 303-14; Fitzgerald Ex. 4 (Dean Dep.) at 46-57.) The University uniformly objected to this line of questioning. (Clayton Dep. at 264; Polk Dep. at 332; Folt Dep. at 305; Dean Dep. at 47.) It pointed out that the issue was irrelevant, and the University's witnesses also testified that they lacked any personal knowledge of the issue, including those who worked in the admissions office. (Polk Dep. at 331, 338; *see also, e.g.*, Clayton Dep. at 264, 269; Dean Dep. at 46-47.)

SFFA again raised the issue of the irregular classes in its motion for summary judgment, citing the Cadwalader report. (ECF No. 159 at 11-12, 29-30; ECF No. 166) This Court denied SFFA's motion without discussing the report or the allegations about irregular classes. (ECF No. 190)

In early pre-trial exchanges, SFFA has made clear that it will yet again seek to offer evidence about the so-called "paper classes" at trial. For example, in its deposition designations, SFFA has identified testimony that it elicited on this topic from former Chancellor Folt and former Provost James Dean. *See* Fitzgerald Ex. 5 (Plaintiff's Pretrial Disclosures) at 2 (designating Folt Dep. at 303:24-305:8, 306:23-307:2, and 307:13-309:2; Dean Dep. at 46:9-23, 47:5-49:17, 50:3-21, 51:9-18, and 55:7-56:8).)

In sum, SFFA seeks to rely on a historical episode involving academic irregularities limited to one of the University's many academic departments—despite Judge Webster's conclusion that this evidence was irrelevant, and despite SFFA's decision not to challenge that ruling. Because SFFA has continued to insist on raising this irrelevant issue throughout the litigation, the University respectfully submits that a pre-trial ruling on this issue would benefit both the Court and the parties by ensuring that the trial remains focused on evidence that is relevant to SFFA's claims. Thus, the University respectfully requests that this Court grant its motion *in limine* to exclude under Federal Rules of Evidence 402 and 403 any evidence about so-called "paper classes."

## ARGUMENT

**I. Evidence Related To So-Called "Paper Classes" Is Irrelevant To SFFA's Claims.**

Evidence is relevant if it makes a fact "of consequence" "more or less probable." Fed. R. Evid. 401. Thus, "[r]elevancy . . . exists only as a relation between an item of evidence and a matter properly provable in the case." *Id.*, Advisory Committee Note. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. A district court has discretion to exclude irrelevant evidence before a bench trial to limit the trial's scope. *See, e.g.*, *Bunnell v. Haghighi*, 661 F. App'x 110, 113 (2d Cir. 2016) (per curiam) (affirming exclusion of irrelevant evidence at bench trial); *Hohenberger v. United States*, 660 F. App'x 637, 641-42 (10th Cir. 2016) (same); *Bissell v. United States*, 321 F. App'x 549, 551 (9th Cir. 2008) (per curiam) (same).

6

For two reasons, evidence related to irregular classes is not relevant to any issue in this case and should be excluded before trial. First, the classes had no connection to the University's admissions process. Second, the classes predate the allegations here and therefore can have no bearing on the prospective relief that SFFA seeks.

*First*, the irregular classes had nothing to do with the University's admissions operations. As Judge Webster recognized, the irregular classes were entirely "outside the scope of the responsibilities and guidelines of UNC admissions" and "inapposite to the core responsibilities of UNC's admissions department." (ECF No. 101 at 9, 11.) Thus, any evidence about the classes is not remotely relevant to the issues in this case: how the admissions office administers policies designed to foster the University's compelling interest in student-body diversity in a narrowly tailored way that gives ample consideration to race-neutral alternatives. (*See* Compl. ¶¶ 1-7.)

The irregular classes also have nothing to do with the admissions process. Assessing the lawfulness of that process requires courts to "giv[e] close analysis to the evidence of how the [admissions] process works in practice." *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 313 (2013). But the irregular classes took place only *after* the admissions process had already ended and students had enrolled. The irregular classes therefore have nothing to do with whether a student seeking admission was treated unfairly *during* the admissions process. *See id.* As the Supreme Court has held, the relevant question in a challenge to a university's admissions policy is what "[t]he record reveals . . . at the time of [a student's] application." *Fisher v. Univ. of Tex. at Austin*, 136 S. Ct. 2198,

7

2211 (2016); *see also id.* at 2210 (analyzing whether student "was denied equal treatment at the time her application was rejected").

Judge Webster was therefore right when he concluded that analyzing the University's admissions process "necessarily means reviewing [a student's] application against other admitted students at the time of the decision—not enrolled student performance." (ECF No. 101 at 10.) After all, admissions officers make their decisions based on information known to them when a student submits an application. Information about a student's *future* performance is necessarily unavailable when admissions decisions are made.

Moreover, the limited nature of the irregular classes makes this type of post-admissions evidence especially irrelevant. Those classes arose in a single academic department and represented a miniscule portion of the University's undergraduate course offerings. There can be no serious claim that the classes reflect the University's overall academic program. As a result, any evidence about the irregular classes should be excluded as irrelevant.

*Second*, the irregular classes are also irrelevant because they predate the allegations at issue here and have no connection to the relief that SFFA seeks in its complaint.

The irregular classes predate all of the allegations in the complaint. SFFA is suing the University on behalf of a student who was denied admission during the 2013-2014 admissions cycle and students who might apply to the University in the future. (Compl. ¶¶ 13-14, 21-22.) SFFA is therefore challenging the legality of the University's admissions program on a going-forward basis. Yet the irregular classes ended in 2011, before any

8

Case 1:14-cv-00954-LCB-JLW   Document 216   Filed 10/20/20   Page 8 of 14

SFFA student allegedly received unfair treatment—and, indeed, before SFFA was even created as an organization. (*See id.*) Indeed, most students who apply for admission to the University during the current cycle were *in third grade* when the classes ended. Because the classes ended before any student represented by SFFA sought admission to the University, they cannot possibly be relevant to this case.

