IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:14CV954 |
| v. | ) | |
| | ) | |
| THE UNIVERSITY OF NORTH CAROLINA | ) | |
| AT CHAPEL HILL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

On November 2, 2020, as a part of the Final Pre-trial Conference, Defendant's Motion *in Limine* to exclude evidence related to so-called "paper classes" under Federal Rules of Evidence 402 and 403, came on before the Court for hearing. (ECF No. 215.) Defendant contends, in sum, that injecting this issue into the trial is both irrelevant and a waste of time. (*Id.* at 1–2.) Plaintiffs counter that this information is relevant because universities must assess both the positive and negative effects of any affirmative-action admissions measures they implement in order to comply with Supreme Court precedent. (ECF No. 220 at 1–2 (citing *Fisher v. Univ. of Tex. at* Austin, 136 S. Ct. 2198, 2215 (2016) ("*Fisher II*").) In addition to allowing the parties the opportunity to be heard, the Court has read the parties' briefs and authority cited, reviewed relevant portions of the "Cadwalader Report," and reviewed previous court orders pertinent in this case. For the reasons detailed below, the Court grants Defendant's motion.

One of the prior orders most relevant to the issues now before the Court pertains to the scope of discovery conducted in these proceedings. (*See* ECF No. 101.) On June 9, 2017, Plaintiffs filed a Motion to Compel Production of Documents and Data Regarding Student Preparedness and Performance, asking the Court to compel Defendant to provide, among other things "any documents or data showing the race and ethnicity of students who took so-called 'paper classes.'" (ECF No. 86.) Plaintiffs sought to demonstrate through these documents that Defendant's admission of underrepresented minority students "with lower academic qualifications causes or otherwise contributes to the lower academic performance, and retention rates, and graduation rates for those very students." (ECF No. 87 at 3.) In denying the motion, the Court found that (1) this information "is not relevant" to the case, (2) none of the admissions cases referenced in the parties' briefing required such data, and (3) "it is inapposite to the core responsibilities of UNC's admissions department." (ECF No. 101 at 9.) More specifically, the Court concluded that data on "paper classes" was a "post-admissions performance issue, which previous analysis illustrates is not relevant." (*Id.* at 11.) The order by the Magistrate Judge was not appealed to this Court.

Plaintiffs during the hearing argued that the Magistrate Judge did not address the precise issue before the Court here and that Plaintiffs are asking only that the "Cadwalader Report" be admitted as evidence at trial. While Plaintiffs were correct that the issue here was not the precise issue in the earlier discovery decision, they failed to show the Court how, in light of that prior ruling, the report sought to be admitted at trial was any more relevant than the underlying data concerning the students who were the subject of the report. Moreover, in both their Brief in Opposition to Defendant's Motion *in Limine* and oral argument, Plaintiffs

2

attempt to draw a connection between the assertions that academically-challenged students were encouraged to take paper classes and that "underrepresented minority students admitted to UNC, on average, struggle academically." (ECF No. 220 at 2.) Yet the Cadwalader Report that Plaintiffs urge the Court to admit appears to make no such connection. (*See* ECF No. 166 at 47–58.) The Report goes to great lengths to detail paper class enrollments for student-athletes and fraternity members but does not address how affirmative action admissions programs might be related in any way. (*Id.*)

Nor does the Court find evidence in the Report that the racial preferences in admissions led to a "longstanding tolerance of substandard classes," as Plaintiffs charge. (ECF No. 220 at 2.) On the contrary, the Report identified a number of other factors that contributed to the existence of these classes in addition to the disproportionate number of student athletes and fraternity members: the classes were largely populated with "students who had physical or mental health issues, or who had gone through a traumatic experience," and even some who took the classes in order to earn grades that would allow them to retain prestigious scholarships. (ECF No. 166 at 56, 73.) Plaintiffs have not demonstrated how any of these factors would correlate with race, much less be connected to racial preferences in admissions. Further, the Report itself expressly declined to consider the impact of admissions on paper classes, (*see id.* at 52 n.84), and—far from suggesting that this program existed by design to support underrepresented minority students—found that University leadership was not involved in the implementation of these courses, (*id.* at 11 (noting instead that the administration had an "insufficient appreciation of the scale of the problem")).

Case 1:14-cv-00954-LCB-JLW   Document 222   Filed 11/03/20   Page 3 of 4

In addition to its lack of relevance, the fact that no discovery was allowed with respect to the students on which the report was based would likely prolong the trial in that some foundation must be laid to demonstrate a connection between affirmative-action admissions policies and these classes. Allowing discussion at trial without the benefit of knowing whether any correlation exists would necessarily confuse rather than clarify the issues at hand and unnecessarily lengthen a trial that is currently scheduled to last 10 days.

IT IS THEREFORE ORDERED that the Defendant's Motion *in Limine* To Exclude Evidence Related to So-Called "Paper Classes," (ECF No. 215), is GRANTED.

This, the 3rd day of November 2020.

/s/ Loretta C. Biggs
United States District Judge