Likewise, the irregular classes have no bearing on the relief SFFA seeks. SFFA seeks a prospective injunction against the University's admissions process, as well as a declaration that the process is unlawful. (*Id.* Prayer for Relief.) But the irregular classes were never part of the University's admissions process. And in any event, they ended in 2011 and so cannot be enjoined.

In sum, the irregular classes have nothing to do with the University's admissions process or policies. They also predate the allegations in the complaint and have no connection to the relief SFFA seeks. Any evidence about so-called "paper classes" should therefore be excluded as irrelevant under Rule 402.

## II.   Evidence Related To So-Called "Paper Classes" Will Waste Time.

Even if evidence related to so-called "paper classes" were relevant—which it is not—any marginal probative value would be substantially outweighed by the danger of wasting the Court's time.

The Court may exclude evidence if its probative value is substantially outweighed by a danger of "wasting time." Fed. R. Evid. 403. As the Fourth Circuit has held, "[e]xcluding relevant evidence in a bench trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power." *Schultz v. Butcher*, 24 F.3d 626, 632

9

(4th Cir. 1994) (quoting *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. Unit A Jan. 1981)). Here, any evidence related to the irregular classes would waste the Court's time by risking satellite litigation over this at-most tangential issue.

To begin, there is no competent evidence in the record about the irregular classes. The issue was not developed in discovery because, as explained above, Judge Webster correctly recognized that any evidence about the irregular classes is not relevant to SFFA's claims. Thus, because of Judge Webster's discovery ruling—a ruling to which SFFA did not object—there is no evidence in this case about the demographic or academic profiles of students who took the classes. Indeed, the only information about the classes in the record comes from the Cadwalader report, which relays numerous, inadmissible hearsay statements about the origins of, and investigations into, the classes. As a result, to address this issue at trial, the parties would have to develop a record for the first time long after discovery has closed.[1]

If evidence about the irregular classes were admitted in this case, the University would be required to vigorously defend itself against any spurious allegations that attempt to tar the University's reputation. These allegations could include, but are not limited to: any claims that the irregular classes were known to or approved by University administrators, that they were somehow connected to the University's undergraduate

---

[1] That record could be voluminous. The Cadwalader report itself spans more than 100 pages and is based on a review of more than one million emails, interviews with more than 120 witnesses, and data analysis of student academic records, among other things. (ECF No. 166 at 11-13.)

admissions program, that they were related to the University's compelling interest in securing student-body diversity, or that they otherwise reflect in any way on the University's overall academic program. All told, fully litigating these questions could consume a significant amount of time.

Thus, admitting irrelevant evidence about this historical incident could disrupt the parties' efforts to streamline their presentations so that the bench trial can be completed within two weeks. Addressing all of the relevant issues here requires extensive fact- and expert-witness evidence about the University's admissions process. A focused and efficient presentation of this complex evidence may prove impossible if the court were to allow evidence about an irrelevant side issue. It is critical that the trial focus on the evidence that actually matters to deciding the important legal questions in this case.

Indeed, it would likely prove impracticable to adequately develop a factual record on the so-called "paper classes" at the trial itself. Because of restrictions required by the COVID-19 pandemic, the witnesses necessary to establish a trial record on the issue may not be available. And, even if those witnesses were available, the parties have already agreed on trial witnesses and a streamlined presentation of evidence. If SFFA sought to litigate this satellite issue at trial, it could upset the delicate arrangements that have been made to conduct this trial safely and efficiently.

For these reasons, attempting to develop evidence on the irregular classes for the first time after discovery has already closed would waste the Court's time by focusing on an at-best tangential issue with no connection to either SFFA's claims or its requested relief. The evidence should therefore be excluded under Rule 403.

11

Case 1:14-cv-00954-LCB-JLW   Document 216   Filed 10/20/20   Page 11 of 14

## CONCLUSION

For the reasons explained above, the UNC-defendants respectfully requests that the Court grant their motion *in limine* to exclude under Federal Rules of Evidence 402 and 403 evidence related to so-called "paper classes."

Respectfully submitted this 19th day of October, 2020.

JOSHUA H. STEIN
Attorney General

/s/ Patrick Fitzgerald
Patrick Fitzgerald
Amy Van Gelder
Marianne Combs
Skadden, Arps, Slate, Meagher & Flom LLP
155 North Wacker Drive
Chicago, IL 60606-1720
(312) 407-0700
E: patrick.fitzgerald@skadden.com
E: amy.vangelder@skadden.com
E: marianne.combs@skadden.com

/s/ Lara Flath
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001
(212) 735-3000
E: lara.flath@skadden.com

/s/ Stephanie Brennan
Stephanie Brennan
Special Deputy Attorney General
NC State Bar No. 35955
E: sbrennan@ncdoj.gov

/s/ Tamika Henderson
Tamika Henderson
Special Deputy Attorney General
NC State Bar No. 42398
E: tlhenderson@ncdoj.gov

*Attorneys for the UNC-Defendants*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), I hereby certify that the body of this brief, including headings and footnotes, does not exceed 6,250 words.

This 19th day of October, 2020.

/s/ Patrick Fitzgerald
Patrick Fitzgerald

## CERTIFICATE OF SERVICE

I hereby certify that on October 19th, 2020, I filed a true and correct copy of the foregoing BRIEF IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATED TO SO-CALLED "PAPER CLASSES" with the Clerk of Court using the CM/ECF system.

This 19th day of October, 2020.

/s/ Patrick Fitzgerald
Patrick Fitzgerald